IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:08-CT-00021-H

| | | |
|---|---|---|
| KEITH MATHIS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GEO GROUP, INC.; UNITED STATES OF | ) | FEDERAL DEFENDANTS' |
| AMERICA, through its department, the FEDERAL | ) | MEMORANDUM IN SUPPORT |
| BUREAU OF PRISONS; and HARLEY LAPPIN, | ) | OF THEIR MOTION TO DISMISS |
| in his official capacity as Director of the | ) | |
| FEDERAL BUREAU OF PRISONS, | ) | |
| | ) | |
| Defendants. | ) | |

TABLE OF AUTHORITIES ........................................................................................iv

INTRODUCTION ..................................................................................................1

BACKGROUND ...................................................................................................2

STANDARD OF REVIEW ......................................................................................5

ARGUMENT .......................................................................................................6

    I.     PLAINTIFFS FAIL TO STATE AN EIGHTH AMENDMENT CLAIM
        AGAINST FEDERAL DEFENDANTS ....................................................6

          A.     The Fourth Circuit Has Already Recognized that Actions of
                Rivers Employees Are Not Fairly Attributable to the Government
                and Therefore Provide No Basis for an Eighth Amendment Claim ...........6

          B.     Federal Defendants Do Not Exercise Supervision and Control Over
                Day-to-Day Operations at Rivers, so There Can Be No Eighth
                Amendment Claim Against Them Based Upon a Theory of
                Supervisory Liability ....................................................................9

          C.     No Eighth Amendment Claim Lies Against Federal Defendants
                Based on Their Alleged Failure to Enforce the BOP-GEO Contract .........15

          D.     Plaintiffs Cannot State an Eighth Amendment Claim Against
                 Federal Defendants Based Solely on the Fact that the BOP-GEO
                Contract Provides For "Fixed-Price" Payments to GEO ...........................16

    II.    PLAINTIFFS FAIL TO STATE A CLAIM AGAINST THE BOP FOR
        ALLEGED VIOLATIONS OF SECTION 504 OF THE
        REHABILITATION ACT ...................................................................17

          A.     Section 504 Does Not Provide a Private Right of Action Against
                the Federal Government for Alleged Rehabilitation Act
                Violations of Independent Contractors ..............................................17

           B.     Even If Plaintiffs' Amended Complaint Asserted an APA Claim
                Against the BOP, Judicial Review of that Claim Would Be Barred
                by Sovereign Immunity Because Plaintiffs Have an Adequate
                Remedy Against GEO Group ..........................................................21

-ii-

C.    The PLRA Requires that Plaintiffs Exhaust DOJ Remedies for
      Alleged Section 504 Violations Prior to Bringing Suit in Court ...............23

D.    To the Extent Plaintiffs' Rehabilitation Act Claims Are Based on
      Allegedly Inadequate Medical Care, They Fail To Allege Facts That
      Indicate Discrimination Solely By Reason Of Disability ..........................24

III.  BECAUSE PLAINTIFFS COLLINS AND ROE ARE NO LONGER
      INCARCERATED AT RIVERS, THEIR CLAIMS AGAINST
      FEDERAL DEFENDANTS ARE NOW MOOT ...................................................26

CONCLUSION ....................................................................................................................28

Case 2:08-ct-00021-D    Document 64-2    Filed 01/05/2009    Page 3 of 38

## TABLE OF AUTHORITIES

**CASES**

Alexander v. Choate, 469 U.S. 287 (1985) ..................................................................25

Alexander v. Sandoval, 532 U.S. 275 (2001) .......................................................17, 18

Allison v. Howard Univ., 209 F. Supp. 2d 55 (D.D.C. 2002) ......................................24

Antol v. Perry, 82 F.3d 1291 (3d Cir. 1996) ...............................................................18

Baker v. Dist. of Columbia, 326 F.3d 1302 (D.C. Cir. 2003) ........................................9

Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007) .........................................5, 6

Bennett v. Westfall, 640 F. Supp. 169 (S.D.W.Va. 1986) ..........................................28

Bio-Med. Applications of NC, Inc. v. Elec. Data Sys. Corp.,
       412 F. Supp. 2d 549 (E.D.N.C. 2006) ..............................................................17

Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics, 403 U.S. 388 (1971) .............7

Block v. North Dakota, 461 U.S. 273 (1983) ..............................................................18

Bratcher v. Pharm. Prod. Dev., Inc., 545 F. Supp. 2d 533 (E.D.N.C. 2008) ..............5, 6

Bryant v. Madigan, 84 F.3d 246 (7th Cir. 1996) .........................................................25

Cannon v. United States, 645 F.2d 1128 (D.C. Cir. 1981) ..........................................15

Cercpac v. Health & Hosp. Corp., 147 F.3d 165 (2d Cir. 1998) .................................25

City of Canton v. Harris, 489 U.S. 378 (1989) ...........................................................10

Clark v. Skinner, 937 F.2d 123 (4th Cir.1991) ............................................................19

Clay v. Miller, 626 F.2d 345 (4th Cir.1980) ................................................................28

Commonwealth of Va. v. Reno, 955 F. Supp. 571 (E.D. Va. 1997) ...............................2

COMSAT Corp. v. Nat'l Science Found., 190 F.3d 269 (4th Cir. 1999) ......................15

Council of & for the Blind of Del. County Valley, Inc. v. Regan,
709 F.2d 1521 (D.C. Cir. 1983) (en banc) ........................................................23

Cousins v. Sec'y of DOT, 880 F.2d 603 (1st Cir.1989) ...........................................20

Cuco v. Fed. Med. Ctr.-Lexington, No. 05-232, 2006 WL 1635668 (E.D. Ky. Jun. 9, 2006) ......25

Dewakuku v. Martinez, 271 F.3d 1031 (Fed. Cir. 2001) .........................................18

Envtl. Def. Fund v. Tidwell, 837 F. Supp. 1344 (E.D.N.C. 1992) ...............................21

Epps v. U.S. Atty. General, 575 F. Supp. 2d 232 (D.D.C. 2008) ................................11

Estelle v. Gamble, 429 U.S. 97 (1976) ..........................................................6

Evans v. B.F. Perkins Co., 166 F.3d 642 (4th Cir.1999) .........................................5

FDIC v. Meyer, 510 U.S. 471 (1994) ...........................................................10

Fisher v. United States, 441 F.2d 1288 (3d Cir. 1971) ..........................................12

Freilich v. Upper Chesapeake Health, Inc., 313 F.3d 205 (4th Cir. 2002) .......................26

Godwin v. Sec'y of HUD, 356 F.3d 310 (D.C. Cir. 2004) ........................................20

Green v. Branson, 108 F.3d 1296 (10th Cir. 1997) .............................................27

Heckler v. Chaney, 470 U.S. 821 (1985) .......................................................16

Holly v. Scott, 434 F.3d 287 (4th Cir. 2006) .............................................1, 8, 9, 11

Incumaa v. Ozmint, 507 F.3d 281 (4th Cir. 2007) .............................................26

Iko v. Shreve, 535 F.3d 225 (4th Cir. 2008) ....................................................7

Jersey Heights Neighborhood Ass'n v. Glendening, 174 F.3d 180 (4th Cir. 1999) .........16, 19, 22

Kloth v. Microsoft Corp., 444 F.3d 312 (4th Cir.2006) ..........................................6

LaFaut v. Smith, 834 F.2d 389 (4th Cir. 1987) ................................................27

Lathers v. Penguin Indus., Inc., 687 F.2d 69 (5th Cir. 1982) ...................................12

-v-

Lewis v. KMart Corp., 180 F.3d 166 (4th Cir. 1999) .................................................25

Logue v. United States, 412 U.S. 521 (1973) ...............................................11, 14, 15

Long Term Care Partners, LLC v. United States, 516 F.3d 225 (4th Cir. 2008) .........................20

Lovern v. Edwards, 190 F.3d 648 (4th Cir.1999) ..........................................................5

Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982) ..........................................................7

Macharia v. United States, 238 F. Supp. 2d 13 (D.D.C. 2002) ................................12, 13

Mann v. Haigh, 120 F.3d 34 (4th Cir. 1997) ...............................................................18

Martin v. Sargent, 780 F.2d 1334 (8th Cir. 1985) .......................................................27

Matthews v. Town of Greeneville, No. 90-5772, 1991 WL 71414 (6th Cir. May 2, 1991) ..........16

McClaskey v. La Plata R-II Sch. Dist., 364 F. Supp. 2d 1041 (E.D. Mo. 2005) ..........................20

McKinnon v. Talladega County, 745 F.2d 1360 (11th Cir. 1984) .................................28

McNally v. Prison Health Servs., 46 F. Supp. 2d 49 (D. Me.1999) ..................................25

Mentavlos v. Anderson, 249 F.3d 301 (4th Cir. 2001) ....................................................7

Moore v. Bennette, 517 F.3d 717 (4th Cir. 2008) .......................................................23

Moore v. Idealease of Wilmington, 465 F. Supp. 2d 484 (E.D.N.C. 2006) ...................................5

Murphy v. Hunt, 455 U.S. 478 (1982) ...............................................................26, 27

NAACP v. Sec'y of HUD, 817 F.2d 149 (1st Cir.1987) .....................................................20

O'Guinn v. Lovelock Corr. Ctr., 502 F.3d 1056 (9th Cir. 2007) .................................23

Phillips v. Fed. Bur. of Prisons, 271 F. Supp. 2d 97 (D.D.C. 2003) .............................15

Phillips v. LCI Int'l, Inc., 190 F.3d 609 (4th Cir.1999) ...............................................12

Porter v. Nussle, 534 U.S. 516 (2002) .......................................................................24

Qassim v. Bush, 466 F.3d 1073 (D.C. Cir. 2006) .......................................................27

-vi-

Randall v. Prince George's County, 302 F.3d 188 (4th Cir. 2002) ...............................................10

Rashad v. Doughty, No. 00-6088, 2001 WL 68708 (10th Cir. Jan. 29, 2001) .............................25

Rendell-Baker v. Kohn, 457 U.S. 830 (1982) ................................................................................8

Richardson v. McKnight, 521 U.S. 399 (1997) ..............................................................................8

Rish v. Johnson, 131 F.3d 1092 (4th Cir.1997) .............................................................................7

Robb v. United States, 80 F.3d 884 (4th Cir. 1996) ...............................................................11, 12

Salmon Spawning & Recovery Alliance v. United States, 532 F.3d 1338 (Fed. Cir. 2008) .........16

Scherer v. United States, 241 F. Supp. 2d 1270 (D. Kan. 2003) ..................................................20

Shaw v. Stroud, 13 F.3d 791 (4th Cir. 1994) ...............................................................................9, 11

Simmat v. U.S. Bur. of Prisons, 413 F.3d 1225 (10th Cir. 2005) ...................................................7

Slade v. Hampton Roads Regional Jail, 407 F.3d 243 (4th Cir. 2005) ........................................27

Stanley v. Goodwin, 475 F. Supp. 2d 1026 (D. Haw. 2006) ........................................................10

The Piney Run Preservation Ass'n v. County Comm'rs, 523 F.3d 453 (4th Cir. 2008) ................5

Touche Ross & Co. v. Redington, 442 U.S. 560 (1979) ...............................................................17

Transohio Savings Bank v. Director, Off. of Thrift Supervision,
    967 F.2d 598 (D.C. Cir. 1992) .........................................................................................21

Traynor v. Turnage, 485 U.S. 535 (1988) ....................................................................................25

U.S. Parole Comm'n v. Geraghty, 445 U.S. 388 (1980) .........................................................26, 28

Wash. Legal Found. v. Alexander, 984 F.2d 483 (D.C. Cir. 1993) ..............................................22

Weinstein v. Bradford, 423 U.S. 147 (1975) (per curiam) ...........................................................27

West v. Atkins, 487 U.S. 42 (1988) ...............................................................................................8

William G. v. Pataki, No. 03-8331, 2005 WL 1949509 (S.D.N.Y. Aug. 12, 2005) ..........23-24, 24

Williams v. Griffin, 952 F.2d 820 (4th Cir. 1991) ........................................................26

Women's Equity Action League v. Cavazos, 906 F.2d 742 (D.C. Cir. 1990) ...............................22

**STATUTES**

Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706 ............................................2, 15, 19

5 U.S.C. § 704 ........................................................................................................21

Federal Tort Claim Act ("FTCA"), 28 U.S.C. § 1346 ...................................................11

Rehabilitation Act, 29 U.S.C. § 794 ............................................................1, 17, 22, 24

29 U.S.C. § 794a ...............................................................................................1, 19

Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e ...........................................23

42 U.S.C. § 1983 ...........................................................................................6, 8, 10

National Capital Revitalization and Self-Government Improvement Act ("Revitalization Act"),
    Pub. L. No. 105-33, § 11201, 111 Stat. 712 .......................................................2

D.C. Code § 24-101 ..............................................................................................3

**LEGISLATIVE HISTORY**

143 Cong. Rec. S8386-02 (daily ed. July 31, 1997) .....................................................2

S. Rep. No. 106-409 (2000) ...................................................................................3

**REGULATIONS**

28 C.F.R. § 39.170 .......................................................................................19, 23, 24

## INTRODUCTION

In this action, plaintiffs raise two claims against federal defendants the Federal Bureau of Prisons ("BOP") and Harley Lappin in his official capacity as BOP Director (collectively, "federal defendants"). First, plaintiffs allege, on behalf of a putative class of past, current, and future prisoners at Rivers Correctional Institution ("Rivers"), a private facility in Winton, North Carolina, that federal defendants have violated plaintiffs' Eighth Amendment rights through the provision of inadequate medical care at Rivers. Second, plaintiffs allege, on behalf of a putative subclass of Rivers prisoners with disabilities, that the BOP has discriminated against them based on their disabilities in violation of the Rehabilitation Act, 29 U.S.C. § 794. Plaintiffs seek injunctive relief for their Eighth Amendment claim, and declaratory and injunctive relief for the alleged Rehabilitation Act violation, pursuant to 29 U.S.C. § 794a.[1]

Plaintiffs' claims against federal defendants should be dismissed. In regard to their Eighth Amendment claim, the Fourth Circuit has already held that actions of Rivers employees are not fairly attributable to the federal government for purposes of such a claim because these employees work for GEO Group, Inc. ("GEO Group" or "GEO"), an independent corporate entity. Holly v. Scott, 434 F.3d 287, 291 (4th Cir. 2006). Neither the concept of supervisory liability, nor the charge that federal defendants failed to enforce the requirements imposed on GEO through their procurement contract, provide any basis for an Eighth Amendment claim against federal defendants, and plaintiffs have failed to cite any policy or practice of federal

---

[1]Plaintiffs' Amended Complaint raises two additional claims, alleging negligence and breach of contract, against codefendant GEO Group, Inc. Because these claims are not asserted against federal defendants, federal defendants have not sought to dismiss those claims, and this memorandum will not address them.

defendants that could conceivably be responsible for the alleged violations that they identify.

The Rehabilitation Act claims asserted by plaintiffs Calland and Roe also fail. Section 504 of the Act does not provide an express private right of action, and principles of sovereign immunity preclude finding an implied right of action against the federal government, particularly where Congress has already established an express cause of action against federal agencies in the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706. That is so even though here, no APA claim is available against the BOP because plaintiffs' claims asserted directly against GEO Group provide them with an adequate remedy. Moreover, to the extent these plaintiffs allege deficient medical treatment or care, their claims are not cognizable as claims of discrimination solely by reason of disability. Finally, because plaintiffs Collins and Roe are no longer incarcerated at Rivers, their claims against federal defendants – which seek only injunctive relief – must be dismissed as moot.

## BACKGROUND

In 1997, as part of the National Capital Revitalization and Self-Government Improvement Act ("Revitalization Act"), Pub. L. No. 105-33, § 11201, 111 Stat. 712, 734-37, Congress decided to overhaul the District of Columbia ("D.C.")'s criminal justice system, which one senator referred to as "broken." See 143 Cong. Rec. S8386-02, S8388 (daily ed. July 31, 1997) (statement of Sen. Hatch). A primary goal of the Revitalization Act was to close D.C.'s Lorton Correctional Complex, whose facilities had been deemed in a 1996 congressional study to be in a "deplorable" condition. See 111 Stat. at 734 (providing that Lorton would be closed no later than December 31, 2001); Commonwealth of Va. v. Reno, 955 F. Supp. 571, 575 & n.10 (E.D. Va. 1997) (describing the history of Lorton and citing the 1996 congressional study, together with

-2-

numerous newspaper articles chronicling such problems as "inmate escapes, official corruption, and drug smuggling" at the institution). The Act amended D.C. Code § 24-101 to provide that the federal government, rather than D.C., would henceforth be responsible for coordinating the imprisonment of individuals convicted of felonies under the D.C. Code. Specifically, the BOP was given the responsibility of "designat[ing]" such individuals "to a penal or correctional facility operated or contracted for by the [BOP], for such term of imprisonment as the court may direct." D.C. Code § 24-101(a). Congress further required that, by September 30, 2003, the BOP house "[a]t least 50 percent of the D.C. sentenced felony population" in "private contract facilities." Id. § 24-101(c)(1)(B). This provision was meant to address the fact that operations costs had made the D.C. corrections system "among the most expensive in the country." S. Rep. No. 106-409, at 20 (2000) (reporting, however, that anticipated savings from the use of contract facilities had not been realized during the previous three years).

Pursuant to its obligation under this statutory provision, the BOP initiated a competitive bidding process by issuing a Request for Proposals, and entered into a contract with Wackenhut, the predecessor-in-interest of GEO Group, in 2000 to house D.C. Code felony offenders at Rivers, in Winton, North Carolina. Am. Compl. ¶ 30. The terms of this contract require that, before receiving a Notice to Proceed from the BOP, GEO Group would have to develop plans, policies, and procedures that comply with the standards set forth by the private nonprofit American Correctional Association ("ACA"), and submit them to the BOP for review and concurrence. Statement of Work ("SOW"), at 5-6.[2] GEO Group was also required to obtain

---

[2]The contract between the BOP and GEO Group includes a Contract Award form setting forth the specific financial terms of the contract, together with a Statement of Work, setting forth GEO Group's general obligations under the contract, and other sections that describe quality

ACA accreditation.  Id. at 7.  The contract also states that "[a]ll services and programs" that GEO Group provides at Rivers "shall comply with the [Statement of Work]; the U.S. Constitution; all applicable Federal, state and local laws and regulations; applicable Presidential Executive Orders (E.O.); all applicable case law, consent decrees, and Court Orders."  Id. at 6.

The contract specifically requires that Rivers "comply with the requirements of the Architectural Barriers Act of 1968, and the Rehabilitation Act of 1973 as amended."  Id. at 23. The Rivers site and building must also meet the federal "standards for institution accessibility by physically handicapped persons," which were included as an attachment to the contract.  Id.

In regard to health care, the contract requires GEO Group to "provide all essential health services while meeting the applicable standards and levels of quality established by the ACA and the designated BOP ambulatory health care accreditation provider, JCAHO[3]."  Id. at 32-33.  GEO Group is further obligated to "adhere to all applicable Federal, state and local laws and regulations governing the delivery of health services and establish the necessary quality controls to ensure all policies and procedures are designed and implemented in a manner to promote orderly and efficient delivery of health services to the inmate population."  Id. at 33.  The contract also requires GEO Group to maintain JCAHO accreditation, and to provide a standard of health care delivery that is "commensurate to the level of care available in the community," in

_____

control and contractor employment requirements in greater detail.  A copy of the contract is attached as Exhibit A to Plaintiffs' Amended Complaint and is incorporated by reference therein. Am. Compl. ¶ 30.  The Statement of Work is included and begins at dkt. #50-2, at 9.  SOW citations herein refer to the numbered pages of the SOW itself.

[3]The JCAHO standards are established by the private nonprofit Joint Commission, formerly the Joint Commission on Accreditation of Healthcare Organizations ("JCAHO"), a nationally recognized  healthcare accreditation authority.

-4-

accord with various BOP directives and manuals. Id. GEO Group must "furnish prescription eyeglasses to any inmate who requires them." Id. at 36.

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 12(b)(1), the court must dismiss any claim over which it lacks subject matter jurisdiction. Because federal courts are courts of limited jurisdiction, the law presumes that any claim lies outside this limited jurisdiction, and the plaintiff "bears the burden of establishing that subject-matter jurisdiction exists." The Piney Run Preservation Ass'n v. County Comm'rs, 523 F.3d 453, 459 (4th Cir. 2008); accord Moore v. Idealease of Wilmington, 465 F. Supp. 2d 484, 486 (E.D.N.C. 2006). In considering a motion to dismiss under Rule 12(b)(1), a court normally views the facts in the light most favorable to the plaintiff, but if it "receives evidence concerning the issue of subject matter jurisdiction, 'the court may weigh the evidence in determining whether the facts support the jurisdictional allegations.'" Id. (quoting Lovern v. Edwards, 190 F.3d 648, 654 (4th Cir.1999)); see Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir.1999).

"In analyzing a motion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) for 'failure to state a claim upon which relief can be granted,' a court must determine whether the complaint is legally and factually sufficient." Bratcher v. Pharm. Prod. Dev., Inc., 545 F. Supp. 2d 533, 538 (E.D.N.C. 2008). While the complaint need not provide "detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007). The alleged facts must "state a claim for relief that is plausible on its face" rather than merely

-5-

"conceivable." Id. at 1974. A court need "not accept the legal conclusions drawn from the facts," nor must it "'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" Bratcher, 545 F. Supp. 2d at 538 (quoting Kloth v. Microsoft Corp., 444 F.3d 312, 319 (4th Cir.2006)).

## ARGUMENT

## I. PLAINTIFFS FAIL TO STATE AN EIGHTH AMENDMENT CLAIM AGAINST FEDERAL DEFENDANTS

Plaintiffs' Amended Complaint fails to set forth any factual or legal framework under which a cognizable Eighth Amendment claim could be brought against federal defendants based on alleged actions of nongovernment employees at Rivers, a private facility operated by a private contractor. Plaintiffs' allegations against federal defendants must therefore be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. To the extent plaintiffs base their claim on federal defendants' alleged failure to enforce the terms of the contract between the BOP and GEO, their claim is barred by sovereign immunity.

### A. The Fourth Circuit Has Already Recognized that Actions of Rivers Employees Are Not Fairly Attributable to the Government and Therefore Provide No Basis for an Eighth Amendment Claim

In order to state a cognizable claim under the Eighth Amendment for inadequate medical treatment in prison, "a prisoner must allege acts or omissions" by a government actor that are "sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). A claim brought pursuant to 42 U.S.C. § 1983 against individual employees of state prisons acting under color of state law must allege that the defendant officials acted with "'deliberate indifference'" to an inmate's "'serious medical

-6-

needs.'" Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Estelle, 429 U.S. at 104). The same standard applies in damages claim against employees of federal prisons pursuant to Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics, 403 U.S. 388 (1971), assuming that the defendant employees are not entitled to qualified immunity. See Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir.1997). Outside the context of § 1983 and Bivens, courts have held that federal prison inmates may bring Eighth Amendment claims for injunctive relief against the BOP and BOP officials in order to require them to perform their nondiscretionary duty to provide adequate medical care in federal prisons. E.g., Simmat v. U.S. Bur. of Prisons, 413 F.3d 1225, 1235 (10th Cir. 2005). However, no court, as far as federal defendants are aware, has issued a similar holding in regard to private prisons, operated not by the BOP but by a private company as an independent contractor.

Plaintiffs' assertion of an Eighth Amendment claim in this context cannot be reconciled with the fundamental principle that, in order for an action to be held in violation of an individual's constitutional rights, that action must somehow be considered a government action. See Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982) (holding that "the conduct allegedly causing the deprivation of a federal right" must be "fairly attributable" to the government); accord Mentavlos v. Anderson, 249 F.3d 301, 310-11 (4th Cir. 2001). The determination of whether allegedly unconstitutional conduct is "fairly attributable" to the government "begin[s] by identifying the specific conduct of which the plaintiff[s] complain[]." Id. at 311 (internal quotation omitted). Here, all the actions that plaintiffs have described were allegedly committed by employees of GEO Group – a private contractor. "Acts of . . . private contractors do not become acts of the government by reason of their significant or even total engagement in

-7-

performing public contracts." Rendell-Baker v. Kohn, 457 U.S. 830, 841 (1982).

Indeed, the Fourth Circuit has already recognized that GEO Group is "a wholly private corporation in which the federal government has no stake other than a contractual relationship." Holly v. Scott, 434 F.3d 287, 291 (4th Cir. 2006). The Fourth Circuit accordingly held that the plaintiff in that case had no cognizable Bivens claim against GEO Group employees for an alleged Eighth Amendment violation based on their provision of allegedly inadequate medical care. Holly, 434 F.3d at 291. In so holding, the Fourth Circuit recognized two key distinctions between the situation at Rivers and that at issue in West v. Atkins, 487 U.S. 42 (1988), where the Supreme Court recognized a plaintiff's claim against the physician under contract with the state as cognizable pursuant to 42 U.S.C. § 1983. West, 487 U.S. at 54. First of all, the Holly court explained, unlike the express right of action set forth in § 1983, the implied cause of action available under Bivens is a "device of judicial creation," which could not be extended to employees of a private facility. Holly, 434 F.3d at 292.

Second, the Fourth Circuit in Holly emphasized the difference between the state prison context in West and the private prison context at Rivers. The court soundly rejected the argument that the operation of a prison qualifies as "state action," even when carried out by a private company, under the "public function" theory. Id. at 293 (citing Richardson v. McKnight, 521 U.S. 399 (1997)). The court observed that, as the Supreme Court's historical analysis in Richardson had shown, "the private operation of jails and prisons existed in the United States in the eighteenth and nineteenth centuries, and in England the practice dated back to the Middle Ages." Id. (citation omitted). Furthermore, the court also rejected the more specific suggestion that "the provision of medical care to an inmate is always a public function, regardless of what

-8-

entity operates the correctional facility where he is housed." Id. at 294. While in West, "the state itself was directly responsible for managing the prison" at issue, the Holly court held that the "relationship [among the government, the physician, and the prisoner] is very different in [Rivers], where the correctional facility is privately run." Id. Thus, the court concluded that the actions of individual GEO Group employees at Rivers – including those responsible for providing medical care – were not "fairly attributable" to the federal government. Id. at 291. The controlling precedent in Holly therefore precludes any Eighth Amendment claim against federal defendants based on the actions of Rivers employees.[4]

**B.     Federal Defendants Do Not Exercise Supervision and Control Over Day-to-Day Operations at Rivers, so There Can Be No Eighth Amendment Claim Against Them Based Upon a Theory of Supervisory Liability**

Plaintiffs allege that federal defendants have "failed to provide lawfully adequate oversight or supervision of GEO's conduct." Am. Compl. ¶ 38. Through this allegation, plaintiffs appear to invoke "[t]he principle . . . that supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates." Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994). However, such an assertion makes no sense in this context, where neither the BOP nor the BOP Director qualify in any sense as "supervisors" of Rivers employees. For one thing, neither the BOP – which is an agency, not an individual – nor the BOP Director can possibly be "the person[] in the decisionmaking chain whose deliberate

---

[4]As in Holly, plaintiffs here raise no real "suggestion that federal policy played a part in [Rivers employees'] alleged failure to provide adequate medical care, or that [Rivers employees] colluded with federal officials in making the relevant decisions." Id. at 292-93; see Baker v. Dist. of Columbia, 326 F.3d 1302, 1306 (D.C. Cir. 2003) (holding that in order for a District of Columbia inmate housed at a contract facility to state an Eighth Amendment claim against the District under 42 U.S.C. § 1983, he would have to identify a "policy or custom of the District of Columbia" that was "the 'moving force' behind the [alleged] constitutional violation").

indifference permitted the [alleged] constitutional abuses to continue unchecked," nor have plaintiffs alleged any facts "pinpointing" either of these federal defendants as such. See id. (internal quotation omitted); Stanley v. Goodwin, 475 F. Supp. 2d 1026 (D. Haw. 2006) (citing Fourth Circuit authority regarding the "high burden of proof" a plaintiff bears in a supervisory liability case, and the requirement that the plaintiff "pinpoint the person in the decision-making chain whose indifference leads to the constitutional abuses").[5]

Rather than identifying any specific supervisory responsibilities of either federal defendant, plaintiffs appear to ground federal defendants' obligation to exercise oversight and supervision of operations at Rivers on the terms of the BOP-GEO contract. According to plaintiffs, this contract "charge[s]" the BOP "with monitoring and overseeing GEO's compliance with [GEO's] contract obligations, and provides for on-site BOP monitors at the Rivers facility." Am. Compl. ¶ 33.[6]

Plaintiffs' assertions on this point are internally contradictory and do not set forth an Eighth Amendment claim. Indeed, plaintiffs appear to conflate the concept of "supervisory

_____

[5]The theory of supervisory liability cannot properly be applied to an agency, as opposed to an individual. Cf. FDIC v. Meyer, 510 U.S. 471 (1994) (holding there was no cause of action against a federal agency for an alleged constitutional tort under either the FTCA or Bivens); City of Canton v. Harris, 489 U.S. 378, 385 (1989) (recognizing that in order for a municipality to be held responsible for a constitutional violation under 42 U.S.C. § 1983, a plaintiff must show "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation"); accord Randall v. Prince George's County, 302 F.3d 188, 206, 210 (4th Cir. 2002) (applying a supervisory liability analysis to the individual defendant and a municipal liability analysis to the County defendant).

[6] Plaintiffs' characterization of the contract as "charging" the BOP with supervisory obligations is plainly inaccurate. The obligation that the BOP has undertaken pursuant to this contract is to pay GEO Group a certain sum of money in exchange for GEO's housing of inmates at Rivers and associated obligations. Any requirement that GEO allow BOP inspection or monitoring is an obligation the BOP imposed on GEO to ensure GEO's contractual compliance.

-10-

liability" with the "supervision and control" standard that is only relevant, as far as federal

defendants are aware, in the context of the Federal Tort Claim Act ("FTCA"), 28 U.S.C. § 1346.

In that context, courts have considered whether the government exercises "supervision and

control" over an individual in order to determine whether that individual qualifies as an

employee or as an independent contractor, and thus whether the "independent contractor"

exception to FTCA liability should apply.  See Logue v. United States, 412 U.S. 521, 532 (1973)

(holding county jail was independent contractor of BOP); Robb v. United States, 80 F.3d 884,

893-94 (4th Cir. 1996) (holding that physicians acted as independent contractors of Air Force).

Plaintiffs have not asserted an FTCA claim here.  Thus, to the extent the "supervision and

control" allegations in paragraphs 31 to 34 of their Amended Complaint are meaningful at all,

they can only be construed as an attempt to suggest that the actions of GEO employees can

somehow be directly imputed to federal defendants for purposes of an Eighth Amendment

claim.[7]  Yet, as explained above, that is the very idea that the Fourth Circuit rejected in Holly,

434 F.3d at 291.  Moreover, even if the terms of the BOP-GEO contract actually supported

plaintiffs' assertions – which they do not – plaintiffs themselves concede in paragraph 38 that, in

practice, the BOP does not exercise supervision and control over day-to-day operations at Rivers

– and indeed, plaintiffs appear to rest their Eighth Amendment claim against federal defendants

on that very fact.  Am. Compl. ¶ 38 (claiming that the BOP "has failed to provide . . . oversight

or supervision of GEO's conduct").  Plaintiffs cannot use the terms of the BOP-GEO contract to

prove the BOP's constitutional obligations with respect to Rivers inmates, and then argue that the

_____

[7]This theory more closely resembles *respondeat superior* – a theory that "does not pertain
to the federal government in this context," Epps v. U.S. Atty. General, 575 F. Supp. 2d 232, 239
(D.D.C. 2008) – than supervisory liability.  See Shaw, 13 F.3d at 798 (distinguishing the two).

-11-

BOP's alleged failure to adhere to these contractual terms is proof of a constitutional violation.

In any case, plaintiffs' implicit suggestion that GEO Group is somehow not an independent contractor because the BOP allegedly exerts "supervision and control" over Rivers operations is insupportable. A review of the BOP-GEO contract is sufficient to demonstrate that, while the BOP reserves the right to engage in limited monitoring of GEO decisions, and requires that GEO hire only those who pass drug and background checks unless the BOP approves a waiver, the BOP does not exercise control over day-to-day operations at Rivers.[8] Cf. Robb, 80 F.3d at 893-94 (relying on Memorandum of Understanding and contract to determine that physicians were independent contractors). "Broad supervisory control, even on a daily basis, does not suffice to demonstrate control over the physical performance of the contractor." Macharia v. United States, 238 F. Supp. 2d 13, 27 (D.D.C. 2002) (holding that the United States did not exercise supervision and control over Embassy security guards working for an independent contractor where contract provisions closely resembled those at issue here); see also Lathers v. Penguin Indus., Inc., 687 F.2d 69, 73 (5th Cir. 1982) (holding that contract provisions allowing government to "prescribe safety standards" and " perform safety inspections" did not indicate that the government had the responsibility for day-to-day supervision over contract performance); Fisher v. United States, 441 F.2d 1288, 1292 (3d Cir. 1971) (holding that activities of government inspectors designed to ensure contractor's compliance with the terms of the

---

[8]As indicated above, the contract is attached as Exhibit A to plaintiffs' Amended Complaint and is incorporated by reference. Am. Compl. ¶ 30. The Court may therefore refer to the contract in considering federal defendants' motion with converting it to one for summary judgment. Cf. Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir.1999) (recognizing that material attached to and incorporated in a complaint may be considered when ruling on a Fed. R. Civ. P. 12(b)(6) motion to dismiss without converting the motion to one for summary judgment).

contract did not amount to government control over the contractor's activities).

The BOP-GEO contract did require GEO, prior to the start of the contract term, to develop plans, policies and procedures and to submit these to the BOP Contracting Officer "for review and concurrence prior to issuance of the [Notice to Proceed with the contract]." SOW at 5-6. These plans, policies, and procedures are not to be modified by GEO "without the prior written acknowledgment of the CO." Id. at 6. The contract also sets forth certain hiring standards with the stated aim of ensuring "professionalism and personal integrity" in contractor staff. Id. at 10. Among other things, similar to the contract at issue in Macharia, 238 F. Supp. 2d at 28, the BOP-GEO contract requires that GEO provide the BOP with applicants' fingerprints so that the BOP can initiate FBI name and fingerprint checks. SOW at 12. Following successful checks, the contract requires GEO to conduct urinalysis drug testing and limited background investigations of those to whom GEO decides to offer conditional employment. Id. at 12-13. In circumstances where the background check reveals negative information, such as a prior criminal history, and GEO submits a "request for waiver" to the CO, the contract gives the BOP authority to decide whether or not to grant the waiver. Id. at 14.

While imposing a host of requirements on GEO in connection with general administration, fiscal management, training, records, information systems, security and control, and other matters, including the provision of health care, the contract states that "[t]he BOP anticipates a nominal number of BOP staff will be on-site to monitor contract performance and manage other BOP interests associated with operation of the private facility." Id. at 25. The contract also "reserves [the BOP's] rights to conduct announced and unannounced inspections" at any time in order to assess contract compliance. Id. at 7. However, the contract's Quality

-13-

Assurance section sets forth the BOP's expectation that "the contractor, and not the BOP, is responsible for management and quality control actions to meet the terms of the contract." Contract E.2, dkt. 50-2, at 51; see also dkt. 50-3, at 19-22 (describing contractor quality control and government quality assurance programs).

None of these provisions come close to indicating that the BOP engages in the kind of day-to-day oversight over medical treatment that plaintiffs appear to allege, nor is it practically feasible that a federal agency can maintain that level of control over the everyday actions of its contractor's employees. Rather, as described above in the Background section, the contract imposes obligations on the contractor GEO Group to provide inmates with medical care, in effect delegating the responsibility for daily oversight of Rivers medical personnel to GEO. While the contract imposes certain compliance mechanisms such as requiring Rivers to maintain JCAHO accreditation, it does not provide for daily BOP supervision over the Rivers health care system.

Rivers' status is therefore equivalent to that of the county jail described in Logue, which housed federal inmates pursuant to a contract with the BOP. Logue, 412 U.S. at 522 & n.2. The Court in Logue concluded that Congress, by granting the BOP statutory authority to enter into such contracts, "rather clearly contemplated that the day-to-day operations of the contractor's facilities were to be in the hands of the contractor, with the Government's role limited to the payment of sufficiently high rates to induce the contractor to do a good job." Id. at 529. While the contract at issue in Logue "specif[ied] standards of treatment for federal prisoners," it gave the BOP "no authority to physically supervise the conduct of the jail's employees," other than through limited inspections. Id. at 530. The Court accordingly held that the county jail was an independent contractor within the meaning of the FTCA exception, and that the BOP was

-14-

therefore not liable for damages based on actions of county jail employees.  Id. at 532; accord

Cannon v. United States, 645 F.2d 1128, 1140 (D.C. Cir. 1981) (prison operated by District of

Columbia was equivalent to an independent contractor for purposes of FTCA liability); Phillips

v. Fed. Bur. of Prisons, 271 F. Supp. 2d 97, 101 (D.D.C. 2003) (no FTCA claim against BOP

based on actions of employees of independent contractor halfway house).  Here, Congress has

not only authorized but required the BOP to enter into such a contract.  Like the county jail in

Logue, GEO qualifies as an independent contractor.  This status, and the status of Rivers

employees as employees of GEO, not of the BOP, also necessarily means that, as a matter of law,

there is no "supervisor" in the BOP to whom supervisory liability could possibly attach.

Plaintiffs therefore fail to state an Eighth Amendment claim against federal defendants on this

basis.

### C.   No Eighth Amendment Claim Lies Against Federal Defendants Based on Their Alleged Failure to Enforce the BOP-GEO Contract

Plaintiffs cannot rest their Eighth Amendment claim against federal defendants solely on

an alleged failure by federal defendants to enforce the terms of the BOP-GEO contract.  The

APA, 5 U.S.C. §§ 701-706, waives sovereign immunity for nonmonetary claims based on the

action or failure to act of a federal agency or employee.  COMSAT Corp. v. Nat'l Science

Found., 190 F.3d 269, 274 (4th Cir. 1999) ("The APA waives the government's sovereign

immunity from suit and permits federal court review of final agency actions, when the relief

sought is other than money damages and the plaintiff has stated a claim 'that an agency or an

officer or employee thereof acted or failed to act in an official capacity . . . .'" (quoting 5

U.S.C.A. § 702)).  As with the FTCA, the APA by its plain terms does not provide for suit based

on the action of an independent contractor.  Nor does it waive immunity based on any assertion

-15-

that federal defendants failed to enforce GEO Group's contractual or other legal obligations. See Salmon Spawning & Recovery Alliance v. United States, 532 F.3d 1338, 1345-46 (Fed. Cir. 2008) (citing Heckler v. Chaney, 470 U.S. 821, 831 (1985), as establishing that "an agency's decision not to undertake enforcement actions is 'presumptively unreviewable' under the APA" because such decisions are committed to agency discretion); cf. Jersey Heights Neighborhood Ass'n v. Glendening, 174 F.3d 180, 192 (4th Cir. 1999) (holding plaintiffs could not "enforce Title VI's supervisory duties against the federal agencies" under the APA); Matthews v. Town of Greeneville, No. 90-5772, 1991 WL 71414, at *3 (6th Cir. May 2, 1991) (rejecting the notion that a contract could provide the "law to apply" for purposes of overcoming the Heckler v. Chaney presumption). To the extent plaintiffs rely on federal defendants' alleged failure to enforce the terms of the BOP-GEO contract, the Eighth Amendment claim against federal defendants should be dismissed for lack of subject matter jurisdiction.

### D. Plaintiffs Cannot State an Eighth Amendment Claim Against Federal Defendants Based Solely on the Fact that the BOP-GEO Contract Provides For "Fixed-Price" Payments to GEO

Other than the alleged failure to supervise, the only basis that plaintiffs set forth for attributing any allegedly inadequate medical care to federal defendants is that the contract between the BOP and GEO is a "fixed price contract," which, according to plaintiffs, "rewards GEO's failure to provide lawfully-required levels of medical care" – presumably by allowing it to keep any money that it might otherwise expend on the provision on medical care. See Am. Compl. ¶ 38. However, as explained, the terms of the contract require GEO to provide Rivers inmates with adequate medical care. SOW at 33. Plaintiffs' theory is evidently that the fixed-price provision of the contract will inevitably tempt GEO into breaching other contractual terms.

-16-

This notion is far too speculative to form a basis for a cognizable Eighth Amendment claim against federal defendants. To the extent plaintiffs' Eighth Amendment claim against federal defendants is premised on this theory, it should be dismissed for failure to state a claim.

## II. PLAINTIFFS FAIL TO STATE A CLAIM AGAINST THE BOP FOR ALLEGED VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT

### A. Section 504 Does Not Provide a Private Right of Action Against the Federal Government for Alleged Rehabilitation Act Violations of Independent Contractors

Two of the three named plaintiffs assert violations of Section 504 of the Rehabilitation Act, which prohibits discrimination against any "otherwise qualified individual with a disability" in programs and activities that "receiv[e] Federal financial assistance" or that are "conducted by any Executive agency." 29 U.S.C. § 794(a). Plaintiffs name both GEO and the BOP as defendants for these claims. Am. Compl. ¶¶ 72-77. Because Section 504 does not provide a private right of action against the federal government, however, plaintiffs' claims against the BOP must be dismissed.

"Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress." Alexander v. Sandoval, 532 U.S. 275, 286 (2001). Thus, in determining whether a federal statute provides a private right of action, "[t]he ultimate question is one of congressional intent." Touche Ross & Co. v. Redington, 442 U.S. 560, 577 (1979); see Bio-Med. Applications of NC, Inc. v. Electronic Data Sys. Corp., 412 F. Supp. 2d 549, 555 (E.D.N.C. 2006) ("In order to make out a cause of action to privately enforce federal law, plaintiffs must show Congressional intent that the statute create such a cause of action."). In order to support the conclusion that a right of action exists, "the statute Congress has passed" must "display[] an intent to create not just a private right but also a private remedy." Sandoval,

-17-

532 U.S. at 286.

Section 504 of the Rehabilitation Act does not contain an express private right of action against federal agencies. The remedy provision for Section 504 states that Title VI remedies "shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance." 29 U.S.C. § 794a(a)(2). Plaintiffs do not allege that the BOP is either a "recipient" or a "provider" of federal assistance in this context. Rather, they allege that the BOP itself "conducts" programs and activities at Rivers. Am. Compl. ¶ 72. The plain language of Section 504 therefore does not set forth a remedy for the violation that plaintiffs allege. Principles of sovereign immunity preclude finding an implied private right of action against the federal government in this situation. Mann v. Haigh, 120 F.3d 34, 37 (4th Cir. 1997) (holding that where a statute does not contain an "unequivocal waiver of [sovereign] immunity," the absence of statutory language "creating a private right of action [against the government] is treated as an affirmative congressional decision" that individuals "should not have a right to judicial review of their [statutory] claims through the [statute itself]"). "[U]nlike cases where an implied private right of action is found against a non-government defendant, courts consistently refuse to imply a private right of action against the government when the statute or legislative history is silent on the subject." Dewakuku v. Martinez, 271 F.3d 1031, 1038 (Fed. Cir. 2001) (citing Block v. North Dakota, 461 U.S. 273 (1983)); see also Antol v. Perry, 82 F.3d 1291, 1296-97 (3d Cir. 1996) ("[E]ven if we were disposed to imply a cause of action . . . , we could not imply a waiver of sovereign immunity with respect to that cause of action without running afoul of the well-established injunction against recognizing a waiver of federal sovereign immunity not evidenced in the statutory text." (internal quotation omitted)).

-18-

Moreover, to the extent § 794a(a)(2) is applicable, it provides that the remedies available for a Section 504 violation are those set forth in Title VI. In Jersey Heights, the Fourth Circuit held that Title VI does not provide a private right of action against the federal government. Jersey Heights, 174 F.3d at 191 (recognizing that Title VI "includes no express cause of action, and . . . declin[ing] to imply one against the federal government"). In so holding, the court rejected the notion that Congress intended to allow individuals to engage in "direct litigation against federal agencies" in order to secure a third party's compliance with the provisions of the Rehabilitation Act; instead, individuals could bring a claim directly against the third party, or, in the alternative, could petition the agency to take action through an administrative process. Id.[9]

In Clark v. Skinner, 937 F.2d 123, 125 (4th Cir.1991), the Fourth Circuit similarly declined to infer a private right of action under Section 504 against a federal agency, the Department of Transportation ("DOT"). Id. at 125. There, the plaintiff challenged the DOT's driver qualification standards, which had led to his termination as a truck driver for a private company due to an amputated arm. Id. at 124-25. The court held that the APA, 5 U.S.C. §§ 701-706, provided the proper framework for judicial review of a claim against a federal agency, rather than an implied private right of action under Section 504. Clark, 937 F.2d at 126 (recognizing that "the APA was intended to provide a single uniform method for review of agency action and that an implied private right of action to enforce a federal statute against a federal regulatory

---

[9]Like the administrative remedy that the court in Jersey Heights recognized as a means through which individuals could petition an agency to act in regard to a third party, regulations promulgated by the Department of Justice ("DOJ"), of which the BOP is a part, set forth a process through which an individual alleging a violation of the Rehabilitation Act may file a complaint with the DOJ's Equal Employment Opportunity office and obtain an administrative hearing of the claim. See 28 C.F.R. § 39.170(d), (k). If an individual prevails in that context, the EEO is authorized to require remedial action. Id. § 39.170(*l*).

-19-

agency is unnecessary").

   In accord with <u>Clark</u>, other courts have also recognized  that the express cause of action

that Congress provided in the APA – and the overall framework for judicial review of agency

action set forth in that statute –  preclude finding an implied right of action against the federal

government under another statute.  <u>See, e.g.</u>, <u>Godwin v. Sec'y of HUD</u>, 356 F.3d 310, 312 (D.C.

Cir. 2004) (refusing to find an implied right of action against the federal government under the

Fair Housing Act); <u>NAACP v. Sec'y of HUD</u>, 817 F.2d 149, 153 (1st Cir.1987) ("One would

ordinarily expect . . . that when Congress means to permit a private party to ask a court to review

the legality of federal actions in a manner that differs from APA review, Congress will say so

explicitly in the statute."); <u>Cousins v. Sec'y of DOT</u>, 880 F.2d 603, 605 (1st Cir.1989) (holding

that "even though § 504's substantive standard applies, more broadly, to 'any program or activity

conducted by any Executive agency' (presumably including regulatory programs)," there is no

private right of action to enforce this standard under § 504 because a person challenging an

agency's regulatory action "already has a right to judicial review, as set forth in the APA").  This

is so even where the standards that apply under the APA bar the specific claim at issue.  In

<u>Godwin</u>, for example, the D.C. Circuit explained, with respect to the Fair Housing Act ("FHA"),

that "[a]lthough we conclude below that the APA bars a federal question lawsuit in cases like

this, that conclusion only reinforces our view that the FHA creates no implied right of action, for

it would be quite odd to hold that Congress *implicitly* created a cause of action despite another

statute's preclusion of such an action."  <u>Godwin</u>, 356 F.3d at 312; <u>accord</u> <u>McClaskey v. La Plata</u>

<u>R-II Sch. Dist.</u>, 364 F. Supp. 2d 1041, 1045 (E.D. Mo. 2005) (discussing holding in <u>Scherer v.</u>

<u>United States</u>, 241 F. Supp. 2d 1270 (D. Kan. 2003), that neither Title VI nor the APA provided a

-20-

private right of action against the federal government where the plaintiff "had an adequate remedy elsewhere, namely, a direct cause of action against the recipient of federal funds").[10] Fourth Circuit and other authority thus dictate that plaintiffs' claims against the BOP cannot be brought directly under Section 504, and that the availability of judicial review of alleged Section 504 violations by the BOP is governed by the APA. Because plaintiffs' Amended Complaint does not assert a claim under the APA, their allegations of Section 504 violations against the BOP should be dismissed.

### B. Even If Plaintiffs' Amended Complaint Asserted an APA Claim Against the BOP, Judicial Review of that Claim Would Be Barred by Sovereign Immunity Because Plaintiffs Have an Adequate Remedy Against GEO Group

While, theoretically, plaintiffs might be granted leave to amend their pleadings to assert an APA claim, any such amendment would be futile in this context. While the APA provides the appropriate framework for review of agency action, "[j]udicial review under the APA is limited to 'final agency action for which there is no other adequate remedy in a court.'" Long Term Care Partners, LLC v. United States, 516 F.3d 225, 233 (4th Cir. 2008) (quoting 5 U.S.C. § 704). In other words, "[t]he APA excludes from its waiver of sovereign immunity . . . claims for which an adequate remedy is available elsewhere." Transohio Savings Bank v. Director, Off. of Thrift Supervision, 967 F.2d 598, 607 (D.C. Cir. 1992); accord Envtl. Def. Fund v. Tidwell, 837 F. Supp. 1344, 1355 (E.D.N.C. 1992) (recognizing the "no other adequate remedy" limitation as a "jurisdictional prerequisite" to an APA claim).

A remedy is "adequate," for purposes of this analysis, "where a plaintiff's *injury* may be

---

[10]As discussed below, here the APA does preclude plaintiffs' claim against the BOP.

remedied in another action, even if that remedy would have no effect upon the challenged agency action." Wash. Legal Foundation v. Alexander, 984 F.2d 483, 486 (D.C. Cir. 1993) (internal quotation omitted). Here, plaintiffs have an adequate remedy for their claims of disability-based discrimination at Rivers because they can assert such claims directly against GEO. Indeed, plaintiffs have asserted the same Section 504 claims against GEO in their Amended Complaint that they have asserted against the BOP. See Am. Compl. ¶¶ 69-77. There is no question but that the remedy available to plaintiffs through their action against GEO is adequate where the violations that plaintiffs allege have all taken place in the Rivers facility that is operated by GEO. Indeed, the Fourth Circuit recognized in Jersey Heights that such a direct remedy "is not only 'adequate,' but . . . is preferable to a direct suit against the agency itself." 174 F.3d at 191-92. Other courts have also concluded that, where the allegedly discriminatory actions that formed the basis of a plaintiff's claim were committed, not by the federal agency, but by a third party recipient of federal funds, a claim against the allegedly discriminating entity provides an adequate remedy that precludes suit against the monitoring federal agency under the APA. Wash. Legal Found., 984 F.2d at 487 (rejecting an APA challenge to the Department of Education that claimed that USDE had "abdicat[ed] its statutory duty to enforce Title VI"); Women's Equity Action League v. Cavazos, 906 F.2d 742, 751 (D.C. Cir. 1990) (similar).

While here, plaintiffs have not asserted that GEO is a recipient of federal "financial assistance" within the meaning of 29 U.S.C. § 794(a), GEO nevertheless is a third party independent contractor that has undertaken the obligation to comply with the Rehabilitation Act when carrying out the operations it performs pursuant to its contract with the BOP. Because the discrimination alleged by plaintiffs took place at a facility operated by GEO, the principles

-22-

described in this line of cases are applicable here.  Just as in those cases, the only remedy that

plantiffs might conceivably obtain from the BOP that would redress the violations they assert is

an enforcement action by the BOP against GEO; in essence, this is the very same remedy that is

available directly from GEO.  Cf. Council of & for the Blind of Del. County Valley, Inc. v.

Regan, 709 F.2d 1521, 1532 (D.C. Cir. 1983) (en banc) (holding that individual suits against

local government entities provided an adequate remedy and noting that "it is not clear at all that a

nationwide suit [against a federal agency seeking to compel enforcement of nondiscrimination

requirements] would remedy appellants' grievances more *effectively* than several . . . suits"

against the local governments subject to the federal requirements).   Accordingly, plaintiffs may

not assert an APA claim against the BOP based on alleged violations of Section 504 of the

Rehabilitation Act committed by its independent contractor.

     **C.**     **The PLRA Requires that Plaintiffs Exhaust DOJ Remedies for Alleged
Section 504 Violations Prior to Bringing Suit in Court**

Even if a claim under Section 504 or the APA were otherwise available against the BOP,

any such claim is premature at this point because plaintiffs have failed to exhaust the

administrative remedy that the DOJ has provided for claims of disability discrimination.  See 28

C.F.R. § 39.170(d).  The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, requires

inmates to exhaust "'such administrative remedies as are available' prior to filing suit in federal

court challenging prison conditions."  Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008)

(quoting 42 U.S.C. § 1997e(a)).  This administrative exhaustion requirement applies to

Rehabilitation Act claims.  See O'Guinn v. Lovelock Corr. Ctr., 502 F.3d 1056, 1060-61 (9th

Cir. 2007).  The plain language of this provision does not distinguish between internal prison

remedies and other administrative remedies that an agency might make available.  See William

-23-

G. v. Pataki, No. 03-8331, 2005 WL 1949509, at *4-5 (S.D.N.Y. Aug. 12, 2005) (specifically holding that DOJ remedies must be exhausted in a Section 504 case). Nor is there any logical reason to distinguish between them. See id.

Here, in particular, if the Court were to hold that a claim based on alleged Section 504 violations at Rivers could be brought directly against the BOP, administrative exhaustion through the DOJ complaint process would serve an important function by allowing the DOJ to address, in the first instance, any alleged failures by its contractor. More generally, as the Supreme Court has explained, "corrective action taken in response to an inmate's [administrative] grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation," or the administrative process might "filter out some frivolous claims." Porter v. Nussle, 534 U.S. 516, 525 (2002) (internal quotation omitted). Either result is in accord with the PLRA's goal of reducing prison litigation in courts. See id. Furthermore, "for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." Id. Thus, both the plain language and the purpose of the PLRA compel the conclusion that plaintiffs must pursue the process set forth in 28 C.F.R. § 39.170 before bringing any allegations of Section 504 violations in court.

**D.** **To the Extent Plaintiffs' Rehabilitation Act Claims Are Based on Allegedly Inadequate Medical Care, They Fail To Allege Facts That Indicate Discrimination Solely By Reason Of Disability**

Even if plaintiffs could otherwise proceed with their claim, a discrimination claim under Section 504 of the Rehabilitation Act must allege discrimination "solely by reason of . . . disability." 29 U.S.C. § 794(a); Allison v. Howard Univ., 209 F. Supp. 2d 55, 63 (D.D.C. 2002). Here, plaintiff Roe alleges that he suffers from depression and schizophrenia and that he has been

-24-

denied mental health care, psychotropic medications, and hip replacement surgery.  Am. Compl. ¶ 12.  Plaintiff Calland alleges that he has been denied physical therapy, and, as a result, is confined to a wheelchair.  Id. ¶ 11.

The Rehabilitation Act "do[es] not guarantee any particular level of medical care for disabled persons, nor assure maintenance of service previously provided."  Cercpac v. Health & Hosp. Corp., 147 F.3d 165, 168 (2d Cir. 1998).  The purpose of the Rehabilitation Act "is to assure that handicapped individuals receive 'evenhanded treatment' in relation to non[disabled] individuals."  Lewis v. KMart Corp., 180 F.3d 166, 171 (4th Cir. 1999) (quoting Traynor v. Turnage, 485 U.S. 535, 548 (1988)).  Thus, the Act requires meaningful access to benefits at whatever level they currently exist; it does not guarantee equal results from these benefits.  See Alexander v. Choate, 469 U.S. 287, 299, 301, 304 (1985) (observing that the Rehabilitation Act does not require that "the benefit being offered [be altered] simply to meet the reality that the handicapped have greater medical needs").  Accordingly, it is well established that claims of inadequate medical care or medical malpractice fail as assertions of disability-based discrimination under the Rehabilitation Act.[11]  As described above, plaintiffs' allegations amount

---

[11]Numerous courts have recognized this principle in regard to the Rehabilitation Act as well as the ADA.  Rashad v. Doughty, No. 00-6088, 2001 WL 68708, at *1 (10th Cir. Jan. 29, 2001) (unpublished) (recognizing that "the failure to provide medical treatment to a disabled prisoner, while perhaps raising Eighth Amendment concerns in certain circumstances, does not constitute an ADA violation"); Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996) (holding that the ADA "would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners" and that the statute "does not create a remedy for medical malpractice"); Cuco v. Fed. Med. Ctr.-Lexington, No. 05-232, 2006 WL 1635668, at *43 (E.D. Ky. Jun. 9, 2006) (unpublished) (holding plaintiff failed to state a Rehabilitation Act claim where her claim of exclusion from medical services failed to establish a "demonstrable nexus between the plaintiff's disability and the exclusion complained of"); McNally v. Prison Health Servs., 46 F. Supp. 2d 49, 58 (D. Me.1999) (recognizing the distinction between "claims that the medical treatment received for a disability was inadequate from claims that a prisoner has been denied

to a claim of inadequate medical care, with no suggestion of discriminatory treatment, and

therefore do not suffice to state a Section 504 Rehabilitation Act claim.[12]

## III. BECAUSE PLAINTIFFS COLLINS AND ROE ARE NO LONGER INCARCERATED AT RIVERS, THEIR CLAIMS AGAINST FEDERAL DEFENDANTS ARE NOW MOOT

Plaintiffs Collins and Roe raise Eighth Amendment claims against federal defendants,

and plaintiff Roe also raises a Rehabilitation Act claim against federal defendants, in both cases

seeking only injunctive relief. However, neither Collins nor Roe are currently inmates at

Rivers.[13] It is well established that prison inmate challenges to conditions of their confinement

that seek only declaratory or injunctive relief become moot when the inmate is released or

transferred to another facility because the inmate no longer has "'a legally cognizable interest in

the outcome.'" Murphy v. Hunt, 455 U.S. 478, 481 (1982) (quoting U.S. Parole Comm'n v.

Geraghty, 445 U.S. 388, 396 (1980)); see Incumaa v. Ozmint, 507 F.3d 281, 286-87 (4th Cir.

2007) (recognizing common rule that "the transfer of an inmate from a unit or location where he

---

access to services or programs because he is disabled"); cf. Freilich v. Upper Chesapeake Health, Inc., 313 F.3d 205, 216-17 (4th Cir. 2002) (recognizing that alleged defects in hospital procedures were "at most violations of state medical malpractice law, not infractions of the ADA").

[12]Federal defendants do not contest that, to the extent plaintiff Calland asserts that he is denied access to various parts of the Rivers facility because he is confined to a wheelchair, such assertions suffice as alleging discrimination by reason of disability.

[13]Michael Collins was transferred to a halfway house on November 17, 2008. See Declaration of Lynnell Cox ¶ 3(a), attached hereto. Because John Roe is a pseudonym, federal defendants are unable to provide the Court with documentation of Roe's current status. Federal defendants learned of Roe's status from plaintiffs' counsel when seeking to learn Roe's identity for purposes of preparing this motion. Federal defendants have not yet raised an objection to the D.D.C. Order of June 28, 2007, temporarily allowing Roe to proceed by pseudonym, but reserve the right to raise such an objection in the future.

-26-

is subject to the challenged policy, practice, or condition, to a different unit or location where he is no longer subject to the challenged policy, practice, or condition moots his claims for injunctive and declaratory relief"); Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) (holding inmate's transfer "rendered moot [his] claims for injunctive and declaratory relief"for allegedly unconstitutional prison conditions); see also Qassim v. Bush, 466 F.3d 1073, 1077 & n.4 (D.C. Cir. 2006) (citing cases that have "repeatedly held" that a prisoner's release or transfer moots any claims for equitable relief); Green v. Branson, 108 F.3d 1296, 1300 (10th Cir. 1997) (a claim for declaratory relief was moot where the plaintiff was "no longer a prisoner within the control of the" defendants and "the entry of a declaratory judgment in [the plaintiff]'s favor would . . . have no effect on the defendants' behavior towards him"); Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) ("[A] prisoner's claim for [declaratory and] injunctive relief to improve prison conditions is moot if he or she is no longer subject to those conditions.").  The Fourth Circuit has specifically held that a plaintiff's Rehabilitation Act claim, seeking declaratory and injunctive relief for alleged discrimination in the provision of his basic needs during his eight-month incarceration at a particular facility, became moot when the plaintiff was transferred to another facility.  LaFaut v. Smith, 834 F.2d 389, 395 (4th Cir. 1987).

An exception to the mootness doctrine in some instances allows an otherwise moot claim to be litigated where "'(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.'"  Slade v. Hampton Roads Regional Jail, 407 F.3d 243, 249 (4th Cir. 2005) (quoting Weinstein v. Bradford, 423 U.S. 147, 149 (1975) (per curiam)).  "[A] mere physical or theoretical possibility" is insufficient to satisfy

the test; [r]ather, . . . there must be a 'reasonable expectation' or a 'demonstrated probability' that the same controversy will recur involving the same complaining party." Murphy, 455 U.S. at 482. That exception does not apply here. See Slade, 407 F.3d at 249 (holding there was no "reasonable probability" that the defendant would return to the county jail as a pretrial detainee because the court presumed that the defendant would abide by state laws in the future); McKinnon v. Talladega County, 745 F.2d 1360, 1363 (11th Cir. 1984) (rejecting a transferred plaintiff's argument that "there is no assurance that he will not be returned to the jail").

Although plaintiffs characterize their Amended Complaint as a class action, no class has yet been certified. Indeed, plaintiffs have not yet renewed their motion for class certification following this action's transfer to this Court. Pre-certification mootness generally requires dismissal. See Geraghty, 445 U.S. at 398 (mootness can be avoided where class certification occurs "*prior to* expiration of the named plaintiff's personal claim" (emphasis added)); Clay v. Miller, 626 F.2d 345, 347 (4th Cir.1980) (holding that released inmate's claim for injunctive relief was moot, and "[h]is denomination of this action as a class action does not save his request for injunctive relief because he was not a member of the class he purported to represent at the time class certification was denied by the district court"); accord Bennett v. Westfall, 640 F. Supp. 169, 171 (S.D.W.Va. 1986) (dismissing released inmate's claim when it became moot prior to class certification). The claims of plaintiffs Collins and Roe against federal defendants should therefore be dismissed as moot.

## **CONCLUSION**

For the foregoing reasons, all claims against federal defendants should be dismissed, and federal defendants should be dismissed as parties to this action.

-28-

Respectfully submitted, this 5th day of January, 2009.

GREGORY G. KATSAS
Assistant Attorney General
GEORGE E.B. HOLDING
United States Attorney
VINCENT M. GARVEY
Deputy Branch Director

/s/ Kathryn L. Wyer
KATHRYN L. WYER
U.S. Department of Justice, Civil Division
20 Massachusetts Ave. NW
Washington, D.C.  20530
Telephone: (202) 616-8475 / Fax: (202) 616-8470
kathryn.wyer@usdoj.gov
*Attorneys for Federal Defendant*s

-29-

**CERTIFICATE OF SERVICE**

I do hereby certify that I have this 5th day of January, 2009, served a copy of the

foregoing upon the parties in this case electronically through the Court's ECF system.


<div align="center" style="margin-left:40%">

/s/ Kathryn L. Wyer
Kathryn L. Wyer

</div>