IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
Case No. 2:08-ct-00021-H

|  |  |  |
|---|---|---|
| MICHAEL COLLINS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | **BRIEF IN SUPPORT OF DEFENDANT** |
| | ) | **GEO GROUP, INC.'S MOTION TO** |
| v. | ) | **DISMISS** |
| | ) | |
| GEO GROUP, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

Defendant GEO Group, Inc. ("GEO") states the following grounds in support of its Motion to Dismiss:

<u>**SUMMARY OF THE NATURE OF THE CASE**</u>

Plaintiffs, prisoners at a facility operated by GEO pursuant to a contract ("Rivers Contract") with the Federal Bureau of Prisons ("BOP"), filed this class action lawsuit to attempt to dictate the manner in which GEO provides medical care to the population of the Rivers Correctional Institution ("Rivers").  Plaintiffs' First Amended Complaint seeks to hold GEO liable for a violation of the inmates Eighth Amendment rights under *Bivens v. Six Unknown Federal Narcotics Agents*, 430 U.S. 388 (1971); a violation of the Rehabilitation Act; breach of the terms of the Rivers Contract; and negligence in the provision of medical care.  Plaintiffs' First Amended Complaint cannot survive the pleadings stage because GEO, as a private corporation, is not subject to liability in a *Bivens* action; GEO cannot be held liable under the Rehabilitation Act because it does not receive federal financial assistance, GEO has not discriminated against Plaintiffs solely on the basis of their disabilities, and the Rehabilitation Act

does not apply to claims of medical malpractice; Rivers inmates are neither intended beneficiaries of the Rivers Contract, nor does the Rivers Contract provide Rivers inmates with a direct ability to enforce its provisions; Plaintiffs failed to comply with the certification requirements for medical malpractice actions under the North Carolina Rules of Civil Procedure; and the statute of limitations governing Plaintiffs' various claims may bar their ability to proceed. Therefore, Plaintiffs' claims fail as a matter of law and GEO's Motion to Dismiss should be granted.

## STATEMENT OF THE CASE

Plaintiffs initiated this action by filing their Original Complaint with the United States District Court for the District of Columbia on June 28, 2007. The Original Complaint named GEO; the Federal Bureau of Prisons ("BOP"); and Harley Lappin ("Lappin"), the Director of the BOP, as Defendants (Lappin and BOP will be collectively referred to as "Federal Defendants"). In the Original Complaint, Plaintiffs alleged that Defendants violated the Plaintiffs' Eighth Amendment rights and the Rehabilitation Act. Plaintiffs also raised claims of negligence and breach of contract against GEO.

GEO filed a Motion to Dismiss and Alternative Motion to Transfer on July 25, 2007. Subsequently, on September 18, 2007, the Federal Defendants filed a Motion to Dismiss or, in the alternative, Motion to Transfer. The Honorable Ricardo M. Urbina granted Defendants' Motions to Transfer on February 28, 2008, and transferred the case to the Eastern District of North Carolina.

This action arrived in the Eastern District of North Carolina on May 28, 2008. On October 7, 2008, GEO filed a Motion to Dismiss pursuant to Rule 4(m) of the Federal Rules of Civil Procedure seeking to have this action dismissed because Plaintiffs failed to properly serve

2

GEO within 120 days of the transfer of this action to the Eastern District of North Carolina. GEO's Motion to Dismiss is currently pending before the Court.

A First Amended Complaint was filed on October 24, 2008. The First Amended Complaint added Michael Collins and Louis Calland as Plaintiffs. Plaintiffs Keith Mathis, Reon Holloway, David Rogers, Benjamin Hamilton, Harold Robinson, Charles Lewis, John Doe, and Jimmy Fowler were dropped as named Plaintiffs and are now referred to as Other Affected Persons. Plaintiff Butler was dropped from the action entirely. Plaintiffs did not receive leave of this Court before adding and dropping these parties. GEO filed a Motion to Strike the First Amended Complaint pursuant to Rule 21 of the Federal Rules of Civil Procedure contemporaneously with this Motion to Dismiss. The First Amended Complaint contains the same causes of action against the Defendants as the Original Complaint.

GEO filed its Motion to Dismiss pursuant to Rule 12(b)(6) contemporaneously with this brief.

## STATEMENT OF THE FACTS

Plaintiffs Michael Collins, Louis Calland, and John Roe are inmates incarcerated at Rivers. (First Am. Compl. ¶¶ 10-12.) GEO operates Rivers pursuant to a contract with the BOP. (First Am. Compl. ¶ 14.) The Rivers Contract requires that GEO provide medical care to inmates incarcerated at Rivers. (First Am. Compl. ¶¶ 32 & 33.)

Each Plaintiff claims that GEO provided him with inadequate medical care while incarcerated at Rivers. Collins alleges he received inadequate treatment for a foot infection, resulting in the amputation of his left foot. (First Am. Compl. ¶ 10.) Calland alleges that he received inadequate medical attention for his arthritis, degenerative bone disease, and diabetes resulting in a general deterioration of his physical condition and severe pain. (First Am. Comp. ¶

3

11.)   Roe suffers with various forms of mental illness as well as "a number of chronic, preexisting physical conditions."   (First Am. Compl. ¶ 12.)   Roe claims that he received insufficient treatment for a hip injury and is receiving improper medication for his mental issues. (First Am. Compl. ¶ 12.)

Additionally, Calland and Roe claim that the Defendants violated rights guaranteed to them under the provisions of the Rehabilitation Act, 29 U.S.C. § 794.  (First Am. Compl. ¶¶ 69-77.)  The Rehabilitation Act prohibits executive agencies and private entities receiving federal financial assistance from discriminating against individuals solely upon the basis of their disability.  29 U.S.C. § 794(a).  Calland claims that he is unable to participate in various activities at Rivers because the facility is not properly designed to accommodate a person in a wheelchair.  (First Am. Compl. ¶ 11.)  Roe alleges that inadequate medical treatment of his "chronic depression, paranoia, and frequent hallucinations affect his ability to concentrate and to interact with other people, resulting in limitations of major life activities including thinking, reading, communicating with prison staff and others, following directions, and protecting himself from harm."  (First Am. Compl. ¶ 12.)

Plaintiffs seek to have this action certified as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.  The proposed class would include "current and future prisoners of Rivers who, during their incarceration at Rivers, are dependent upon the organizations, systems, policies, practices, and institutional conditions of Defendants for their receipt of medical, dental, and mental health care."  (First Am. Compl. ¶ 39.)  Additionally, Calland and Roe seek to have a sub-class certified which includes "all prisoners who have been denied access to the programs, services, facilities, and activities at Rivers because of Defendants'

failures to diagnose, monitor, treat and/or accommodate their serious medical conditions, in violation of Section 504 of the Rehabilitation Act." (First Am. Compl. ¶ 50.)

Plaintiffs seek declaratory and injunctive relief for themselves as well as those similarly situated.

## ARGUMENT

Plaintiffs' attempts to state a claim against GEO fail as a matter of law. Plaintiffs' *Bivens* claim, Rehabilitation Act claim, and third-party breach of contract claim fail, in large part, due to GEO's status as a private corporation and the terms of the Rivers Contract. Plaintiffs' remaining claim, negligence in the provision of health care services to the inmates at Rivers, fails because neither the Original Complaint, nor the First Amended Complaint contain the certification required by Rule 9(j) of the North Carolina Rules of Civil Procedure for medical malpractice actions. Thus, Plaintiffs' claims fail as a matter of law and GEO's Motion to Dismiss should be granted.

## I.  GEO, AS A PRIVATE CORPORATION, CANNOT BE HELD LIABLE FOR A CONSTITUTIONAL VIOLATION PURSUANT TO THE SUPREME COURT'S HOLDING IN *CORRECTIONAL SERVICES CORP. v. MALESKO*

This Court should dismiss Plaintiffs' *Bivens* claim because private corporations, such as GEO, cannot be held liable for constitutional violations in a *Bivens* action. *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61 (2001). In *Malesko*, the Supreme Court addressed whether a private corporation operating various correctional facilities pursuant to a contract with the BOP could be held liable for violations of an inmate's Eighth Amendment rights pursuant to the *Bivens* doctrine. *See Malesko*, 534 U.S. at 63-66. After reviewing the history and purpose of *Bivens* actions, the Supreme Court held that *Bivens* actions cannot be brought against private corporations acting under the color of federal law. *Id.* at 70 ("[W]e have consistently rejected invitations to extend *Bivens*, often for reasons that foreclose its extension here.").

5

The Supreme Court's decision in *Bivens* established that a "violation of [the Federal Constitution] by a federal agent acting under color of his authority gives rise to a cause of action for damages[.]" 403 U.S. at 389, 91. However, in the thirty-eight years since *Bivens* was decided, the holding has only been extended twice. *See Holly v. Scott*, 434 F.3d 287, 289 (4th Cir. 2006) (citing *Malesko*, 534 U.S. at 70.) In addition to the reluctance to expand the holding of *Bivens*, the Supreme Court's ability to create an implied right of action has come under fire and, perhaps abandoned altogether. *See Malesko*, 534 U.S. at 75 (Scalia, J., concurring). With the federal government's increased reliance on private contractors, plaintiffs have increasingly tried to hold private contractors liable under the *Bivens* doctrine. These attempts have been unsuccessful in both the Fourth Circuit and the Supreme Court. *See Malesko*, 534 U.S. at 71 ("[I]nferring a constitutional tort remedy against a private entity … is therefore foreclosed."); *Holly*, 434 F.3d at 296 ("[A]n inmate in a privately run federal correctional facility does not require a *Bivens* cause of action where state law provides him with an effective remedy.").

The Supreme Court's holding in *Malesko* precludes Plaintiffs from stating a claim against GEO under the *Bivens* doctrine. In *Malesko*, the Supreme Court began its opinion by revisiting the purpose behind *Bivens* actions, namely "to deter *individual federal officers* from committing constitutional violations." *Id.* (emphasis added). The Supreme Court previously held that this deterrent effect would not be achieved by allowing liability to be imposed upon the federal officer's employer. *See id.* (citing *FDIC v. Meyer*, 510 U.S. 471, 485 (1994)). Attempting to hold a private corporation liable for alleged constitutional violations "is, in every meaningful sense, the same." *Id.* (citations omitted). Thus, Plaintiffs cannot maintain a *Bivens* action against GEO.

The Supreme Court also declined to extend *Bivens* to private corporations because the plaintiff had available to him "alternative remedies [that] are at least as great, and in may respects greater than anything that could be had under *Bivens*. For example, federal prisoners in private facilities enjoy a parallel [state] tort remedy that is unavailable to prisoners housed in Government facilities." *Id.* at 72-73. In addition, prisoners in privately operated facilities have the ability to seek injunctive relief in federal court and relief through the BOP's Administrative Remedy Programs. *Id.* at 74. These remedies are superior to "the *Bivens* remedy, which we [the Supreme Court] have never considered a proper vehicle for altering an entity's policy[.]" *Id.*

This Court recently held that a prisoner's attempt to bring a *Bivens* claim against GEO not only fails to state a claim, but is frivolous. After Plaintiffs filed their Original Complaint, Frederick Hines, also an inmate at Rivers, filed a separate action that appeared to copy the Original Complaint. *See Hines v. GEO Group Inc.*, No. 5:08-CT-3056-D (filed Sept. 20, 2007). Hines raised a *Bivens* claim and sought monetary, declaratory, and injunctive relief against GEO for failure to provide adequate medical care. On December 23, 2008, the Honorable James C. Dever dismissed Hines' *Bivens* claim against GEO, *sua sponte*, holding that "plaintiff's Eighth Amendment claim against GEO is dismissed as frivolous." *Hines*, slip op. at 4 (attached hereto as Attachment 1).

The issue currently before this Court is, in every material sense, the same as the issue which confronted the Supreme Court in *Malesko*, the Fourth Circuit in *Holly*, and this Court in *Hines*. Holding a corporation liable for the alleged constitutional violations instead of the individuals responsible for making the decisions which led to the alleged violations will not serve the deterrent effect of *Bivens*. Plaintiffs, as demonstrated in their First Amended Complaint, have common law torts available to redress their alleged injuries. Thus, a *Bivens*

7

action cannot be maintained against GEO, and this Court should dismiss Plaintiffs' claim of an Eighth Amendment violation.

II.     **THE COURT SHOULD DISMISS PLAINTIFFS' REHABILITATION ACT CLAIM BECAUSE PLAINTIFFS FAILED TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

GEO cannot be held liable for a violation of the Rehabilitation Act because it neither receives federal financial assistance, nor qualifies as a program or activity conducted by an executive agency. The Rehabilitation Act, 29 U.S.C. § 794, provides that "[n]o otherwise qualified individual with a disability in the United States … shall, solely by reason of her or his disability, be excluded from the participating in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance or under any program or activity conducted by an Executive agency…." 29 U.S.C. § 794(a). In the event GEO is subject to the Rehabilitation Act, GEO cannot be held liable for a violation of the Rehabilitation Act because Plaintiffs' First Amended Complaint conclusively establishes that GEO has not subjected the Plaintiffs to discrimination solely on the basis of their alleged disabilities. Moreover, GEO cannot be held liable for a violation of the Rehabilitation Act because the Rehabilitation Act does not apply to claims of medical malpractice. Thus, this Court should dismiss Plaintiffs' claim of a violation of the Rehabilitation Act.

A.     **GEO'S OPERATION OF RIVERS DOES NOT CONSTITUTE A PROGRAM OR ACTIVITY OF AN EXECUTIVE AGENCY**

Plaintiffs' Rehabilitation Act claim is based on their assertion that "Defendant GEO operates a 'program or activity conducted by an Executive agency,' as the BOP is an executive agency of the United States government that procured Defendant GEO to perform prison services on its behalf at Rivers." (First Am. Compl. ¶ 72.) The prohibition on discrimination solely on the basis of disability in "any program or activity conducted by an Executive agency"

was added to the Rehabilitation Act in 1978. Plaintiffs' attempt to hold GEO liable under this provision is contrary to the legislative history behind the 1978 amendment, case law interpreting this clause, and the text of the Rehabilitation Act.

The legislative history of the 1978 Amendment to the Rehabilitation Act demonstrates that the phrase "any program or activity conducted by an Executive agency" was added to the Act to ensure that executive agencies were subject to the Rehabilitation Act. *See Doe v. Attorney General*, 941 F.2d 780, 791-92 (9th Cir. 1991) (reviewing legislative history of the 1978 amendment). The purpose of the 1978 amendment was not to extend liability to federal contractors, but instead "[t]he most reasonable interpretation from the language and structure of the statute is that Congress intended to make *federal departments and agencies* liable for discrimination against the handicapped in their programs and activities." *Id.* (emphasis added).

Courts analyzing the Rehabilitation Act's language regarding executive agencies have repeatedly held that this language applies solely to the actions of an executive agency itself. *See Doe v. Devine*, 545 F. Supp. 576, 587 (D.D.C. 1982) ("The most reasonable interpretation of this provision is that it disallows a federal agency from withholding from a handicapped individual a benefit that is made available to others."); *California Ass'n of the Physically Handicapped, Inc. v. Federal Communications Commission*, 840 F.2d 88, 93 (D.C. Cir. 1988) ("The phrase 'program or activity conducted by any Executive agency' encompasses only the FCC's own activities, not those of entitles licensed or certified by it.'"); *Redd v. Rubin*, 34 F. Supp. 2d 1, 7 (D.D.C. 1998) ("[T]he federal government additionally is prohibited from discriminating on the basis of handicap through any of its activities."); *Dodd v. Blue Cross and Blue Shield Assoc.*, 835 F. Supp. 888, 891 (E.D. Va. 1993) ("Under section 504 of the [Rehabilitation] Act, when a government procurement contract is involved, it is the procuring agency … and not the

9

contractor … that is responsible for compliance.").  Thus, the executive agency clause does not extend liability to GEO, but instead prohibits BOP from discriminating against disabled individuals solely on the basis of their handicap.  Thus, Plaintiffs' Rehabilitation Act claim against GEO fails as a matter of law and the Court should dismiss it.

**B.  GEO IS NOT OPERATING A PROGRAM OR ACTIVITY RECEIVING FEDERAL FINANCIAL ASSISTANCE**

In order to state a claim for a violation of the Rehabilitation Act against GEO, Plaintiffs must demonstrate that GEO receives federal financial assistance.  They cannot meet this burden.  Department of Justice regulations and decisions from a variety of federal courts establish that an organization receiving funds through a procurement contract with the federal government is not receiving federal financial assistance for purposes of the Rehabilitation Act.  The Rivers Contract is a procurement contract, and, therefore, does not constitute federal financial assistance.

The operation of Rivers does not fall within the definition of "program or activity" contained in Section 794(b).  The Rehabilitation Act defines "program or activity" as all of the operations of :

> (A)  an entire corporation, partnership, or other private organization, or an entire sole proprietorship—
>    (i)  if assistance is extended to such corporation, partnership, private organization, or sole proprietorship as a whole; or
>    (ii)  which is principally engaged in the business of providing education, health care, housing, social services, or parks and recreation; or
> (B)  the entire plant or other comparable, geographically separate facility to which Federal financial assistance is extended, in the case of any other corporation, partnership, private organization, or sole proprietorship….

29 U.S.C. § 794(b)(3)(A) & (B).  Thus, in order to qualify as a "program or activity," under the Rehabilitation Act, GEO must receive federal financial assistance.

While the Rehabilitation Act does not define the term "federal financial assistance," this Court has experience with attempting to determine the meaning of this phrase.  *McCullough v.*

*Branch Banking & Trust Co. Inc.*, 844 F. Supp. 258 (E.D.N.C. 1993), *aff'd*, 35 F.3d 127 (1994), *cert. denied*, 513 U.S. 1151, 115 S. Ct. 1101, 130 L. Ed. 2d 1069 (1995), In *McCullough*, this Court held that participation in a guaranteed loan program sponsored by the Small Business Administration did not constitute receiving federal financial assistance. This Court looked to the Rehabilitation Act's "legislative history, administrative regulations, and related statutes" noting that "[t]he application of the Rehabilitation Act … is illuminated by its implementing regulations." *Id.* at 259 n.4 (*citing Little v. Fed. Bureau of Investigation*, 1 F.3d 255, 257 (4th Cir. 1993)).

In this case, the implementing regulations are particularly enlightening regarding the definition of federal financial assistance. The Department of Justice, the parent Department for BOP, promulgated regulations which define when an agency is extending federal financial assistance.[1] *See* 28 C.F.R. § 41.3(e). Most relevant to the issues before this Court is the portion of the definition which explicitly exempts procurement contracts from the definition of federal financial assistance. *See id.* Thus, if GEO is receiving funds pursuant to a procurement contract, it is not receiving federal financial assistance and cannot be held liable under the Rehabilitation Act.

The Rivers Contract is a procurement contract. A procurement contract is a contract between an executive agency and a third party where "the principal purpose of the instrument is to acquire … property or services for the direct benefit or use of the United States Government[.]" 31 U.S.C. § 6303. Plaintiffs describe why the Rivers Contract is a procurement

---

[1] This same definition has been adopted by numerous other federal agencies. *See* 10 C.F.R. § 1040.2(b)(3) (Department of Energy); 45 C.F.R. § 84.3(h) (Department of Health and Human Services); 14 C.F.R. § 1251.102(f) (NASA); 43 C.F.R. § 17.202(h) (Department of the Interior); 32 C.F.R. § 56.3(b) (Department of Defense); 7 C.F.R. § 15.2(g) (Department of Agriculture); 24 C.F.R. § 8.3 (Department of Housing and Urban Development).

contract when they allege that "by housing a portion of its prison population at private prisons such as Rivers, the federal government is able to reduce its expenditures for those prisoners, meet budget constraints imposed by Congress, and thereby benefit financially from contracting out services to the lowest bidder." (First Am. Compl. ¶ 28.) Based upon Plaintiffs' own allegations, the Rivers Contract is a procurement contract. Therefore, the payments made by the federal government to GEO pursuant to Rivers Contract do not qualify as federal financial assistance. *See DeVargas v. Mason & Hanger-Silas Mason Co.*, 911 F.2d 1377, 1382-83 (10th Cir. 1990) ("Prior to the decision to replace [federal employees] with private employees, the DOE conducted a study which concluded that the government would save approximately $3.5 million by contracting out guard services. Moreover, the government awarded the contract to Mason & Hanger only after a competitive bidding process. Both of these factors lead us to conclude that there was no governmental intent to give Mason & Hanger a subsidy."); *Muller v. Hotsy Corp.*, 917 F. Supp. 1389, 1417-18 (N.D. Iowa 1996) ("Because the intention of the government is to compensate Hotsy for its goods and services, and not to subsidize Hotsy, Hotsy's operations are not 'programs or activities that receive [f]ederal financial assistance.'").

The Fourth Circuit Court of Appeals addressed the definition of federal financial assistance in other contexts and reached a similar conclusion. In *Venkatraman v. REI Systems, Inc.*, 417 F.3d 418 (4th Cir. 2005), the Fourth Circuit determined whether a government subcontractor was receiving federal financial assistance for the purposes of an action pursuant to 42 U.S.C. § 2000d. *Id.* at 420-21. The Fourth Circuit held "that market contracts between federal contractors and the government do not constitute such 'assistance.'" *Id.* at 421.[2]

---

[2] The Fourth Circuit is not alone in its holding - several of its sister circuits have held that procurement contracts do not constitute federal financial assistance absent some sort of subsidy from the government. *See DeVargas v. Mason & Hanger-Silas Mason Co.*, 911 F.2d 1377, 1382

Similarly, payments made by the federal government to GEO pursuant to the Rivers Contract do not constitute federal financial assistance because the payments are not a charitable or policy driven decision to support a non-governmental organization. Instead, the federal government's payments to GEO are compensation for services rendered to the federal government based upon the government's selection of a vender after a competitive bidding process.

More specifically, payments from the federal government for the housing of prisoners do not constitute federal financial assistance. In *Nolley v. County of Erie*, 776 F. Supp. 715, (W.D.N.Y. 1991), the defendant received almost $800,000 in federal funds to house federal prisoners. *Id.* at 742. The court held that the payments did not constitute federal financial assistance because the County was paid at fair market value for housing the prisoners, and there was no evidence that the payments constituted a subsidy for the County's activities. *Id.* Similarly, the Rivers Contract provides GEO with fair compensation for the services provided at Rivers. Thus, this Court should find that payments made pursuant to the Rivers Contract are not federal financial assistance and dismiss Plaintiffs' Rehabilitation Act claims.

### C. PLAINTIFFS' FIRST AMENDED COMPLAINT DEMONSTRATES THAT THE ALLEGED DISCRIMINATION IS NOT BASED SOLELY UPON DISABILITY

Assuming, for the sake of argument, that GEO is governed by the Rehabilitation Act, Plaintiffs' First Amended Complaint still fails to state a claim because it explicitly alleges that GEO discriminated against Plaintiffs for a reason other than their disabilities. Thus, the Court should dismiss this claim.

---

(10th Cir. 1990); *Arline v. Sch. Bd. of Nassau County*, 772 F.2d 759, 762 (11th Cir. 1985), *aff'd on other grounds*, 480 U.S. 273, 107 S. Ct. 1123, 94 L. Ed. 2d 307 (1987); *Jacobson v. Delta Airlines, Inc.*, 742 F.2d 1202, 1210 (9th Cir. 1984), *cert. dismissed*, 471 U.S. 1062, 105 S. Ct. 2129, 85 L. Ed. 2d 493 (1985).

While the Rehabilitation Act is similar to the Americans with Disabilities Act in many respects, the Rehabilitation Act contains a stricter causation requirement. *See Baird v. Rose*, 192 F.3d 463, 469 (4th Cir. 1999). To state a claim for a violation of the Rehabilitation Act, a plaintiff must allege that he was discriminated against based *solely* on his disability. *See Sellers v. Sch. Bd. of Mannassas*, 141 F.3d 524, 528 (4th Cir.), *cert. denied*, 525 U.S. 871 (1998). *Accord Doe v. Univ. of Maryland Med. Sys. Corp.*, 50 F.3d 1261, 1264-65 (4th Cir. 1995); *Keene v. Thompson*, 232 F. Supp. 2d 574, 583-84 (M.D.N.C. 2002); *Piedmont Behavioral Health Ctr. v. Stewart*, 413 F. Supp. 2d 746, 756-57 (S.D. W.Va. 2006); *Gedrich v. Fairfax County Dep't. of Family Servs.*, 282 F. Supp. 2d 439, 470 (E.D. Va. 2003). However, in this case, Plaintiffs allege that they have been discriminated against because of "Defendant GEO's aggressive efforts to cut costs and boost profits[.]" (First Am. Compl. ¶ 7.) Plaintiffs' allegation later in the Complaint that "Defendants BOP and GEO have subjected Sub-Class Plaintiffs and the Sub-Class to discrimination solely by reason of their disabilities," (First Am. Compl. ¶ 74) is conclusory – and thus insufficient to state a claim, *see Keene*, 232 F. Supp. 2d at 583 – and is directly contradicted by the allegations earlier in the First Amended Complaint. Therefore, Plaintiffs cannot establish that they were discriminated against solely on the basis of their disability. Thus, Plaintiffs fail to state a claim upon which relief may be granted and this Court should dismiss their Rehabilitation Act claim.

### D. PLAINTIFFS CANNOT STATE A CLAIM FOR A VIOLATION OF THE REHABILITATION ACT BASED UPON ALLEGATIONS OF INADEQUATE MEDICAL CARE

Plaintiffs base their Rehabilitation Act claim upon the allegation that GEO denies Plaintiffs and others similarly situated "access to the programs, services, facilities, and activities at Rivers because of Defendants' failures to diagnose, monitor, treat and/or accommodate their serious medical conditions…." (First Am. Compl. ¶ 50.) However, the Rehabilitation Act does

14

not apply to claims based upon inadequate medical care or medical malpractice. *See Hines*, slip op. at 8-9 (citing cases). Thus, the Court should dismiss Plaintiffs' Rehabilitation Act claim to the extent that it is based upon allegations of inadequate medical care.

### III. PLAINTIFFS CANNOT ESTABLISH THAT THEY ARE INTENDED THIRD PARTY BENEFICIARIES OF THE RIVERS CONTRACT

Plaintiffs seek to enforce the terms of the Rivers Contract despite the uncontroverted fact that Plaintiffs are not parties to the Rivers Contract. Instead, Plaintiffs attempt to skirt the conspicuous lack of privity by claiming that they have standing to seek to enforce the Rivers Contract as third-party beneficiaries. Plaintiffs' claim to be third-party beneficiaries because "GEO and BOP entered into the Rivers Contract with the intent to confer a direct benefit … the provision of adequate medical, dental, and mental health care" upon Plaintiffs. (First Am. Compl. ¶ 85.)

Plaintiffs' argument cannot withstand scrutiny. In cases where a member of the public claim to be a third-party beneficiary of a contract between a private company and the government, the member of the public must not only demonstrate that he is the intended beneficiary, but it must also establish that the language of the contract expressly provides for liability to a third-party.

The United States Supreme Court first discussed the higher standard for third-party breach of contract claims against government contractors in *German Alliance Insurance Company v. Home Water Supply Company*, 226 U.S. 220 (1912). In *German Alliance*, the plaintiff sought damages from a private company for property damage resulting from fires in Spartanburg, South Carolina. *Id.* at 221. The plaintiff alleged that "the fire could easily have been extinguished and the damage prevented if the water company had complied with its contract [with Spartanburg] and duty to furnish the inhabitants of the city with water for fire

Case 2:08-ct-00021-D   Document 66   Filed 01/05/09   Page 15 of 28

protection. *Id.* Although not a party to the contract between the governmental entity and the private company, the plaintiff sought to recoup its losses on the theory that its insureds, citizens of Spartanburg, were third-party beneficiaries to the contract. *Id.*

The Supreme Court noted that "the majority of American courts hold that the taxpayer has no direct interest in such agreements, and therefore cannot sue *ex contractu*." *Id.* at 228-29. Instead, "[t]he interest which each taxpayer had therein was indirect – that incidental benefit only which every citizen has in the performance of every other contract made by the government under which he lives, but for the breach of which he has no private right." *Id*. at 231. While a government contractor may be liable in tort to members of the public, "for acts of omission and breaches of contract, he would be responsible to the municipality alone." *Id.*

The Supreme Court's holding protects the ability of government contractors to limit their duties and liabilities to those set forth in the contract. Allowing members of the public to sue government contractors as third-party beneficiaries "would unduly extend contract liability, would introduce new parties with new rights, and would subject those contracting with municipalities to suits by a multitude of persons for damages which were not, and, in the nature of things, could not have been, in the contemplation of the parties." *Id.* at 232. Thus, absent an express agreement between the government and the contractor to the contrary, members of the public may not maintain actions against government contractors as third-party beneficiaries. *Id.*[3]

---

[3] The *German* Alliance holding was subsequently incorporated into the Restatement (Second) of Contracts:

§ 313 Government Contracts

(2)     In particular, a promisor who contracts with a government or governmental agency to do an act for or render a service to the public is not subject to contractual liability to a member of the public for consequential damages resulting from performance or failure to perform unless:

(a)     the terms of the promise provide for such liability; or

Accordingly, for a member of the public to bring a third-party claim against a government contractor: "(1) the contract must reflect the intent to benefit the alleged third-party beneficiary, and (2) the contract must give the third-party the direct right to compensation or to enforce that right against the promisor." *State of Montana v. United States*, 124 F.3d 1269, 1273 (Fed. Cir. 1997) (citing *Baudier Marine Elec. v. United States*, 6 Cl. Ct. 236, 249 (1984)). This two-part test applies only in circumstances where "members of the public bring suit against promisors who contract with the government to render a public service. In this situation, members of the public are considered to be incidental beneficiaries unless they can show a direct right to compensation." *Id.* at 1273 n.6.

---

        (b)     the promisee is subject to liability to the member of the public for the damages and a direct action against the promisor is consistent with the policy of the law authorizing the contract and prescribing remedies for its breach.

Comment:

    a.      Rationale    … Government contracts often benefit the public, but individual members of the public are treated as incidental beneficiaries unless a different intention is manifested. In case of doubt, a promise to do an act for or render a service to the public does not have the effect of a promise to pay consequential damages to individual members of the public unless the conditions of Subsection (2)(b) are met.

Restatement (Second) Contracts § 313. The original Restatement of Comments contained similar language. This language was adopted by the North Carolina Supreme Court in *Matternes v. City of Winston-Salem*, 286 N.C. 1, 14-15, 209 S.E.2d 481, 488-89 (1974). *Accord Fort Lincoln Civic Ass'n. Inc. v. Fort Lincoln New Town Corp.*, 994 A.2d 1055, 1064 (D.C. App. 2008).

## A. PLAINTIFFS ARE NOT INTENDED THIRD-PARTY BENEFICIARIES OF THE RIVERS CONTRACT

Members of the public cannot enforce the terms of a government contract when the contract disclaims liability to third parties. For example, in *Moore v. Gaither*, 767 A.2d 278 (D.C. 2001), prisoners incarcerated at a private correctional institution attempted to bring a third-party breach of contract action against a government contractor for breach of the agreement between the government contractor and the District of Columbia's Department of Corrections. The court found that individual members of the public, such as the prisoners, are incidental beneficiaries of government contracts and that in order to raise a third-party beneficiary claim, the prisoners must demonstrate a clear or manifest intent to treat them as intended beneficiaries. *Id.* at 287. As the contract at issue in that case expressly disclaimed bestowing any rights upon third-parties, the prisoners' claim failed. *Id.*

Similarly, the terms of the Rivers Contract preclude Plaintiffs from establishing that they have enforceable rights under the Rivers Contract. The Rivers Contract states, "[i]n awarding the contract, the Government does not assume any liability to third parties…" (First Am. Compl. Exh. A at 17:22-23.) As in *Moore*, Plaintiffs "cannot reasonably claim the right [they] now [seek] to assert in light of this explicit and. . .dispositive provision." *Id.* at 288. Thus, Plaintiffs' claim for breach of contract fails and should be dismissed.

## B. PLAINTIFFS CANNOT ESTABLISH THAT THEY HAVE A DIRECT RIGHT TO ENFORCE THE PROVISIONS OF THE RIVERS CONTRACT

Even if Plaintiffs are intended third-party beneficiaries under the Rivers Contract, their breach of contract claim fails because the First Amended Complaint is devoid of any allegations – factual or otherwise – that the Rivers Contract provides Plaintiffs with a direct right to enforce

its provisions. Absent such an allegation, Plaintiffs' fail to state a claim for breach of a government contract under a third-party beneficiary theory.

Third-parties who obtain a benefit from a government contract cannot bring a third-party breach of contract claim unless the contract contains an explicit right to enforce the terms. *Nguyen v. United States Catholic Conference*, 719 F.2d 52 (3d Cir. 1983). In *Nguyen*, the plaintiffs were a group of refugees who received financial benefits from the defendant pursuant to a contract with the federal government. *Id*. at 55. The Third Circuit affirmed the district court's dismissal of the Plaintiffs' third-party breach of contract claim because the plaintiffs "point[ed] to no provision of the grant agreement that reflects the notion that [the defendant] will be liable to refugees should it fail to perform." *Id*. at 55-56.

Similarly, in *Jama v. United States Immigration and Naturalization Service*, 334 F. Supp. 2d 662 (D.N.J. 2004), undocumented aliens held at a privately run facility brought a third-party breach of contract claim on the grounds that the government contractor failed to adhere to the terms of its contract with the INS. *Id*. at 671-72. The plaintiffs alleged that the contractor violated various provisions of the contract "relating to the hiring, training and supervision of employees; and it imposed on [the contractor] the obligation to ensure the safety and protect various rights of the detainees." *Id*. at 675-76. The court held that while "these provisions, though they show that the INS intended the detainees to benefit under some provisions of the Contract, cannot by themselves show that the parties intended detainees to have rights of action for breach of contract against [the contractor]." *Id*. at 688. Therefore, the plaintiffs' third-party breach of contract claim failed because "[p]laintiffs have not identified any provision or combination of provisions that specifically provide such a right." *Id*.

19

Plaintiffs' third-party beneficiary claim in this case suffers from the same flaw as the claims raised in *Nguyen* and *Jama*: the Rivers Contract does not provide Plaintiffs with the right to directly enforce its provisions. Therefore, Plaintiffs third-party breach of contract claim fails as a matter of law. Thus, GEO's Motion to Dismiss should be granted.

## IV. PLAINTIFFS' NEGLIGENCE CLAIM FAILS AS A MATTER OF LAW BECAUSE THE FIRST AMENDED COMPLAINT DOES NOT INCLUDE THE CERTIFICATION REQUIRED BY RULE 9(j) OF THE NORTH CAROLINA RULES OF CIVIL PROCEDURE

Plaintiffs allege that GEO was negligent because it failed to provide adequate medical care for the inmates at Rivers. Rule 9(j) of the North Carolina Rules of Civil Procedure requires that a party alleging negligence in the provision of medical care include an expert certification in their complaint. *Estate of Williams-Moore v. Alliance One Receivables Mgmt., Inc.*, 335 F. Supp. 2d 636, 649 (M.D.N.C. 2004). Plaintiffs' First Amended Complaint lacks the required Rule 9(j) certification; therefore this Court should dismiss Plaintiffs' negligence claim.

Plaintiffs attempt to circumvent Rule 9(j)'s certification requirement by labeling their claim as a claim for negligence as opposed to a claim for medical malpractice. However, North Carolina courts have held that the label applied to a cause of action does not determine whether a Rule 9(j) certification is required. *Estate of Water v. Jarman*, 114 N.C. App. 98, 103, 547 S.E.2d 142, 145 (2001). Instead, courts must examine the facts underlying a particular claim to determine if the complaint alleges an injury arising out of clinical patient care or management and administrative decisions. *Id.* Complaints alleging the former category of injuries require a Rule 9(j) certification, while complaints alleging the latter are relieved from Rule 9(j)'s certification requirement. *Id.*

In this case, Rule 9(j) applies to Plaintiffs' negligence claim because: (1) GEO falls within the definition of a health care provider; and (2) Plaintiffs' First Amended Complaint

alleges GEO has engaged in medical malpractice because the alleged harm arises out of clinical care decisions.

### A. GEO QUALIFIES AS A HEALTH CARE PROVIDER UNDER NORTH CAROLINA'S GENERAL STATUTES.

For purposes of Rule 9(j), a health care provider is defined as any person engaged in "medicine, surgery, dentistry, pharmacy, optometry, midwifery, osteopathy, podiatry, chiropractic, radiology, nursing, physiotherapy, pathology, anesthesiology, anesthesia, laboratory analysis, rendering assistance to a physician, dental hygiene, psychiatry, psychology; or a hospital or a nursing home; *or any other person who is legally responsible for the negligence of such person....*"  N.C. Gen. Stat. § 90-21.11 (emphasis added).  GEO qualifies as a health care provider because, as demonstrated in the First Amended Complaint, Plaintiffs attempt to hold GEO legally responsible for the acts of its medical staff.  (First Am. Compl. *passim)*.  Therefore, this Court has a choice between two possibilities (1) GEO can be held legally responsible for the actions of the Rivers medical staff and therefore GEO is a "health care provider" and  Plaintiffs should have complied with Rule 9(j); or (2) GEO is not a health care provider and cannot be held liable for the alleged medical malpractice of the Rivers' medical staff and Plaintiffs have failed to state a claim for negligence.

### B. PLAINTIFFS' COMPLAINT ALLEGES THAT GEO ENGAGED IN MEDICAL MALPRACTICE

For purposes of Rule 9(j), a medical malpractice action is defined as "a civil action for damages for personal injury or death arising out of the furnishing or failure to furnish professional services in the performance of medical, dental, or other health care by a health care provider."  N.C. Gen. Stat. § 90-21.11.  Resolution of medical malpractice actions typically involve "'highly specialized knowledge' not within the common knowledge of a layperson." *Estate of Waters*, 144 N.C. App. at 100, 547 S.E.2d at 144.  On the other hand, resolution of a

true corporate negligence matter involves application of "the reasonably prudent person standard of care." *Id.* at 102, 547 S.E.2d at 145. A court must review the facts alleged in a complaint to determine whether an action involves a corporate negligence claim or a medical malpractice claim. Regardless of the manner in which a complaint is drafted, "if the only allegation is that the Plaintiff should have received different or additional treatment[,] [t]hat is a claim which sounds in malpractice, not ordinary negligence." *Frazier v. Angel Med. Ctr.*, 308 F. Supp. 2d 671, 678 (W.D.N.C. 2004).

In this case, Plaintiffs' First Amended Complaint includes detailed explanations of the manner in which Plaintiffs and the Other Affected Persons were allegedly injured. (First Am. Compl. ¶¶ 10-19.) These allegations demonstrate that Plaintiffs' alleged injuries resulted from clinical patient care decisions, not management and administration issues.

- Collins alleges he received inadequate treatment for a foot infection, resulting in the amputation of his left foot. (First Am. Compl. ¶ 10.)

- Calland alleges that he has received inadequate medical attention for his arthritis, degenerative bone disease, and diabetes resulting in a general deterioration of his physical condition and severe pain. (First Am. Comp. ¶ 11.)

- Roe alleges that he suffers with various forms of mental illness as well as "a number of chronic, preexisting physical conditions." (First Am. Compl. ¶ 12.) Roe claims that he has received insufficient treatment for a hip injury and is receiving improper medication for his mental issues. (First Am. Compl. ¶ 12.)

Similarly, the Other Affected Persons also allege that they should have received more or different medical care while incarcerated at Rivers:

- Original Plaintiff Keith Mathis alleges he was harmed as a result of a delay in receiving dental care for a cavity, inadequate dental care for the cavity and failure to treat an infection resulting from the allegedly inadequate medical care. (First Am. Compl. ¶ 17.)

- Original Plaintiff Reon Holloway alleges he was harmed because the medical staff did not provide him with physical therapy, failed to provide him orthopedic shoes, and altered his "sophisticated regime of prescription pain medication" prescribed by other doctors. (First Am. Compl. ¶ 18.)

- Original Plaintiff David Rogers alleges he was harmed by a failure to provide physical therapy and alteration of his prescription medication. (First Am. Compl. ¶ 19.)

- Original Plaintiff Benjamin Hamilton alleges he was harmed by inadequate treatment for boils, an untimely diagnosis of a MRSA infection, a decision to discontinue antibiotics for the MRSA infection, failure to provide adequate treatment for arthritis, and a failure to provide corrective lenses. (First Am. Compl. ¶ 20.)

- Original Plaintiff Harold Robinson alleges he was harmed by a failure to provide physical therapy, insufficient medication to address his pain issues, and a failure to provide a chair to support his back. (First Am. Compl. ¶ 21.)

- Original Plaintiff Charles Lewis claims he was harmed by a failure to provide back and knee braces, a failure to refill his prescription medication, changes to this prescription medication, inappropriate treatment for head injuries, and a

failure to refer him to a neurologist, cardiologist, and a physical therapist. (First Am. Compl. ¶ 22.)

- Original Plaintiff John Doe alleges he was harmed by a failure to properly administer medications and a faulty pill distribution system. (First Am. Compl. ¶ 23.)

- Original Plaintiff Jimmy Fowler claims he was harmed by a failure to supply him with diabetes and blood pressure medications, inadequate monitoring of his insulin levels, and prescribing inappropriate blood pressure mediation. (First Am. Compl. ¶ 24.)

These factual allegations demonstrate that Plaintiffs' alleged injuries are the result of patient care decision.[4] All the Plaintiffs allege that they should have received additional or different medical treatment while incarcerated at Rivers, therefore, their claims sound in medical malpractice as opposed to corporate negligence. Thus, the Court should dismiss the negligence claim due to Plaintiffs' failure to comply with Rule 9(j)'s certification requirement for medical malpractice actions.

## VI.  PLAINTIFFS' CLAIMS AND CLAIMS OF CLASS AND SUB CLASS MEMBERS MAY BE BARRED BY THE APPLICABLE STATUTES OF LIMITATIONS

While the First Amended Complaint fails to indicate when the alleged tortious acts took place, there is the potential that Plaintiffs' claims and the claims of class and sub-class members may be barred by the statute of limitations for the various claims in this action. *Bivens* claims, negligence claims, and breach of contract claims raised by Plaintiffs and class members are

---

[4] This Court can once again look to Judge Dever's opinion in the *Hines* matter for guidance. In reviewing similar claims in the *Hines* action, Judge Dever found that Hines raised "a claim for negligence under North Carolina law due to defendants' alleged breach of a duty to take proper medical care which caused his alleged injuries." *Hines*, slip op. at 8.

governed by a three-year statute of limitations. Rehabilitation Act claims accruing more than two years before the filing of the Original Complaint are similarly barred. Thus, if the Court allows any of Plaintiffs' claims to proceed, it should, at least, limit those claims pursuant to their respective statutes of limitations.

### A. PLAINTIFFS' BIVENS CLAIMS ARE GOVERNED BY A THREE YEAR STATUTE OF LIMITATIONS

Federal courts addressing the statute of limitations for a *Bivens* claim adopt the most analogous statute of limitations from the law of the forum state. *See Reinbold v. Evans*, 187 F.3d 348, 359 n.10 (4th Cir. 1999) (holding that the district court correctly looked to the forum state's statute of limitations to determine the applicable limitations period). In North Carolina, federal courts apply the three-year statute of limitations applicable to personal injury actions for a *Bivens* claim. *See Mallas v. Kolak*, 721 F. Supp. 748, 751 (M.D.N.C. 1989), *vacated on other grounds*, 993 F.2d 1111. As the Original Complaint was filed on June 28, 2007, any *Bivens* claims which accrued prior to June 28, 2004, are barred by the statute of limitations.

### B. PLAINTIFFS' REHABILITATION ACT CLAIMS ARE GOVERNED BY A TWO YEAR STATUTE OF LIMITATIONS

The statute of limitations contained in the North Carolina Handicapped Persons Protection Act ("NCHPPA") governs Rehabilitation Act claims raised in North Carolina's federal courts. *McCullough v. Branch Banking & Trust Co.*, 35 F.3d 127, 129-30 (4th Cir. 1994). Under the NCHPPA, discrimination claims must be brought "within two years after the date on which the aggrieved person became aware of or, with reasonable diligence, should have become aware of the alleged discriminatory practice or prohibited conduct." N.C. Gen. Stat. §§ 168A-12. As the Original Complaint was filed on June 28, 2007, any Rehabilitation Act claims which accrued before June 28, 2005 are barred by the statute of limitations.

### C. PLAINTIFFS' NEGLIGENCE AND BREACH OF CONTRACT CLAIMS ARE GOVERNED BY A THREE YEAR STATUTE OF LIMITATIONS

Plaintiffs' claims for negligence and breach of contract are governed by a three-year statute of limitations. *See* N.C. Gen. Stat. §§ 1-52(1) and (5), 1-15(c); *Harrold v. Dowd*, 49 N.C. App. 777, 781, 561 S.E.2d 914, 917 (2002) ("The applicable statute of limitations for professional malpractice, negligence, and breach of contract is three years."). As the Original Complaint was filed on June 28, 2007, any claims for breach of contract or negligence accruing before June 28, 2004 are barred by the statute of limitations.

### CONCLUSION

In summary, the Court should dismiss all of Plaintiffs' Complaint because GEO, as a private corporation, is not subject to liability in a *Bivens* action; GEO cannot be held liable under the Rehabilitation Act because it does not receive federal financial assistance, has not discriminated against Plaintiffs solely on the basis of their disability, and the Rehabilitation Act does not apply to claims of medical malpractice; Rivers inmates are neither intended beneficiaries of the Rivers Contract, nor does the Rivers Contract provide Rivers inmates with a direct ability to enforce its provisions; Plaintiffs failed to comply with the certification requirements for medical malpractice actions under the North Carolina Rules of Civil Procedure; and the statute of limitations governing Plaintiffs' various claims may bar their ability to proceed. GEO respectfully requests that the Court dismiss Plaintiffs' First Amended Complaint.

This the 5th day of January, 2009.

                      **WOMBLE CARLYLE SANDRIDGE & RICE**
                      *A Professional Limited Liability Company*

By:    /s/ Robert T. Numbers II
           JAMES R. MORGAN, JR.(Bar No. 12496)
           ROBERT T. NUMBERS, II (Bar No. 34134)
           W. ELLIS BOYLE (Bar No. 33826)
           WOMBLE CARLYLE SANDRIDGE & RICE
           *A Professional Limited Liability Company*
           One West Fourth Street
           Winston-Salem, North Carolina 27101
           Phone: (336) 721-3600
           Fax: (336) 721-3660
           E-mail: jmorgan@wcsr.com
           E-mail: rnumbers@wcsr.com
           E-mail:  eboyle@wcsr.com
           *Attorneys for Defendant GEO Group, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 5, 2009, a copy of the foregoing **BRIEF IN SUPPORT OF DEFENDANT GEO GROUP, INC.'S MOTION TO DISMISS** was filed electronically with the Clerk of Court using CM/ECF system with notice of case activity to be generated and sent electronically by the Clerk of Court to the following parties registered to receive such service:

Danielle M. Estrada
Covington & Burling, LLP
Email:  destrada@cov.com
*Attorneys for Plaintiffs*

Kathryn L. Wyer
U. S. Dept. of Justice
Email:  Kathryn.wyer@usdoj.gov
*Attorneys for Federal Defendants*

Neil A. Riemann
Taylor Penry Rash & Riemann, PLLC
Email:  neil.riemann@penryriemann.com
*Attorneys for Plaintiffs*

R. A. Renfer, Jr.
U. S. Attorney's Office
Email:  Rudy.renfer@usdoj.gov
*Attorneys for Federal Defendants*

Anthony Herman
Covington & Burling, LLP
Email:  aherman@cov.com
*Attorneys for Plaintiffs*

> **WOMBLE CARLYLE SANDRIDGE & RICE**
> *A Professional Limited Liability Company*
>
> By:  /s/ Robert T. Numbers II_____
> ROBERT T. NUMBERS, II (Bar No. 34134)
> WOMBLE CARLYLE SANDRIDGE & RICE
> *A Professional Limited Liability Company*
> One West Fourth Street
> Winston-Salem, North Carolina 27101
> Phone: (336) 721-3600
> Fax: (336) 721-3660
> E-mail: rnumbers@wcsr.com
> *Attorneys for Defendant GEO Group, Inc.*