# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### NORTHERN DIVISION
#### No. 2:08-CT-00021-H

KEITH MATHIS, et al.,

                          Plaintiffs,

      v.

GEO GROUP, INC., et al.,

                          Defendants.

) **PLAINTIFFS' CONSOLIDATED**
) **MEMORANDUM OF POINTS AND**
) **AUTHORITIES IN OPPOSITION**
) **TO DEFENDANTS FEDERAL**
) **BUREAU OF PRISONS' AND**
) **HARLEY LAPPIN'S MOTION TO**
) **DISMISS, AND DEFENDANT GEO**
) **GROUP, INC.'S MOTION TO**
) **DISMISS**

Anthony Herman (DC Bar # 424643)
Danielle M. Estrada (DC Bar # 494517)
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue N.W.
Washington, D.C.  20004
202.662.6000 (ph)
202.778.6000 (fax)

Neil A. Riemann (NC Bar #19258)
PENRY RIEMANN PLLC
510 Glenwood Avenue, Suite 319
Raleigh, NC 27603
919.833.9449 (ph)
919.833.9448 (fax)


Counsel for Plaintiffs

February 26, 2009

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

STATEMENT OF FACTS ................................................................................... 2

STANDARD OF REVIEW .................................................................................. 8

I.  PLAINTIFFS HAVE ALLEGED FACTS SUFFICIENT TO STATE AN
    EIGHTH AMENDMENT CLAIM AGAINST GEO AND THE FEDERAL
    DEFENDANTS. ........................................................................................... 9

    A.  The First Amended Complaint Adequately Alleges that the Defendants
        Were Deliberately Indifferent to Plaintiffs' Serious Medical Needs. ................. 10

    B.  This Is Not a Bivens Action, So Plaintiffs' Claims Should Not Be
        Dismissed for Failure to State a Bivens Claim. ...................................... 12

    C.  None of the Federal Defendants' Asserted Grounds for Dismissal Has
        Merit ................................................................................................... 13

        1.  Plaintiffs Have Adequately Alleged that the Federal Defendants
            Are Directly Liable for the Eighth Amendment Violations Pleaded
            in the Complaint ......................................................................... 14

        2.  GEO's Failure to Provide Adequate Medical Treatment to
            Plaintiffs Is Also Fairly Attributable to the Federal Government ............. 17

        3.  The Federal Defendants' Arguments Grounded on the Common
            Law of Agency Are Fact-Dependent and Cannot Properly Be
            Decided on a Motion to Dismiss .................................................. 21

        4.  This Court May Review the Federal Defendants' Failure to Ensure
            that GEO Upheld Its Constitutional Obligations, Because Federal
            Agency Discretion Cannot Exceed Constitutional Bounds. ................... 24

II. PLAINTIFFS HAVE STATED A REHABILITATION ACT CLAIM AGAINST
    THE DEFENDANTS ................................................................................. 26

    A.  The First Amended Complaint Adequately Alleges that the Defendants
        Have Discriminated on the Basis of Disability ...................................... 27

    B.  Rivers Is a Program or Activity Conducted by the BOP through GEO ............... 30

    C.  Plaintiffs May Obtain Injunctive Relief against the Federal Defendants. ............ 33

        1.  Plaintiffs' Claim for Injunctive Relief under Section 504 Is Not
            Barred by Sovereign Immunity ...................................................... 34

        2.      Plaintiffs Are Not Prohibited from Enforcing Section 504 in an
                Action for Equitable Relief..................................................................... 34

    D.      Plaintiffs Have Satisfied All Applicable Exhaustion Requirements..................... 38

III.    PLAINTIFFS HAVE ADEQUATELY PLEADED COMMON LAW
        NEGLIGENCE CLAIMS AGAINST GEO. .................................................... 41

IV.     PLAINTIFFS HAVE ALLEGED FACTS SUFFICIENT TO STATE A BREACH
        OF CONTRACT CLAIM AGAINST GEO. ................................................... 43

    A.      The Health Care Provisions in the GEO Contract Reflect a Clear Intent to
            Benefit Plaintiffs. ................................................................................. 44

    B.      GEO Has Offered No Persuasive Reason to Disregard this Settled Rule............. 46

V.      THE COURT NEED NOT ADDRESS GEO'S STATUTE OF LIMITATIONS
        ARGUMENT AT THIS TIME......................................................................... 48

REQUEST FOR HEARING............................................................................... 49

REQUEST FOR LEAVE TO AMEND................................................................ 49

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Adcock v. Freightliner LLC,
    550 F.3d 369 (4th Cir. 2008) ...................................................................................8

Alexander v. Choate,
    469 U.S. 287 (1985).................................................................................27, 28, 29

Alexander v. Sandoval,
    532 U.S. 275 (2001).................................................................................................36

Am. Council of Blind v. Astrue,
    No. C05-4696, 2008 WL 1858928 (N.D. Cal. Apr. 23, 2008) ..........................34, 35

Am. Council of Blind v. Paulson,
    463 F. Supp. 2d 51 (D.D.C. 2006) ..............................................................34, 35, 37

Am. Council of Blind v. Paulson,
    525 F.3d 1256 (D.C. Cir. 2008).............................................................................38

Anderson v. XYZ Corr. Health Servs., Inc.,
    407 F.3d 674 (4th Cir. 2005) ...............................................................................39

Avery v. County of Burke,
    660 F.2d 111 (4th Cir. 1981) ...............................................................................21

Baird v. Rose,
    192 F.3d 462 (4th Cir. 1999) ...............................................................................27

Behrens v. Pelletier,
    516 U.S. 299 (1996)................................................................................................9

Bell Atl. Corp. v. Twombly,
    550 U.S. 544, 127 S. Ct. 1955 (2007)....................................................................8

Bell v. Hood,
    327 U.S. 678 (1946)..............................................................................................20

Bivens v. Six Unknown Fed. Narcotics Agents,
    403 U.S. 388 (1971).................................................................................... passim

Blankenship v. Manchin,
    471 F.3d 523 (4th Cir. 2006) .................................................................................8

iii

Blis Day Spa, LLC v. Hartford Ins. Group,
    427 F. Supp. 2d 621 (W.D.N.C. 2006) ................................................................44

Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n,
    531 U.S. 288 (2001) .............................................................................................19

Bromfield v. McBurney,
    No. C07-5226RBL, 2008 WL 2746289 (W.D. Wash. July 8, 2008) ....................20

Brown v. Olivencia-Font,
    2006 WL 212188 (D.S.C., Jan. 27, 2006) ...........................................................48

Brown v. Valoff,
    422 F.3d 926 (9th Cir. 2005) ...............................................................................48

Chamber of Commerce v. Reich,
    74 F.3d 1322 (D.C. Cir. 1996) .............................................................................24

Clark v. Skinner,
    937 F.2d 123 (4th Cir. 1991). ..............................................................................35

Conley v. Gibson,
    355 U.S. 41 (1957) .................................................................................................8

Correctional Servs. Corp. v. Malesko,
    534 U.S. 61 (2001) ......................................................................................... passim

Degrafinreid v. Ricks,
    No. 03 Civ. 6645(RWS), 2004 WL 2793168 (S.D.N.Y. Dec. 6, 2004) .................40

Disabled in Action v. Pierce,
    606 F. Supp. 310 (E.D. Pa. 1985) ........................................................................29

Dodd v. Blue Cross & Blue Shield Ass'n,
    835 F. Supp. 888 (E.D. Va. 1993) ...................................................................32, 33

Donnell v. Ill. State Bd. of Educ.,
    829 F. Supp. 1016 (N.D. Ill. 1993) ......................................................................29

Edmonson v. Leesville Concrete Co.,
    500 U.S. 614 (1991) .............................................................................................20

Edwards v. City of Goldsboro,
    178 F.3d 231 (4th Cir. 1999) .................................................................................8

Electricities of North Carolina, Inc. v. Southeastern Power Admin.,
    774 F.2d 1262 (4th Cir. 1985) .............................................................................26

iv

Erickson v. Pardus,
    551 U.S. 89, 127 S. Ct. 2197 (2007)..................................................................8

Estelle v. Gamble,
    429 U.S. 97 (1976)..........................................................................................10

Farmer v. Brennan,
    511 U.S. 825 (1994)...........................................................10, 14, 16, 26

German Alliance Ins. Co. v. Home Water Supply Co.,
    226 U.S. 220 (1912)..............................................................................46, 47

Giron v. Corrs. Corp. of Am.,
    14 F. Supp. 2d 1245 (D.N.M. 1998) ...................................................20

Hadix v. Caruso,
    461 F.Supp.2d 574 (W.D. Mich. 2006) ...............................................11

Hall v. Virginia,
    385 F.3d 421 (4th Cir. 2004) .................................................................7

Henderson v. Sheahan,
    196 F.3d 839 (7th Cir. 1999) ...............................................................10

Henthorn v. Dep't of Navy,
    29 F.3d 682 (D.C. Cir. 1994) .................................................................8

Herman & MacLean v. Huddleston,
    459 U.S. 375 (1983)..........................................................................37, 49

Hines v. GEO Group, Inc.,
    No. 5:08-CT-3056-D (E.D.N.C. Sept. 20, 2007).....................13, 31, 32

Holly v. Scott,
    434 F.3d 287 (4th Cir. 2006) ................................................... passim

Howard v. Bureau of Prisons,
    No.3:05-CV-1372, 2008 WL 318387 (M.D. Pa. Feb. 4, 2008) .........34, 35

Iko v. Shreve,
    535 F.3d 225 (4th Cir. 2008) ...............................................................10

In re Conner Corp.
    127 B.R. 775 (E.D.N.C. 1991)............................................................44

Jama v. U.S. Immigration & Naturalization Serv.,
    334 F. Supp. 2d 662 (D. N.J. 2004) ....................................................47

Jersey Heights Neighborhood Ass'n v. Glendening,
  174 F.3d 180 (4th Cir. 1999) ........................................................25, 38

Jones v. Bock,
  549 U.S. 199 (2007)...........................................................38, 39, 40

Key v. Greyman,
  179 F.3d 996 (6th Cir. 1999) ..............................................................31

Lane v. Pena,
  518 U.S. 187 (1996)........................................................................ passim

Logue v. United States,
  412 U.S. 521 (1973)......................................................................22, 23

Lugar v. Edmondson Oil Co.,
  457 U.S. 922 (1982).......................................................................18, 19

Macharia v. United States,
  238 F. Supp. 2d 13 (D.D.C. 2002) .......................................................23

Martishius v. Carolco Studios, Inc.,
  355 N.C. 465, 562 S.E.2d 887 (2002)....................................................41

Matthews v. Town of Greeneville,
  No. 90-5772, 1991 WL 71414 (6th Cir. May 2, 1991)...........................25

Mendez v. Gearan,
  947 F. Supp. 1364 (N.D. Cal. 1996) ................................................34, 35

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,
  456 U.S. 353 (1982)...........................................................................37

Montana v. United States,
  124 F.3d 1269 (Fed. Cir. 1997)............................................................47

Moore v. Bennette,
  517 F.3d 717 (4th Cir. 2008) .........................................................39, 41, 48

Moore v. Gaither,
  767 A.2d 278 (D.C. 2001) ..................................................................48

Mylan Labs. v. Matkari,
  7 F.3d 1130 (4th Cir. 1993) ..................................................................8

Nguyen v. U.S. Catholic Conference,
  719 F.2d 52 (3rd Cir. 1983) ................................................................47

Case 2:08-ct-00021-D    Document 72    Filed 02/26/2009    Page 7 of 60

O'Guinn v. Lovelock Correctional Center,
    502 F.3d 1056 (9th Cir. 2007) .......................................................39, 40

Ogunde v. Prison Health Servs., Inc.,
    274 Va. 55, 645 S.E.2d 520 (2007)...............................................40, 46

Olympic Prods. Co. v. Roof Sys., Inc.,
    88 N.C.App. 315, 363 S.E.2d 367 (1988)............................................41

Owens v. Haas,
    601 F.2d 1242 (2nd Cir. 1979)................................................44, 45, 46

Pandazidas v. Virginia Bd. of Educ.,
    13 F.3d 823 (4th Cir. 1994) ..........................................................35, 36

Papasan v. Allain,
    478 U.S. 265 (1986)...........................................................................7, 8

Pennsylvania Dep't of Corrs. v. Yeskey,
    524 U.S. 206 (1998)........................................................................30, 31

Plata v. Schwarzenegger,
    No. C01-1351, 2005 WL 2932253 (N.D. Cal. Oct. 3, 2005)...............11

Rathke v. Corrs. Corp. of Am.,
    153 P.3d 303 (Ala. 2007)........................................................................46

Raymond Profitt Found. v. U.S. Army Corps of Engineers,
    343 F.3d 199 (3d Cir. 2003)....................................................................26

Richardson v. McKnight,
    521 U.S. 399 (1997)........................................................................18, 20

Richmond, Fredricksburg & Potomac R.R. v. United States,
    945 F.2d 765 (4th Cir. 1991) ...................................................................9

Rogers v. Dep't of Health & Envt'l Control,
    174 F.3d 431 (4th Cir. 1999) ..................................................................27

Salmon Spawning & Recovery Alliance v. U.S. Customs & Border Protection,
    No. 2007-1444, 2008 WL 5247721 (Fed. Cir. Dec. 18, 2008)...............25

Sarro v. Cornell Corrs., Inc.,
    248 F. Supp. 2d 52 (D.R.I. 2003)............................................................20

Sec'y of State for Defence v. Trimble Navigation Ltd.,
    484 F.3d 700 (4th Cir. 2007) ...........................................................44, 47

Sellers v. School Bd. of the City of Manassas,
    141 F.3d 524 (4th Cir. 1998) ..............................................................28

Sharpe v. Worland,
    147 N.C. App. 782, 557 S.E.2d 110 (2001)..........................................43

Shaw v. Stroud
    13 F.3d 791 (4th Cir. 1994) ...........................................................21, 22

Simmat v. U.S. Bureau of Prisons,
    413 F.3d 1225 (10th Cir. 2005) .....................................................20, 24

Slakan v. Porter,
    737 F.2d 368 (4th Cir. 1984) ..............................................................22

Torcasio v. Murray,
    57 F.3d 1340 (4th Cir. 1995) ..............................................................30

Transamerica Mortgage Advisors, Inc. v. Lewis,
    444 U.S. 11 (1979)..............................................................................36

Traynor v. Turnage,
    485 U.S. 535 (1988)............................................................................27

Trudeau v. FTC,
    456 F.3d 178 (D.C .Cir. 2006) ...........................................................24

Veloz v. State of New York,
    339 F. Supp. 2d 505 ...........................................................................40

Vidal-Oporto v. Lappin, 5:07-CT-3089-D (Feb. 13, 2009)............................43

William G. v. Pataki,
    No. 03 Civ. 8331, 2005 WL 1949509 (S.D.N.Y. Aug. 12, 2005) ...........40

**STATUTES**

5 U.S.C. § 701(a)(2).......................................................................................25

28 U.S.C. § 2671...........................................................................................22

29 U.S.C. § 794....................................................................................... passim

N.C. Gen. Stat. § 1A-1...................................................................................42

N.C. Gen. Stat. § 90-21.11.............................................................................42

Rehabilitation, Comprehensive Services and Development Disabilities Amendments of
    1978, Pub. L. No. 95-602, § 119, 92 Stat. 2955, 2982 ............................36

**OTHER AUTHORITIES**

28 C.F.R. § 39.130(b)(1)............................................................................27, 32

28 C.F.R. § 39.170(d) ......................................................................................38

56 Fed. Reg. 37,292 (Aug 6, 1991)................................................................37

Fed. R. Civ. P. 8(a)(2).......................................................................................8

Fed. R. Civ. P. 10(c) .........................................................................................7

North Carolina Rule of Civil Procedure 9(j).............................................42, 43

Fed. R. Civ. P. 12(b)(1).....................................................................................9

Fed. R. Civ. P. 12(b)(6)..................................................................................7, 8

Plaintiffs respectfully submit this consolidated memorandum in opposition to the separate motions to dismiss filed by Defendants the federal Bureau of Prisons and Harley Lappin (collectively "Federal Defendants") (DE # 64), and by Defendant GEO Group, Inc. ("GEO") (DE # 65).

## INTRODUCTION

The Plaintiffs have brought this case to remedy the unlawful and grossly inadequate level of medical, dental, and mental health care at the Rivers Correctional Institution ("Rivers"), a private prison in Winton, North Carolina that is operated under contract with the federal Bureau of Prisons.

The 42-page First Amended Complaint chronicles numerous instances of gross and deliberate indifference to the medical needs of the prisoners at Rivers. It alleges in detail how the broken health care delivery system at Rivers places prisoners at substantial and ongoing risk of serious injury or premature death. It traces how Defendants' unlawful conduct has caused permanent physical damage and profound physical and mental injuries to the Plaintiffs and other Rivers prisoners. The systemic deficiencies described in the First Amended Complaint are alleged to permeate the Rivers facility.

Unlike many of the cases filed by prisoners that come before the Court, this is not a Bivens action. Plaintiffs do not seek damages in this lawsuit. Nor have Plaintiffs sued the wrongdoers in their individual capacities.

Rather, Plaintiffs seek declaratory and injunctive relief, on behalf of themselves and other prisoners at Rivers, in order to remedy the unlawful and dangerous medical conditions at Rivers. Plaintiffs have named as defendants GEO, which operates the Rivers facility; the federal Bureau of Prisons ("BOP"), the agency that is responsible for the care of prisoners at

Rivers; and the BOP's director, Mr. Lappin, in his official capacity. Plaintiffs have brought claims under the Eighth Amendment to the United States Constitution; the federal Rehabilitation Act, 29 U.S.C. § 794; the common-law doctrine of negligence; and for breach of the specific health care-related obligations in favor of Rivers prisoners included in the operating contract between GEO and the BOP (the "GEO Contract").

The Defendants have raised a host of defenses that are united by a common theme: that by contracting with a private company to house federal prisoners and provide them with medical care, the Defendants have effectively insulated themselves from liability under the U.S. Constitution and a federal civil rights law that protects persons with disabilities, for harms that those prisoners suffer. This radical principle, if adopted, would create two classes of federal prisoners: those who are committed to federal prisons, operated directly by the BOP, who enjoy Constitutional and statutory rights; and those who are sent to private prisons, operated under contract with the BOP, who do not.

This illogical dichotomy does not withstand scrutiny, and we show below why it must be rejected. Because the Plaintiffs have adequately stated claims for declaratory and injunctive relief, the motions to dismiss should be denied.

## STATEMENT OF FACTS

Rivers is a correctional facility located in Winton, North Carolina. See First Am. Compl. ¶ 31. It is operated by Defendant GEO. See id. ¶ 2. The BOP has contracted with GEO to house low-security, male, D.C. Code and other federal felony offenders at Rivers. See id. ¶¶ 30–31. The Federal Defendants have custodial and legal responsibility for the prisoners at Rivers, and GEO helps the Federal Defendants discharge those responsibilities pursuant to authority granted by the Federal Defendants. See id. ¶¶ 14-15. Since the Rivers facility first

opened in 2001, the BOP has housed thousands of prisoners who are in federal custody at Rivers, including the Plaintiffs in this case. See id. ¶ 31. Rivers currently houses approximately 1,300 men, including Plaintiff Louis Calland, who is in the custody of the Federal Defendants and GEO. See id. ¶ 32.[1]

The GEO Contract is a fixed-price contract. See id. ¶ 35. GEO has a financial incentive to keep expenditures for medical care as low as possible because any savings accrued to its bottom line. See id. By refusing to provide necessary medical treatment to the men at Rivers, GEO has boosted its profits at the expense of the prisoners in its care.

The consequences of this arrangement have been devastating for the prisoners at Rivers. As detailed in Plaintiffs' 42-page First Amended Complaint, there has been a facility-wide breakdown in the delivery of medical care at Rivers. The First Amended Complaint describes the breakdown through the experiences of eleven different men. See id. ¶¶ 10-12, 17-24. The following stories illustrate of the Defendants' failure to provide lawfully adequate medical care at Rivers:

**Louis Calland** is a 70-year-old man who uses a wheelchair. He suffers from arthritis, degenerative bone disease, and diabetes, and requires physical therapy for his conditions. Mr. Calland was denied physical therapy, not for therapeutic reasons, but because Rivers did not want to pay for the service. His condition has worsened since his arrival and he now suffers extreme pain. Despite his disability and frail health, Mr. Calland is required to wait outside in the "pill line" every day to receive his medications, regardless of weather conditions.

---

[1] After the First Amended Complaint was filed, the BOP released Messrs. Collins and Roe from the Rivers facility. Mr. Calland is not scheduled to be released from federal custody until November 2011.

He is unable to access many of the facilities at Rivers because they are not accessible to the disabled. Mr. Calland's condition has deteriorated dramatically since his arrival at Rivers. <u>See</u> <u>id.</u> ¶ 11.

**Michael Collins** has diabetes. He developed a callus from the standard issue boots at Rivers, and he requested diabetic shoes to alleviate his foot condition. His request languished. In March 2006, Mr. Collins was diagnosed by the Rivers medical staff as having Methicillin-resistant Staphylococcus aureus ("MRSA"), a highly contagious, drug-resistant bacterial infection, on the same foot. He asked to see a podiatrist, but was sent instead to the staff doctor at Rivers, who "cut out" the callus, leaving a "hole" in the bottom of his MRSA-infected foot. The infection spread. Mr. Collins endured ten months of constant pain. He begged for further treatment. Eventually, Mr. Collins was hospitalized. He was told that his foot had deteriorated to the point that the front half of it would have to be amputated. The amputation occurred shortly thereafter. When Mr. Collins returned to Rivers, Defendants refused to provide him with prosthetic shoes. This prevented him from walking properly. Mr. Collins did not receive a prosthetic insert for his shoe until an outside medical provider offered to give it to him at no cost to Defendants. <u>See</u> <u>id.</u> ¶ 10.

**Keith Mathis** sought dental treatment for a cavity soon after arriving at Rivers. The dentist refused Mr. Mathis's request to pull the decayed tooth. Instead, the dentist covered the tooth with filling material. Soon after, Mr. Mathis developed a serious infection at the site of the filling. He repeatedly sought medical assistance for the infection and related pain and suffering; he could not chew or bite properly. Soon his face and neck began to swell. Rivers medical staff refused to provide any treatment for this condition. One night Mr. Mathis was discovered sweating and feverish, weakened from hunger, oozing green slime from his infected

sore. Mr. Mathis was transported a local hospital, where he underwent emergency surgery. His face "burst open" while at the hospital. Doctors were forced to cut open his face to remove the infection. Mr. Mathis lost feeling on the affected side of his face. He cannot fully open his mouth, cannot bite or chew properly, drools uncontrollably, and bears a permanent scar down one side of his face. See id. ¶ 17.

When **Reon Holloway** arrived at Rivers, he was able to walk with the help of a walker, leg braces, and orthopedic shoes. Rivers staff confiscated his orthopedic shoes because they were the "wrong color." Without the shoes, Mr. Holloway could not use his leg braces; without the leg braces he could not walk. Rivers staff offered to return the shoes after Mr. Holloway met with counsel, eighteen months after his shoes were confiscated. By that point, however, his legs were no longer strong enough to use the orthopedic devices. Rivers staff refused to provide Mr. Holloway with medically necessary physical therapy; and they halted his carefully calibrated medication regime for pain and bone loss in favor of over-the-counter ibuprofen and antacids. As a consequence, Mr. Holloway is now confined to a wheelchair. He suffers tremendous pain. Because he is now wheelchair bound, Mr. Holloway cannot access many of the facilities at Rivers that are inaccessible to persons with disabilities. See id. ¶ 18.

Defendants' conduct produced these results. The systemic breakdown in medical care begins immediately upon a prisoner's arrival at Rivers. See First Am. Compl. ¶ 37(c). During intake, the facility routinely and arbitrarily confiscates medications and medical devices without penological reason, and without regard to the impact on prisoners' health. Drug regimens that have been carefully developed and calibrated by private and correctional medical and mental health professionals are switched or halted, without consultation with the affected patients, and without regard to the therapeutic consequences of the substitutions. See id. When

prisoners' medications are not arbitrarily discontinued, the facility's dysfunctional system for distributing medications causes further injury. See id. ¶ 37(c). It forces sick and disabled men to stand outside for hours in all weather in a "pill line," and sometimes requires them to choose between receiving their drugs or eating their meals. See id.

Prisoners at Rivers receive inadequate medical, dental, and mental health care for the duration of their incarceration at Rivers. See First Am. Compl. ¶¶ 37(a)-(d). Facility staff ignore serious mental health needs and chronic medical conditions, even when those conditions have been specifically identified in sentencing documents or other medical records. See id. ¶ 37(a). Staff refuse to refer prisoners to outside health care specialists, or unreasonably delay referring prisoners to outside health providers, even in situations where the prisoner's medical needs far exceed Defendants' therapeutic capabilities. Id.

The number of qualified health care staff at Rivers is wholly inadequate to provide care for the approximately 1,300 residents, a significant number of whom are older and suffer from severe chronic and acute medical conditions. See id. ¶ 37(b). There is one general practitioner position that has been filled by three different doctors in the past year, at least two of whom were not full time staff members. See id. There is one part time dentist, one part time psychologist, and no physical therapy on site. See id. Rivers has failed to respond reasonably to the dangerous outbreaks of MRSA, a highly contagious bacterial infection that can spread quickly through a prison population. See id. ¶ 37(d). As a result, many prisoners have experienced chronic and persistent MRSA infections, leaving them exposed to potentially life-threatening illness. See id.

Disabled prisoners at the facility are doubly harmed because they are also routinely denied meaningful access to prison medical services and other programs, services,

facilities, and activities at Rivers as a consequence of their disabilities. The Rivers facility lacks ramps that would make its common areas accessible, accessible bathrooms and showers, and accessible public spaces and classrooms. See First Am. Compl. ¶¶ 6, 11, 12, 18, 19. The prison health center denies disabled plaintiffs vitally necessary medical services such as physical therapy, and fails to implement and maintain the more complicated medical regimens that disabled patients require. See id. The prison also fails to deliver adequate mental health services for prisoners suffering from mental health conditions. See id. ¶ 12.

The systemic failure of the Rivers health care delivery system is well known to Defendants. GEO has actual and constructive knowledge of its own unlawful conduct. See id. ¶ 38. The BOP exercises direct and supervisory responsibilities at Rivers. See id. The BOP maintains an office at Rivers that is staffed by full-time BOP employees who have daily access to the facility, and who perform management and oversight functions. See id. ¶ 33. The BOP's Privatization Management Branch is also charged with broad oversight of the operations of Rivers, and the duty to ensure that the facility follows the BOP's established standards and guidelines. See id. ¶ 34; U.S. Dept. of Justice, Federal Prison System, FY 2008 Performance Budget at 61.[2]

---

[2] Available at http://www.usdoj.gov/jmd/2008justification/pdf/38_bop_se.pdf (setting out the subagency's purpose to "oversee[] the operation of secure contract facilities[, and] ensure that contractors adhere to established performance standards"). In reviewing the dismissal of a complaint under Rule 12(b)(6), the court may properly take judicial notice of matters of public record. Hall v. Virginia, 385 F.3d 421, 424 (4th Cir. 2004) (citing Papasan v. Allain, 478 U.S. 265, 268 n.1 (1986)). The court may also consider documents attached to the complaint, see Fed. R. Civ. P. 10(c).

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure require only that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964 (2007) (quoting Fed. R. Civ. P. 8(a)(2); Conley v. Gibson, 355 U.S. 41, 47 (1957)); Erickson v. Pardus, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007) (per curiam). Thus, while "[f]actual allegations must be enough to raise a right to relief above the speculative level," "detailed factual allegations" are not required to withstand a Fed. R. Civ. P 12(b)(6) motion to dismiss. A plaintiff must demonstrate only that it has alleged "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 127 S. Ct. at 1964–65; see also Papasan v. Allain, 478 U.S. 265, 286 (1986); Adcock v. Freightliner LLC, 550 F.3d 369, 374 (4th Cir. 2008).

In considering Defendants' dismissal motions under Fed. R. Civ. P. 12(b)(6), the Court must construe the First Amended Complaint in the light most favorable to the Plaintiffs, and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. See Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999); Mylan Labs. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The Court may consider facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record. See Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006). Factual assertions in memoranda of law may not be considered when deciding a Rule 12(b)(6) motion, particularly when those assertions contradict the allegations in the complaint. Henthorn v. Dep't of Navy, 29 F.3d 682, 688 (D.C. Cir. 1994);

8

cf. Behrens v. Pelletier, 516 U.S. 299, 309 (1996) (when a motion to dismiss is based on the complaint, the facts alleged in the complaint control).

On a motion to dismiss under Fed. R. Civ. P. 12(b)(1), Plaintiffs bear the burden of establishing by a preponderance of the evidence that the court has jurisdiction to entertain their claims. See Richmond, Fredricksburg & Potomac R.R. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). However, "[t]he moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id.

As shown below, Plaintiffs have alleged facts sufficient to state claims under the Eighth Amendment, the Rehabilitation Act, the common law of negligence, and the GEO Contract. Defendants' motions to dismiss must be denied.

## ARGUMENT

## I. PLAINTIFFS HAVE ALLEGED FACTS SUFFICIENT TO STATE AN EIGHTH AMENDMENT CLAIM AGAINST GEO AND THE FEDERAL DEFENDANTS.

Plaintiffs allege a violation of their Eighth Amendment right to adequate medical care in prison. Defendants do not dispute that Plaintiffs have met their threshold burden of alleging conditions that fall below constitutionally minimal standards.

Instead, Defendants assert that GEO's status as a private prison operator bars the Plaintiffs from pursuing an Eighth Amendment claim against any of the Defendants. The theme of Defendants' arguments is that the Plaintiffs are without legal recourse for Constitutional violations arising out of their federal custody, simply because the BOP elected to place the Plaintiffs in a private prison instead of in a BOP-operated facility. Under this view, a federal prisoner's Constitutional protections can be signed away by a bureaucratic transfer order.

This extreme and untenable position cannot be sustained, and we show below that under controlling principles of law, Plaintiffs have properly alleged Eighth Amendment claims

9

for injunctive and declaratory relief; that Defendants' arguments to the contrary are without merit; and that the Eighth Amendment claims may proceed.

A.      **The First Amended Complaint Adequately Alleges that the Defendants Were Deliberately Indifferent to Plaintiffs' Serious Medical Needs.**

To state an Eighth Amendment claim, Plaintiffs must allege facts that, if proven at trial, would show that prison officials were "deliberately indifferent" to serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). This showing has both an objective and a subjective component. See Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008); see also Farmer v. Brennan, 511 U.S. 825, 834, 837 (1994).

To satisfy the objective component, Plaintiffs must allege that their medical needs either have been "diagnosed by a physician as mandating treatment," or are "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. (quoting Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999)). To satisfy the subjective component, Plaintiffs must allege that the Defendants were deliberately indifferent to Plaintiffs' serious medical needs. A prison official is deliberately indifferent when he or she "knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837; see also Iko, 535 F.3d at 241. A plaintiff may satisfy this burden by alleging facts from which one reasonably may conclude that "the official [was] both . . . aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . also [drew] that inference." Farmer, 511 U.S. at 837. Knowledge of the substantial risk "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id. at 842.

Plaintiffs have alleged facts sufficient to support an inference that officials were deliberately indifferent to the serious medical needs of prisoners at Rivers. The First Amended Complaint alleges that Defendants:

- repeatedly refused to provide medical treatment to prisoners who were obviously sick, injured, and in medical distress, see First Am. Compl. ¶¶ 3, 10-12, 17-24, 37(a);

- condoned a chronic and dangerous shortage of medical staff at the facility, see id. ¶¶ 3, 10-12, 17-24, 37(b);

- required sick and disabled prisoners to wait outdoors for hours in all weather to receive medication, forcing some prisoners to choose between food and medication, see id. ¶¶ 3, 11, 22, 23, 37(c); and

- confiscated disabled prisoners' orthopedic devices, ignored medical instructions to provide physical therapy, arbitrarily switched prisoners' medications, and failed to provide medically necessary psychiatric and related services, see id. ¶¶ 3, 10-12, 17-24, 37.

Other courts have concluded that similar allegations of systemic breakdown in the provision of medical care to prisoners state an Eighth Amendment claim. See, e.g., Hadix v. Caruso, 461 F.Supp.2d 574 (W.D. Mich. 2006) (staff shortages and breakdown in mental health care system for dispensing medication); Plata v. Schwarzenegger, No. C01-1351, 2005 WL 2932253 (N.D. Cal. Oct. 3, 2005) (staff shortages and inadequate medical management and supervision leading to system-wide breakdown in the provision of medical care).

Defendants have not disputed that Plaintiffs have alleged facts sufficient to meet the established Constitutional test for deliberate indifference. Instead, Defendants offer an array of reasons for why they should not be held liable for the conduct alleged. We address each of those reasons below and show that Plaintiffs' Eighth Amendment claims may not properly be dismissed at the pleading stage.

**B.**    **This Is Not a <u>Bivens</u> Action, So Plaintiffs' Claims Should Not Be Dismissed for Failure to State a <u>Bivens</u> Claim.**

GEO (but not the Federal Defendants) argues that Plaintiffs' Eighth Amendment claims should be dismissed as to GEO because "private corporations, such as GEO, cannot be held liable for constitutional violations in a <u>Bivens</u> action." GEO Mem. at 5. The Court may quickly dispose of this argument, because Plaintiffs have not brought <u>Bivens</u> claims.

<u>Bivens</u> "established that a 'violation of [the Federal Constitution] by a federal agent acting under color of his authority gives rise to a <u>cause of action for damages</u>.'" GEO Mem. at 6 (quoting <u>Bivens</u> v. <u>Six Unknown Fed. Narcotics Agents</u>, 403 U.S. 388, 389 (1971)) (emphasis added). As GEO correctly notes, the Supreme Court has held that "<u>Bivens</u> actions cannot be brought against private corporations acting under the color of federal law." <u>Id.</u> (citing <u>Correctional Servs. Corp.</u> v. <u>Malesko</u>, 534 U.S. 61 (2001)).

This case is not a <u>Bivens</u> action. A <u>Bivens</u> action seeks money damages from individual federal officers. Plaintiffs' First Amended Complaint, in contrast, seeks only injunctive and declaratory relief against GEO, not money damages from GEO or its employees. The Supreme Court recognized this distinction in the very Supreme Court case that GEO cites in support of its argument:

> Inmates in respondent's position . . . have full access to remedial mechanisms . . . <u>including suits in federal court for injunctive relief</u>. . . . And unlike the Bivens remedy, which we have never considered a proper vehicle for altering an entity's policy, injunctive relief has long been recognized as the proper means for preventing entities from acting unconstitutionally.

<u>Malesko</u>, 534 U.S. at 74 (emphasis added).[3]  GEO concedes that "prisoners in privately operated facilities have the ability to seek injunctive relief in federal court."  GEO Mem. at 7 (citing <u>Malesko</u>, 534 U.S. at 74).  That is precisely the relief that Plaintiffs have sought in this case.[4]

GEO's argument that "a <u>Bivens</u> action cannot be maintained against GEO" (GEO Mem. 7-8) is the only basis upon which GEO has moved to dismiss Plaintiffs' Eighth Amendment claims.  Because Plaintiffs seek only injunctive and declaratory relief, and not a <u>Bivens</u> implied damages remedy, GEO's sole argument for dismissing Plaintiffs' Eighth Amendment claims fails, and its motion to dismiss the Eighth Amendment claims must be denied.

**C.    None of the Federal Defendants' Asserted Grounds for Dismissal Has Merit.**

The Federal Defendants have advanced different grounds for dismissal.  They contend:  (i) that there is no basis for holding the Federal Defendants directly liable for the Constitutional violations alleged; (ii) that GEO's conduct is not "fairly attributable" to the government; (iii) that even if GEO's conduct is fairly attributable to the government, the Federal Defendants cannot be held liable for GEO's conduct under a theory of "supervisory liability"; and (iv) that Plaintiffs' Eighth Amendment claims may be barred by sovereign immunity.  We show below that these arguments are without merit.

---

[3] GEO's citation to the unpublished decision in <u>Hines</u> v. <u>GEO Group, Inc.</u>, No. 5:08-CT-3056-D (E.D.N.C. Sept. 20, 2007) (GEO Mem. 7) is off target for the same reasons.

[4]  Nor is the <u>Malesko</u> Court's concern about "impos[ing] asymmetrical liability" on private prison facilities relevant here.  <u>Id.</u> at 72.  While prisoners held in a BOP-operated facility may not sue the federal government for <u>damages</u> under the Eighth Amendment, <u>they</u> can seek injunctive relief—exactly the relief Plaintiffs seek here.  There is therefore no "asymmetrical liability" here.

1.      **Plaintiffs Have Adequately Alleged that the Federal Defendants Are
        Directly Liable for the Eighth Amendment Violations Pleaded in the
        Complaint.**

The Federal Defendants assert that they did not exercise day-to-day control over
the provision of medical care at Rivers, and that they cannot be held liable for the Constitutional
violations that Plaintiffs allege.  Fed. Def. Mem. at 7, 9–10.  This argument rests on factual
determinations that may not properly be decided on a motion to dismiss.  Plaintiffs have alleged
facts sufficient to state a claim that the Federal Defendants may be held directly liable for the
harms alleged in the First Amended Complaint under Farmer's deliberate indifference standard.

As noted above, under Farmer, a defendant that has actual knowledge of a
Constitutional violation and that knowingly fails to stop or prevent the unlawful conduct may be
held liable.  See Farmer, 511 U.S. at 837.  Plaintiffs have alleged that the Federal Defendants,
through their employees and agents, had actual knowledge that the system of medical care at
Rivers was dangerously inadequate, appreciated the severity of the unlawful conditions, and
failed to act on that information.  Among other things, Plaintiffs have alleged that:

- the Constitutional violations at the Rivers facility were serious and
  potentially life-threatening, First Am. Compl. ¶¶ 10-12, 17-24, 37;

- the Constitutional violations were pervasive, id.;

- the Constitutional violations at the Rivers facility were open and
  notorious, id.;

- BOP personnel were stationed on site at Rivers monitoring prisoner care
  at the facility, id. ¶¶ 32-34;

- BOP exercised control over GEO's personnel decisions, policies, and
  procedures, id. ¶ 33;

- Defendants have "actual and constructive knowledge of these and other
  significant failures and deficiencies" with respect to the medical
  conditions at Rivers, id. ¶ 38 ; and

- Defendants "know that Plaintiffs and all other prisoners at Rivers live under conditions creating an unreasonable risk of future harm, but have not responded reasonably to the situation," id. ¶ 68.

The GEO Contract, incorporated by reference into the First Amended Complaint, see id. ¶ 30, provides further evidence that could lead a reasonable fact finder to infer that the Federal Defendants knew of and disregarded the substantial risk of serious harm alleged in the First Amended Complaint. The contract specifically provides that:

- all of the essential functions GEO performs at Rivers, including the provision of health care services to inmates, are monitored by the BOP;[5]

- the lead BOP representative on-site at Rivers acts as "contract monitor" and is "responsible for the technical direction of the performance of all work under [the Rivers] contract";[6] and

- BOP personnel "check the contractor's performance" and document any noncompliance.[7]

The GEO contract also requires GEO to accommodate "BOP staff . . . [working] on-site to monitor contract performance."[8] GEO is required to "designate approximately 2,500 square footage of administrative office space for BOP staff operations" and "provide no less than 10 parking spaces reserved for Government use."[9] In addition to the daily on-site monitoring by

---

[5] See First Am. Compl. Ex. A, § J, Evaluation of Techniques for Quality Assurance of Contractor Performance, at 1; Id., Statement of Work ("SOW"), at 5–6; Id., SOW at 14.

[6] First Am. Compl. Ex. A, § G.1(a)-(b).

[7] First Am. Compl. Ex. A, § E.2(2).

[8] First Am. Compl., Ex. A, SOW at 25:18-19 (emphasis added). GEO has acknowledged that BOP contract monitors are physically on-site at Rivers. See Reply Mem. of P. & A. in Supp. of Def. GEO's Mot. to Dismiss and Mot. to Transfer at 10 and Ex. 2 (DE # 4).

[9] First Am. Compl., Ex. A, SOW at 25:20-21, 25:28-29.

15

the BOP, GEO's performance at Rivers is also subject to periodic inspection for quality assurance.[10]  The BOP has the power to take action to correct unlawful conduct by GEO.[11]

Discovery will reveal precisely what the Federal Defendants and their on-site employees and agents knew about the dangerous and pervasive conditions alleged in the First Amended Complaint, and why they failed to put a stop to them.  The Constitutional violations alleged in the First Amended Complaint are systemic, widespread, open, and notorious.  Based on the detailed allegations in the First Amended Complaint, and in light of the BOP's on-site supervisory role at Rivers, a fact finder may reasonably infer that the illegal conditions were known to and ignored by the Federal Defendants and their employees who work at Rivers on a regular basis.

The First Amended Complaint alleges sufficient facts to support a conclusion that the Federal Defendants may be held directly liable for the Constitutional harms the Plaintiffs have suffered.  Any assertion that the Federal Defendants failed to investigate the risk of harm is no defense to a claim of deliberate indifference to serious medical needs under the Eighth Amendment.  Farmer, 511 U.S. at 843 n.8.[12]

---

[10] See First Am. Compl., Ex. A §§ E.1(c); E.2(1); J; Performance Requirements Summary Table, at 2.

[11] See id. §§  E.1(e); E.1(f); E.2(3); J.

[12]  Federal Defendants incorrectly assert that this view is "internally contradictory" because "Plaintiffs cannot use the terms of the GEO Contract to prove the BOP's constitutional obligations with respect to Rivers inmates, and then argue that the BOP's alleged failure to adhere to these contractual terms is proof of a constitutional violation."  Fed. Def. Mem. at 18, 19.  There is no internal contradiction.  The contract supports an inference that the Federal Defendants and their employees and agents on-site at the Rivers facility were well-positioned to observe the Constitutional violations alleged.  At the pleading stage the issue is not whether Plaintiffs have provided "proof of a constitutional violation," but rather whether the allegations, if proven, state a claim.  The allegations describing the treatment received by the Plaintiffs and other prisoners amply satisfies that burden at this preliminary stage of proceedings.

Plaintiffs have alleged facts sufficient to infer that the Federal Defendants were aware of and disregarded obvious and serious medical needs at Rivers, and thus, that the Federal Defendants exhibited deliberate indifference that is actionable under the Eighth Amendment.

### 2. GEO's Failure to Provide Adequate Medical Treatment to Plaintiffs Is Also Fairly Attributable to the Federal Government.

As shown above, Plaintiffs have adequately alleged that the Federal Defendants may be held directly liable under the Eighth Amendment for exhibiting deliberate indifference to Plaintiffs' serious medical needs. While the Federal Defendants' liability does not depend on whether GEO's unlawful conduct may be attributed to the Federal Defendants, supervisory liability provides a second and independent basis for holding the Federal Defendants liable for the unlawful conditions at Rivers.

The Complaint adequately alleges that GEO is a government actor for purposes of the Eighth Amendment because it alleges that GEO has undertaken a "public function": the federal government's Constitutional duty to provide adequate medical care for prisoners who are in federal custody. First Am. Compl. ¶¶ 32, 66.

Relying on Holly v. Scott, 434 F.3d 287 (4th Cir. 2006) (rejecting a Bivens claim), the Federal Defendants argue that GEO should not be considered a government actor, and that GEO's failure to provide Constitutionally adequate medical care at Rivers cannot be attributed to the federal government. Like GEO's reliance on Malesko, the Federal Defendants' reliance on Holly is misplaced, because this case is not a Bivens action for damages.

In Holly, the Fourth Circuit held that a prisoner at the Rivers facility could not sue the prison doctor in a Bivens action for damages, because the doctor was not a government actor and because the prisoner had adequate alternative state law remedies. Holly, 434 F.3d at 292, 296. In its government action holding, the Holly court discussed the undesirable policy

consequences of permitting <u>Bivens</u> suits for money damages to proceed against the individual employees of a private government contractor.  See <u>id.</u> at 291-95.  In concluding that the prison doctor at Rivers was not a federal actor, the Fourth Circuit drew upon Supreme Court precedent holding that private prison officials are not entitled to qualified immunity, a doctrine arising only in the context of suits against individuals for damages.  See <u>id.</u> at 294 (discussing <u>Richardson</u> v. <u>McKnight</u>, 521 U.S. 399 (1997)).  The <u>Holly</u> court reasoned that extending Constitutional liability for damages to private individual employees of a prison contractor would "put prisoners in private facilities in a more favorable position than their counterparts in federally operated prisons." <u>Holly</u>, 434 F.3d at 294.  Those concerns are not present here:  Plaintiffs seek injunctive and declaratory relief of the type that is available to prisoners in federally-operated prisoners, <u>not</u> damages; and Plaintiffs do not name any defendants in an individual capacity.  There is no disparity in this lawsuit, of the type criticized in <u>Holly</u>, between the treatment of the Federal Defendants and GEO—they are on equal footing under the law.

The <u>Holly</u> court's related concern about recognizing a non-statutory cause of action for damages against an entirely new group of defendants similarly is inapplicable to this action.  As discussed above, in <u>Malesko</u>, the Supreme Court expressly sanctioned suits for injunctive relief as a preferred alternative to <u>Bivens</u> liability in cases brought against private custodial facilities.  <u>Malesko</u>, 534 U.S. at 74 ("Inmates in respondent's position . . . have full access to remedial mechanisms . . . including suits in federal court for injunctive relief. . . .").

Instead of <u>Holly</u>, the Supreme Court decision in <u>West</u> v. <u>Atkins</u> properly governs this case.  487 U.S. 42 (1988).  <u>West</u> establishes GEO's status as a government actor under the framework that the Supreme Court uses to analyze whether the actions of a private actor may be "fairly attributable" to the government.  See <u>Lugar</u> v. <u>Edmondson Oil Co.</u>, 457 U.S. 922, 937

(1982). In <u>West</u>, the Court held that a private doctor who provided health care under contract to state prisoners was a government actor. 487 U.S. at 57. The Court ruled that the provision of health care to prisoners constituted a "public function," <u>id.</u> at 51–54, and that by undertaking this public function, the doctor had become a government actor. <u>Id.</u>; <u>see also</u> <u>Brentwood Acad.</u> v. <u>Tennessee Secondary Sch. Athletic Ass'n</u>, 531 U.S. 288, 296 (2001) (recognizing continuing validity of the "public function" test for government action). Under <u>West</u>, GEO is a government actor because it has undertaken one of the affirmative Constitutional duties of the government: the provision of custodial medical care to federal prisoners.

In deciding that the contractor in <u>West</u> was a government actor, the Court focused not on the "precise terms of [the doctor's] employment," but on his "function within the state system." <u>West</u>, 487 U.S. at 55–56. The doctor's status as an "independent contractor" thus had no bearing on the Court's decision in <u>West</u>, because when the government contracts out the duty to provide prisoners with Constitutionally adequate medical care, it vests its contractors with its own Constitutional obligations. As the Court put it: "Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights." <u>West</u>, 487 U.S. at 56.

The <u>Holly</u> court distinguished <u>West</u> in concluding that a <u>Bivens</u> claim for money damages does not lie against employees of GEO, and the Federal Defendants adopt the <u>Holly</u> court's analysis to argue that <u>West</u> similarly should not apply here. <u>See</u> Fed. Def. Mem. at 8-9. As discussed above, <u>Holly</u>'s holding and reasoning are properly limited to <u>Bivens</u> actions for <u>money damages</u> against private individuals, and the same is true of its basis for distinguishing <u>West</u>. The <u>Holly</u> court reasoned, first, that <u>West</u> was a Section 1983 action, and thus was

brought under a statutory cause of action, unlike the Bivens implied right of action. Holly, 434 F.3d at 292, 294 n.4. However, in an opinion refusing to extend the Bivens action, the Supreme Court described suits for injunctive relief as a preferred alternative to a Bivens action for money damages. Malesko, 534 U.S. at 74; see also Bell v. Hood, 327 U.S. 678, 684 (1946); Simmat v. U.S. Bureau of Prisons, 413 F.3d 1225, 1231-32 (10th Cir. 2005).

The Holly court also reasoned that prison operation has not always been the exclusive function of the government. Holly, 434 F.3d at 293. In support of this reasoning, the Court cited Richardson v. McKnight, in which the Supreme Court held that private prison employees were not entitled to qualified immunity in part because prisons have not always been publicly operated. 521 U.S. 399, 405 (1997). In Richardson, the Court did not reach the issue of Constitutional liability; instead, it limited its holding to the issue of qualified immunity. See 521 U.S. at 412–13. As discussed above, qualified immunity is not at issue in this case because Plaintiffs do not seek damages from individual defendants. Moreover, numerous courts have recognized that a public function need not always have been exclusively performed by the government in order to confer government actor status on those who perform that function. See Edmonson v. Leesville Concrete Co., 500 U.S. 614 (1991) (civil litigant's racially motivated use of peremptory challenges was government action, even though such challenges had never been an exclusively public function); Giron v. Corrs. Corp. of Am., 14 F. Supp. 2d 1245, 1248 (D.N.M. 1998) (discussing Edmonson); Sarro v. Cornell Corrs., Inc., 248 F. Supp. 2d 52, 60 (D.R.I. 2003) (citing Edmonson); see also Bromfield v. McBurney, No. C07-5226RBL, 2008 WL 2746289, at *8 (W.D. Wash. July 8, 2008) (citing Sarro).

As an "independent contractor in the service of the federal government," GEO stands in the same relationship to the federal government that the prison doctor in West stood to

the State.  The Holly court contemplated that "independent contractors in the service of the federal government," like GEO, might be federal actors.  See Holly, 434 F.3d at 291-92 (noting that the Holly "[d]efendants are not federal officials, federal employees, or even independent contractors in the service of the federal government").

In sum, GEO's actions are fairly attributable to the federal government, and the Federal Defendants' argument to the contrary should be rejected.

### 3. The Federal Defendants' Arguments Grounded on the Common Law of Agency Are Fact-Dependent and Cannot Properly Be Decided on a Motion to Dismiss.

The Federal Defendants next argue that they should not be held responsible for the actions of the contractor that they selected to provide Constitutionally-adequate medical care. Citing case law under the Federal Tort Claims Act ("FTCA"), the Federal Defendants assert that they do not stand in a typical "supervisory" relationship to GEO, essentially because GEO is an independent contractor and not their employee.

These arguments are unavailing for two reasons.  First, as discussed above, the Federal Defendants may be held directly liable for exhibiting deliberate indifference to the serious medical needs of prisoners at Rivers; no finding of "agency" or "supervisory liability" vis-à-vis GEO is required.  Second, to the extent that the Federal Defendants' liability turned on the conduct of GEO, determining the extent of the Federal Defendants' awareness of and oversight and control over GEO's operation of Rivers is a fact-based inquiry that may not properly be decided on a motion to dismiss.

The Fourth Circuit has recognized that supervisory liability for Constitutional violations is "ordinarily [an issue] of fact, not law."  Shaw v. Stroud 13 F.3d 791, 799 (4th Cir. 1994) (emphasis added) (citing Avery v. County of Burke, 660 F.2d 111, 114 (4th Cir. 1981)). In Shaw, for example, the Fourth Circuit reviewed a lower court's ruling on this issue that was

rendered in the context of a motion for summary judgment.  Id. at 797-98; see also Slakan v.

Porter, 737 F.2d 368 (4th Cir. 1984).  There has been no discovery into the nature and extent of

the Federal Defendants' control and supervision of the conduct alleged in the First Amended

Complaint, and the question of the Federal Defendants' supervisory liability should not be

decided on a motion to dismiss.

Moreover, FTCA case law that the Federal Defendants cite by way of analogy is

inapplicable, and at most confirms that the issue of "supervisory" liability is a question of fact.

The FTCA's waiver of sovereign immunity is limited to employees of the United States.  See 28

U.S.C. § 2671 (definition of "Federal agency"); Logue v. United States, 412 U.S. 521, 525-27

(1973).  Plaintiffs have not brought a claim for relief under the FTCA, and it does not apply here.

The Federal Defendants therefore can rely on FTCA cases only to illustrate the

considerations that courts have applied when determining whether the federal government should

properly be considered the supervisor of one of its contractors.  The cases cited by the Federal

Defendants demonstrate that this analysis is a fact-based inquiry.  In Logue, for example, the

Court referred to the common law of agency to determine whether defendants could rely on the

FTCA's exception, and noted that the "critical factor in making this determination is the

authority of the principal to control the detailed physical performance of the contractor."  412

U.S. at 527-28.  Accordingly, the Court examined the contract at issue in that case, and

determined that the agreement "gives the United States no authority to physically supervise the

conduct of the jail's employees," only a limited right of inspection.  Id. at 530.  Similarly, in

Robb v. United States, the Fourth Circuit scrutinized the "contractual relationship between the

government and the allegedly negligent [contractors]" and determined that the contractors fell

within the exemption.  80 F.3d 884, 891–94 (4th Cir. 1996).  Here, the contract at issue gives rise

to several material questions of fact, including: How many BOP officials worked on site at Rivers? What did they do? Did GEO officials at Rivers report to the BOP officials, either formally or informally? What did the on-site BOP officials do to monitor and oversee GEO's delivery of medical services at Rivers? Did BOP officials give GEO officials any instructions concerning the delivery of medical care? Did BOP officials take any action to address GEO's blatantly unlawful conduct? These fact questions cannot be resolved on a motion to dismiss.

The FTCA cases cited by the Federal Defendants are also factually inapposite. In Logue, Robb, and Macharia v. United States, the contracts in question did not provide for daily on-site supervision of contract performance. See Logue, 412 U.S. at 530 ("the agreement gives the United States no authority to physically supervise the conduct of the jail's employees" and only reserves a right of entry); Robb, 80 F.3d at 892, 893-94 (discussing limited review and oversight provisions of contracts at issue in that case); Macharia v. United States, 238 F. Supp. 2d 13, 27-28 (D.D.C. 2002) (discussing only arguments based on federal approval, supervision and training of new hires, not arguments based on physical presence at the site of performance). Here, in contrast, the BOP contract monitors were on site at Rivers precisely to ensure that GEO complied with its contractual obligations, including the express obligation to provide Constitutionally adequate medical services. See supra, Section I.A.[13]

---

[13] While there was daily on-site federal supervision at the performance site in Fisher v. United States, and there may have been on-site quality monitoring at the performance site in Lathers v. Penguin Indus., it was not the responsibility of the on-site representatives to monitor for the hazardous working conditions that gave rise to those lawsuits. Lathers, 687 F.2d 69, 71 (5th Cir. 1982) (noting that while "quality control representatives were assigned to the plant on a permanent basis," "no government safety specialist was on permanent duty" at the site of performance); Fisher, 441 F.2d 1288, 1291–92 (3d Cir. 1971).

The Federal Defendants' argument that their contractual relationship with GEO insulates them from Eighth Amendment liability depends on the resolution of disputed facts. That defense is not properly decided on a motion to dismiss.

> **4.     This Court May Review the Federal Defendants' Failure to Ensure that GEO Upheld Its Constitutional Obligations, Because Federal Agency Discretion Cannot Exceed Constitutional Bounds.**

As the Federal Defendants concede, the Administrative Procedure Act's ("APA") waiver of sovereign immunity permits suits for injunctive relief against the federal government. Fed. Def. Mem. at 15. This waiver extends beyond cases actually brought under the APA. Trudeau v. FTC, 456 F.3d 178, 186 (D.C .Cir. 2006); Simmat, 413 F.3d at 1233-34; Chamber of Commerce v. Reich, 74 F.3d 1322, 1328 (D.C. Cir. 1996).

The Federal Defendants nonetheless assert that Plaintiffs' claims are barred by sovereign immunity to the extent that those claims are based on a theory that the Federal Defendants have "fail[ed] to enforce the terms of the [Rivers] contract." Fed. Def. Mem. at 15. In support of this argument, the Federal Defendants cite case law construing the Supreme Court's decision in Heckler v. Chaney, which prohibited judicial review under the APA of an agency's decision not to undertake enforcement actions. 470 U.S. 821 (1985).

The Federal Defendants' sovereign immunity argument is both irrelevant and wrong. It is irrelevant because the Federal Defendants' liability stems from their deliberate indifference to the medical conditions at Rivers and from GEO's conduct as a government actor, not from a "failure" by the Federal Defendants "to enforce" the terms of the GEO Contract. The argument is wrong because the Plaintiffs have brought suit under the Eighth Amendment, not the APA, and Chaney's holding is inapposite.

In Chaney, the Supreme Court determined that an agency's decision not to enforce a statute presumptively fell within the APA's exemption from review for actions

"committed to agency discretion by law" at 5 U.S.C. § 701(a)(2). 470 U.S. at 832-33. Prior court decisions had held that this "narrow" exemption is applicable only where "statutes are drawn with such broad terms that in a given case there is no law to apply." Id. at 830 (citations omitted). Only if "[t]he statute being administered quite clearly withdr[aws] discretion from the agency and provide[s] guidelines for exercise of its enforcement power"—thereby furnishing a "law to apply"—will the presumption be overcome. Id. at 834.

The Chaney Court did not address whether courts may review an agency's failure to act where that failure amounts to a Constitutional violation, which is what Plaintiffs have alleged here. See Chaney, 470 U.S. at 838 ("No colorable claim is made in this case that the agency's refusal to institute proceedings violated any constitutional rights of respondents, and we do not address the issue that would be raised in such a case."). Furthermore, none of the cases that the Federal Defendants cite held that it is within a federal agency's discretion to fail to discharge a Constitutional duty, much less addressed the reviewability of such a failure. Fed. Def. Mem. at 16. Instead, the cited cases all involve a federal agency's decision not to enforce a statutory or regulatory scheme.[14] Here, in contrast, Plaintiffs demand that the Federal Defendants act in accordance with the Constitution.

The Federal Defendants' argument accordingly cannot be reconciled with the principle that agency action is circumscribed by Constitutional limits. The Fourth Circuit, like

---

[14] See Salmon Spawning & Recovery Alliance v. U.S. Customs & Border Protection, No. 2007-1444, 2008 WL 5247721 (Fed. Cir. Dec. 18, 2008) (enforcement of a statute); Matthews v. Town of Greeneville, No. 90-5772, 1991 WL 71414 (6th Cir. May 2, 1991) (enforcement of a regulatory accounting system incorporated by reference into a contract); Jersey Heights Neighborhood Ass'n v. Glendening, 174 F.3d 180 (4th Cir. 1999) (enforcement of a statute). The decision in Salmon Spawning & Recovery Alliance cited by Federal Defendants has been withdrawn upon rehearing. Plaintiffs cite the decision upon rehearing, which appears to have reached the same conclusion as the prior decision on the reviewability of a claim based on the agency's failure to enforce.

other Courts of Appeal, has reaffirmed the rule that unconstitutional agency action is reviewable by the courts, even where the action would ordinarily be within the agency's discretion. Electricities of North Carolina, Inc. v. Southeastern Power Admin., 774 F.2d 1262, 1267 (4th Cir. 1985) ("even where action is committed to absolute agency discretion by law, courts have assumed the power to review allegations that an agency . . . acted unconstitutionally") (citation omitted); see also Raymond Profitt Found. v. U.S. Army Corps of Engineers, 343 F.3d 199, 205 (3d Cir. 2003) (before determining that an agency action is unreviewable, the court must ascertain that the action "does not involve charges that the agency . . . decision violates a constitutional . . . command").  It is well-established law, moreover, that a defendant's failure to act can be actionable under the Eighth Amendment.  To state a viable Eighth Amendment claim, it is enough to allege that an official "acted or failed to act despite his knowledge of a substantial risk of serious harm."  Farmer, 511 U.S. at 842 (emphasis added).  If through their inaction the Federal Defendants violated the Eighth Amendment, that conduct is reviewable.  The Chaney line of cases is not to the contrary, and the Federal Defendants' alleged unconstitutional conduct is not insulated from judicial review.

For the reasons above, Plaintiffs have stated Eighth Amendment claims, and the motions to dismiss those claims should be denied.

## II.      PLAINTIFFS HAVE STATED A REHABILITATION ACT CLAIM AGAINST THE DEFENDANTS.

Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a) ("Section 504" or the "Rehabilitation Act"), prohibits discrimination on the basis of disability in programs or activities (i) conducted by Federal agencies or (ii) that receive Federal financial assistance.  Plaintiffs have adequately alleged that Defendants' conduct violates Section 504's prohibition against discrimination in programs or activities conducted by a Federal agency.

**A.** **The First Amended Complaint Adequately Alleges that the Defendants Have Discriminated on the Basis of Disability.**

Section 504 protects an "otherwise qualified individual with a disability" from being "excluded from the participation in, be[ing] denied the benefits of, or be[ing] subject to discrimination under any program or activity . . . conducted by any Executive agency . . . ." See 29 U.S.C. § 794(a). The purpose of Section 504 "is to assure that handicapped individuals receive 'evenhanded treatment' in relation to nonhandicapped individuals." Rogers v. Dep't of Health & Envt'l Control, 174 F.3d 431, 434 (4th Cir. 1999) (quoting Traynor v. Turnage, 485 U.S. 535, 548 (1988)). Section 504 accordingly requires that persons be "provided with meaningful access" to the benefit at issue through reasonable accommodation. Alexander v. Choate, 469 U.S. 287, 301 (1985).[15]

A Section 504 plaintiff must adequately allege: "(1) that he has a disability; (2) that he is otherwise qualified for the benefit in question; and (3) that he was excluded from the benefit due to discrimination solely on the basis of the disability." Baird v. Rose, 192 F.3d 462, 467 (4th Cir. 1999).

The Defendants do not challenge the first two requirements identified above, and the Plaintiffs have alleged facts that are sufficient to satisfy them. Plaintiffs' allegations also satisfy the third requirement, because a fact finder could reasonably infer that disabled persons were subject to discrimination and excluded from benefits solely by reason of their disabilities. The First Amended Complaint alleges that prisoners were excluded by impediments such as the

---

[15] Implementing regulations similarly mandate that the BOP may not "[p]rovide a qualified handicapped person with an aid, benefit or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others," or "[o]therwise limit a qualified handicapped person in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others." 28 C.F.R. §39.130(b)(1)(iii) & (vi).

lack of ramps to common areas; the lack of accessible bathrooms in common areas; high curbs that prevent access to areas of the facility used by prisoners; heavy doors meant for prisoner use that impede access by disabled persons; and the lack of basic bathroom accommodations, such as hand-held shower heads and adequate seating for persons in wheelchairs.  See First Am. Compl. ¶¶ 6, 11, 18, 19, 75.  The First Amended Complaint alleges that disabled prisoners had medically prescribed orthopedic devices confiscated, and were denied physical therapy necessary to treat their disabilities.  Id. ¶¶ 18, 19.  One man was told to perform physical therapy by tying a water jug to his leg.  Id. ¶ 19.

Defendants make no effort to defend these practices.  Instead, they dispute that Plaintiffs' have adequately alleged that the challenged discrimination occurred "solely on the basis of the disability."  See Fed. Def. Mem. at 24-26; GEO Mem. at 13-14.  This argument must be rejected.

The "solely by reason of" a disability requirement of a Section 504 claim "is rooted in two parts of the statute's text:  plaintiffs must prove that they have either been 'subjected to discrimination' or excluded from a program or denied benefits 'solely by reason of' their disability."  Sellers v. School Bd. of the City of Manassas, 141 F.3d 524, 528 (4th Cir. 1998).  In determining whether exclusion or denial has occurred "solely by reason of" disability, the Supreme Court has "assume[d] without deciding that § 504 reaches at least some conduct that has an unjustifiable disparate impact upon the handicapped," Choate, 469 U.S. at 299 (emphasis added).  Plaintiffs accordingly are not required to show discriminatory intent.  Id.

As an initial matter, the Federal Defendants acknowledge that Mr. Calland's mobility-related allegations satisfy the "solely by reason of" disability requirement under Section 504:

> Federal defendants do not contest that, to the extent plaintiff Calland asserts that he is denied access to various parts of the Rivers facility because he is confined to a wheelchair, <u>such assertions suffice as alleging discrimination by reason of disability</u>.

Fed. Def. Mem. at 26 n.12 (emphasis added). GEO has offered no comparable express concession, but these allegations are sufficient to state a claim, as the Federal Defendants have conceded.

Defendants' principal argument is that any additional "claims of inadequate medical care or medical malpractice fail as assertions of disability-based discrimination" under Section 504. Fed. Def. Mem. at 25; <u>see also</u> GEO Mem. at 14-15. This misses the mark, because Plaintiffs have adequately alleged that some of the systemic failures in the delivery of medical care at Rivers have "an unjustifiable disparate impact upon the handicapped." <u>Choate</u>, 469 U.S. at 299. Among them are the denial of prescribed physical therapy to treat disability-related mobility problems; the requirement that disabled persons stand for extended periods in the outdoor "pill line," an unjustified hardship that is magnified for persons with disabilities; the confiscation of orthopedic devices used by disabled persons; and the failure to provide adequate mental health care. <u>See</u>, <u>e.g.</u>, First Am. Compl. ¶¶ 3, 6, 11-12, 18-19, 75. These systemic failures almost always have a disparate impact on disabled prisoners. And some of these failures affect disabled persons uniquely, a hallmark of intentional discrimination.

Reviewing comparable allegations of systemic breakdowns in access to prison services for disabled prisoners, other courts have determined that such allegations state a Rehabilitation Act claim. <u>See</u> <u>Donnell</u> v. <u>Ill. State Bd. of Educ.</u>, 829 F. Supp. 1016, 1017 (N.D. Ill. 1993) (denying state's motion to dismiss pretrial detainees' claims of Rehabilitation Act violation based on allegations that they had been denied access to "regular and special educational services during their period of pretrial detention"); <u>Disabled in Action</u> v. <u>Pierce</u>, 606

29

F. Supp. 310, 315 (E.D. Pa. 1985) ("[S]o long as [plaintiffs] allege, as they have, that their inaccessibility to [an agency's] activities or programs is the result of improper physical barriers, plaintiffs may maintain an action pursuant to § 504.").

Because the First Amended Complaint adequately alleges that disabled prisoners were denied access to prison services and programs solely on the basis of disability, the third element of a Section 504 claim has been satisfied.

**B.      Rivers Is a Program or Activity Conducted by the BOP through GEO.**

In addition to alleging unlawful discrimination by reason of disability, a Section 504 plaintiff must also allege that the challenged "program or activity" either receives "federal financial assistance" or is "conducted by any Executive agency."  See Torcasio v. Murray, 57 F.3d 1340, 1350 (4th Cir. 1995).  The First Amended Complaint alleges facts sufficient to state a claim that the provision of medical care and other prison services to the federal prisoners at Rivers constitutes a federally conducted "program or activity."[16]

Under Section 504, "any program or activity . . . conducted by any Executive agency" is subject to the Rehabilitation Act.  29 U.S.C. § 794(a).  Neither GEO nor the Federal Defendants dispute that Section 504 applies to prisons, and specifically to programs and activities that are provided to prisoners.  See, e.g., Pennsylvania Dep't of Corrs. v. Yeskey, 524 U.S. 206, 210 (1998) ("Modern prisons provide inmates with many recreational 'activities,' medical 'services,' and educational and vocational 'programs,' all of which at least theoretically 'benefit' the prisoners (and any of which disabled prisoners could be 'excluded from

_____

[16] Plaintiffs do not contend at this stage of proceedings that GEO receives "federal financial assistance" within the meaning of the Rehabilitation Act.  Cf. GEO Mem. at 10-13 (discussing this alternate and independent prong of a Section 504 claim).

participation in').") (citation omitted); <u>Key</u> v. <u>Greyman</u>, 179 F.3d 996, 997 (6th Cir. 1999) ("[T]he ADA and the Rehabilitation Act apply to prisoners." (citing <u>Yeskey</u>, 524 U.S. at 212)).

Instead, the Defendants seek to avoid liability by pointing fingers at each other. The Federal Defendants argue that they should not be held liable under Section 504 on the ground that "plaintiffs have an adequate remedy for their claims of disability-based discrimination at Rivers because <u>they can assert such claims directly against GEO</u>." Fed. Def. Mem. at 22 (emphasis added). The Federal Defendants emphasize that GEO "has undertaken the obligation to comply with the Rehabilitation Act when carrying out the operations it performs pursuant to its contract with the BOP." <u>Id.</u>; <u>see</u> <u>also</u> <u>id.</u> at 23 (a Section 504 remedy "is available directly from GEO").

GEO takes the opposite view. It argues that "the executive agency clause does not extend liability to GEO, but instead <u>prohibits</u> <u>BOP</u> from discriminating against disabled individuals." GEO Mem. at 10 (emphasis added). In GEO's view, Section 504 "applies solely to <u>the actions of an executive agency itself</u>." GEO Mem. at 9 (emphasis added).

One thing is certain: they cannot both be right. If they were, then a federal agency and its contractor could eliminate a disabled federal prisoner's statutory protection against discrimination with the stroke of a pen. The Defendants cannot vitiate federal statutory obligations by contractual fiat, however, nor is there any rational ground for denying federal prisoners held in contract facilities the same protection from discrimination that is enjoyed by their counterparts in federally operated prisons. As we explain below, at this preliminary stage of proceedings Plaintiffs have adequately alleged Section 504 claims against both the Federal Defendants and GEO.

1.    The Federal Defendants.  As GEO notes in its brief, GEO Mem. at 9-10, a court in this circuit has made clear that federal agencies such as the BOP are responsible for ensuring compliance with Section 504 of the Rehabilitation Act when they procure services from a private corporation.  See Dodd v. Blue Cross & Blue Shield Ass'n, 835 F. Supp. 888, 891 (E.D. Va. 1993).  In Dodd, a federal agency contracted with a private health insurance provider to provide services to the government.  Id. at 889.  The court held that the procuring agency was subject to Section 504:  "Under section 504 of the Act, when a government procurement contract is involved, it is the procuring agency . . . and not the contractor . . . that is responsible for compliance."  Id. at 891.[17]  Here, the BOP undeniably has custodial responsibility for the incarceration of federal prisoners, and it has retained GEO to provide services to assist the agency in discharging its responsibility.  Because the BOP is the procuring agency, Plaintiffs may properly pursue a Section 504 claim against the Federal Defendants.

2.    GEO.  Highlighting the statement in Dodd that the procuring agency "and not the contractor" is subject to Section 504, 835 F. Supp. at 891, GEO argues that the BOP – but not GEO – is the proper defendant with respect to the Rehabilitation Act claim.  GEO Mem. at 9-10.  In Dodd, the court considered the narrow question of whether a contractual "exclusion of coverage" term in a health insurance policy discriminated against federal employees who suffered from a deadly form of metastatic breast cancer.  Id. at 891.  The Court held that the plaintiffs' remedy would lie against the federal agency, because as party to the contract the agency was responsible for ensuring that the contract's terms complied with the Rehabilitation

_____

[17]    In recognition of this statutory obligation, DOJ regulations (which govern the BOP) acknowledge that when "providing any aid, benefit, or service," the BOP "may not, directly or through contractual, licensing, or other arrangements" discriminate on the basis of disability. See 28 C.F.R. § 39.130(b)(1) (emphasis added).

Act.  Id.  Here, the Plaintiffs have not alleged that the procuring agency agreed to an unlawful contract term, but rather that prisoners held at the GEO-operated Rivers facility were subject to unlawful discrimination by, among others, employees and agents of GEO.  In contrast to the contractor in Dodd, GEO has expressly undertaken to comply with the Rehabilitation Act in providing services to federal prisoners at Rivers.[18]  Dodd is distinguishable on this basis, and under the facts as alleged at this preliminary stage of proceedings, GEO's assertion that it may freely engage in discrimination without any consequences does not withstand scrutiny.

In sum, because Plaintiffs have adequately alleged facts that satisfy the elements of Section 504, and because the Federal Defendants and GEO conduct the programs and activities at issue, a Section 504 claim has been stated as to all defendants.

### C.    Plaintiffs May Obtain Injunctive Relief against the Federal Defendants.

The Federal Defendants assert that three additional reasons, unique to them, require dismissal of the Section 504 claim as to the Federal Defendants.  Specifically, the Federal Defendants contend that (i) the claim is barred by sovereign immunity; (ii) there is no "private right of action" to enforce Section 504 against the Federal Defendants; and (iii) Plaintiffs have failed to exhaust their administrative remedies.  The Court should reject these arguments because (i) the sovereign immunity bar does not apply to claims for declaratory and injunctive relief; (ii) prisoners may obtain injunctive remedies against the federal government for violations of Section 504; and (iii) the Federal Defendants have not properly raised the exhaustion issue.

---

[18] See First Am. Compl., Ex. A, SOW at 23:21-27 ("The institution shall comply with the requirements of . . . the Rehabilitation Act of 1973 as amended. . . .  All areas of the institution side and buildings shall meet these requirements."); Id., SOW at 6:33-34 ("All services and programs shall comply with the SOW; the U.S. Constitution; all applicable Federal, state and local laws and regulations . . . .").

1.    **Plaintiffs' Claim for Injunctive Relief under Section 504 Is Not
      Barred by Sovereign Immunity.**

It is common ground that sovereign immunity prevents plaintiffs from obtaining a

damages remedy from a federal agency in a suit brought under Section 504.  See Lane v. Pena,

518 U.S. 187 (1996).  No comparable bar exists, however, for claims seeking equitable relief,

and the Federal Defendants fail to address the distinction between these two species of claims.

That distinction is dispositive, and courts consistently recognize that plaintiffs bringing suit

under Section 504 against a federal agency have a right of action for equitable relief.  See, e.g.,

Am. Council of Blind v. Paulson, 463 F. Supp. 2d 51, 57-58 (D.D.C. 2006) ("[I]njunctive relief

is available against the sovereign under [Section 504]"); Am. Council of Blind v. Astrue, No.

C05-4696, 2008 WL 1858928, at *7 & n.4 (N.D. Cal. Apr. 23, 2008) (concluding that under

Lane, a private right of action for equitable relief is available for violations of Section 504);

Mendez v. Gearan, 947 F. Supp. 1364, 1367 (N.D. Cal. 1996) (same); Howard v. Bureau of

Prisons, No.3:05-CV-1372, 2008 WL 318387, at *9 (M.D. Pa. Feb. 4, 2008) ("[w]ith regard to

the Rehabilitation Act . . . , injunctive relief is available even though damages are not.")[19]

2.    **Plaintiffs Are Not Prohibited from Enforcing Section 504 in an Action
      for Equitable Relief.**

The Federal Defendants also contend that "Section 504 does not provide a private

right of action against the federal government."  Fed Def. Mem. at 21.  This argument runs

---

[19] The Court accordingly may quickly dispose of the Federal Defendants' APA argument—
which in fact is not addressed to Plaintiffs' Section 504 claim at all.  Rather, the Court is first
asked to assume that Plaintiffs are foreclosed from pursuing a claim under Section 504, and are
"granted leave to amend their pleadings to assert an [Administrative Procedure Act] claim."  Fed
Def. Mem. at 21.  The Federal Defendants then proceed to argue that the hypothetical APA claim
would be barred by sovereign immunity.  Id.  In other words, the sovereign immunity defense is
directed at a claim that the Plaintiffs have not brought.  See id. at 23 ("plaintiffs may not assert
an APA claim against the BOP based on alleged violations of Section 504") (emphasis added).
This conclusion is of no relevance to Plaintiffs' Section 504 claim.

34

counter to precedent on this issue and ultimately is no more persuasive than the sovereign immunity argument.

### a) The Argument Is Contradicted by Precedent.

As the Fourth Circuit has observed, "every circuit that has addressed [the question of whether a private right of action is available under Section 504], including this one, has held that a private right of action exists." Pandazidas v. Virginia Bd. of Educ., 13 F.3d 823, 828 (4th Cir. 1994). Although the Court held in Lane that sovereign immunity bars a private right of action for monetary relief against a federal agency, the Government did not even contest the propriety of the injunctive relief that Lane had obtained under Section 504, and courts accordingly continue to recognize that a private right of action exists under Section 504 for injunctive and declaratory relief. See e.g., Am. Council of Blind, 463 F. Supp. 2d at 57-58; Howard, 2008 WL 318387, at *9; Astrue, 2008 WL 1858928, at *7 & n.4; Mendez, 947 F. Supp. at 1367. The Federal Defendants do not address this precedent.

Instead, they rely on Clark v. Skinner, 937 F.2d 123 (4th Cir. 1991), see Fed. Def. Mem. at 19, but their reliance is misplaced. In Clark, the Fourth Circuit addressed whether there was an implied right of action to challenge a specific regulatory action taken by the Department of Transportation. See 937 F.2d at 126. The Court did not address whether a plaintiff could challenge discrimination in a program and activity conducted by a federal agency. This distinction is dispositive, and the holding in Clark is consistent with the more recent cases discussed above.

In sum, there is no basis to conclude that prisoners in federal custody who are victims of unlawful discrimination are without an equitable remedy against the government under Section 504.

**b)     The Argument Is Flawed.**

Even if the private right of action argument were not foreclosed, that argument would still have to be rejected because Congress did not intend to leave disabled persons who suffered unlawful discrimination at the hands of the federal government without a remedy under Section 504.

"The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." Alexander v. Sandoval, 532 U.S. 275, 286 (2001), (citing Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 16 (1979)).  The history of the Rehabilitation Act confirms that Congress intended to create an equitable remedy against federal agencies for violations of Section 504.

After Congress passed Section 504 in 1973, the Courts of Appeal uniformly held that Congress intended for Section 504 to provide a private right of action for victims of unlawful discrimination.  See Pandazidas, 13 F.3d at 828; see also Lane v. Pena, 518 U.S. 187, 202 & n.3 (1996) (Stevens, J., dissenting) (collecting cases).   In 1978, Congress extended Section 504 to cover the actions of Executive agencies.   See Rehabilitation, Comprehensive Services and Development Disabilities Amendments of 1978, Pub. L. No. 95-602, § 119, 92 Stat. 2955, 2982 (adding to the end of the first sentence of Section 504, which bars "discrimination under any program or activity receiving Federal financial assistance," the words "or under any program or activity conducted by any Executive agency or by the United States Postal Service"). This expansion of Section 504 effectuated Congress' intent to protect disabled persons from discrimination by any federal agency that conducts a program or activity.  As one federal agency recognized when creating its implementing regulations for the 1978 amendment:  "the intent expressed by supporters of the 1978 amendment in floor debate, including its sponsor, Rep. James M. Jeffords, [was] that the Federal Government should have the same section 504

obligations as recipients of Federal financial assistance."  56 Fed. Reg. 37,292, 37,292 (Aug 6, 1991) (Department of Transportation regulations).

The Supreme Court has upheld implied private rights of action in comparable circumstances, reasoning that Congress would have "simply assumed that the remedy was available" without any further need to make that explicit in the statute.  Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran, 456 U.S. 353, 380 (1982); Herman & MacLean v. Huddleston, 459 U.S. 375, 380 (1983).  The genesis of Section 504 thus confirms that Congress did not intend to leave victims of discrimination without a remedy when a federal agency engages in unlawful discrimination under Section 504.

The Federal Defendants' reliance on Section 505 of the Rehabilitation Act, which adopts the remedies of Title VI, is misplaced.  Those provisions are addressed to providers and recipients of federal financial assistance, a branch of the Rehabilitation Act that is not at issue in this case.  As one Court has observed, however, the Supreme Court's discussion of Section 505 in Lane "supports the view that injunctive relief is available against the sovereign under [Section 504]":

> To explain its holding that sovereign immunity was not waived in § 505(a)(2) of the Rehabilitation Act, the Court contrasted that provision with § 505(b), which contains a 'clear waiver' of sovereign immunity for claims of attorney's fees. . . .  [T]here would be no purpose in crafting a provision allowing attorney fees unless the statute contemplates awards of declaratory and injunctive relief.

Am. Council of Blind, 463 F. Supp. 2d at 58 (emphasis added).  The federal defendant in Am. Council of Blind apparently did not challenge on appeal the holding that it was subject to

declaratory and injunctive remedies under Section 504, as the Federal Defendants have argued in this case.  See Am. Council of Blind v. Paulson, 525 F.3d 1256 (D.C. Cir. 2008).[20]

Case law and legislative history thus confirm that a disabled plaintiff who is the victim of unlawful discrimination at the hands of a federal agency is not barred from obtaining an equitable remedy against the agency under Section 504.

### D.    Plaintiffs Have Satisfied All Applicable Exhaustion Requirements.

Finally, the Federal Defendants argue that the Section 504 claims should be dismissed for failure to "exhaust" a voluntary process under which an aggrieved individual may file a complaint with the U.S. Department of Justice ("DOJ") to investigate discrimination claims.  Fed. Def. Mem. at 23–24.  The Federal Defendants contend that in addition to exhausting his administrative remedies at the prison, a prisoner should also be required to "exhaust" this separate process, under their reading of the Prison Litigation Reform Act ("PLRA").  Id. (discussing the regulation at 28 C.F.R. § 39.170(d)).  This argument fails for several reasons.

First, "inmates are not required to specifically plead or demonstrate exhaustion in their complaints."  Jones v. Bock, 549 U.S. 199, 216 (2007).  The Fourth Circuit accordingly has recognized that "the PLRA does not require that an inmate allege in his complaint that he has

---

[20] The Federal Defendants' discussion of a Title VI case, Jersey Heights v. Glendening, 174 F.3d 180, 191 (4th Cir. 1999), is distinguishable on the same ground.  Fed. Def. Mem. at 19.  In Jersey Heights, the Fourth Circuit declined to imply a private right of action under Title VI of the Civil Rights Act against a federal agency.  174 F.3d at 191.  Title VI provides a right solely for "federal financial assistance," and not for programs and activities "conducted by an Executive agency."  Because Title VI has no application to their claims, the Plaintiffs do not seek the remedies provided in that statute.  See also Lane, 518 U.S. at 209 (Stevens, J., dissenting) ("§ 505(a)(2) simply has no application to violations of § 504 committed by federal agencies acting in a nonfunding capacity. . . .  It is silent on the remedies, procedures and rights available for transgressions of § 504 by federal Executive agencies acting in a nonfunding capacity.  The relief . . . is rooted in § 504 itself.").

exhausted all administrative remedies." Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 677 (4th Cir. 2005). Rather, the "failure to exhaust is an affirmative defense under the PLRA," Jones, 549 U.S. at 216, and the Federal Defendants "bear the burden of proving" that exhaustion requirements were not satisfied. Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008) (emphasis added). The Federal Defendants have not attempted to prove lack of exhaustion. They simply assert, in conclusory fashion, that "plaintiffs have failed to exhaust the administrative remedy that the DOJ has provided for claims of disability discrimination." Fed. Def. Mem. at 23. As a matter of law, that naked assertion is not a proper basis for dismissal.

Second, the Federal Defendants' argument that Plaintiffs' Rehabilitation Act claim should be dismissed for failure to exhaust a DOJ voluntary process ignores the Supreme Court's direction that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones, 549 U.S. at 218; see also id. ("[T]o properly exhaust administrative remedies [under the PLRA] prisoners must complete the administrative review process in accordance with the applicable procedural rules--rules that are defined ... by the prison grievance process itself") (internal citations and quotation marks omitted). The boundaries of the PLRA exhaustion requirement thus are set by the prison's administrative grievance process alone. There has been no assertion that plaintiffs have failed to exhaust the Rivers prison's grievance process, and the Federal Defendants' argument fails for this second, independent reason.

The cases that the Federal Defendants cite are not to the contrary. In O'Guinn v. Lovelock Correctional Center, Fed. Def. Mem. at 23–24, the Ninth Circuit held that the prisoner's exhaustion of the DOJ disability complaint procedure was not required for PLRA purposes. Relying on the Supreme Court's decision in Jones, the Court instead dismissed the

39

plaintiff's complaint for failing to exhaust the <u>prison</u> remedies available to him.  <u>See</u> <u>O'Guinn</u> v.

<u>Lovelock Correctional Center</u>, 502 F.3d 1056, 1062–64 (9th Cir. 2007).   The Ninth Circuit

explained that Section 504 has no federal administrative exhaustion requirement for filing suit,

and that DOJ regulations simply <u>permit</u> individuals who believe they have suffered

discrimination based on a disability to file a complaint with DOJ.  <u>Id.</u>[21]

  <u>Third</u>, Mr. Calland has in fact properly exhausted the available administrative

remedies at Rivers, and Defendants quite correctly do not contest that fact.  Because Mr. Calland

has "utilized all available remedies in accordance with the applicable procedural rules," and

because "prison officials have been given an opportunity to address the claims administratively,"

Mr. Calland is "entitled to bring suit in federal court."   <u>Moore</u>, 517 F.3d at 725 (internal

quotation marks omitted).

---

[21] The Federal Defendants' reliance on <u>William G.</u> v. <u>Pataki</u>, No. 03 Civ. 8331, 2005 WL 1949509 (S.D.N.Y. Aug. 12, 2005), is similarly misplaced.  In <u>William G.</u>, the district court concluded that a federal prisoner must exhaust DOJ procedures before bringing suit.  <u>William G.</u> pre-dates the Supreme Court's decision in <u>Jones</u>, however, and it cannot be reconciled with the Supreme Court's ruling that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  <u>Jones</u>, 549 U.S. at 218.  In any event, the district court in <u>William G.</u> <u>denied</u> the motion to dismiss on this ground because the exhaustion issue raises fact issues.  <u>Id.</u> at *7 ("the question of whether administrative remedies are actually available requires a factual inquiry" and "[t]he determination as to whether the DOJ remedies . . . were in fact available to Plaintiffs, and whether estoppel or some special circumstance excuses exhaustion may be <u>better addressed at the summary-judgment stage</u>.") (emphasis added).  Other federal courts in New York have held that exhaustion of the DOJ process was not required.  <u>See</u> <u>e.g.</u>, <u>Degrafinreid</u> v. <u>Ricks</u>, No. 03 Civ. 6645(RWS), 2004 WL 2793168 at *14 n.10 (S.D.N.Y. Dec. 6, 2004) (concluding that prison inmate need not exhaust DOJ administrative remedies under the ADA to satisfy the PLRA); <u>Veloz</u> v.<u> State of New York</u>, 339 F. Supp. 2d 505, 519 ("Filing a complaint with the DOJ, an external federal agency, does not allow correctional officers to respond directly to inmates' grievances nor does it allow them to remedy the issues raised in the grievance[, which the court noted was the purpose for the PLRA].")

## III.    PLAINTIFFS HAVE ADEQUATELY PLEADED COMMON LAW NEGLIGENCE CLAIMS AGAINST GEO.

Plaintiffs' negligence claim is directed only at GEO.   The elements of a negligence claim under North Carolina law are well settled:  a plaintiff must allege that "the defendant owed the plaintiff a legal duty, that the defendant breached that duty, and that the plaintiff's injury was proximately caused by the breach."  Martishius v. Carolco Studios, Inc., 355 N.C. 465, 473, 562 S.E.2d 887, 892 (2002).  Plaintiffs have adequately alleged each element of a negligence claim.

Duty.  Plaintiffs have alleged that GEO owed them a duty of care by virtue of the parties' custodial relationship – Plaintiffs are completely dependent on GEO for medical care while housed at Rivers – and, independently, by virtue of GEO's explicit contractual duty to provide Plaintiffs with appropriate medical care.[22]  See First Am. Compl. ¶¶ 5, 8, 10-13, 32, 79.

Breach.  Plaintiffs have alleged that GEO breached this duty by implementing and perpetuating a variety of unlawful institution-wide policies, practices, acts, and omissions. Specifically, the First Amended Complaint alleges that GEO provided grossly inadequate access to medical care, see First Am. Compl. ¶¶ 10-12, 17-24, 37(a); implemented a system of medical staffing, training and supervision that was dangerously deficient, id. ¶¶ 10-12, 17-24, 37(b); failed to provide safe and proper access to medications, id. ¶¶ 10-12, 17-24, 37(c); failed to contain or treat infectious diseases, id. ¶¶ 10, 20, 37(d); and generally failed to exercise the

---

[22] See, e.g., Olympic Prods. Co. v. Roof Sys., Inc., 88 N.C.App. 315, 322, 363 S.E.2d 367, 371 (1988) ("A duty of care may arise out of a contractual relationship….  It is well settled in North Carolina that privity of contract is not required in order to recover against a person who negligently performs services for another and thus injures a third party.") (internal citations omitted).

degree of care in designing and implementing its medical treatment system that a reasonable and prudent entity would exercise in similar circumstances. See id. ¶¶ 3, 10-13, 17-24, 37-38, 80.

Proximate cause of injury. Finally, Plaintiffs have alleged that GEO's repeated and consistent breaches of its duty of care caused numerous physical, psychological, and emotional injuries to persons incarcerated at Rivers. See First Am. Compl. ¶¶ 4, 10-13, 17-24, 81.

GEO does not dispute that Plaintiffs have adequately alleged the elements of a negligence claim. Instead, it asserts that Plaintiffs have improperly failed to include a certification pursuant to North Carolina Rule of Civil Procedure 9(j) that is required for medical malpractice claims.

GEO's argument misses the mark, because Plaintiffs have not brought a malpractice claim, and Rule 9(j) does not apply. Rule 9(j) establishes a heightened pleading requirement for statutory medical malpractice claims.[23] By its terms, Rule 9(j) applies only to claims for "medical malpractice." N.C. Gen. Stat. § 1A-1, Rule 9(j) (citing N.C. Gen. Stat. § 90-21.11). "Medical malpractice," in turn, is defined as "a civil action for damages for personal injury or death in the performance of medical . . . care by a health care provider." N.C. Gen. Stat. § 90-21.11 (emphasis added).

Plaintiffs are not seeking damages for personal injury or death, and this accordingly is not a medical malpractice case. Rather, Plaintiffs seek declaratory and injunctive relief to remedy the systemic, institution-wide deficiencies in the administration of health care at

---

[23] Specifically, a plaintiff who files a "complaint alleging medical malpractice by a health care provider" must either allege that the allegations were reviewed and signed off on by a medical expert, or allege facts "establishing negligence under the existing common-law doctrine of res ipsa loquitur."

Rivers that endangers all prisoners.  See First Am. Compl. ¶¶ 37, 81.  Because Plaintiffs have not

asserted a medical malpractice claim, Rule 9(j) does not apply and GEO's argument fails.  See

Sharpe v. Worland, 147 N.C. App. 782, 784, 557 S.E.2d 110, 112 (2001) ("Rule 9(j) certification

is not necessary for ordinary negligence claims, even if defendant is a health care provider.").

The unpublished Order that GEO filed as supplemental authority on February 16,

2009, does nothing to alter this conclusion.  See Notice by GEO Group Inc. of Subsequently

Decided Authority (DE # 69).  In Vidal-Oporto v. Lappin, 5:07-CT-3089-D (Feb. 13, 2009),

Judge Dever ruled that a medical malpractice claim seeking money damages must comply with

the requirements of Rule 9(j), regardless of whether the claim is labeled one for negligence or

breach of contract.  See Vidal-Oporto, 5:07-CT-3089-D, at 3 (noting that the contract claim was

"based on the same factual allegations used for the medical malpractice tort claim.").  He also

rejected as "futile" a proposed amendment to the plaintiff's complaint that failed to "specify how

any of the defendants were negligent in hiring, supervision, or care."  Id.  Vidal-Oporto bears

little resemblance to this case:  here, the Plaintiffs' First Amended Complaint contains extensive

and detailed allegations of negligence, as summarized above; and Plaintiffs seek declaratory and

injunctive relief to remedy systemic unlawful conditions, not damages for medical malpractice as

did the plaintiff in Vidal-Oporto.  That case lends nothing to GEO's argument.

## IV.    PLAINTIFFS HAVE ALLEGED FACTS SUFFICIENT TO STATE A BREACH OF CONTRACT CLAIM AGAINST GEO.

Plaintiffs' breach of contract claim, like their negligence claim, is directed only at

GEO.  As we demonstrate below, plaintiffs have adequately alleged that they are intended third-

party beneficiaries of specific provisions of the GEO Contract that require GEO to provide

adequate, safe, and lawful medical care to prisoners in its custody.

43

**A.** **The Health Care Provisions in the GEO Contract Reflect a Clear Intent to Benefit Plaintiffs.**

A non-party to a contract can sue for breach if it is an intended beneficiary of the agreement.  Sec'y of State for Defence v. Trimble Navigation Ltd., 484 F.3d 700, 706 (4th Cir. 2007).  A third party is an intended beneficiary if the contract evidences an "express or implied intention of the parties to benefit the third party."  Id.  Intent can be discerned from the actual language of the contract and from the circumstances surrounding the transaction.  Id.; see also Blis Day Spa, LLC v. Hartford Ins. Group, 427 F. Supp. 2d 621 (W.D.N.C. 2006).  The Fourth Circuit has emphasized that "the inquiry into third-party beneficiary status is fact sensitive and not ordinarily ripe for resolution at the motion-to-dismiss stage."  Trimble, 484 F.3d 709.[24]

The GEO Contract makes clear that Plaintiffs are intended beneficiaries of specific health care protections contained within it.  The following are some of the specific obligations that GEO undertook in favor of prisoners incarcerated at Rivers:

- GEO must provide prisoners with "all essential health services" and adhere to "the U.S. Constitution," and "all applicable Federal, state and local laws and regulations governing the delivery of health services[.] . . ."  First Am. Compl., Ex. A, SOW at 6:32-33, 32:27-32.

- GEO must provide prisoners with certain "vital [health services related] functions essential to successful performance" of the contract, including ensuring that:

---

[24]  Plaintiffs' claim is governed by federal common law.  See Trimble, 484 F.3d at 705-06 ("Civil liabilities arising out of the performance by a private contractor of federal procurement contracts are governed by federal common law."); Owens v. Haas, 601 F.2d 1242, 1248 (2nd Cir. 1979) ("[F]ederal common law will be applied by a court when there is some overriding federal interest at stake . . . .  [I]n this case there is a sufficient governmental interest in the treatment of federal prisoners to make it desirable that interpretations of rights under federal contracts relating to that area be governed by federal law.") (citation omitted).  The analysis under North Carolina law is materially the same.  See In re Conner Corp. 127 B.R. 775, 778 n.2 (E.D.N.C. 1991) (holding that there are no material conflicts between North Carolina and federal common law on basic contract principles such as third-party beneficiary status).

- "Inmates admitted to the inpatient facility are receiving a level of care commensurate with the requirements of the contract." First Am. Compl., Ex. A, § J, Performance Requirements Summary Table, at 2-3.
- "Psychiatric services are available on both an inpatient and outpatient basis." Id.
- "[I]nmates are screened for mental health problems and appropriate intervention is implemented." Id.
- "A system to identify, monitor and treat communicable diseases is in place to prevent the spread of disease." Id.
- "The Dental Program: (1) provides dental care in a manner consistent with principles of professional practice that reflects concern for the accessibility and cost of services . . . ." Id.
- "Appropriate health care is provided to all inmates." Id.
- GEO must "maintain an adequate level of emergency readiness to respond to institution emergencies" and "maintain adequate staffing levels." Id. at 1-2.

GEO agreed that "[t]he provision of medical services commensurate to the level of care available in the community is an essential component of successful performance under the contract." First Am. Compl., Ex. A, SOW at 33:9-11. The contract expressly identifies controlling BOP Program Statements on health care standards, including those addressing Infectious Disease Management and Psychiatric Treatment. Id., SOW 33:14-28. GEO's duty to provide medical services with a level of care equal to that available in the community is deemed an "essential component of successful performance under the contract." Id., SOW 33:9-11.

Analogous cases confirm that these contract provisions coupled with the allegations in the First Amended Complaint are sufficient to state a third party beneficiary claim. In Owens v. Haas, a federal prisoner was housed in a county jail under contract with the federal government. 601 F.2d 1242 (2nd Cir. 1979). Alleging injury by a corrections officer, the plaintiff sought relief under the contract. The court held that the federal prisoner was intended to benefit from the agreement between the parties because, among other things, "[t]he Policy

45

Statement of the Bureau of Prisons, incorporated into the contract, includes numerous clauses which provide for the safekeeping and protection of federal prisoners." Id. at 1250. The court found that the provisions of the BOP Policy Statement – also referenced in the medical care section of the GEO Contract – "suggest that a federal prisoner who was injured in a county jail, could claim status as an intended beneficiary of the contract." Id.

Similarly, the Supreme Court of Virginia recently held that a prisoner alleging inadequate medical care was an intended third-party beneficiary of a contract between a private provider of medical services and the state. See Ogunde v. Prison Health Servs., Inc., 274 Va. 55, 645 S.E.2d 520 (2007). Reasoning that one purpose of the contract was to ensure the provision of quality health care services, the court found that the contract "clearly and definitely" indicated that the parties intended to confer a benefit on the inmates. Id. at 63, 645 S.E.2d at 525.

The Alabama Supreme Court likewise concluded that a prisoner was an intended beneficiary of a contract between the state and a private prison. See Rathke v. Corrs. Corp. of Am., 153 P.3d 303 (Ala. 2007). The court rejected a contrary reading that would "den[y] . . . inmates direct redress against the very institution charged with their day-to-day care and discipline." Id. at 311.

GEO has adequately alleged a third party beneficiary claim.

**B.     GEO Has Offered No Persuasive Reason to Disregard this Settled Rule.**

Without ever quoting or citing to its contract with the Federal Defendants, GEO asserts that the Plaintiffs may not enforce any of the specific provisions of the contract dealing with GEO's health care obligations. None of GEO's objections has merit.

Citing a Supreme Court decision from 1912, GEO first argues that "members of the public" are not entitled to enforce contracts between private contractors and the government, simply by virtue of their status as taxpayers. GEO Mem. at 15–18 (citing German Alliance Ins.

<u>Co.</u> v. <u>Home Water Supply Co.</u>, 226 U.S. 220 (1912) (concluding that "[t]he interest which each taxpayer had" in the contract at issue "was indirect—that incidental benefit only which every citizen has in the performance of every other contract made by and with the government")). Plaintiffs are not suing to secure "incidental benefit[s]" that are generally applicable to "every citizen"; and this is not just any contract. The obligations in the GEO Contract that Plaintiffs invoke are specifically intended to keep prisoners at Rivers—not the public at large—healthy and alive.

Nor is there any merit to GEO's assertion that this type of claim may only be brought when the "the language of the contract expressly provides for liability to a third-party. " GEO's Mot. 15 (citing <u>German Alliance Ins.</u>, 226 U.S. 220 and <u>Montana</u> v. <u>United States</u>, 124 F.3d 1269 (Fed. Cir. 1997)). Neither of GEO's authorities supports this proposition: the former establishes no such requirement, and the latter explicitly disavows he need for express language confirming third-party liability. <u>German Alliance Ins.</u>, 226 U.S. at 230; <u>Montana</u>, 124 F.3d at 1273.

Moreover, the Fourth Circuit has recently held in a case involving a government contract that "third-party beneficiary status is <u>not</u> reserved for those parties who benefit expressly under a given contract." <u>Trimble</u>, 484 F.3d at 706 (citation omitted and emphasis added). Thus, while older decisions from other jurisdictions could be construed as adopting a different standard,[25] in the Fourth Circuit the test is whether the parties intended to benefit the third party. <u>Id.</u> The GEO Contract accordingly need not "expressly provide" for third party

_____

[25] <u>See</u> <u>Nguyen</u> v. <u>U.S. Catholic Conference</u>, 719 F.2d 52 (3rd Cir. 1983); <u>Jama</u> v. <u>U.S. Immigration & Naturalization Serv.</u>, 334 F. Supp. 2d 662 (D. N.J. 2004).

claims in order to create enforceable rights, so long as it evidences an intent to benefit the third party.[26]

Finally, GEO's reliance on <u>Moore</u> v. <u>Gaither</u>, 767 A.2d 278 (D.C. 2001), is misplaced because the contract language at issue in that case was quite different. The contract in <u>Moore</u> stated that "its provisions are for the sole benefit of the Parties hereto and shall not be construed as conferring any rights on any other person." <u>Id.</u> at 288. GEO has not pointed the Court to any similar provision in the GEO Contract, nor are we aware of one. This distinction highlights, however, that GEO could easily have tried to limit the scope of its liability, had it intended to do so.

In sum, because the language of the GEO Contract evidences an intent to benefit Plaintiffs, and because the additional requirements that GEO seeks to impose are not applicable in this Circuit, GEO's motion to dismiss this claim should be denied.

## V. THE COURT NEED NOT ADDRESS GEO'S STATUTE OF LIMITATIONS ARGUMENT AT THIS TIME.

GEO states in general fashion that any claim falling outside the applicable statute of limitations should be dismissed, <u>see</u> GEO Mem. at 24-26, but GEO does not specify which claim on behalf of which Plaintiff it believes should be dismissed. Moreover, the statutes of limitation applicable to Plaintiffs' claims are tolled during the administrative exhaustion process. <u>See</u> <u>Brown</u> v. <u>Valoff</u>, 422 F.3d 926, 943 (9th Cir. 2005) ("[W]e agree with the uniform holdings of the circuits that have considered the question that the applicable statute of limitations must be tolled while a prisoner completes the mandatory exhaustion process"); <u>cf.</u> <u>Brown v. Olivencia-</u>

---

[26] Here, moreover, the GEO Contract quite clearly <u>does</u> contemplate third party claims against GEO. <u>See</u> First Am. Compl., Ex. A, SOW 8:22-26 (stating that the Government is not responsible for reimbursing GEO "for its liabilities to third parties . . . resulting in any way from the performance of this contract.").

Font, 2006 WL 212188 at *3 (D.S.C., Jan. 27, 2006) ("Filing a mandatory administrative grievance typically tolls the statute of limitations for a § 1983 action"). This analysis requires factual findings which are appropriately addressed at the summary judgment stage following discovery. GEO's statute of limitations argument is both insufficient as a matter of law and premature.

### REQUEST FOR HEARING

Plaintiffs respectfully request a hearing on the Defendants' motions to dismiss this action.

### REQUEST FOR LEAVE TO AMEND

Plaintiffs respectfully request leave to amend in the event that any of the claims asserted is found to be deficient.


Dated: February 26, 2009                          Respectfully Submitted,

                                                   /s/ Neil A. Riemann
                                                  Neil A. Riemann (NC Bar #19258)
                                                  PENRY RIEMANN LLP PLLC
                                                  510 Glenwood Avenue, Suite 319
                                                  Raleigh, NC 27603
                                                  919.833.9449 (ph)
                                                  919.833.9448 (fax)

                                                   /s/ Anthony Herman
                                                  Anthony Herman (DC Bar # 424643)
                                                  Danielle M. Estrada (DC Bar # 494517)
                                                  COVINGTON & BURLING LLP
                                                  1201 Pennsylvania Avenue N.W.
                                                  Washington, D.C. 20004
                                                  202.662.6000 (ph)
                                                  202.778.6000 (fax)

                                                  *Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that I have this 26th day of February, 2009, filed the foregoing using CM/ECF, which will serve all required parties by sending a Notice of Electronic Filing to all counsel of record.

_/s/ Neil A. Riemann_____
Neil A. Riemann