IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
Case No. 2:08-ct-00021-H

KEITH MATHIS, et al., )
)
Plaintiffs, )
) **REPLY BRIEF IN SUPPORT OF DEFENDANT**
v. ) **GEO GROUP, INC.'S MOTION TO DISMISS**
)
GEO GROUP, INC., et al., )
)
Defendants. )

## I. FOURTH CIRCUIT PRECEDENT DEMONSTRATES THAT PLAINTIFFS CANNOT MAINTAIN AN EIGHTH AMENDMENT CLAIM AGAINST GEO

As indicated in the Defendants' Briefs, the law in the Fourth Circuit is clear: when dealing with the federal government GEO is not a governmental actor, cannot violate the Constitution, and, as a result, cannot be held liable for violations of the Constitution. *Holly v. Scott*, 434 F.3d 287, 293-94 (4th Cir. 2006). The Fourth Circuit appropriately noted that "[t]he Bill of Rights is a negative proscription on *public* action – to simply apply it to *private* action is to obliterate a 'fundamental fact of our political order.'" *Id.* at 291 (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)) (emphasis in original). This limitation on the Constitution's application ensures individual freedom and supports the concept of limited government enshrined in the Constitution. *Id.* Therefore, the Court should grant GEO's Motion to dismiss because regardless of the label attached to the claim or the relief sought,[1] Plaintiffs' constitutional claim against GEO fails as a matter of law.[2]

---

[1] The Fourth Circuit Court of Appeals has previously indicated that the Court's jurisdiction to provide injunctive relief for alleged violations of constitutional rights arises out of the *Bivens* decision. *Ross v. Meese*, 818 F.2d 1132, 1134-35 (4th Cir. 1987) (citing *Bivens* in support of the proposition that "a district court possesses authority to order injunctive relief to remedy constitutional violations…."); *Phelps v. Hadden*, No. 94-6421, 1994 WL 273945 (4th Cir. June 22, 1994) (affirming Judge Howard's determination to construe the plaintiff's "action as one seeking injunctive relief pursuant to *Bivens*….").
[2] The claims in the *Hines* case were dismissed on these ground even though they sought injunctive and declaratory relief in addition to monetary damages.

Plaintiffs attempt to create a claim for injunctive relief against a private actor through a creative use of ellipses. Plaintiffs attempt to create a claim for injunctive relief arising out of an alleged constitutional violation against a private actor by citing selected portions of the Supreme Court's decision in *Correctional Services Corp. v. Malesko*, 534 U.S. 61 (2001). However, when the quotation is read in its entirety, it fails to support Plaintiffs' position. *Malesko* provided that "[i]nmates in respondent's position <u>also</u> have full access to remedial mechanisms <u>established by the BOP</u>, including suits in federal court for injunctive relief <u>and grievances filed through the BOP's Administrative Remedy Program (ARP)</u>." *Malesko*, 534 U.S. at 74 (portions omitted from Plaintiffs' brief are underlined). The focus of this quotation *Malesko* was on the remedies that inmates had against the governmental actor, not the private actor. Additionally, the *Malesko* Court held that injunctive relief "has long been recognized as the proper means for preventing entities from acting unconstitutionally." *Id.* Therefore, the Court should grant GEO's Motion to Dismiss because when dealing with the federal government GEO is not a governmental actor, cannot violate the constitution, and, as a result, cannot act unconstitutionally.

## II. PLAINTIFFS FAILED TO ESTABLISH THAT GEO IS SUBJECT TO THE REHABILITATION ACT

Contrary to Plaintiffs' assertion in their brief, GEO's primary argument regarding the Rehabilitation Act is that it cannot be held liable under the Rehabilitation Act because funds received from the Government pursuant to the Rivers Contract do not constitute federal financial assistance.[3] Operations at Rivers cannot be deemed a "program or activity" under the Rehabilitation Act unless GEO receives federal financial assistance. Plaintiffs attempt to preserve their Rehabilitation Act claim by relying upon a Supreme Court case, *Pennsylvania Department of Corrections v. Yeskey*, 524 U.S. 206 (1998), that determined whether state-run prisons are subject to the Americans with Disabilities Act. *Yeskey* did not discuss the Rehabilitation Act. Moreover, Plaintiffs failed to make any attempt to establish that they were discriminated against solely on the basis of their disability. Therefore, the Court

---

[3] GEO respectfully disagrees with the Federal Defendants' statement that Plaintiffs can directly enforce the provisions of the Rehabilitation Act against GEO. (Fed. Defs. Br. at 22.)

should grant GEO's Motion to Dismiss because Plaintiffs failed to rebut GEO's argument that it is not liable under the Rehabilitation Act.

### A. PLAINTIFFS CONCEDED THAT GEO IS NOT SUBJECT TO THE REHABILITATION ACT BY ADMITTING THAT GEO DOES NOT RECEIVE FEDERAL FINANCIAL ASSISTANCE

Tucked away in a footnote is Plaintiffs' admission that "Plaintiffs do not contend at this stage of the proceedings that GEO receives 'federal financial assistance' within the meaning of the Rehabilitation Act." This admission bars Plaintiffs' Rehabilitation Act claim against GEO. The Rehabilitation Act applies only to entities or programs that receive federal financial assistance. Therefore, the Court should grant GEO's Motion to Dismiss because GEO is not subject to the Rehabilitation Act.

The Rehabilitation Act applies to: (1) programs or activities receiving federal financial assistance and (2) under any programs or activities conducted by any Executive agency or by the United States Postal Service. 29 U.S.C. § 794(a). Unless the alleged discriminated occurred in the context of one of these two types of programs or activities, the Rehabilitation Act does not apply. The Rehabilitation Act defines program or activity as operations of the following: (1) state or local governmental entities, 29 U.S.C. § 794(b)(1); (2) local education agencies and institutions of higher learning, *id.* at § 794(b)(2); (3) private business entities receiving federal financial assistance or primarily engaged in certain areas, *id.* at § 794(b)(3); or (4) a joint venture between two or more of the entities previously described, *id.* at § 794(b)(4).

GEO's operation of Rivers does not qualify as a "program or activity" as those terms are defined in the Rehabilitation Act. *Id.* at § 794(b). GEO does not fall within subsection one of the definition a program or activity because it is not a department or agency of a state or local government. Nor does GEO fall under subsection two of the definition of a program or activity because it is not a local education agency or an institute of higher learning. Plaintiffs concession that GEO does not receive federal financial assistance reinforces GEO's argument that it does not fall under subsection three of the definition of a program or activity. Thus, as GEO's operation of Rivers does not fall under the definition

3

of a program or activity as that term is defined in the Rehabilitation Act, Plaintiffs' Rehabilitation Act claim fails as a matter of law. Thus GEO's Motion to Dismiss should be granted.

### B. THE *YESKEY* CASE IS INAPPLICABLE TO GEO BECAUSE IT INVOLVED WITH A SEPARATE PROVISION OF THE REHABILITATION ACT

After admitting that GEO does not receive federal financial assistance, Plaintiffs attempt to shoehorn GEO into the Rehabilitation Act by citing the Court to the Supreme Court's decision in *Pennsylvania Department of Corrections v. Yeskey*, 524 U.S. 206 (1998). The *Yeskey* Court did not hold that the Rehabilitation Act applies to prisons or that operation of a prison constitutes a program or activity under the Rehabilitation Act. Instead, the issue in *Yeskey* was "whether Title II of the Americans with Disabilities Act of 1990 (ADA) … which prohibits a 'public entity' from discriminating against a 'qualified individual with a disability' on account of that individual's disability, covers inmates in state prisons." *Id.* at 208 (citations omitted). The Court determined that "[s]tate prisons fall squarely within the statutory definition of 'public entity,' which includes 'any department, agency, special purpose district, or other instrumentality of a State or States or local government.'" *Id.* GEO is not a state prison. Thus, *Yeskey* did not address whether GEO's operations at Rivers are subject to the Rehabilitation Act.

*Yeskey* also provides no support for Plaintiffs' claim that GEO's operations at Rivers constitute a "program or activity" as those terms are defined in the Rehabilitation Act. *Yeskey* determined that the state prison "provide[d] prisoners with 'benefits' of 'programs, services, or activities' as those terms are ordinarily understood." *Id.* at 210. The Supreme Court relied upon the ordinary understanding of those terms because "[t]he text of the ADA provides no basis for distinguishing these programs, services, and activities from those provided by public entities that are not prisons." *Id.* at 210.

Unlike the ADA, the Rehabilitation Act explicitly defines what constitutes a program or activity. As outlined above, GEO's operations at Rivers do not fall within these definitions. This Court must use the specific definition of "program or activity" in the Rehabilitation Act, not the ordinary understanding

4

of these terms. *Yeskey* does not support Plaintiffs' assertion that GEO is subject to the Rehabilitation Act.[4].

### C. PLAINTIFFS MADE NO ATTEMPT TO DEMONSTRATE THAT THE ALLEGED DISCRIMINATION WAS BASED SOLELY UPON THEIR DISABILITY

In Plaintiffs' First Amended Complaint, they explicitly allege that GEO discriminated against Plaintiffs and others similarly situated not only because of their disability, but also to save money. The Rehabilitation Act's requires that discrimination must be based *solely* upon a plaintiff's disability. *Doe v. Univ. of Maryland Med. Sys. Corp.*, 50 F.3d 1261, 1264-65 (4th Cir. 1995); *Keene v. Thompson*, 232 F. Supp. 2d 574, 583-84 (M.D.N.C. 2002); *Piedmont Behavioral Health Ctr. v. Stewart*, 413 F. Supp. 2d 746, 756-57 (S.D. W.Va. 2006); *Gedrich v. Fairfax County Dep't. of Family Servs.*, 282 F. Supp. 2d 439, 470 (E.D. Va. 2003).Therefore, the Court should grant GEO's Motion to dismiss because Plaintiffs have conceded this point and that Plaintiffs' Rehabilitation Act claim fails as a matter of law.

### III. PLAINTIFFS CANNOT REMEDY THEIR FAILURE TO COMPLY WITH RULE 9(J) THROUGH AN AMENDMENT TO THE COMPLAINT

Plaintiffs attempt to amend their negligence claim to remedy their failure to comply with Rule 9(j) of the North Carolina Rules of Civil Procedure. Plaintiffs initially filed a Complaint seeking monetary damages for negligence in providing health care without the necessary Rule 9(j) certification. North Carolina's courts strictly apply the provisions of Rule 9(j) and have held that a failure to comply with Rule 9(j) is a fatal error that attaches at the time a complaint is filed.[5] *Thigpen v. Ngo*, 355 N.C. 198, 203, 558 S.E.2d 162, 166 (2002). Therefore the Court should grant GEO's Motion to Dismiss because Plaintiffs' attempt to amend their Complaint does not erase their failure to comply with Rule 9(j).

---

[4] Plaintiffs cite *Key v. Greyman*, 179 F.3d 996, 997 (6th Cir. 1999), for the proposition that the Rehabilitation Act applies to prisons. However, the court in *Key* simply asserts, without any discussion, that *Yancey* applied the Rehabilitation Act to prisons. As there is no mention of the Rehabilitation Act in *Yancey*, this assertion is suspect and should be given little weight, if any, by this Court.

[5] The availability of monetary damages to Plaintiffs for medical negligence and other claims calls into serious question whether plaintiffs can establish that they lack an adequate remedy at law for their alleged injuries.

5

## IV. PLAINTIFFS FAILED TO ESTABLISH HAT THEY ARE ENTITLED TO BRING A THIRD PARTY BREACH OF CONTRACT CLAIM AGAINST GEO

GEO's position on the third-party breach of contract was very specific: under federal common law a member of the public cannot sue to enforce the provisions of a contract between the federal government and a federal contractor unless (1) the contract reflects the intent to benefit the alleged third-party beneficiary, and (2) the contract gives the third-party the direct right to compensation or to enforce that right against the promisor. Plaintiffs attempt to rebut this argument by citing a case in which a foreign government sued a federal contractor to enforce the terms of a federal contract, a wholly different situation from the one presented here. Additionally, Plaintiffs ignore GEO's argument and, more importantly, the provisions of the Rivers Contract that demonstrate that there is no intent to provide third-parties with a right to enforce the terms of the contract.

### A. *TRIMBLE* IS INAPPLICABLE TO THIS CASE BECAUSE IT DID NOT INVOLVE A CLAIM BY A MEMBER OF THE PUBLIC AGAINST A FEDERAL CONTRACTOR

Plaintiffs rely heavily upon *Secretary of State for Defense v. Trimble Navigation, Limited*, 484 F.3d 700 (4th Cir. 2007), to rebut GEO's contention that members of the public are incidental beneficiaries to government contracts unless a different intent is manifested in the contract. *Trimble* does not support for Plaintiffs' claims because it does not present a situation where members of the public seek to enforce a contract between the government and a federal contractor. Instead, in *Trimble* a foreign government sought to enforce a contract between the United States and a federal contractor. The difference in the status of the plaintiffs in *Trimble* and this case is material and dispositive regarding Plaintiffs' attempt to establish their third-party beneficiary status.

*Trimble* involved a claim for breach of contract by the United Kingdom Ministry of Defense ("UK MOD") against Trimble Navigation ("Trimble"), a defense contractor. Trimble produced auxiliary output chips ("AOCs") for use in global positioning satellite devices. *Id.* at 703. Trimble agreed to produce and deliver AOCs pursuant to a series of four contracts with the United States. *Id.* UK MOD and the United States entered into a separate contract whereby the United States agreed to provide UK

6

MOD with AOCs produced by Trimble. *Id.* Recurring problems with the AOCs produced by Trimble led UK MOD to file a third-party breach of contract claim against Trimble. *Id.* at 705. UKMOD claimed "that Trimble breached its contract with the United States and that this breach harmed UK MOD as a third-party beneficiary, who could sue to enforce rights under the US-Trimble contracts." *Id.*

The Fourth Circuit relied upon the test set forth in *Schuerman v. United States*, 30 Fed. Cl. 420, 433 (Fed. Cl. 1994), and *Montana v. United States*, 124 F.3d 1269, 1273 (Fed. Cir. 1997), to "determine the appropriate test under federal common law for third party beneficiary status" in Trimble. *Trimble*, 484 U.S. at 706. Similarly, *Schuerman* and *Montana* provide the grounds for rejecting Plaintiffs' third-party beneficiary claim. Unlike *Trimble*, a two-part test is used to determine third-party beneficiary status when a "members of the public bring suit against promisors who contract with the government to render a public service. In this situation, members of the public are considered to be incidental beneficiaries unless they can show a direct right to compensation." *Montana*, 124 F.3d at 1273 n.6 (citing *Schuerman*, 30 Fed. Cl. at 430).

Plaintiffs status as members of the public, as opposed to a foreign sovereign, renders *Trimble* inapplicable to this action. Instead, under *Montana* and *Schuerman* Plaintiffs are required to demonstrate that the Rivers Contract (1) reflects the intent to benefit the alleged third-party beneficiary, and (2) gives the third-party the direct right to compensation or to enforce that right against the promisor. *Montana*, 124 F.3d at 1273 n.6 (citing *Schuerman*, 30 Fed. Cl. at 430). Plaintiffs have not and cannot provided any support for either prong of this test. To the contrary, the terms of the Rivers Contract show that Plaintiffs cannot maintain an action as third-party beneficiaries.

### B. THE TERMS OF THE RIVERS CONTRACT EXPLICITLY STATE THAT IT DOES NOT PROVIDE THIRD PARTIES WITH ANY BENEFITS

In their response Plaintiffs assert, "[w]ithout ever quoting or citing to its contract with the Federal Defendant, GEO asserts that the Plaintiffs may not enforce any of the specific provisions of the contract dealing with GEO's health care obligations." Plaintiffs go on to contend that their claim is not foreclosed by the reasoning of *Moore v. Gaither*, 767 A.2d 278 (D.C. 2001), because "GEO has not pointed the

7

Court to any similar provision in the GEO Contract, nor are we aware of one." (Pl. Br. at 58.) Plaintiffs are wrong.

The terms of the Rivers Contract demonstrate that Plaintiffs are nothing more than incidental beneficiaries and do not have a direct right to compensation for breaches of the Rivers Contract. The only provisions of the Rivers Contract dealing with third party claims demonstrate an intent not to provide a right of action to third parties. Like the contract in *Moore*, the Rivers Contract specifically provides that "[i]n awarding the contract, the Government does not assume any liability to third parties…" (First Am. Compl. Ex. A, Part 1 at 17:22-23.)[6] This is the only portion of the contract dealing with liability of third parties. Thus, GEO and the BOP specifically expressed their intention that Plaintiffs have no direct right to compensation or ability to enforce the Rivers Contract.

Plaintiffs assert that a direct right to compensation is demonstrated by the portion of the Rivers Contract that provides, "that the Government is not responsible for reimbursing GEO "for its liabilities to third parties . . . resulting in any way from the performance of this contract." The actual language of the Rivers Contract is much less helpful to Plaintiffs' cause. The language omitted by Plaintiffs' ellipses states that the government will not reimburse GEO for claim by third parties "with respect to loss due to death, bodily injury, or damage to property[.]" (First Am. Compl. Ex. A, Part 1 at 17). Thus, the provision cited by Plaintiffs, if considered in its entirety, indicates that the government will not reimburse GEO for claims brought by third parties for tortious conduct. This provision and has no bearing on whether Plaintiffs can directly enforce the Rivers Contract.

The Rivers Contract does explicitly provide Rivers Inmates with certain rights. In the section labeled "Inmates Rights," GEO is required to comply with the Religious Freedom Restoration Act and ensure that Rivers Inmates have access to the BOP's administrative remedy process. (First Am. Compl. Ex. A, Part 1 at 39.) Inclusion of the Inmates Rights section of the Rivers Contract demonstrates that if the government and GEO wished to explicitly provide inmates with third-party beneficiary rights in the Rivers Contract, they knew how to do so. The absence of language providing inmates a direct right to

---

[6] This language was quoted and discussed at page 18 of GEO's principal brief.

enforce the provisions of the Rivers Contract through a breach of contract action forecloses Plaintiffs' ability to proceed as third-party beneficiaries.

Plaintiffs' ability to directly enforce the provisions of the Rivers Contract are further foreclosed by the provisions of the Rivers Contract regarding breach of the agreement. The Rivers Contract sets forth an elaborate system of inspections and reviews to determine if GEO is complying with the terms of the Rivers Contract. (First Am. Compl. Ex. A, Part 1 at 16:28-31, 51-53; Part 2 at 11-34.) In the event that GEO is not complying with the terms of the Rivers Contract, the BOP may reduce or withhold payments due to GEO under the provisions of the Rivers Contract. (First Am. Compl. Ex. A, Part 2 at 21.) The extensive inspection and enforcement mechanism set forth in the contract further demonstrates that the Rivers Contract does not provide Plaintiffs with a direct right to enforce the contract as third-party beneficiaries.

## CONCLUSION

Based upon the foregoing arguments and authorities, GEO's Motion to Dismiss should be granted.

This the 2nd day of April, 2009.

**WOMBLE CARLYLE SANDRIDGE & RICE, PLLC**

By: /s/ Robert T. Numbers II
JAMES R. MORGAN, JR.(Bar No. 12496)
ROBERT T. NUMBERS, II (Bar No. 34134)
W. ELLIS BOYLE (Bar No. 33826)
One West Fourth Street
Winston-Salem, North Carolina 27101
Phone: (336) 721-3600
Fax: (336) 721-3660
E-mail: jmorgan@wcsr.com
E-mail: rnumbers@wcsr.com
E-mail: eboyle@wcsr.com
*Attorneys for Defendant GEO Group, Inc.*

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on April 2, 2009, a copy of the foregoing **REPLY BRIEF IN SUPPORT OF DEFENDANT GEO GROUP, INC.'S MOTION TO DISMISS** was filed electronically with the Clerk of Court using CM/ECF system with notice of case activity to be generated and sent electronically by the Clerk of Court to the following parties registered to receive such service:

Danielle M. Estrada
Covington & Burling, LLP
Email: destrada@cov.com
*Attorneys for Plaintiffs*

Neil A. Riemann
Penry Riemann, PLLC
Email: neil.riemann@penryriemann.com
*Attorneys for Plaintiffs*

Anthony Herman
Covington & Burling, LLP
Email: aherman@cov.com
*Attorneys for Plaintiffs*

Deborah M. Golden
Washington Lawyers' Committee for Civil
Rights & Urban Affairs
Email: Deborah_golden@washlaw.org
*Attorneys for Plaintiffs*

Kathryn L. Wyer
U. S. Dept. of Justice
Email: Kathryn.wyer@usdoj.gov
*Attorneys for Federal Defendants*

R. A. Renfer, Jr.
U. S. Attorney's Office
Email: Rudy.renfer@usdoj.gov
*Attorneys for Federal Defendants*

Philip J. Fornaci
Washington Lawyers' Committee for Civil
Rights & Urban Affairs
Email: Philip_fornaci@washlaw.org
*Attorneys for Plaintiffs*

                                                     **WOMBLE CARLYLE SANDRIDGE & RICE**
                                                     *A Professional Limited Liability Company*

By:    /s/ Robert T. Numbers II_____
          ROBERT T. NUMBERS, II (Bar No. 34134)
          WOMBLE CARLYLE SANDRIDGE & RICE
          *A Professional Limited Liability Company*
          One West Fourth Street
          Winston-Salem, North Carolina 27101
          Phone: (336) 721-3600
          Fax: (336) 721-3660
          E-mail: rnumbers@wcsr.com
          *Attorneys for Defendant GEO Group, Inc.*