IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:08-CT-00021-H

| | | |
|---|---|---|
| KEITH MATHIS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GEO GROUP, INC.; UNITED STATES OF AMERICA, through its department, the FEDERAL BUREAU OF PRISONS; and HARLEY LAPPIN, in his official capacity as Director of the FEDERAL BUREAU OF PRISONS, | ) | FEDERAL DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS |
| | ) | |
| Defendants. | ) | |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................... iii

INTRODUCTION .................................................................................... 1

ARGUMENT .................................................................................... 1

I. PLAINTIFFS' EIGHTH AMENDMENT CLAIMS AGAINST FEDERAL DEFENDANTS MUST BE DISMISSED .................................................................................... 1

A. The Fourth Circuit Has Already Decided That Actions of GEO Employees Do Not Qualify as Government Action .................................................................................... 2

B. Even If Provision of Medical Care at Rivers Qualifies As Government Action, Plaintiffs Have Not Stated a Claim Against Federal Defendants .................................................................................... 4

II. PLAINTIFFS FAIL TO STATE A CLAIM AGAINST FEDERAL DEFENDANTS UNDER SECTION 504 OF THE REHABILITATION ACT .................................................................................... 6

A. No Court Has Ever Found an Implied Right of Action Under Section 504 Against a Federal Agency Based on the Actions of Its Contractor .................................................................................... 6

B. The Court Can Sua Sponte Require Plaintiffs To Show Exhaustion .................................................................................... 9

C. Calland's Allegations Regarding Inadequate Medical Care Fail to State a Claim for Relief Under Section 504 .................................................................................... 10

CONCLUSION .................................................................................... 10

## TABLE OF AUTHORITIES

**CASES**

Alexander v. Sandoval, 532 U.S. 275 (2001) ....................7

Am. Council of Blind v. Astrue, No. C05-4696, 2008 WL 1858928 (N.D. Cal. Apr. 23, 2008) ....7

Baker v. Dist. of Columbia, 326 F.3d 1302 (D.C. Cir. 2003) ....................6

Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics, 403 U.S. 388 (1971) ..............2

Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288 (2001) ....................3

Cousins v. Sec'y of DOT, 880 F.2d 603 (1st Cir. 1989) ....................7

Dodd v. Blue Cross & Blue Shield Ass'n, 835 F. Supp. 888 (E.D. Va. 1993) ....................8

Farmer v. Brennan, 511 U.S. 825 (1994) ....................4

Heckler v. Chaney, 470 U.S. 821 (1985) ....................6

Holly v. Scott, 434 F.3d 287 (4th Cir. 2006) ....................2, 3, 6

Johnson v. N.C. Dep't of Health & Human Servs., 454 F. Supp. 2d 467 (M.D.N.C. 2006) ..........1

Lane v. Pena, 518 U.S. 187 (1996) ....................7, 8

Logue v. United States, 412 U.S. 521 (1973) ....................5

Long Term Care Partners, LLC v. United States, 516 F.3d 225 (4th Cir. 2008) ....................7-8

Mendez v. Gearan, 947 F. Supp. 1364 (N.D. Cal. 1996) ....................7

Mentavlos v. Anderson, 249 F.3d 301 (4th Cir. 2001) ....................3

Miller v. Rosenker, 578 F. Supp. 2d 107 (D.D.C. 2008) ....................1

Moore v. Bennette, 517 F.3d 717 (4th Cir. 2008) ....................9

O'Guinn v. Lovelock Corr. Ctr., 502 F.3d 1056 (9th Cir. 2007) ....................9

Pandazidas v. Va. Bd. of Educ., 13 F.3d 823 (4th Cir. 1994) ....................7

Rendell-Baker v. Kohn, 457 U.S. 830 (1982) ....................................................................3

Robb v. United States, 80 F.3d 884 (4th Cir. 1996) ..........................................................5

San Carlos Apache Tribe v. United States, 417 F.3d 1091 (9th Cir. 2005) ..................................7

Veloz v. State of New York, 339 F. Supp. 2d 505 (S.D.N.Y. 2004) ..........................................9

West v. Atkins, 487 U.S. 42 (1988) ....................................................................2, 3, 4, 6

William G. v. Pataki, No. 03-8331, 2005 WL 1949509 (S.D.N.Y. Aug. 12, 2005) ......................9

**STATUTES**

Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706 ....................................................7

5 U.S.C. § 704 .............................................................................................................8

5 U.S.C. § 706 .............................................................................................................7

Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ..................................................1, 6-10

42 U.S.C. § 1983 ..........................................................................................................3

Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e .......................................................9

**REGULATIONS**

28 C.F.R. § 39.170 .......................................................................................................9

## INTRODUCTION

In their opposition brief, plaintiffs continue to insist that it simply makes no difference that the setting for their claimed violations of the Eighth Amendment and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, is a private prison, Rivers Correctional Institution ("Rivers"), operated by a private company, codefendant GEO Group, Inc. ("GEO" or "GEO Group"), pursuant to a congressionally-mandated contract with the Federal Bureau of Prisons ("BOP"). Plaintiffs' theory that all activities that take place in Rivers are directly and automatically imputed to the federal government is untenable. While plaintiffs accuse federal defendants of attempting to dodge responsibility, the fact is that plaintiffs have refused to offer any framework in which the BOP's obligations could reasonably be evaluated. In sum, plaintiffs fail to state Eighth Amendment or Rehabilitation Act claims against federal defendants.

## ARGUMENT[1]

### I. PLAINTIFFS' EIGHTH AMENDMENT CLAIMS AGAINST FEDERAL DEFENDANTS MUST BE DISMISSED

Plaintiffs do not dispute that medical care at Rivers is provided by GEO Group employees or contractors. Pl. Br. at 5-6. That indisputable fact raises two separate issues with respect to whether plaintiffs state a claim against federal defendants based on allegedly unconstitutional

[1]Federal defendants argued in their opening brief that the claims of two of the three named plaintiffs, Collins and Roe, are moot because they are no longer incarcerated at Rivers. Fed. Def. Op. Br. at 26-28. Plaintiffs do not contest that argument in their opposition brief, and it therefore stands as conceded. See, e.g., Miller v. Rosenker, 578 F. Supp. 2d 107, 111-12 (D.D.C. 2008) ("Plaintiff failed to respond to . . . six arguments that Defendant made in his Motion to Dismiss . . . [and][a]s a consequence, Plaintiff is deemed to have conceded all six of those arguments"); Johnson v. N.C. Dep't of Health & Human Servs., 454 F. Supp. 2d 467, 469 n.1 (M.D.N.C. 2006) (treating plaintiff's failure to respond to arguments raised by defendants in a motion to dismiss as concession). Collins and Roe should therefore be dismissed as plaintiffs regardless of the Court's ruling with respect to the claims of plaintiff Calland.

medical care at Rivers: (1) whether the actions of GEO Group employees or contractors qualify as government action (in the absence of which, no constitutional violation is possible), and (2) whether, and under what framework, federal defendants are the proper defendants for an Eighth Amendment claim in this context. Plaintiffs steadfastly adhere to the position that they need only address the first issue. In so doing, they ignore the fact that case law addressing what constitutes government action – including West v. Atkins, 487 U.S. 42 (1988), on which plaintiffs rely – is almost uniformly limited to the context of claims against the nongovernmental entities or actors that directly caused the alleged injury, not against the government agency or official that contracted for the nongovernmental entity or actor's services. By skipping over the second issue as if it does not exist, plaintiffs ignore the unprecedented nature of their claim against federal defendants and fail to establish any basis on which such a claim can proceed.

**A. The Fourth Circuit Has Already Decided That Actions of GEO Employees Do Not Qualify as Government Action**

The first issue identified above – whether the actions of individuals employed or contracted by GEO to provide medical care qualify as government action – is a prerequisite to any constitutional claim at all, whether against GEO or federal defendants. It is this very issue that was addressed by the Fourth Circuit in Holly v. Scott, 434 F.3d 287, 292 (4th Cir. 2006) (addressing "whether state action is present"). Plaintiffs attempt to distinguish Holly on the basis that the plaintiff in Holly asserted damages claims against individual GEO employees pursuant to Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics, 403 U.S. 388 (1971). Pl. Br. at 17-21. However, there can be no question that the court in Holly considered and rejected the application of the "public function" theory of government action to actions of GEO employees at

Rivers. Holly, 434 F.3d at 293-94. The court expressly assumed that the state action analysis that applies in a 42 U.S.C. § 1983 claim – and that also applies in a claim for injunctive relief brought directly under the Constitution – also applies in a Bivens suit, and expressly rejected the position, espoused by plaintiffs here, that West v. Atkins, 487 U.S. 42 (1988), "properly governs this case," Pl. Br. at 18. Cf. Holly, 434 F.3d at 294. The "critical" distinction that the court drew in Holly between West and the case before it was not that the case before it was a Bivens claim but that the case before it involved a "correctional facility [that] is privately run" – namely, Rivers. Id. The holding on this point in Holly cannot be "limited," as plaintiffs suggest, to Bivens claims, see Pl. Br.at 19, because the issue of whether the operation of Rivers is a "public function," and thus qualifies as government action, is the same in a claim for injunctive relief. See Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982) (recognizing that the analysis of whether an action qualifies as government action is the same whether a claim is brought for damages under § 1983 or for injunctive relief directly under the Constitution). The Fourth Circuit squarely addressed that issue in Holly and held that the provision of medical care at Rivers does not constitute a public function.[2] That ruling is controlling here and bars any constitutional claim – against any defendant

[2]Plaintiffs do not argue that the provision of medical care at Rivers qualifies as government action on any basis other than as a "public function." See Pl. Br. at 17 (citing First Am. Compl. ¶¶ 32, 66). For example, they do not argue that the BOP is "pervasive[ly] entwine[d]" in GEO operations at Rivers. See Mentavlos v. Anderson, 249 F.3d 301, 312 (4th Cir. 2001) (quoting Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 298 (2001)). Significantly, the degree of "entwinement" that would be required for such a theory to prevail is far different from the "supervision and control" standard, which plaintiffs persist in misapplying here but which, as federal defendants explained in their opening brief, actually is relevant only for determining whether an individual qualifies as a government employee for purposes of a Federal Tort Claims Act ("FTCA") claim against the United States. Fed. Def. Op. Br. at 10-11. The court in Holly addressed the possibility of entwinement in passing when it noted that there was no indication that GEO employees "colluded with federal officials in making the relevant decisions" regarding medical care that were at issue. Holly, 434 F.3d at 293. The

– based on operations at Rivers.

### B. Even If Provision of Medical Care at Rivers Qualifies As Government Action, Plaintiffs Have Not Stated a Claim Against *Federal* Defendants

Even if plaintiffs could overcome the contrary Fourth Circuit precedent that controls the first issue identified above, they have failed to explain how the second – whether any constitutional claims based on operations at Rivers may properly be brought against federal defendants, rather than against GEO – could be resolved in their favor. Because government action is a prerequisite to any constitutional claim, the Court need not reach this issue if it agrees that Holly controls. Even if the Court rejects the applicability of Holly, however, plaintiffs fail to establish the basis for a claim against federal defendants. Plaintiffs appear to overlook the fact that even where government action on the part of a private entity or individual is identified, the claims at issue are allowed to proceed only against the private entity or individual that acted, not against a government entity or official. In West, for example, the Supreme Court authorized an Eighth Amendment claim against Atkins, the contracting physician who "voluntarily assumed" the constitutional obligation, not against the state. 487 U.S. at 56. Federal defendants are unaware of any case upholding a constitutional claim against the government based on the operations of a private company, and plaintiffs cite none, nor do they offer a workable framework upon which such a claim could be premised. Plaintiffs first suggest that federal defendants can be held "directly liable" for allegedly inadequate medical care at Rivers because federal defendants, "through their employees and agents, had actual knowledge" of inadequate medical care at Rivers. Pl. Br. at 14. The only case plaintiffs cite for this proposition is Farmer v. Brennan, 511 U.S. 825,

---

same is true here. In any case, because plaintiffs have failed to raise any such argument, the Court may deem it waived for purposes of this case.

837 (1994), which addressed the "deliberate indifference" standard for Bivens claims against individual prison officials and concluded that it required the named defendant (not his employee or agent) to have actual knowledge of a significant risk of harm. Because federal defendants here are not individual prison officials with the capacity for "subjective" knowledge, the Farmer standard cannot apply. See id. at 840-41 (distinguishing standard applicable to individual liability from that applicable to a government entity, such as a municipality – or, here, a federal agency).

Plaintiffs also address the issue of "supervisory liability," which federal defendants have pointed out "makes no sense" outside the FTCA context, and which federal defendants addressed only because plaintiffs' Complaint uses language that appears to invoke this inapplicable theory. See Fed. Def. Op. Br. at 9, 10 n.5. Rather than providing any support at all for the notion that this standard applies here, plaintiffs agree that "FTCA case law . . . is inapplicable." Pl. Br. at 22. Yet they also insist that discovery is necessary in order to resolve "fact questions" regarding whether federal defendants do exercise "supervision and control" over Rivers operations. Pl. Br. at 23. By conceding that FTCA cases do not apply, and by failing to cite any case outside the FTCA context that applied a "supervision and control" standard to assess constitutional claims against a federal agency, plaintiffs essentially concede that the "supervision and control" standard is irrelevant here. Discovery related to that standard would thus serve no purpose.[3]

---

[3]To the extent the Court deems plaintiffs' discussion relevant at all, federal defendants dispute plaintiffs' assertion that discovery might reveal that federal defendants supervised or controlled any aspect of health care delivery in Rivers. In Logue v. United States, 412 U.S. 521, 529-30 (1973), the Court relied on the governing statute and contract to determine that county jail employees were not akin to BOP employees, deeming it sufficient that the contract did not give BOP employees the authority to physically supervise the conduct of contractor employees. See Robb v. United States, 80 F.3d 884, 888 (4th Cir. 1996). While plaintiffs allege the BOP-GEO contract is different because it provides for a BOP "monitor" at Rivers, Pl. Br. at 23, there is no indication that this monitor "supervises" the provision of medical care.

Plaintiffs also reject the notion that their claims against federal defendants are based on an alleged "failure to enforce" the contractual provisions that require GEO to provide medical care in accord with various standards. Pl. Br. at 24. At the same time, plaintiffs assert that Heckler v. Chaney, 470 U.S. 821 (1985), is distinguishable because it involved an APA claim that an agency had failed to enforce a statutory requirement, and they argue that federal defendants' "inaction" may form the basis of a constitutional claim. The fundamental problem is that plaintiffs still do not offer any framework for such a claim in this context.[4] In the absence of such a framework, plaintiffs fail to state an Eighth Amendment claim against federal defendants.

## II. PLAINTIFFS FAIL TO STATE A CLAIM AGAINST FEDERAL DEFENDANTS UNDER SECTION 504 OF THE REHABILITATION ACT

### A. No Court Has Ever Found an Implied Right of Action Under Section 504 Against a Federal Agency Based on the Actions of Its Contractor

Plaintiffs concede that no express right of action is set forth in Section 504 of the Rehabilitation Act based on activities "conducted by" a federal agency, and that any right of action that may exist must therefore be implied. See Pl. Br. at 37. Yet, rather than squarely addressing the question of whether an implied right of action against the BOP exists in this context, plaintiffs simply list a number of cases that have recognized an implied right of action

---

[4]The APA claim at issue in Chaney was brought under the cause of action set forth in 5 U.S.C. §§ 701-706. Chaney, 470 U.S. at 825. Even if plaintiffs here had asserted this APA cause of action against federal defendants (which they have not), it would necessarily fail because APA claims are barred where plaintiffs have an "adequate remedy" elsewhere, 5 U.S.C. § 704, and plaintiffs have such a remedy here against GEO or its employees. Cf. West, 487 U.S. at 56; Holly, 434 F.3d at 296. Plaintiffs also fail to allege facts that, if true, would establish that federal defendants have a "policy" of refusing to enforce the BOP-GEO contract, nor do they identify any policy of federal defendants as the "moving force" behind the violations that they allege. See Baker v. Dist. of Columbia, 326 F.3d 1302, 1306 (D.C. Cir. 2003) (requiring that such a policy be identified in order to state a claim against the contracting governmental entity based on alleged constitutional violations in a contract facility); Fed. Def. Op. Br. at 9 n.4.

may exist against non-federal entities[5] or that did not address the issue at all. In particular, plaintiffs rely on a number of cases that have addressed the remedies available against a federal agency in a suit claiming a Section 504 violation. Those cases have recognized, in accord with Lane v. Pena, 518 U.S. 187 (1996), that injunctive relief, but not damages, is available for Section 504 violations. However, most of those cases fail to identify the plaintiffs' cause of action.[6] Where a plaintiff seeks injunctive relief for an alleged Section 504 violation based on actions allegedly committed by a federal agency, the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, provides an express cause of action. Id. § 706(2)(A) (setting forth cause of action to overturn agency action that is "contrary to law"); cf. Cousins v. Sec'y of DOT, 880 F.2d 603, 605 (1st Cir. 1989). In such cases, the BOP has not contested that a right of action exists.

Here, however, the APA cause of action is unavailable because plaintiffs have "'[an]other adequate remedy in a court.'" Long Term Care Partners, LLC v. United States, 516 F.3d 225,

---

[5]Plaintiffs cite Pandazidas v. Va. Bd. of Educ., 13 F.3d 823, 828 (4th Cir. 1994), which simply noted that the existence of a private right of action was not at issue and proceeded to address whether the plaintiff had a right to a jury trial. Neither Pandazidas nor the cases it cited involved a suit against a federal agency.

[6]The only decisions cited by plaintiffs that squarely address the issue are an unpublished Northern District of California decision which indicated that its holding was required by Ninth Circuit authority decided prior to the Supreme Court's ruling in Alexander v. Sandoval, 532 U.S. 275, 286 (2001), and an earlier pre-Sandoval decision of the same court. Am. Council of Blind v. Astrue, No. C05-4696, 2008 WL 1858928, at *7 n.4 (N.D. Cal. Apr. 23, 2008); Mendez v. Gearan, 947 F. Supp. 1364, 1367 (N.D. Cal. 1996). The fact that the Ninth Circuit has, in other contexts, recognized and adopted Sandoval's "lesson" that "'[t]he express provision of one method of enforcing a substantive rule [– i.e., through the APA – ] suggests that Congress intended to preclude others,'" San Carlos Apache Tribe v. United States, 417 F.3d 1091, 1095 (9th Cir. 2005) (second alteration added) (quoting Sandoval, 532 U.S. at 290 in support of its holding that plaintiffs were limited to an APA cause of action against the federal government rather than an implied right of action under the National Historic Preservation Act), strongly suggests that Am. Council's holding on this point is unlikely to survive appellate review.

233 (4th Cir. 2008) (quoting 5 U.S.C. § 704). As argued in federal defendants' opening brief, the BOP's position is that (1) Section 504 does not contain an implied right of action against federal agencies, and (2) the APA cause of action is unavailable here (even if it were asserted in plaintiffs' complaint) because plaintiffs do have an adequate remedy – in the form of an action directly against GEO. See Fed. Def. Op. Br. at 17-23. The principle of sovereign immunity is critical to an analysis of both these issues. While sovereign immunity limits implied causes of actions against federal agencies, Lane, 518 U.S. at 193, and precludes finding an implied right of action against the BOP here,[7] there is no parallel restriction applicable to a private corporate entity. Thus, a court may find that an implied right of action exists against the BOP's private contractor, particularly where that entity is the one that allegedly committed the Section 504 violation in question. As federal defendants have explained, because that direct cause of action against GEO provides an adequate remedy, no APA claim against the BOP is available.

Plaintiffs themselves distinguish Dodd v. Blue Cross & Blue Shield Ass'n, 835 F. Supp. 888 (E.D. Va. 1993), which GEO cites for the proposition that federal agencies bear responsibility for complying with Section 504 in the context of procurement contracts. As plaintiffs recognize, the issue in Dodd was whether the terms of the contract were in compliance with Section 504, not whether the activities that the contracting entity undertook pursuant to the contract were in compliance. Pl. Br. at 32-33. Dodd thus provides no basis for finding a cause of

---

[7]Federal defendants have explained in their opening brief that because a waiver of sovereign immunity must be express, and because the APA already provides a framework for claims seeking injunctive relief against a federal agency, there is no basis for the Court to find an implied right of action against the BOP under Section 504. Fed. Def. Op. Br. at 17-21. Plaintiffs offer nothing to rebut this argument, first addressing only whether injunctive relief, rather than a right of action, is available, Pl. Br. at 34, and then failing to address the role of sovereign immunity in interpreting implied rights of action against the federal government, Pl. Br. at 34-35.

action against the BOP based on GEO activities, but not against GEO itself.

**B. The Court Can Sua Sponte Require Plaintiffs To Show Exhaustion**

While plaintiffs need not plead exhaustion in order to comply with the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, there is no dispute that exhaustion is required, and the Fourth Circuit has held that "a complaint may be dismissed on exhaustion grounds so long as the inmate is first given an opportunity to address the issue." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). Plaintiffs here have been given that opportunity but have failed to demonstrate, or even allege, that they have exhausted the administrative remedy available pursuant to 28 C.F.R. § 39.170. See Marks Decl. (ex. A) ¶ 5 (no complaints by named plaintiffs were filed). Moreover, contrary to plaintiffs' assertions, there is no reason to consider the remedy set forth in 28 C.F.R. § 39.170 as somehow outside the realm of "available" remedies for purposes of the PLRA exhaustion requirement. Plaintiffs misstate the holding in O'Guinn v. Lovelock Corr. Ctr., 502 F.3d 1056 (9th Cir. 2007), by suggesting that the court found that exhaustion of the § 39.170 remedy was not required. Pl. Br. at 40. To the contrary, the court in that case held that the PLRA does impose an exhaustion requirement on Section 504 claims, that the plaintiff's pursuit of that remedy was not sufficient to satisfy exhaustion, and that the internal prison remedies must also be exhausted. O'Guinn, 502 F.3d at 1062.[8] Plaintiffs have provided no basis for concluding that the § 39.170 process was unavailable to them, and it thus must be exhausted.

---

[8]Plaintiffs also cite S.D.N.Y. decisions that have held, in contrast to William G. v. Pataki, No. 03-8331, 2005 WL 1949509 (S.D.N.Y. Aug. 12, 2005), that the PLRA does not require exhaustion of DOJ remedies. Those cases reach that holding based on a rather elaborate analysis of Congress' intent in establishing the PLRA exhaustion requirement. See, e.g., Veloz v. State of New York, 339 F. Supp. 2d 505 (S.D.N.Y. 2004). William G., on the other hand, relies simply on the plain meaning of "such administrative remedies as are available" in 42 U.S.C. § 1997e(a). 2005 WL 1949509, at *4-5. As such, William G. is the more persuasive opinion.

### C. Calland's Allegations Regarding Inadequate Medical Care Fail to State a Claim for Relief Under Section 504

Calland (the only plaintiff whose claims are not moot) asserts denial of physical access to various parts of the Rivers facility and denial of physical therapy. Am. Compl. ¶ 11. Plaintiffs' admission that physical therapy was entirely unavailable at Rivers precludes a claim that Calland or others were denied such therapy "solely by reason of" their disability. Indeed, plaintiffs fail to cite any authority for the proposition that inadequate medical care qualifies as a Section 504 violation, and the authority federal defendants have cited to the contrary, Fed. Def. Op. Br. at 25, thus stands unopposed. To the extent plaintiffs rest their Section 504 claim on allegedly inadequate medical care, therefore, it fails as a matter of law.

## CONCLUSION

For the foregoing reasons, as well as those set forth in federal defendants' opening brief, the claims asserted against federal defendants should be dismissed.

April 6, 2009

Respectfully submitted,

MICHAEL F. HERTZ
Acting Assistant Attorney General
GEORGE E.B. HOLDING
United States Attorney
VINCENT M. GARVEY
Deputy Branch Director

/s/ Kathryn L. Wyer
KATHRYN L. WYER
U.S. Department of Justice, Civil Division
20 Massachusetts Ave. NW
Washington, D.C. 20530
Tel: (202) 616-8475 / Fax: (202) 616-8470
kathryn.wyer@usdoj.gov
*Attorneys for Federal Defendants*

**CERTIFICATE OF SERVICE**

I do hereby certify that I have this 6th day of April, 2009, served a copy of the foregoing upon the parties in this case electronically through the Court's ECF system.

/s/ Kathryn L. Wyer
Kathryn L. Wyer