1         UNITED STATES DISTRICT COURT
         EASTERN DISTRICT OF NORTH CAROLINA
2                 NORTHERN DIVISION

3

4    KEITH MATHIS, ET AL,          )
                                   )
5                                  )
                  PLAINTIFFS,      )
6                                  )
                                   )
7         VS                       ) CASE NO. 2:08-CT-21-H
                                   )
8                                  )
                                   ) <u>CORRECTED</u> <u>TRANSCRIPT</u>
9    GEO GROUP, INC., ET AL,       )
                                   )
10                DEFENDANTS.      )

11

12

13            HEARING ON MOTIONS TO DISMISS

             OCTOBER 8, 2009
14

15       HONORABLE JAMES C. DEVER, III, PRESIDING

16

17   APPEARANCES:

18        MR. DONALD RIDINGS
          COVINGTON & BURLING
19        ATTORNEYS AT LAW
          1201 PENNSYLVANIA AVENUE NW
20        WASHINGTON, DC   20004-2401
          (FOR THE PLAINTIFFS)
21
          MS. LAURA E. SCHATTSCHNEIDER
22        COVINGTON & BURLING
          ATTORNEYS AT LAW
23        1201 PENNSYLVANIA AVENUE NW
          WASHINGTON, DC   20004-2401
24        (FOR THE PLAINTIFFS)

25

```
1   APPEARANCES:  (CONT.)

2         MS. DEBORAH M. GOLDEN
          WASHINGTON LAWYERS' COMMITTEE
3         11 DUPONT CIRCLE, NW
          SUITE 400
4         WASHINGTON, DC   20036
          (FOR THE PLAINTIFFS)
5
          MR. ANTHONY HERMAN
6         COVINGTON & BURLING
          ATTORNEYS AT LAW
7         1201 PENNSYLVANIA AVENUE NW
          WASHINGTON, DC   20004-2401
8         (FOR THE PLAINTIFFS)

9         MR. NEIL A. RIEMANN
          PENRY, RIEMANN
10        ATTORNEYS AT LAW
          510 GLENWOOD AVENUE
11        SUITE 319
          RALEIGH, NC   27603
12        (FOR THE PLAINTIFFS)

13        MR. ROBERT T. NUMBERS, II
          WOMBLE, CARLYLE, SANDRIDGE & RICE
14        ATTORNEYS AT LAW
          ONE WEST FOURTH STREET
15        WINSTON-SALEM, NC   27101
          (FOR DEFENDANT GEO GROUP)
16
          MS. KATHRYN L. WYER
17        U. S. DEPARTMENT OF JUSTICE
          TRIAL ATTORNEY
18        P. O. BOX 883
          WASHINGTON, DC   20044-4271
19        (FOR DEFENDANT BUREAU OF PRISONS)

20

21

22

23

24

25   SHARON K. KROEGER, COURT REPORTER
     MACHINE SHORTHAND REPORTER, COMPUTER AIDED TRANSCRIPTION
```

1          THE COURT:  GOOD MORNING AND WELCOME TO THE

2     UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF

3     NORTH CAROLINA.  WE ARE HERE TODAY IN CONNECTION WITH A

4     MOTIONS HEARING ON TWO PENDING MOTIONS TO DISMISS IN

5     CONNECTION WITH THE MATHIS VERSUS GEO GROUP CASE.

6          THE DEFENDANTS ARE THE BUREAU OF PRISONS AND

7     MR. LAPPIN IN HIS OFFICIAL CAPACITY.  THEIR MOTION TO

8     DISMISS IS AT DOCKET ENTRY 64.  GEO ALSO FILED A MOTION

9     TO DISMISS AT DOCKET ENTRY 65.

10          THE COURT HAS READ ALL THE MATERIALS THAT HAVE

11     BEEN SUBMITTED.

12          AT THIS TIME, I WOULD ASK PLAINTIFF'S COUNSEL

13     TO INTRODUCE THOSE AT PLAINTIFF'S TABLE, AND THEN I WILL

14     HEAR FROM DEFENSE COUNSEL, AND THEN I WILL HEAR ARGUMENTS

15     ON THE MOTIONS.

16          MR. RIEMANN:  YOUR HONOR, I AM NEIL RIEMANN

17     FROM PENRY, RIEMANN HERE IN RALEIGH.  WE HAVE THREE FOLKS

18     FROM COVINGTON & BURLING HERE; ONE FROM THE WASHINGTON

19     LAWYERS' COMMITTEE.

20          MR. RIDINGS:  GOOD MORNING.

21          MR. HERMAN:  GOOD MORNING.

22          MS. SCHATTSCHNEIDER:  GOOD MORNING.

23          MR. RIEMANN:  DONALD RIDINGS AND ANTHONY

24     HERMAN FROM COVINGTON & BURLING; LAURA SCHATTSCHNEIDER

25     FROM COVINGTON & BURLING.  AND DEBORAH GOLDEN.

```
 1                    THE COURT:  GOOD MORNING.

 2                    MR. RIEMANN:  I BELIEVE MR. RIDINGS IS GOING

 3     TO START THE ARGUMENT, AND MS. SCHATTSCHNEIDER IS GOING

 4     TO ASSIST HIM WITH THAT.

 5                    THE COURT:  THANK YOU.  I LOOK FORWARD TO

 6     THAT.

 7                    AND FROM THE DEFENSE?

 8                    MR. NUMBERS:  GOOD MORNING, YOUR HONOR.  I AM

 9     ROBERT NUMBERS HERE ON BEHALF OF GEO.

10                    THE COURT:  GOOD MORNING.

11                    MS. WYER:  YOUR HONOR, KATHRYN WYER ON BEHALF

12     OF THE BUREAU OF PRISONS AND MR. LAPPIN.

13                    THE COURT:  GOOD MORNING.

14                    MS. WYER:  GOOD MORNING.

15                    THE COURT:  AGAIN, I HAVE READ EVERYTHING THAT

16     HAS BEEN SUBMITTED AND I WILL HEAR FIRST FROM THE BUREAU

17     OF PRISONS AND MR. LAPPIN, AND THEN I WILL HEAR FROM MR.

18     NUMBERS ON BEHALF OF GEO.

19                    MS. WYER:  SHOULD I MOVE TO THE MIDDLE?

20                    THE COURT:  WHICHEVER YOU PREFER.

21                    MS. WYER:  I WILL STAY WITH THE MICROPHONE.

22                    THERE IS ONE REMAINING PLAINTIFF IN THIS CASE

23     AND HE HAS FAILED TO RAISE VIABLE EIGHTH AMENDMENT OR

24     SECTION 504 OF THE REHABILITATION ACT CLAIMS AGAINST THE

25     FEDERAL DEFENDANTS BASED ON ACTIVITIES THAT TOOK PLACE IN
```

1    A PRIVATELY OWNED AND PRIVATELY OPERATED FACILITY.

2            THE COURT:  ON THE EIGHTH AMENDMENT CLAIM, DO

3    YOU CONTEND THAT MALESKO AND HOLLY VS. SCOTT CONTROL?

4            MS. WYER:  YES, WE DO, YOUR HONOR.

5            THE COURT:  OKAY.  AS PART OF THE REASON, I

6    KNOW THERE IS SOME DISCUSSION IN THE PAPERS ABOUT THAT

7    BECAUSE PLAINTIFF ONLY SEEKS INJUNCTIVE RELIEF SOMEHOW

8    THIS CASE IS OUTSIDE THE SCOPE OF HOLLY VS. SCOTT.

9    HOLLY, OF COURSE, WAS A CASE IN OUR DISTRICT.  A

10   COLLEAGUE HANDLED THAT CASE.  BUT MR. SCOTT ACTUALLY

11   SOUGHT NOT ONLY DAMAGES BUT AN INJUNCTION, IF YOU

12   ACTUALLY LOOK AT HIS COMPLAINT.

13           SO IT'S YOUR POSITION THAT BASICALLY THERE IS

14   NO GOVERNMENT ACTION BECAUSE GEO IS NOT A GOVERNMENT

15   ACTOR IN ACCORDANCE WITH THE PANEL MAJORITY IN HOLLY?

16           MS. WYER:  CORRECT.  THE HOLLY COURT CLEARLY

17   ADDRESSED THAT ISSUE WHETHER OR NOT THE MEDICAL CARE AT

18   RIVERS WAS GOVERNMENT ACTION AND HELD THAT IT WAS NOT A

19   PUBLIC FUNCTION.

20           THE HOLLY COURT'S HOLDING THAT THE PROVISION

21   OF MEDICAL CARE AT RIVERS WHICH IS THE VERY SAME ACTIVITY

22   HERE IN THE VERY SAME INSTITUTION, THAT THAT IS NOT A

23   PUBLIC FUNCTION AND THEREFORE THAT IS NOT GOVERNMENT

24   ACTION AND THAT HOLDING IS CONTROLLING IN THIS CASE.  AND

25   THE CONCLUSION THAT THERE IS NO GOVERNMENT ACTION AT

1    ISSUE AND THEREFORE THERE CAN BE NO EIGHTH AMENDMENT

2    VIOLATION.

3            THE COURT:  OKAY.

4            ALL RIGHT.  DO YOU TAKE THE POSITION THAT EVEN

5    IF -- I KNOW YOU MAKE AN ARGUMENT IN YOUR PAPERS ABOUT

6    THE PLRA ON THE REHABILITATION ACT CLAIM.

7            DO YOU TAKE THE POSITION THAT IF THE EIGHTH

8    AMENDMENT CLAIM IS VIABLE, THAT PLAINTIFF HAS FAILED TO

9    EXHAUST, OR DO YOU BELIEVE HE HAS EXHAUSTED AN EIGHTH

10   AMENDMENT CLAIM UNDER THE PLRA?

11           MS. WYER:  WITH RESPECT TO THE EIGHTH

12   AMENDMENT CLAIM, THE ADMINISTRATIVE REMEDIES THAT ARE

13   AVAILABLE ARE AVAILABLE AT RIVERS, SO THE FEDERAL

14   DEFENDANTS HAVE NOT MADE AN ARGUMENT ABOUT EXHAUSTION.

15   SO THE EXHAUSTION ARGUMENT APPLIES TO THE REHABILITATION

16   ACT CLAIM BECAUSE THAT IS WHERE THE DEPARTMENT OF JUSTICE

17   DOES PROVIDE AN ADMINISTRATIVE REMEDY THROUGH THE DOT

18   REGULATIONS.

19          THE COURT:  ANYTHING ELSE ON THE EIGHTH

20   AMENDMENT ISSUE?

21          I AM OBVIOUSLY GOING TO GIVE YOU A CHANCE FOR

22   REBUTTAL.

23          MS. WYER:  THAT'S ALL FOR NOW.

24          THE COURT:  HOW ABOUT THE REHABILITATION ACT

25   CLAIM?

1          MS. WYER:  THE REHABILITATION ACT CLAIM, THERE

2     IS WELL ESTABLISHED PRECEDENT THAT THE COURTS WILL NOT

3     FIND AN IMPLIED RIGHT OF ACTION AGAINST A FEDERAL AGENCY

4     WHERE -- AND THAT THEY WILL NOT FIGHT A RIGHT OF ACTION

5     UNLESS IT IS EXPRESSED IN THE STATUTE BECAUSE THE APA

6     ALREADY SETS FORTH A COURSE OF ACTION AGAINST AGENCIES

7     AND COURTS HAVE HELD THAT BECAUSE OF THAT, THERE IS AN

8     IMPLIED CONGRESSIONAL INTENT NOT TO ALLOW A CLAIM TO

9     PROCEED.

10          THE COURT:  TELL ME HOW -- AND I HAVE READ

11    THEN JUDGE BREYER'S OPINION FOR THE EN BANC FIRST

12    CIRCUIT, COUSINS VERSUS SECRETARY OF THE U.S. DEPARTMENT

13    OF TRANSPORTATION THAT WAS CITED IN THE PAPERS.  TELL ME

14    HOW AN APA REMEDY WOULD WORK, IN THEORY.

15          I KNOW YOU TAKE THE POSITION THAT BASICALLY

16    THE PLAINTIFF IS SEEKING TO HOLD THE GOVERNMENT LIABLE

17    FOR THE ACTIONS OF ITS CONTRACTOR, AND YOU TAKE THE

18    POSITION THE GOVERNMENT IN THE -- WELL, SINCE THE CLAUSE

19    AT ISSUE WHICH WAS ADDED ACTUALLY IN 1978, IT WASN'T

20    ORIGINALLY IN THE 73 ACT.  THE CLAUSE AT ISSUE WAS ADDED

21    IN 1978.  YOU TAKE THE POSITION THAT THERE SHOULDN'T BE

22    AN IMPLIED RIGHT OF ACTION.

23          TELL ME HOW THE APA WOULD WORK IN CONNECTION

24    WITH A CLAIM UNDER 29 U.S.C. SECTION 794(A).  HOW, AS A

25    PRACTICAL MATTER, WOULD IT WORK?

1          MS. WYER:  AS A PRACTICAL MATTER, THE CLAIM

2     COULD NOT BE BROUGHT UNDER 794(A).  IT WOULD HAVE TO BE

3     BROUGHT UNDER THE APA AND ARGUED THAT THE AGENCY HAD

4     TAKEN A FINAL AGENCY ACTION THAT CAUSED THE ALLEGED

5     INJURY AND THAT THAT ACTION WAS IN VIOLATION OF 29 U.S.C.

6     794.

7          THE COURT:  SO THAT IS BASICALLY -- THAT WOULD

8     HAVE TO BE THE CLAIM THAT WOULD HAVE TO BE PLEADED UNDER

9     THE APA, AND THEN THERE WOULD HAVE TO BE AN ANALYSIS OF

10    WHETHER, IN FACT, THAT WAS A VIABLE CLAIM, AND THEN

11    MAKING A RECORD IN FRONT OF THE AGENCY, THAT THAT WOULD

12    BE HOW YOU WOULD THINK, IF A PLAINTIFF IN MR. CALLAND'S

13    SITUATION WANTED TO PURSUE THAT CLAIM, HE WOULD NEED TO

14    DO THAT.

15         MS. WYER:  CORRECT.  AND THE EXHAUSTION

16    REQUIREMENT THAT IS AVAILABLE THROUGH THE DOJ WOULD STILL

17    HAVE TO BE MET.

18         THE COURT:  OKAY.  AND YOU ALSO -- WHAT DO YOU

19    HAVE TO SAY TO PLAINTIFF'S ARGUMENT ABOUT PENA?  AND THEY

20    CITE FOUR DISTRICT COURT CASES SUGGESTING THAT, OR

21    ACKNOWLEDGING, I THINK IS A FAIR READING OF PLAINTIFF'S

22    PAPERS, THEY DESCRIBE WHAT HAPPENED IN PENA AND THE

23    REINSTATEMENT OF THE CADET AT THE MERCHANT MARINE

24    ACADEMY, AND THAT THE COURT DIDN'T TAKE ISSUE, THE DOJ

25    APPARENTLY DIDN'T TAKE ISSUE WHEN IT WENT UP TO THE

1  SUPREME COURT WITH THAT PORTION OF THE REMEDY AND PENA

2  DEALT WITH THE SOVEREIGN IMMUNITY ISSUE ON DAMAGES.

3          WHAT DO YOU HAVE TO SAY TO THOSE CASES THAT

4  PLAINTIFF CITES THAT, IN FACT, THERE IS AN IMPLIED RIGHT

5  OF ACTION WHERE SOMEONE IS SEEKING INJUNCTIVE RELIEF?

6          MS. WYER:  NO COURT HAS EVER HELD THAT THERE

7  IS AN IMPLIED RIGHT OF ACTION AGAINST A FEDERAL AGENCY

8  UNDER -- FOR INJUNCTIVE RELIEF UNDER 794.  THOSE CASES

9  DON'T HOLD THAT.  THEY SIMPLY FAIL ADDRESS THE ISSUE

10  BECAUSE THE GOVERNMENT DIDN'T MAKE THAT ARGUMENT

11  RECOGNIZING THAT THERE COULD BE A CLAIM ANYWAY UNDER THE

12  APA AND IT WOULD NOT MAKE A SIGNIFICANT DIFFERENCE

13  BECAUSE IN THOSE CASES THERE WAS NO OTHER ALTERNATIVE

14  REMEDY THAT COULD BE SOUGHT AGAINST ANOTHER PARTY BECAUSE

15  THE ACTION AT ISSUE WAS ACTUALLY TAKEN BY THE FEDERAL

16  GOVERNMENT WHEREAS HERE THAT IS NOT THE CASE.

17          BUT I HAVE FOUND ONE CASE, DOE VERSUS ATTORNEY

18  GENERAL AT 723 F. SUPP. 452 IN THE NORTHERN DISTRICT OF

19  CALIFORNIA THAT HAS HELD THE CONTRARY, THAT THERE IS NO

20  RIGHT OF ACTION AGAINST A FEDERAL AGENCY UNDER SECTION

21  504.  AND THAT CASE WAS REVERSED BY A NINTH CIRCUIT CASE

22  THAT GEO CITED IN ITS BRIEF, BUT THEN THAT NINTH CIRCUIT

23  CASE WAS VACATED IN LIGHT OF THE PENA, AND AT THAT POINT

24  THE NINTH CIRCUIT AFFIRMED THE DISTRICT COURT HOLDING

25  THAT THERE WAS NO RIGHT OF ACTION AGAINST A FEDERAL

1    AGENCY.

2              THE COURT:  723 F. SUPP. 452?

3              MS. WYER:  YES.

4              THE COURT:  OKAY.

5              MS. WYER:  AND IT WENT THROUGH AN INTERESTING

6    ANALYSIS OF THE DOJ REGULATIONS WHICH WE HAVE CITED AND

7    CONCLUDED THAT THE ONLY AVAILABLE REMEDY AGAINST A

8    FEDERAL AGENCY BASED ON CONDUCT, BASED ON PROGRAMS OR

9    ACTIVITIES CONDUCTED BY THE AGENCY WAS THROUGH THIS

10   ADMINISTRATIVE MECHANISM.

11             THE COURT:  OKAY.  AND THEN, BASICALLY YOU

12   TAKE THE POSITION THAT BECAUSE THIS IS A FEDERAL

13   PROCUREMENT CONTRACT, IT'S NOT A PROGRAM OR ACTIVITY

14   CONDUCTED BY AN EXECUTIVE AGENCY; RIGHT?

15             MS. WYER:  NOT EXACTLY.  WE -- THE DOJ

16   REGULATIONS AT 29 CFR 39.130 DO DEFINE -- THEY SAY THEY

17   APPLY TO PROGRAMS OR ACTIVITIES CONDUCTED BY AN AGENCY,

18   INCLUDING THROUGH CONTRACTUAL OR LICENSING ARRANGEMENTS.

19             SO WE HAVE NOT ARGUED THAT THEY DON'T QUALIFY

20   AS PROGRAMS OR ACTIVITIES, BUT WE -- THAT REGULATION --

21   THE ADMINISTRATIVE REMEDY THROUGH THAT REGULATION IS WHAT

22   NEEDS TO BE FOLLOWED AND NOT PROCEEDING DIRECTLY AGAINST

23   THE AGENCY.

24             THE JERSEY HEIGHTS CASE IS ONE OF THE MOST

25   INFORMATIVE CASES IN THIS CONTEXT BECAUSE IT HELD THAT

1    THERE WAS NO PRIVATE RIGHT OF ACTION AGAINST AN AGENCY IN

2    THE TITLE VI CONTEXT WHERE THERE WAS A DIRECT REMEDY

3    AGAINST THE ENTITY, THE PRIVATE ENTITY, OR THE

4    NON-FEDERAL ENTITY THAT WAS ALLEGED TO HAVE COMMITTED THE

5    VIOLATION.

6             THE COURT:  WHAT IF I REJECT -- I KNOW THAT

7    YOU AND GEO DON'T TAKE THE SAME VIEW ON THE

8    REHABILITATION ACT CLAIM -- BUT WHAT IF I DON'T AGREE

9    WITH YOUR ANALYSIS OF THE REHABILITATION ACT WITH RESPECT

10   TO GEO?

11            IT SEEMS -- AND I AM INTERESTED IN HEARING

12   FROM ALL THE PARTIES -- IT SEEMS THAT WHEN YOU ACTUALLY

13   STUDY THE REHABILITATION ACT, YOU SEE THAT IT WAS ENACTED

14   IN 1973 AND IT REACHED CERTAIN PRIVATE ACTORS, THOSE

15   RECEIVING (QUOTE) "FEDERAL FINANCIAL ASSISTANCE".

16            FROM THE TIME IT WAS ENACTED, THERE HAS ALWAYS

17   BEEN AN EXCEPTION IN THE REGULATIONS PROMULGATED

18   INITIALLY BY THE PREDECESSOR TO HHS.  DOJ TOOK OVER

19   PROMULGATING THE REGS.  BUT THERE ALWAYS HAS ALWAYS BEEN

20   AN EXCEPTION OUT FOR CONTRACT -- FOR FEDERAL PROCUREMENT

21   CONTRACTS FOR GOODS OR SERVICES.

22            THOSE CONTRACTORS AREN'T SWEPT INTO THE NOTION

23   OF RECEIVING FEDERAL FINANCIAL ASSISTANCE.  I AM -- SO I

24   AM TRYING TO UNDERSTAND WHY DOJ SEEMS TO TAKE THE

25   POSITION, AND DOES YOUR REHABILITATION ARGUMENT ACT

1  DEPEND ON THE COURT ACCEPTING THAT THERE IS A

2  REHABILITATION ACT REMEDY AGAINST GEO?

3          WHAT IF I CONCLUDE AS A MATTER OF LAW THAT

4  THERE IS NOT BECAUSE THEY DON'T RECEIVE FEDERAL FINANCIAL

5  ASSISTANCE.  ON PAGE 40, I BELIEVE, OF PLAINTIFF'S BRIEF,

6  FOOTNOTE 16, THEY SAY "WE ARE NOT CONTENDING IN THIS CASE

7  THAT GEO RECEIVED FEDERAL FINANCIAL ASSISTANCE."

8          SO THEY ARE HANGING THEIR HAT -- PLAINTIFF IS

9  HANGING HIS HAT ON THIS NOTION THAT RIVERS IS A PROGRAM

10  OR ACTIVITY CONDUCTED BY AN EXECUTIVE AGENCY; RIGHT?

11          SO IF I DON'T ACCEPT YOUR ARGUMENT, DO YOU

12  THEN BELIEVE THAT THERE IS A REHABILITATION ACT CLAIM

13  AGAINST THE AGENCY?

14          MS. WYER:  WELL, FIRST OF ALL, YOUR HONOR,

15  THIS DOESN'T NEED TO REACH THAT ISSUE AT ALL BECAUSE THE

16  CLAIM COULD BE RESOLVED ON THE EXHAUSTION OF

17  ADMINISTRATIVE REMEDIES ISSUE.

18          SO IF THE COURT HOLDS THAT PLAINTIFF NEEDS TO

19  EXHAUST ADMINISTRATIVE REMEDIES UNDER THE DOJ REMEDY,

20  REMEDIAL PROCESS, THE ADMINISTRATIVE PROCESS, THERE IS NO

21  NEED TO REACH THE ISSUE OF WHETHER A CLAIM CAN BE BROUGHT

22  AGAINST THE BOP OR GEO BECAUSE THE CLAIM COULD BE

23  DISMISSED FOR FAILURE TO EXHAUST.

24          AND IF THE COURT DOES REACH THE NEXT STAGE,

25  THE QUESTION OF WHETHER THERE IS AN IMPLIED RIGHT OF

1    ACTION AGAINST THE AGENCY DIRECTLY UNDER SECTION 504 IS

2    REALLY THE ONLY QUESTION AT ISSUE HERE, AND BECAUSE THE

3    PLAINTIFF'S --

4              THE COURT:  MY QUESTION TO YOU IS DOES THE

5    RESOLUTION OF THAT ISSUE, IN YOUR FAVOR, DEPEND ON MY

6    FINDING THAT GEO -- THAT, IN FACT, PLAINTIFF HAS STATED A

7    REHABILITATION ACT CLAIM AGAINST GEO.  DOES IT DEPEND ON

8    THAT?

9              MS. WYER:  NO, BECAUSE IN ORDER TO REACH THAT

10   ISSUE, THAT IS ONLY RELEVANT TO WHETHER IT WOULD BE

11   FUTILE FOR THE PLAINTIFFS TO AMEND THEIR COMPLAINT TO

12   ASSERT AN APA CLAIM.

13             THE ONLY -- THE PLAINTIFF HAS ONLY ASSERTED A

14   CLAIM DIRECTLY UNDER SECTION 504, SO THE ONLY CONCLUSION

15   THAT ISSUE WOULD BE DISPOSED OF BY A HOLDING THAT THERE

16   IS NO IMPLIED RIGHT OF ACTION AGAINST THE FEDERAL AGENCY.

17             THE COURT:  WHAT IS YOUR POSITION ON WHETHER

18   IT WOULD BE FUTILE FOR THE PLAINTIFF TO SEEK TO AMEND TO

19   STATE AN APA CLAIM DIRECTLY AGAINST THE AGENCY?  DO YOU

20   THINK THAT CLAIM WOULD BE FUTILE?

21             MS. WYER:  YES, I DO.

22             THE COURT:  WHY?

23             MS. WYER:  BECAUSE THE ALTERNATIVE REMEDY

24   ARGUMENT IS ONLY ONE OF SEVERAL BARRIERS TO STATING A

25   VIABLE APA CLAIM AGAINST THE BOP.

1      THERE IS ALSO THE FINAL AGENCY ACTION

2   REQUIREMENTS WHICH WOULD REQUIRE THE PLAINTIFF TO

3   IDENTIFY AN ACTION THAT THE BOP TOOK THAT CAUSED HIS

4   ALLEGED INJURY, AND THE COMPLAINT, THERE ARE NO FACTS

5   THAT INDICATE THAT THERE HAS BEEN ANY FINAL AGENCY ACTION

6   OF THE BOP THAT CAUSED THE DISCRIMINATION ON THE BASIS OF

7   THE DISABILITY THAT THEY ALLEGE.

8      AND THAT WOULD IMPLICATE STANDING PROBLEMS

9   BECAUSE THERE WOULD BE A CAUSATION ISSUE.

10      THE COURT:  OKAY.  ANYTHING ELSE ON THE

11   REHABILITATION ACT CLAIM ON BEHALF OF THE UNITED STATES?

12      MS. WYER:  NO, NOT AT THIS TIME.

13      THE COURT:  THANK YOU FOR YOUR ARGUMENT.  MR.

14   NUMBERS.

15      MR. NUMBERS:  THANK YOU, YOUR HONOR.

16   OBVIOUSLY YOUR HONOR HAS READ THE BRIEFS AND MS. WYER

17   ARGUED ON A NUMBER OF THE POINTS, SO I AM NOT GOING TO

18   BELABOR A LOT OF ISSUES THAT YOU HAVE ALREADY COVERED.

19      I BELIEVE IT SUFFICES TO SAY THAT PLAINTIFFS,

20   ON THEIR BRIEF ON PAGE 17, SAY THAT GEO IS LIABLE UNDER

21   THE EIGHTH AMENDMENT BECAUSE IT HAS UNDERTAKEN PUBLIC

22   FUNCTION TO PROVIDE MEDICAL CARE TO FEDERAL INMATES.

23      THAT POSITION WAS EXPLICITLY REJECTED BY THE

24   FOURTH CIRCUIT IN HOLLY AT PAGE 294 OF THAT DECISION.

25      MOVING ON TO THE REHABILITATION ACTS CLAIM,

1    I THINK YOUR HONOR HAS IDENTIFIED THE MAIN ISSUE THERE.

2    GEO IS NOT A RECIPIENT OF FEDERAL FINANCIAL ASSISTANCE

3    AND PLAINTIFF ADMIT AS MUCH IN THEIR BRIEF.

4            AND NOT ONLY DOES THAT PRECLUDE A FINDING ON

5    THE FIRST PORTION OF THE REHABILITATION ACT THAT YOU MUST

6    RECEIVE FEDERAL FINANCIAL ASSISTANCE, IT'S GEO'S ARGUMENT

7    THAT IT ALSO PRECLUDES A FINDING THAT THE OPERATION IS A

8    PROGRAM OR ACTIVITY OF AN EXECUTIVE AGENCY BECAUSE THE

9    DEFINITION OF PROGRAM OR ACTIVITY WHICH I BELIEVE IS IN

10   SECTION 794(B) --

11           THE COURT:  I READ YOUR ARGUMENT ABOUT THAT,

12   AND AGAIN, IF YOU ACTUALLY GO BACK AND STUDY THE ACT, DO

13   YOU KNOW WHEN SECTION 794(B) WAS ADDED?  IT WASN'T THERE

14   IN 1973; WAS IT?

15           MR. NUMBERS:  I DON'T BELIEVE SO, NO.  IT WAS

16   PART OF THE '78 AMENDMENT TO MAKE THE REHABILITATION ACT

17   APPLY SPECIFICALLY TO --

18           THE COURT:  IT WAS ACTUALLY ADDED IN 1988.  IN

19   1978, THE LANGUAGE THAT MS. WYER WAS TALKING ABOUT WAS

20   ADDED TO THE ACT.

21           ORIGINALLY, 1973 REHABILITATION ACT, THE

22   TOUCHSTONE TO REACH INTO THE PRIVATE SECTOR WAS THIS

23   CONCEPT OF RECEIPT OF FEDERAL FINANCIAL ASSISTANCE.

24           AND AGAIN, SINCE THE ACT WAS ENACTED BY

25   CONGRESS, THERE HAS BEEN AN EXCEPTION OUT FOR GOODS OR

1    SERVICE PROVIDED PURSUANT TO A FEDERAL PROCUREMENT

2    CONTRACT.

3              NOW, 1978 WE HAVE THE CAUSE AT ISSUE THAT MS.

4    WYER DISCUSSED.  IT WAS IN 1988 IN CONNECTION WITH THE

5    CONGRESS'S RESPONSE TO THE GROVE CITY DECISION THAT 29

6    U.S.C. SECTION 794(B) WAS ADDED.

7              AND WHEN YOU READ THAT PROVISION -- AND I KNOW

8    THAT YOU SUGGEST THAT THAT OUGHT TO INFORM THE COURT'S

9    DEFINITION OF THIS PHRASE THAT, AGAIN, PLAINTIFF IS

10   HANGING HIS ARGUMENT ON A PROGRAM OR ACTIVITY CONDUCTED

11   BY AN EXECUTIVE AGENCY, BUT THE WHOLE OF SECTION 794(B),

12   THERE IS A MODIFIER AGAIN DEALING WITH FEDERAL FINANCIAL

13   ASSISTANCE.  AND I KNOW THAT THE STATUTORY LANGUAGE SAYS

14   FOR PURPOSES OF THIS SECTION.

15             BUT, YOU KNOW, WHEN YOU LOOK AT THE DEFINITION

16   IN 29 U.S.C. SECTION 794(B)(1), FOR EXAMPLE, THAT TALKS

17   ABOUT STATE OR LOCAL GOVERNMENTS, A PROGRAM OR ACTIVITY

18   CONDUCTED BY AN EXECUTIVE AGENCY.  I DON'T KNOW HOW AN

19   EXECUTIVE AGENCY CAN CONDUCT A STATE OR LOCAL GOVERNMENT.

20             SO IT WOULDN'T SEEM -- AND I AM INTERESTED IN

21   HEARING YOUR ARGUMENT -- BUT IT WOULDN'T SEEM THAT THE

22   DEFINITION IN 794(B) HELPS TO INFORM, AT LEAST DIRECTLY,

23   WHAT CONGRESS MEANT WHEN IT ADDED IN 1978 THIS PHRASE,

24   PROGRAM OR ACTIVITY CONDUCTED BY AN EXECUTIVE AGENCY.

25             MR. NUMBERS:  WELL, I THINK IN TERMS OF KIND

```
1    OF RECONCILING THOSE VARIOUS AMENDMENTS, I THINK THE
2    FEDERAL AGENCIES CAN WORK WITH STATE AND LOCAL
3    GOVERNMENTS TO PROVIDE FINANCIAL ASSISTANCE AND (B)(2)
4    AND RECEIVE THE REHABILITATION ACT IN OTHER CONTEXT AND
5    THE INDIVIDUALS WITH DISABILITIES EDUCATION ACT.
6              THE FEDERAL GOVERNMENT, THROUGH ITS
7    DEPARTMENTS, OBVIOUSLY WORK WITH STATE AND LOCAL
8    GOVERNMENTS IN PROVIDING FEDERAL FINANCIAL ASSISTANCE AND
9    THINGS.  SO I THINK IT STILL ALL GOES TOGETHER AND ALL
10   RELIES ON THE ACCEPTANCE OF FEDERAL FINANCIAL ASSISTANCE
11   BY --
12             THE COURT:  THAT IS YOUR ARGUMENT.  THAT IS,
13   YOUR ARGUMENT THAT -- YOUR ARGUMENT IS THAT -- THAT BY
14   NOT SEEKING TO BRING GEO IN, WITH THE NOTION THAT GEO
15   RECEIVES FEDERAL FINANCIAL ASSISTANCE, PLAINTIFF CANNOT,
16   AS A MATTER OF LAW, STATE A CLAIM AGAINST GEO.  THAT IS
17   YOUR ARGUMENT; RIGHT?
18             MR. NUMBERS:  YES, YOUR HONOR.
19             THE COURT:  OKAY.  ANYTHING ELSE ON THE
20   REHABILITATION ACT?
21             MR. NUMBERS:  I DON'T BELIEVE SO.
22             THE COURT:  ALL RIGHT.
23             MR. NUMBERS:  I KNOW, ACCORDING TO THE
24   COMPLAINT, I THINK THE NEXT CLAIM IS THE BREACH OF
25   CONTRACT CLAIM, BUT I WON'T JUMP TO THE NEGLIGENCE CLAIM
```

BECAUSE THE BREACH OF CONTRACT CLAIM IS DERIVATIVE OF THE

NEGLIGENCE CLAIM.  THE DISPUTE IS WHETHER RULE 9J BARS

PLAINTIFFS COMPLAINT.  GEO ARGUES THAT IT DOES.

PLAINTIFFS, OBVIOUSLY, ARGUE THAT IT DOES NOT.

THE DISPUTE IS OVER THE LANGUAGE OF 9J.

PLAINTIFFS HANG THEIR HAT ON A DEFINITION IN SECTION

90-21.11  OF THE MEDICAL MALPRACTICE ACTION WHICH SAYS A

MEDICAL MALPRACTICE ACTION IS A CIVIL ACTION FOR DAMAGES.

THEIR ARGUMENT IS WE DIDN'T ASK FOR DAMAGES; THEREFORE,

IT'S NOT A MEDICAL MALPRACTICE ACTION.  THE PROBLEM WITH

THAT ARGUMENT IS THAT THE TERM MEDICAL MALPRACTICE ACTION

APPEARS NOWHERE IN 9J.  THAT TERM IS NOT PRESENT IN RULE

9J.

WHAT RULE 9J SAYS, ANY COMPLAINT ALLEGING

MEDICAL MALPRACTICE, AND IT GOES ON TO SAY AGAINST A

HEALTH CARE PROVIDER AS THAT TERM IS DEFINED IN SECTION

90-21.11.

SO AS YOUR HONOR RULED LAST WEEK, OR AS YOUR

HONOR NOTED IN THE HINES DECISION LAST WEEK, THE QUESTION

IS WHETHER THE COMPLAINT SEEKS RELIEF FROM A HEALTH CARE

PROVIDER AS THAT TERM IS DEFINED BY STATUTE OR FAILS TO

DELIVER OR IMPROPERLY DELIVER PROFESSIONAL SERVICE.

IN THIS CASE, I DON'T THINK THERE IS MUCH

DISPUTE, THE COMPLAINT DOESN'T MAKE THOSE ALLEGATIONS.

THERE IS ALSO NO DISPUTE THAT THE COMPLAINT DOESN'T

1    CONTAIN THE NEXT 9J CERTIFICATION, AND I DON'T BELIEVE IT

2    CONTAINS THE FACTUAL ALLEGATIONS SUFFICIENT FOR A RES

3    IPSA LOQUITUR CLAIM.

4             I THINK ALSO THAT THE TERM MEDICAL MALPRACTICE

5    ACTION, THE BEGINNING OF THAT DEFINITION SAYS, "AS USED

6    IN THIS SECTION, THE TERM MEDICAL MALPRACTICE ACTION

7    MEANS", AND IT GOES ON TO DEFINE THE TERM.  THAT IS

8    SECTION 1A -- OR CHAPTER 1B OF CHAPTER 90 OF THE NORTH

9    CAROLINA GENERAL STATUTES.

10            RULE 9J IS IN CHAPTER 1A OF NORTH CAROLINA

11   RULES OF CIVIL PROCEDURE, SO THERE IS NOT A VERY STRONG

12   ARGUMENT THAT THAT DEFINITION APPLIES.  AND WHEN THE

13   GENERAL ASSEMBLY WANTED TO USE THE TERM MEDICAL

14   MALPRACTICE ACTION, THEY DID SO.

15            IN RULE 702 OF THE NORTH CAROLINA RULES OF

16   EVIDENCE WHERE IT'S TALKING ABOUT EXPERT CERTIFICATION,

17   IT SAYS, "IN A MEDICAL MALPRACTICE ACTION AS DEFINED IN

18   SECTION 90-21.11."

19            SO PLAINTIFF'S ARGUMENT FAILS TO -- DOESN'T

20   HAVE ENOUGH LEGS TO STAND ON BECAUSE THIS IS NOT A

21   MEDICAL MALPRACTICE ACTION.  THIS IS A COMPLAINT ALLEGING

22   MEDICAL MALPRACTICE.  THEY ARE TWO ENTIRELY DIFFERENT

23   TERMS AND TWO ENTIRELY DIFFERENT MEANINGS.  AND BECAUSE

24   IT DOESN'T HAVE THE 9J CERTIFICATION, IT MUST BE

25   DISMISSED ACCORDING TO NORTH CAROLINA LAW.

1          ON THE BREACH OF CONTRACT CLAIM, WE ARE

2     DEALING WITH A VERY NARROW ISSUE HERE ON THE BREACH OF

3     CONTRACT CLAIM.  GEO'S ARGUMENT IS THAT BECAUSE THIS IS A

4     CLAIM BY MEMBERS OF THE PUBLIC AGAINST A GOVERNMENT

5     CONTRACTOR THAT WAS ESTABLISHED THAT THE CONTRACT

6     PROVIDES AN INTENT FOR THEM TO --

7          THE COURT:  DOES THIS COURT HAVE SUBJECT

8     MATTER JURISDICTION OVER THAT CLAIM IN YOUR VIEW?

9          LET'S SAY THIS CLAIM WERE A STAND-ALONE CLAIM.

10    I HAVE READ THE COMPLAINT.  THE COMPLAINT CITES AS A

11    JURISDICTIONAL BASIS 1331 -- 28 U.S.C. 1343 AND 28 U.S.C.

12    1367.

13         IF THIS WE WERE A STAND-ALONE CLAIM WHERE

14    SOMEBODY -- BECAUSE THERE ARE DIFFERENT PEOPLE REFERENCED

15    IN THIS CONTRACT -- THERE ARE EMPLOYEES REFERENCED IN

16    HERE AND THERE ARE A LOT OF GOVERNMENT CONTRACTORS IN THE

17    EASTERN DISTRICT OF NORTH CAROLINA.  AND SO OBVIOUSLY ANY

18    DECISION, THE COURT HAS AN IMPACT BEYOND JUST THIS CASE.

19         IF THIS WERE A STAND-ALONE CLAIM, DO YOU THINK

20    THERE IS SUBJECT MATTER JURISDICTION OVER A THIRD PARTY

21    BENEFICIARY CLAIM UNDER A FEDERAL CONTRACT?

22         MR. NUMBERS:  I BELIEVE MY RESEARCH ON THIS

23    ISSUE, YOUR HONOR, AND I BELIEVE THE PLAINTIFF REACHED

24    THE SAME CONCLUSION, IS THAT FEDERAL CONTRACTS ARE

25    TYPICALLY GOVERNED BY FEDERAL COMMON LAW.

```
1              THE COURT:  I KNOW.  BUT TO SAY SOMETHING IS

2    GOVERNED BY FEDERAL LAW IS NOT THE SAME THAT IT IS A

3    CLAIM ARISING UNDER THE CONSTITUTION OR AN ACT OF

4    CONGRESS; RIGHT?

5              I MEAN, SOMETIMES PEOPLE COME INTO COURT HERE,

6    NOT TOO OFTEN, MOST OF THESE THINGS GET LITIGATED IN

7    D.C., BUT SOMETIMES PEOPLE WILL COME IN AND SAY, I NEED

8    AN INJUNCTION BECAUSE THE FEDERAL GOVERNMENT IS VIOLATING

9    THE COMPETITION AND CONTRACTING ACT.  THEY ARE NOT

10   FOLLOWING THEIR P'S AN Q'S IN CONNECTION WITH WHAT THE

11   STATUTE, THE CONGRESS ENACTED IN CONNECTION WITH WHAT

12   CONTRACTING REQUIRES, AND I WANT YOU, JUDGE, TO ENTER AN

13   INJUNCTION.

14             ALL RIGHT.  THERE IS A FEDERAL ACT OF CONGRESS

15   THAT THE CLAIM ARISES UNDER, BUT CAN SOMEONE JUST COME

16   INTO A FEDERAL COURT, CITE A FEDERAL CONTRACT, AND STATE

17   A CLAIM OVER WHICH THIS COURT HAS JURISDICTION?

18             MR. NUMBERS:  I THINK IT'S GOING TO DEPEND ON

19   THE TERMS OF THE CONTRACT AND THE PARTIES WHO ARE SEEKING

20   TO ENFORCE IT.

21             THE COURT:  DO YOU THINK THERE IS JURISDICTION

22   IN THIS CASE OVER COUNT 4 WHICH IS THE CONTRACT CLAIM?

23             MR. NUMBERS:  TO BE HONEST, YOUR HONOR, IT'S

24   NOT AN ISSUE I SPENT A GREAT DEAL OF TIME FOCUSING ON

25   THAT PARTICULAR ISSUE.  I WOULD HAVE TO SAY YES, TO BE
```

1    HONEST, BUT OBVIOUSLY THAT FINAL DECISION RESTS WITH YOU.

2                   THE COURT:  WHY?  1367?

3                   MR. NUMBERS:  I BELIEVE BECAUSE OF THE --

4                   THE COURT:  THERE IS CLEARLY JURISDICTION OVER

5    COUNTS 1 AND 2.  NO QUESTION ABOUT IT.  BUT YOU THINK

6    UNDER 1367, AS LONG AS SOMEONE DOES -- I MEAN, THEY HAVE

7    A CLAIM UNDER THE EIGHTH AMENDMENT, AGAIN, WHETHER IT

8    STATES A CLAIM IS DIFFERENT THAN JURISDICTION; RIGHT?

9    THEY HAVE A CLAIM UNDER THE REHABILITATION ACT AND AGAIN,

10   WHETHER IT STATES A CLAIM IS DIFFERENT THAN WHETHER THERE

11   IS SUBJECT MATTER JURISDICTION OVER THAT CLAIM.

12                  SO YOU BELIEVE THAT IN COUNT 4 THERE IS

13   JURISDICTION BECAUSE OF 28 U.S.C. SECTION 1367?

14                  MR. NUMBERS:  I BELIEVE IN THIS CASE THERE IS

15   JURISDICTION TO DECIDE IT.  NOW, THE ISSUE WOULD BE, FROM

16   GEO'S STANDPOINT, THAT THEY DON'T HAVE -- THE CONTRACT

17   DOES NOT PROVIDE THIRD PARTY RIGHTS AND THEREFORE THE

18   CLAIM FAILS.

19                  THE COURT:  RIGHT.  THAT IS A DIFFERENT ISSUE

20   THAN WHETHER THERE IS SUBJECT MATTER JURISDICTION OVER

21   IT.  I JUST WANTED TO UNDERSTAND BECAUSE IN MY OWN

22   RESEARCH I HAVE FOUND A SIXTH CIRCUIT CASE THAT SAID

23   THERE IS NO SUBJECT MATTER JURISDICTION OVER THIS TYPE OF

24   CLAIM.  BUT GO AHEAD.

25                  YOU GO AHEAD TO YOUR PRINCIPAL ARGUMENT ON THE

1    FAILURE TO STATE A CLAIM UNDER THE THIRD PARTY

2    BENEFICIARY CLAIM.  YOU THINK THIS IS A CLAIM ARISING

3    UNDER -- OR THAT FEDERAL COMMON LAW GOVERNS IT?

4            MR. NUMBERS:  THERE ARE CASES OUT THERE THAT

5    SAY THAT FEDERAL CONTRACTS WITH THE -- I AM SORRY --

6    CONTRACTS WITH -- BETWEEN FEDERAL GOVERNMENT AND

7    GOVERNMENT CONTRACTORS DO FALL UNDER FEDERAL COMMON LAW

8    AND THEREFORE THERE WOULD BE SUBJECT MATTER JURISDICTION.

9            I HAVEN'T SEEN THE CASE YOUR HONOR REFERENCED,

10   BUT OBVIOUSLY AT LEAST ONE COURT REACHED THAT CONCLUSION.

11   OUR PRIMARY ARGUMENT IS THAT THE CONTRACT MUST REFLECT

12   THE INTENT TO BENEFIT THE ALLEGED THIRD PARTY BENEFICIARY

13   AND THE CONTRACT MUST GIVE THE THIRD PARTY BENEFICIARY

14   THE DIRECT RIGHT TO ENFORCE THAT RIGHT AGAINST THE

15   GOVERNMENT CONTRACTOR.

16           IN THIS CASE, THE RIVERS CONTRACT EXPLICITLY

17   SAYS THAT AWARDING THIS CONTRACT, THE GOVERNMENT DOES NOT

18   ASSUME ANY LIABILITY TO THIRD PARTIES.  AND THE

19   PLAINTIFF, IN THEIR RESPONSE, SAY THAT WAS NEVER BROUGHT

20   UP.  IT'S CLEARLY REFERENCED IN OUR BRIEF AT SEVERAL

21   POINTS.  THERE IS NO DIRECT RIGHT FOR INMATES TO ENFORCE

22   THIS CONTRACT AGAINST GEO.  THE CONTRACT HAS A

23   COMPLICATED AND CONVOLUTED SYSTEM WHERE THE BOP MONITORS

24   AND CONDUCTS QUALITY CONTROL, AND GEO HAS TO CONDUCT

25   QUALITY CONTROL, AND THERE ARE IMPACTS ON HOW MUCH MONEY

1    GEO RECEIVES FROM THE FEDERAL GOVERNMENT IS THEY FAIL TO

2    ADHERE TO VARIOUS PORTIONS OF THE CONTRACT.  SO THINGS

3    ARE SPELLED OUT AS TO WHAT GOES ON WHEN A CONTRACT IS

4    NOT -- WHEN ONE PARTY BELIEVES THE CONTRACT IS NOT BEING

5    ADHERED TO.

6              NOWHERE IS THERE AN EXPLICIT RIGHT FOR INMATES

7    TO DIRECTLY ENFORCE A CONTRACT.  AND IN TERMS OF AN

8    INTENT TO BENEFIT THE INMATES, THE CONTRACT HAS A PORTION

9    LABELED INMATE RIGHTS WHERE IT SPECIFIES SPECIFIC RIGHTS

10   OF THESE INMATES UNDER THE RIVERS CONTRACT.  THIS ISSUE

11   OF HEALTH CARE IS NOT ONE OF THEM.

12             THE COURT:  DO YOU THINK -- AND I HAVE READ

13   THE WHOLE CONTRACT -- DO YOU THINK THAT PROVISION, AND DO

14   YOU THINK IT HAD TO DO WITH THEIR RELIGIOUS RESTORATION

15   ACT?  DO YOU THINK THAT THAT PROVISION WOULD PROVIDE AN

16   INMATE A THIRD PARTY CONTRACT CLAIM?

17             MR. NUMBERS:  NO, YOUR HONOR, BECAUSE THERE IS

18   STILL NO DIRECT RIGHT TO ENFORCE THAT AGAINST GEO.

19             THE COURT:  OKAY.

20             MR. NUMBERS:  AND I THINK THAT THE CASES WE

21   HAVE CITED -- ALTHOUGH THE PLAINTIFF DISCOUNTS THEM --

22   ARE VERY SIMILAR TO WHAT IS GOING ON HERE.  THE WYNN

23   CASE, THAT WAS A THIRD CIRCUIT CASE, BUT IN THE WYNN

24   CASE, THE CONGRESS PASSED A LAW ALLOWING A FEDERAL AGENCY

25   TO CONTRACT WITH PRIVATE CONTRACTORS TO PROVIDE GRANTS

1  TO --

2         THE COURT:  PLAINTIFF SUGGESTS THOUGH THAT

3  TRIMBLE NEEDS TO BE MY GUIDING LIGHT, AND THAT TRIMBLE

4  DOESN'T HAVE THE STANDARD THAT YOU HAVE DESCRIBED, AND

5  YOU ALSO CITED A CASE FROM THE DISTRICT OF NEW JERSEY AND

6  I HAVE READ IT.  WHAT DO YOU HAVE TO SAY TO THAT

7  ARGUMENT?

8         MR. NUMBERS:  TRIMBLE WOULD APPLY IF THE

9  ALLEGED THIRD PARTY BENEFICIARY WAS A FOREIGN GOVERNMENT

10  LIKE IT WAS IN TRIMBLE.  TRIMBLE WAS NOT A CASE WHERE A

11  MEMBER OF THE PUBLIC BROUGHT A CASE AGAINST THE

12  GOVERNMENT CONTRACTOR.  IT WAS A UNITED STATES -- OR

13  UNITED KINGDOM, ADMINISTRATION OF THE DEFENSE, BRINGING A

14  CONTRACT AGAINST A GOVERNMENT CONTRACTOR FOR, I BELIEVE,

15  ARMED SALES, AND THINGS LIKE THAT.  AND THE STANDARD IS

16  JUST DIFFERENT WHEN YOU ARE DEALING WITH A CASE THAT DOES

17  NOT INVOLVE MEMBERS OF THE PUBLIC BRINGING CLAIMS AGAINST

18  A GOVERNMENT CONTRACTOR FOR A CONTRACT THAT BENEFITS THE

19  PUBLIC AS A WHOLE.  THAT IS THE DISTINCTION BETWEEN

20  TRIMBLE AND THIS CASE.

21         THE COURT:  AND IN THE THIRD CIRCUIT CASE AND

22  DISTRICT OF NEW JERSEY CASE WERE THE PEOPLE TRYING TO

23  BRING THOSE CLAIMS DETAINEES?

24         MR. NUMBERS:  IN THE JAMA (PHONETIC) CASE THEY

25  WERE.

1          THE COURT:  WASN'T ONE OF THEM -- IT'S NOW

2    CALLED ICE.  I MEAN, IT USED TO BE THE INS.

3          MR. NUMBERS:  YES, YOUR HONOR.  IT WAS A

4    PRIVATELY OWNED FACILITY WHERE THE DETAINEES RAISED

5    CLAIMS OF BREACH OF CONTRACT FOR VARIOUS REASONS AND THE

6    THIRD CIRCUIT SAID THERE IS NO BREACH OF CONTRACT CLAIM

7    HERE.  AND THAT IS VERY ANALOGOUS.

8          AND PLAINTIFFS MADE THE ARGUMENT THAT THIS IS

9    NARROW CONTRACT THAT DEALS WITH A NARROW SET OF PEOPLE,

10   BUT I THINK THE WYNN CASE FROM THE THIRD CIRCUIT ALSO

11   DISPOSES OF THAT BECAUSE THE GROUP WHO ALLEGEDLY CLAIMED

12   THE BENEFIT IN THAT CASE WAS SOUTH EASTERN VIETNAMESE

13   REFUGEES OR SOME VERY SPECIFIC GROUP LIKE THAT WHERE THE

14   CONTRACT WAS DESIGNED OBVIOUSLY TO PROVIDE SERVICES, BUT

15   NOT TO PROVIDE, YOU KNOW, THE THIRD PARTY BENEFICIARY,

16   INTENDED BENEFICIARY.

17         AND SO THIS IS A CONTRACT OF BENEFIT TO THE

18   GENERAL PUBLIC BECAUSE TO HELP THE BOP COMPLETE ITS

19   MANDATE TO PROVIDE CARE TO PRISONERS, AND THERE IS NO

20   INTENT OR NO INTENT -- THERE IS NO LANGUAGE THAT SHOWS AN

21   INTENT TO BENEFIT THE INMATE DIRECTLY AND THERE IS NO

22   LANGUAGE THAT ALLOWS A RIGHT TO ENFORCE THE CONTRACT

23   DIRECTLY AGAINST GEO.

24         I THINK ONE OF THE BIGGER POLICY CONCERNS IS

25   THAT IF THIS PLAN IS ALLOWED TO GO FORWARD, THEN INMATES

1    CAN ENFORCE EVERY SINGLE PORTION OF THE RIVERS CONTRACT

2    AGAINST GEO, AND DEPENDING ON HOW YOUR HONOR DECIDES THE

3    SUBJECT MATTER JURISDICTION ISSUE WHICH IS OBVIOUSLY ON

4    THE TABLE.

5             THE COURT:  DO YOU THINK IT WOULD BE LIMITED

6    TO THAT?  I MEAN, I KNOW PLAINTIFF ONLY BRINGS HIS CLAIM

7    AGAINST GEO, AND I KNOW THE UNITED STATES HASN'T TAKEN A

8    POSITION ON THE ISSUE, BECAUSE THEY HAVEN'T BEEN SUED ON

9    THIS CLAIM, BUT WOULDN'T A RULING, YOU KNOW, PERMIT AN

10   INMATE ACTUALLY TO PICK A DEFENDANT?

11            WHY WOULDN'T THE -- I CAN'T THINK OF A

12   LIMITING PRINCIPLE THAT IF THE CLAIM IS RECOGNIZED THAT

13   THE UNITED STATES WOULDN'T BE SUBJECT TO THIS.  I MEAN,

14   THEY HAVEN'T BEEN IN THIS CASE.

15            MR. NUMBERS:  I THINK YOU ARE ABSOLUTELY

16   RIGHT, YOUR HONOR.  THE UNITED STATES OBVIOUSLY IS A

17   PARTY TO THE CONTRACT AND WOULD BE JUST AS LIABLE AS GEO

18   FOR ANY THIRD PARTY BREACH OF CONTRACT OR AT LEAST AS

19   OPEN TO CLAIMS OF LIABILITY AS GEO IS BECAUSE OF THE WAY

20   THE CONTRACT IS WRITTEN AND THE FACT THAT IT'S THIRD

21   PARTY BENEFICIARY, SO THEY COULD ATTACK BOTH DEPENDING ON

22   WHO THEY THOUGHT THEY WOULD HAVE AN EASIER TIME

23   PREVAILING AGAINST.

24            BUT UNLESS YOUR HONOR HAS ADDITIONAL

25   QUESTIONS, THAT IS KIND OF THE TOTAL OF MY ARGUMENT.  I

1    THINK THAT WHILE ISSUES INVOLVING RIVERS AND PRIVATE

2    PRISON MANAGEMENT AND THE RELATIONSHIP WITH THE FEDERAL

3    GOVERNMENT IS KIND OF A DEVELOPING AREA OF LAW, I THINK

4    THE ISSUES IN THIS CASE ARE FAIRLY SETTLED AND THEY ARE

5    SETTLED IN FAVOR OF GEO.  AND SOME OF THE CLAIMS ARE

6    SETTLED IN FAVOR OF THE BOP, SO WE WOULD ASK YOU TO GRANT

7    OUR MOTION TO DISMISS AND DISMISS ALL CLAIMS AGAINST GEO.

8              THE COURT:  THANK YOU.  AT THIS TIME THE COURT

9    WILL HEAR FROM -- IS IT MR. RIDINGS?

10             MR. RIDINGS:  RIDINGS;  YES, YOUR HONOR.

11   THAT'S CORRECT.  THANK YOU.

12             GOOD MORNING, YOUR HONOR.

13             THE COURT:  GOOD MORNING.

14             MR. RIDINGS:  COUNSEL.  AGAIN, MY NAME IS

15   DONALD RIDINGS, APPEARING THIS MORNING FOR THE

16   PLAINTIFFS.  YOUR HONOR, WHAT I WOULD LIKE TO DO IS I

17   WOULD ADDRESS, WITH THE COURT'S PERMISSION, THE FEDERAL

18   CLAIMS AS WELL AS THE NEGLIGENCE CLAIM.

19             MY COLLEAGUE, LAURA SCHATTSCHNEIDER, WILL

20   ADDRESS THE OTHER ISSUE.

21             I WOULD LIKE TO BEGIN WITH WHERE THE COURT

22   BEGAN WHICH IS WITH THE EIGHTH AMENDMENT AND I WOULD ALSO

23   LIKE TO BEGIN WITH THE FEDERAL DEFENDANTS.

24             BEFORE I DO THAT, IF I COULD JUST TAKE A

25   MOMENT TO REVIEW THE ALLEGATIONS OF THE COMPLAINT THAT

1    ARE PERTINENT TO THE MOTIONS THAT ARE BEFORE YOU TODAY,

2    VERY BRIEFLY.

3             YOUR HONOR HAS READ THE PAPERS.  YOU KNOW WE

4    HAVE ALLEGED A SYSTEMIC BREAKDOWN IN THE MEDICAL CARE AT

5    RIVERS AND WE HAVE IDENTIFIED SPECIFICALLY FOUR AREAS

6    WHERE WE BELIEVE THAT BREAKDOWN HAS OCCURRED, AS YOU

7    KNOW.

8             FIRST, ACCESS TO MEDICAL CARE.  SECOND, STAFF

9    IN TRAINING AND RELATED PERSONNEL RESPONSIBILITIES.

10   THIRD, ACCESS TO MEDICATIONS.  AND FINALLY, THE FAILURE

11   TO TREAT INFECTIOUS DISEASES.  AND WE HAVE SUPPORTED

12   THOSE ALLEGATIONS NOT SIMPLY THROUGH CONCLUSORY

13   STATEMENTS, YOUR HONOR, BUT WE HAVE ILLUSTRATED THEM

14   THROUGH ALLEGATIONS PERTAINING TO 11 MEN WHO ARE OR HAVE

15   BEEN INCARCERATED AT THE RIVERS FACILITY AND THOSE

16   VIOLATIONS, IT IS ALLEGED, HAVE PERSISTED OVER A LONG

17   PERIOD OF TIME, MORE THAN TWO AND A HALF YEARS.

18            NOW, THE COMPLAINT ALSO DESCRIBES, OF COURSE,

19   THE CONSEQUENCES OF THOSE BREAKDOWNS, AND I WON'T REVIEW

20   THEM, THINGS LIKE AMPUTATIONS AND SERIOUS MEDICAL

21   PROBLEMS, AND CAUSES AND CONSEQUENCES OF THOSE FAILURES

22   IN MEDICAL CARE.

23            IMPORTANT FOR THE MOTIONS TODAY, IN PARTICULAR

24   THE COMPLAINT ALLEGES THAT THE DEFENDANTS KNEW ABOUT AND

25   DISREGARDED THOSE RISKS.  AND WHEN I SAY DEFENDANTS, I

1    INCLUDE THE FEDERAL DEFENDANTS IN THAT WORD.  CLEARLY, I

2    DON'T THINK THERE IS ANY DISPUTE NOR IS IT BEFORE THE

3    COURT THIS MORNING THAT THOSE ALLEGATIONS AT LEAST

4    SATISFY THE EIGHTH AMENDMENT STANDARD FOR CLAIM OF

5    DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS AND

6    CONCERNS.  THE DEFENDANTS HAVE NOT DISPUTED THAT.  THAT

7    IS THE TEST THAT COMES OUT OF THE FARMER CASE.  IT HASN'T

8    DEVIATED.  BECAUSE THEY DON'T DISPUTE IT, I DON'T THINK,

9    OF COURSE, WE SHOULD SPEND MORE TIME ON IT THIS MORNING.

10           LET ME TURN NOW SPECIFICALLY TO THE FEDERAL

11   DEFENDANTS AND THE PRINCIPAL DEFENSE THAT THEY HAVE

12   RAISED WHICH IS WERE THE BOP, WHERE THE DIRECTOR OF THE

13   BOP, WHAT YOU HAVE BEEN TALKING ABOUT, PLAINTIFFS, IS

14   STUFF THAT HAPPENED AT RIVERS, A FACILITY OPERATED BY GEO

15   THAT DOESN'T HAVE ANYTHING TO DO WITH US.  WE CAN'T BE

16   LIABLE.

17           YOUR HONOR, PLAINTIFF'S PRINCIPLE THEORY IN

18   THIS CASE IS THAT THE FEDERAL DEFENDANTS ARE DIRECTLY

19   LIABLE FOR A VIOLATION OF THE EIGHTH AMENDMENT.  THE

20   COMPLAINT IN GREAT DETAIL ALLEGES FACTS FROM WHICH THE

21   COURT COULD REASONABLY INFER DELIBERATE INDIFFERENCE ON

22   THE PART OF THE FEDERAL DEFENDANTS IN THIS CASE.

23           THOSE FACTS INCLUDE THAT THEY HAD -- THE BOP

24   HAD OFFICIALS STATIONED ON SITE AT THE FACILITY.  THAT IS

25   IN PARAGRAPHS 32 THROUGH 34 OF OUR COMPLAINT.  THEY HAD

1     2,500 SQUARE FOOT OFFICE ON SITE WITH TEN PARKING SPACES,

2     THAT THEY EXERCISED CONTROL OVER PERSONNEL DECISIONS,

3     POLICIES AND PROCEDURES.  THAT, OF COURSE, IS TIED

4     DIRECTLY TO ONE OF THE FOUR DEFICIENCIES THAT WE HAVE

5     ALLEGED, ONE OF THE FOUR BREAKDOWNS, AND THAT IS

6     PARAGRAPH 33; THAT THE BOP MONITORED AND OVERSAW THE

7     CENTRAL FUNCTIONS AT RIVERS.  THAT COMES DIRECTLY OUT OF

8     THE COMPLAINT WHICH WE ATTACHED TO THE CONTRACT WHICH WE

9     ATTACHED TO THE COMPLAINT; THAT THE LEAD BOP

10    REPRESENTATIVE ON SITE WAS (QUOTE) "RESPONSIBLE" FOR THE

11    TECHNICAL DIRECTION OF THE PERFORMANCE OF ALL WORK UNDER

12    THE CONTRACT, ALSO DIRECTLY OUT OF THE COMPLAINT.

13            AND WE HAVE ALLEGED, MOREOVER, THAT THESE WERE

14    NOT ISOLATED EVENTS.  THESE WERE VIOLATIONS THAT WERE

15    OPEN AND NOTORIOUS, THAT IN MANY CASES OCCURRED IN PLAIN

16    SIGHT, EVEN IN THE COURTYARD OF THE FACILITY, OF THE

17    CASES OF THE PILL LINE WHICH WE DESCRIBED IN OUR

18    ALLEGATIONS DEALING WITH ACCESS TO MEDICATIONS.

19            YOUR HONOR, THE PLAINTIFFS, WE BELIEVE, HAVE

20    ALLEGED SUFFICIENT FACTS AT THIS VERY EARLY, VERY

21    PRELIMINARY STAGE OF THIS CASE, FROM WHICH THE COURT OR A

22    FACT FINDER COULD REASONABLY INFER THAT THE FEDERAL

23    DEFENDANTS KNEW ABOUT AND DISREGARDED SERIOUS MEDICAL

24    RISKS TO THOSE PRISONERS.  THAT IS A DIRECT CLAIM AGAINST

25    THE FEDERAL DEFENDANTS, AND THAT IS A LITTLE BIT

1    DIFFERENT THAN WHAT HAS HAPPENED IN MANY OF THE CASES

2    BEFORE.

3              LET ME BE VERY CLEAR ABOUT THIS.  THAT DIRECT

4    CLAIM DOES NOT DEPEND ON WHETHER GEO IS A GOVERNMENT

5    ACTOR BECAUSE IT IS A DIRECT CLAIM AGAINST THE FEDERAL

6    DEFENDANTS.  NOR DOES IT DEPEND ON WHETHER THE ACTS OF

7    GEO OR ITS EMPLOYEES CAN SOMEHOW BE IMPUTED TO THE

8    FEDERAL DEFENDANTS.

9              NOW, WE BELIEVE THEY CAN, AND I WILL COME TO

10   THAT WHEN I TALK ABOUT GEO, BUT OUR CLAIM AGAINST THE

11   FEDERAL DEFENDANTS DOES NOT DEPEND ON THAT.  NOR DOES IT

12   DEPEND ON A THEORY OF SUPERVISORY LIABILITY, ALTHOUGH

13   OBVIOUSLY ALLEGATIONS PERTAINING TO --

14             THE COURT:  DO YOU THINK THAT CLAIM IS SUBJECT

15   TO THE PLRA, AND HAS PLAINTIFF EXHAUSTED, IF IT IS.

16             MR. RIDINGS:  IF IT IS, I THINK IT PROBABLY IS

17   SUBJECT TO THE PLRA, THE SAME WAY THAT, FOR EXAMPLE, A

18   DIRECT CLAIM WOULD BE SUBJECT TO THE PLRA IF THEY WERE

19   INCARCERATED IN A BOP PRISON.  BUT AS I WILL TALK ABOUT

20   IN A MOMENT OR I THINK AS WE HAVE CERTAINLY DESCRIBED IN

21   OUR BRIEF, OUR PLAINTIFFS HAVE SATISFIED ANY EXHAUSTION

22   REQUIREMENT --

23             THE COURT:  HAVE?

24             MR. RIDINGS:  HAVE SATISFIED ANY EXHAUSTION

25   REQUIREMENT CERTAINLY AGAINST THE FEDERAL DEFENDANTS AT

1     THIS STAGE OF THE PROCEEDING.

2            AND SO I THINK IT'S VERY IMPORTANT TO KEEP IN

3     MIND THAT OUR PRINCIPLE THEORY OF LIABILITY IS A DIRECT

4     CLAIM, NOT A DERIVATIVE CLAIM.  YOU DON'T NEED TO MAKE A

5     STATE ACTION FINDING IN ORDER TO FIND THAT WE STATED A

6     CLAIM.

7            THE COURT:  WHERE DO YOU ALLEGE THAT YOUR

8     PLAINTIFF HAS EXHAUSTED UNDER THE PLRA?

9            MR. RIDINGS:  I DON'T KNOW THAT WE HAVE

10    ALLEGED IN OUR COMPLAINT, YOUR HONOR, BUT UNDER THE JONES

11    DECISION, I DON'T BELIEVE WE ARE REQUIRED TO.

12           THE COURT:  BUT YOU BELIEVE -- IN FACT, THERE

13    IS AN AFFIDAVIT OR DECLARATION SUBMITTED THAT THE BOP

14    SUBMITTED SAYING THAT CERTAINLY THE BOP SUBMITTED IT IN

15    CONNECTION WITH THE REHABILITATION ACT CLAIM SUGGESTING

16    THAT, IN FACT, THERE HASN'T BEEN A SUBMISSION.  AND I AM

17    SURE ONE OF YOU ALL CITED IN THE PAPERS THE SIMMAT

18    DECISION THAT JUDGE MCCONNELL -- THEN JUDGE MCCONNELL --

19    WROTE FOR THE TENTH CIRCUIT.

20           THAT ULTIMATELY DEALT WITH A PRISONER SEEKING

21    DENTAL CARE IN A BOP FACILITY, AND THE TENTH CIRCUIT IN

22    THAT CASE ULTIMATELY DISMISSED THAT CLAIM FOR -- AGAINST

23    THE BOP FOR FAILURE TO EXHAUST.

24           SO YOU TAKE THE POSITION THAT MR. COLLAND HAS

25    EXHAUSTED HIS EIGHTH AMENDMENT CLAIM.

1          MR. RIDINGS:  WE TAKE THE POSITION TO THE

2     EXTENT THAT THE COURT FOUND THAT AN EXHAUSTION

3     REQUIREMENT DID APPLY AGAINST -- IN A CLAIM SUCH AS THIS,

4     EVEN WHERE HE IS NOT INCARCERATED IN A FEDERAL FACILITY,

5     THAT SUCH AN EXHAUSTION IS --

6          THE COURT:  I THOUGHT YOU SAID THAT BECAUSE

7     IT'S A DIRECT CLAIM AGAINST THE BOP, THE WAY YOU

8     UNDERSTAND THE PLRA, THAT HE WOULD HAVE TO EXHAUST.

9          MR. RIDINGS:  I AM PREPARED TO TAKE ON THAT

10    BURDEN FOR PURPOSES OF THIS ARGUMENT AND RESPOND THAT HE

11    SATISFIED THAT REQUIREMENT FOR THIS REASON.  IN THE JONES

12    CASE, WHICH IS THE SUPREME COURT CASE THAT WE ALL READ

13    AND KNOW ABOUT, WHAT THE JONES CASE SAID IS THAT WE LOOK

14    TO THE EXHAUSTION REQUIREMENTS OF THE FACILITY AT THE

15    PRISON, AND THERE HAS BEEN NO ALLEGATION NOR I THINK

16    COULD THERE BE ONE WITH THE RULES WE ALL OPERATE UNDER,

17    THAT HE HAS NOT EXHAUSTED HIS PRISON REMEDIES OF GEO.

18    THAT'S ALL HE IS REQUIRED TO DO.

19          AND TO THE EXTENT THAT THERE IS AN EXHAUSTION

20    REQUIREMENT FOR A DIRECT CLAIM AGAINST THE FEDERAL

21    DEFENDANTS, THAT HAS BEEN SATISFIED.  THERE IS NO

22    REQUIREMENT THAT HE GO ON AND THEN EXHAUST SOME SEPARATE

23    BOP DOJ REGULATORY REGIME.

24          I THINK THAT IS, IF NOT DIRECTLY FORECLOSED BY

25    THE JONES DECISION, CERTAINLY QUITE INCONSISTENT WITH THE

1    THRUST OF THAT DECISION, WHICH IS LOOK TO THE RULES AT

2    THE PLACE IN WHICH THE PRISONER IS INCARCERATED TO

3    DETERMINE THE EXHAUSTION REQUIREMENTS.

4         NOW, YOUR HONOR, THE DIRECT CLAIM THAT WE HAVE

5    ASSERTED, THE FRAMEWORK FOR THAT CLAIM, IS EXACTLY THE

6    SAME AS THE ONE THAT APPLIES TO ANY OTHER EIGHTH

7    AMENDMENT CLAIM, WHETHER THE FEDERAL DEFENDANTS WERE

8    DELIBERATELY INDIFFERENT TO THE SERIOUS MEDICAL NEEDS OF

9    THE PRISONERS, AND THAT, WE SUBMIT, GIVEN ALL OF THE

10   KNOWLEDGE THAT ONE CAN REASONABLY INFER, SATISFIES THE

11   DELIBERATE INDIFFERENCE STANDARD OF THE SERIOUS MEDICAL

12   NEEDS.

13        NOW, YOUR HONOR, I THINK, QUITE RIGHTLY

14   BROUGHT UP A POINT DURING QUESTIONING OF DEFENSE COUNSEL

15   THAT YOU NEED TO BE COGNIZANT OF NOT ONLY WHAT IS THE

16   EFFECT OF THIS CASE, BUT WHAT WOULD THE EFFECT OF THAT BE

17   IF YOU WERE TO HOLD THAT IT WAS ADEQUATE TO STATE A

18   CLAIM, BECAUSE AS WE KNOW, OF COURSE, THIS IS NOT THE

19   ONLY CASE COMING OUT OF RIVERS OR OUT OF ANY PRISON THAT

20   THIS COURT SEES.

21        AND I THINK THAT THE COURT CAN BE FAIRLY

22   SECURE THAT THIS IS NOT TO THE EXTENT THERE IS A

23   FLOODGATES ARGUMENT APPLIED, FROM WHAT I AM READING, THAT

24   IS NOT THE CASE FOR WHAT THIS PARTICULAR PLAINTIFF HAS

25   ALLEGED HERE FOR THE FOLLOWING REASONS.

1          FIRST OF ALL, THE VAST MAJORITY OF THE CASES

2     THAT THE COURT SEES COMING ACROSS THIS DOCKET ARE

3     BUSINESS CLAIMS FOR DAMAGES.  THIS IS NOT A BUSINESS

4     CLAIM FOR DAMAGES.  IT'S A CLAIM FOR INJUNCTIVE RELIEF

5     ONLY.  WE HAVE LIMITED THE REMEDIES TO EQUITABLE

6     REMEDIES.  THAT, OF COURSE, IS CERTAINLY ONE DISTINCTION.

7     AND MOREOVER, THE LEVEL OF KNOWLEDGE ALLEGED IN OUR

8     COMPLAINT, I THINK, IS QUITE DIFFERENT FROM CASES WHERE

9     PRISONERS ARE SAYING I WAS TAKEN TO MEDICAL INFIRMARY, I

10    RECEIVED HORRIBLE, TERRIBLE CARE, IT VIOLATES MY EIGHTH

11    AMENDMENT RIGHTS.

12          PERHAPS THE COURT CAN REASONABLY CONCLUDE THAT

13    THE BOP, BASED ON THOSE ALLEGATIONS, COULD NOT -- YOU

14    COULD NOT REASONABLY INFER THAT THE BOP WOULD BE ON

15    NOTICE OF THAT, WHATEVER HAPPENS BEHIND THE CURTAIN IN

16    THE INFIRMARY, BUT THAT IS NOT WHAT WE HAVE ALLEGED.  WE

17    HAVE ALLEGED SYSTEMIC, LONG-STANDING, ONGOING OPEN AND

18    NOTORIOUS VIOLATIONS OVER A PERIOD OF YEARS.  AND IT

19    SIMPLY CANNOT REASONABLY BE INFERRED THAT THE BOP WOULD

20    HAVE BEEN IGNORANT OF WHAT WAS GOING ON BASED ON THE

21    ALLEGATIONS IN THIS COMPLAINT.

22          NOW, I WOULD ADD THAT IF THIS CASE GOES

23    FORWARD AND IF A CLASS IS CERTIFIED, OF COURSE, THIS CASE

24    WILL ALSO BECOME THE VEHICLE FOR WHATEVER INJUNCTIVE

25    REMEDIES ULTIMATELY MAY BE ENTERED OR MAY NOT BE ENTERED

1    BY THE COURT.

2              SO I THINK THAT TO THE EXTENT WE HAVE HEARD A

3    HINT OR IMPLICATION THAT THERE IS A FLOODGATES CONCERN

4    WITH THIS DIRECT CLAIM, I DON'T THINK THAT IS THE CASE

5    BASED ON THE ALLEGATIONS IN THIS COMPLAINT.

6              LET ME TURN NOW TO GEO.  I THINK, AS WE ALL

7    KNOW, THERE ARE THREE CASES THAT ARE GOING TO GOVERN THE

8    DECISION IN THIS CASE, AS IN -- AS IT HAS BEEN BRIEFED BY

9    ALL THE PARTIES, AND THOSE THREE CASES ARE WEST

10   AGAINST ATKINS, THE MALESKO CASE, AND OF COURSE THE HOLLY

11   CASE.  AND I THINK IN ORDER TO UNDERSTAND OUR CLAIM AND

12   HOW WE HAVE TEED IT UP, IT'S IMPORTANT TO SEE HOW WE

13   BELIEVE THOSE THREE CASES FIT TOGETHER.

14             THE WEST CASE, OF COURSE, WAS THE FIRST OF

15   THOSE THREE CASES, AN EIGHTH AMENDMENT CLAIM AGAINST A

16   PRIVATE DOCTOR.  AND THE COURT HELD THAT THAT CLAIM COULD

17   PROCEED UNDER THE EIGHTH AMENDMENT ON THE RATIONALE THAT

18   YOUR HONOR IS CERTAINLY WELL FAMILIAR WITH.

19             WE BELIEVE THAT PERHAPS IN OTHER PARTS OF THE

20   COUNTRY THE WEST CASE WOULD CONTROL THE OUTCOME OF THIS

21   CASE, BUT THAT CLEARLY IS NOT THE CASE IN THIS CIRCUIT.

22             SO WE TURN TO THE MALESKO CASE.  AND WE SHOULD

23   JUST ADD THAT THE WEST CASE, THERE WERE EIGHT JUSTICES

24   THAT VOTED FOR THAT.  JUSTICE SCALIA CONCURRED.  SO AT

25   LEAST AT THE TIME THAT OCCURRED, THAT WAS NOT A

1    CONTROVERSIAL ISSUE.

2         THE SECOND CASE, OF COURSE, IS THE MALESKO

3    CASE, AN OPINION OFFERED BY CHIEF JUSTICE REHNQUIST, AN

4    EIGHTH AMENDMENT CLAIM AGAINST ONE OF GEO'S COMPETITORS.

5    THAT WAS A BIVENS ACTION FOR DAMAGES, AS YOUR HONOR IS

6    WELL AWARE, AND THE COURT HELD THAT A PRISONER CANNOT

7    MAINTAIN A BIVENS ACTION FOR DAMAGES AGAINST A PRIVATE

8    PRISON OPERATOR THAT CONTRACTS WITH THE BUREAU OF

9    PRISONS.

10        AND WE HAVE ACKNOWLEDGED IN OUR BRIEF THAT

11   THAT CASE FORECLOSES THE BIVENS CLAIM AGAINST GEO.  WE

12   HAVE NOT ASSERTED ONE.  IT'S NOT BEFORE THE COURT.  BUT

13   WE HAVE POINTED OUT THAT THE CHIEF JUSTICE, IN EXPLAINING

14   THE RATIONALE FOR HIS RULING, WENT ON TO WRITE, (QUOTE)

15   "UNLIKE THE BIVENS REMEDY WHICH WE HAVE NEVER CONSIDERED

16   A PROPER VEHICLE FOR ALTERING AN ENTITY'S POLICY,

17   INJUNCTIVE RELIEF HAS LONG BEEN RECOGNIZED AS THE PROPER

18   MEANS FOR PREVENTING ENTITIES FROM ACTING

19   UNCONSTITUTIONALLY."

20        NOW, YOU CAN TRY TO DISTINGUISH THAT.

21        THE COURT:  HOW DO YOU DEAL WITH THE FACT THAT

22   IN HOLLY, MR. HOLLY SOUGHT DAMAGES AND INJUNCTIVE RELIEF.

23   HIS PRAYER FOR RELIEF IN THAT CASE SAID I WANT AN

24   INJUNCTION MOVING ME OUT OF RIVERS TO A FEDERAL

25   CORRECTIONAL INSTITUTE WITH A COMPETENT MEDICAL STAFF.

1   THAT WAS ESSENTIALLY WHAT HE SAID.

2          HOW DO YOU DEAL WITH HOLLY?  OR MORE

3   PARTICULARLY, HOW WOULD YOU PROPOSE THIS COURT WHICH IS

4   BOUND BY HOLLY DEAL WITH HOLLY?

5          MR. RIDINGS:  I THINK THAT IS MORE THAN A FAIR

6   QUESTION.  I THINK I PAID VERY CLOSE ATTENTION TO THAT

7   QUESTION FROM YOUR HONOR BECAUSE IT'S A VERY GOOD ONE AND

8   A VERY TOUGH ONE, AND I THINK THERE ARE TWO ANSWERS TO

9   IT.

10         THE FIRST ONE IS I AM NOT CERTAIN AT THE TIME

11  THE FOURTH CIRCUIT ISSUED ITS DECISION WHETHER MR. HOLLY

12  WAS STILL INCARCERATED AT RIVERS.  I WOULD WANT TO GO

13  BACK AND SEE WHETHER OR NOT, IN FACT, HE HAD A LIVE CLAIM

14  FOR INJUNCTIVE RELIEF AT THAT TIME, BECAUSE HE MAY NOT

15  HAVE.

16         AND WHETHER HE DID NOT OR NOT, HOWEVER, IT

17  CERTAINLY IS SIGNIFICANT THAT THE FOURTH CIRCUIT DIDN'T

18  ADDRESS THAT ISSUE.

19         YOU ARE NOT BOUND BY RULINGS FROM A FOURTH

20  CIRCUIT ON INJUNCTIVE RELIEF AGAINST GEO.  NOW, WE CAN --

21  IT'S A TOUGH CASE FOR US, THERE IS NO QUESTION ABOUT

22  THAT.  BUT WE BELIEVE THAT THESE FACTS -- AND THIS IS A

23  VERY CAREFULLY PLEADED COMPLAINT AS YOUR HONOR I HOPE

24  APPRECIATES -- WE BELIEVE WE HAVE DONE PRECISELY WHAT

25  JUSTICE REHNQUIST IN MALESKO AND THE TWO JUDGES WHO WERE

1    IN THE MAJORITY IN THE HOLLY DECISION HAVE SAID IS THE

2    PROPER WAY TO ADDRESS THIS TYPE OF SITUATION, BECAUSE

3    REMEMBER IN THE HOLLY CASE, THIS IS HOW THE ISSUE IN THAT

4    CASE WAS STATED (QUOTE) "WHETHER INDIVIDUAL EMPLOYEES OF

5    A PRIVATELY OPERATED PRISON FACE EIGHTH AMENDMENT

6    LIABILITY UNDER BIVENS". THAT IS ON THE FIRST PAGE OF

7    THE DECISION.

8          SO TO THE EXTENT THAT WE WANT TO READ AND

9    INFER THINGS BEYOND THE FOUR CORNERS OF THE DECISION, AS

10   WE ALL DO AS LAWYERS, I THINK TO THE EXTENT THAT WE ARE

11   LOOKING FOR WHAT IS THE HOLDING, WHAT DID THEY HOLD IN

12   THAT CASE? THEY HELD THAT EMPLOYEES OF GEO AT THE RIVERS

13   FACILITY ARE NOT LIABLE, INDIVIDUAL EMPLOYEES.

14          THE COURT: WHY DID THEY HOLD THAT?

15          MR. RIDINGS: I AM SORRY.

16          THE COURT: WHY DID THEY HOLD THAT?

17          MR. RIDINGS: WHY DID THEY HOLD THAT?

18          THE COURT: DOESN'T THAT THEN GET US BACK TO

19   UPHOLD THE PUBLIC FUNCTION THEORY. I MEAN, I AGREE AND I

20   UNDERSTAND AS ADVOCATES THE CASE IS AGAINST YOU. I AM

21   GOING TO READ IT NARROWLY. THE OTHER SIDE IS GOING TO

22   READ IT BROADLY. I AM TRYING TO READ IT FAIRLY. AND SO

23   I AM TRYING TO -- AND, OF COURSE, I AM BOUND BY IT.

24          MR. RIDINGS: I APPRECIATE THAT.

25          THE COURT: AND SO I AM TRYING TO UNDERSTAND,

1    WASN'T THE CRUX OF WHY THE COURT, THE MAJORITY HELD THAT

2    BECAUSE IT CONCLUDED AS IT READ THE SUPREME COURT CASES

3    THAT GEO WAS NOT A GOVERNMENT ACTOR AND COULDN'T BE

4    LIABLE UNDER THE EIGHTH AMENDMENT?

5            MR. RIDINGS:  NO, THAT IS NOT WHAT IT HELD.

6    THE ISSUE BEFORE THE COURT WAS WHETHER THOSE INDIVIDUAL

7    EMPLOYEES WERE SUBJECT TO THE BIVENS ACTION.  SO TO THE

8    EXTENT THAT THERE IS A GOVERNMENT ACTION HOLDING IN

9    HOLLY, THAT HOLDING APPLIES TO THOSE EMPLOYEES.

10   CERTAINLY I BELIEVE THAT IS HOW I READ THE CASE.

11           AND I THINK YOU CAN SEE THE REASONING.  YOU

12   KNOW, THE GOVERNMENT CONTRACTS WITH GEO.  GEO THEN HAS

13   CONTRACTS WITH ANOTHER ENTITY, AND THEN MAYBE THEY HAVE A

14   CONTRACT WITH A THIRD ENTITY, A FOURTH AND FIFTH, AND

15   WHERE DOES IT END?  YOU KNOW, THERE, I THINK, THERE

16   PROBABLY IS NO LIMITING PRINCIPLE, BUT THAT WAS QUITE

17   DIFFERENT.  REMEMBER WHERE THIS ALL STARTED WAS WITH

18   WEST.

19           IN THE CASE OF WEST, YOU HAD A CONTRACT

20   DIRECTLY BETWEEN THE GOVERNMENT ENTITY AND THE SERVICE

21   PROVIDER, AND SO THAT PUTS GEO, FRANKLY, ON THE SAME

22   FOOTING AT LEAST AS WITH RESPECT TO THE CONTRACTUAL

23   RELATIONSHIP AS THE PHYSICIAN IN WEST WAS WITH THE STATE.

24           NOW, I WILL ANTICIPATE THE ARGUMENT THAT WAS A

25   SECTION 1983 CASE, IT WAS A STATE ENTITY AND NOT A

1    FEDERAL ENTITY, BUT TO THE EXTENT WE ARE THINKING, YOU

2    KNOW, HOW DO YOU APPROACH THE ISSUE OF GOVERNMENT

3    KNOWLEDGE AND WHERE ARE THE LIMITS?  YOU KNOW, PERHAPS

4    ONE COULD FAIRLY READ THAT DECISION AS EXTENDING TO GEO,

5    THE CORPORATE ENTITY, BUT THAT CERTAINLY WAS NOT THE

6    SPECIFIC ISSUE BEFORE THE COURT.

7           SO THAT IS THE BASIS ON WHICH WE DISTINGUISH

8    IT.  AND IT'S NOT JUST US MAKING THAT UP BECAUSE

9    SOMETHING SIMILAR WAS ON THE MINDS OF NINE JUSTICES IN

10    WEST WHEN THEY REACHED A SIMILAR CONCLUSION WITH RESPECT

11    TO THIS KEY POSITION.

12           WE HAVE EXPLAINED IN OUR BRIEF THE REASONS WE

13    BELIEVE, LEAVING THE STATE ACTION ASIDE, WHY WE THINK

14    HOLLY DOESN'T GOVERN.  THE DEFENDANT IS DIFFERENT, THE

15    REMEDY IS DIFFERENT, AND SO FORTH.

16           SO WE THINK THAT THOSE THREE CASES ADD UP TO

17    THE FOLLOWING:  PRIVATE PRISON COMPANIES LIKE GEO ARE NOT

18    SUBJECT TO BIVENS CLAIMS -- THAT IS STRAIGHT OUT OF WEST.

19    EMPLOYEES OF PRIVATE PRISONS ARE NOT SUBJECT TO BIVENS

20    CLAIMS FOR DAMAGES EITHER, AT LEAST IN THIS CIRCUIT.

21    THAT IS THE HOLDING IN HOLLY.

22           IN APPROPRIATE CIRCUMSTANCES, HOWEVER, A

23    PRIVATE CONTRACTOR IN THE SERVICE OF A GOVERNMENT ENTITY

24    MAY BE CONSIDERED PERFORMING A PUBLIC FUNCTION SUFFICIENT

25    TO SUBJECT THEM TO AN EIGHTH AMENDMENT CLAIM, AND THAT IS

1    WEST.  WEST IS STILL THERE.  IT HAS TO MEAN SOMETHING.

2           THE SUPREME COURT IN MALESKO -- AND AS WE -- I

3    SAID A MOMENT AGO, SAID THAT INJUNCTIVE RELIEF HAS LONG

4    BEEN RECOGNIZED AS THE PROPER MEANS FOR PREVENTING

5    ENTITIES FROM ACTING UNCONSTITUTIONALLY.  THAT HAS TO

6    MEAN SOMETHING.  THERE HAS TO BE AN INJUNCTIVE RELIEF

7    CLAIM IN THERE SOMEWHERE, AND WE SUBMIT THAT WE HAVE

8    FRAMED THIS IN THE WAY THAT WAS CONTEMPLATED BY THOSE

9    CASES.

10          AND THE FOURTH CIRCUIT, LET'S NOT FORGET THAT

11   AT THE END OF DECISION, EXPLAINING, IN FACT, IN A

12   LIMITING PARAGRAPH OF THEIR DECISION WHERE THEY WERE

13   SAYING WHAT IT DOESN'T APPLY TO, THEY DISTINGUISH BETWEEN

14   CLAIMS BROUGHT AGAINST GEO EMPLOYEES ON THE ONE HAND AND

15   (QUOTE) "INDEPENDENT CONTRACTORS IN THE SERVICE OF THE

16   FEDERAL GOVERNMENT". (CLOSED QUOTE)  THAT HAS TO MEAN

17   SOMETHING.

18          AND WE SUBMIT THAT WHAT IT MEANS IS THAT FOR

19   THE VERY NARROW CHANNEL THAT WE HAVE DRIVEN THROUGH HERE

20   AND INJUNCTIVE CLAIM AGAINST GEO, THAT STATES AN EIGHTH

21   AMENDMENT CLAIM UNDER CONTROLLING PRECEDENT, INCLUDING

22   HOLLY.

23          I WOULD ADD, YOUR HONOR, TO THE EXTENT YOUR

24   HONOR REALLY WANTS TO LOOK BEHIND AND GET INTO THE

25   RATIONALE THAT MOTIVATED THOSE DECISIONS, ONE OF THEM, OF

1    COURSE, WAS A DESIRE TO AVOID INCONSISTENT REMEDIES, AND

2    YOU HAVE READ THOSE CASES, AND ONE OF THE REASONS THEY

3    DIDN'T WANT TO GIVE A BIVENS CLAIM IS BECAUSE IT GIVES

4    GEO'S RIVERS PRISONERS AN EXTRA BITE AT THE APPLE THAT

5    FEDERAL PRISONERS WON'T HAVE.  THAT CONCERN IS NOT

6    PRESENT IN OUR CASE.

7              ALL WE ARE ASKING FOR IS THAT PRISONERS IN A

8    PRIVATE FACILITY BE ABLE TO BRING INJUNCTIVE CLAIM

9    AGAINST THEIR CAPTOR IN THE SAME WAY THAT IF HE HAD BEEN

10   A PRISONER IN A BUREAU OF PRISONS FACILITY COULD.

11   BECAUSE AT THE END OF THE DAY, WHAT, IS REALLY HAPPENING

12   HERE, THE ISSUE THAT IS REALLY IN FRONT OF YOUR HONOR IS

13   IN THIS CASE HAS SQUARELY PRESENTED, I SUBMIT, IS WHETHER

14   FEDERAL PRISONERS REALLY DO HAVE MORE RIGHTS IF THEY ARE

15   IN A BOP FACILITY THAN THEY DO IF THEY ARE IN A PRIVATE

16   FACILITY.

17             THAT IS REALLY WHAT IS AT THE HEART OF THIS

18   CLAIM, AND WE SUBMIT THAT THE ONLY WAY THAT CAN BE

19   EQUALIZED IS TO RECOGNIZE AND ACKNOWLEDGE AN INJUNCTIVE

20   REMEDY AGAINST GEO ON THE GROUNDS THAT I HAVE STATED.

21             BEFORE I CLOSE, LET ME JUST ACKNOWLEDGE -- AND

22   I WAS EXPECTING --

23             THE COURT:  CLOSE ARE THAT CLAIM?

24             MR. RIDINGS:  ON THAT CLAIM.

25             THE COURT:  I KNOW YOU WANT TO TAKE A FEW

1  SHOTS AT THE REHAB, I AM SURE.

2          MR. RIDINGS:  CLOSING ON THE EIGHTH AMENDMENT

3  CLAIM, I THOUGHT I MIGHT HEAR SOMETHING ABOUT THIS DURING

4  THE ORIGINAL PRESENTATION.  GEO ACTUALLY ACKNOWLEDGES IN

5  ITS OPENING BRIEF THAT THIS REMEDY IS AVAILABLE.  AND ON

6  PAGE 7 OF THE BRIEF, THEY CITE (QUOTE) "PRISONERS IN

7  PRIVATELY OPERATED FACILITIES HAVE THE ABILITY TO SEEK

8  INJUNCTIVE RELIEF IN FEDERAL COURT".  THAT IS ON PAGE 7

9  OF THEIR BRIEF.

10          AND THEY SORT OF RETREAT FROM THAT LITTLE BIT.

11  THE BOP ACTUALLY MAKES THE ARGUMENT, THE COUNTER ARGUMENT

12  IN ITS PAPERS FOR DERIVATIVE LIABILITY PURPOSES, BUT THAT

13  IS A CONCESSION THAT IS IN THE RECORD AND IT'S IN THEIR

14  BRIEF, AND THAT IS PRECISELY WHAT WE HAVE DONE HERE.

15          AND I WILL JUST POINT OUT, YOUR HONOR, THAT

16  WHEN GEO RECENTLY FILED PAPERS, MR. COLLINS, YOU WILL

17  RECALL, WAS ONE OF THE NAMED PLAINTIFFS.  HE IS NO LONGER

18  A NAMED PLAINTIFF.  HE HAS A PRIVATE CASE.  IT HAS BEEN

19  REMOVED.  YOU KNOW THAT VERY WELL.

20          WHEN THEY REMOVED THAT STATE LAW CLAIM, THEY

21  INVOKED AS A GROUND OF REMOVAL 28 U.S.C. 1442.  MAY I

22  HAND THIS UP TO YOUR HONOR?  I PROVIDED A COPY TO THE

23  COUNSEL.

24          THE COURT:  SURE.  YOU MAY.

25          MR. RIDINGS:  IT'S IN YOUR RECORD, BUT I HAVE

1    A COPY.

2              THE COURT:  THAT IS FINE.  YOU CAN HAND IT UP.

3              MR. RIDINGS:  AND IF YOUR HONOR WOULD TURN TO

4    ABOUT THE FOURTH OR FIFTH PAGE OF THIS DOCUMENT WHICH IS

5    THE SECOND PAGE OF THE PETITION FOR REMOVAL, PARAGRAPH 6,

6    GEO HAS ASSERTED THAT THE UNITED STATES DISTRICT COURT

7    HAS JURISDICTION OVER THIS MATTER PURSUANT TO 28 U.S.C.

8    1442.  AND THAT, OF COURSE, IS THE FEDERAL OFFICER OR THE

9    AGENCY REMOVAL STATUTE.

10             THE COURT:  DOES YOUR ARGUMENT ABOUT COLLINS

11   DEPEND ON MY ACCEPTING GEO'S ARGUMENT.  I HAVEN'T RULED

12   ON THIS YET, BUT I KNOW IT'S IN FRONT OF ME.

13             MR. RIDINGS:  NO, SIR.

14             THE COURT:  OR ARE YOU JUST TRYING TO SORT OF

15   PROVE THE POINT THAT A MINDLESS CONSISTENCY IS THE

16   HOBGOBLIN OF LITTLE MINDS AND THAT GEO, AS ADVOCATES, IS

17   NOT PARTICULARLY CONSISTENT IN THE POSITIONS IT TAKES.

18             MR. RIDINGS:  I THINK CERTAINLY I AM NOT

19   MAKING ANY COMMENT ON THE COLLINS CASE.  I WANT TO MAKE

20   THAT CLEAR.  I AM SAYING -- AND I AM NOT CRITICIZING

21   GEO'S COUNSEL IN ANY WAY, YOUR HONOR.

22             I AM SIMPLY SAYING THAT WHAT GEO SEEKS TO DO

23   THROUGH THESE CASES IS ON THE ONE HAND ACCEPT THE

24   BENEFITS OF ITS FEDERAL OFFICER AND AGENCY STATUS WHILE

25   AVOIDING THE BURDENS, AND WE SIMPLY SUBMIT YOU HAVE GOT

1   TO -- YOU EITHER ARE OR YOU AREN'T.  YOU HAVE ALLEGED TO

2   THIS COURT THAT YOU ARE, AND IF YOU ARE FOR ONE PURPOSE,

3   YOU OUGHT TO BE FOR ANOTHER PURPOSE, TOO.

4           THE COURT:  OKAY.

5           MR. RIDINGS:  UNLESS THERE ARE FURTHER

6   QUESTIONS, I WILL MOVE ON TO THE REHAB ACT CLAIM, YOUR

7   HONOR.

8           LET ME BEGIN BY SAYING, YOUR HONOR, THAT WE

9   ESSENTIALLY HAVE TWO BRANCHES OF THE REHAB ACT CLAIM.

10  ONE IS THAT -- THE ACCESSIBILITY ISSUE.  IT'S -- YOU ARE

11  VERY FAMILIAR WITH THOSE CLAIMS.  THE OTHER IS ONE THAT

12  IS TIED TO MEDICAL CARE WHICH IS EITHER PREDOMINANTLY OR

13  IN SOME PLACES -- AND THIS IS IMPORTANT, I THINK --

14  UNIQUELY DELIVERED TO PERSONS WITH DISABILITIES.  AND THE

15  FEDERAL DEFENDANTS HAVE ACKNOWLEDGED THAT AT LEAST WITH

16  RESPECT TO STATING A CLAIM, THEY HAVE A NUMBER OF

17  DEFENSES, BUT AT LEAST WITH RESPECT TO STATING THAT TYPE

18  OF CLAIM, THE ACCESSIBILITY ONE PASSES MUSTER.

19          WE BELIEVE THAT THE MEDICAL CARE BRANCH ALSO

20  PASSES MUSTER UNDER THE TEST THAT WAS AT LEAST SUGGESTED.

21  I DON'T WANT TO OVERSTATE IT IN THAT IT'S IN THE CHOATE

22  DECISION WHICH SAYS JUST BECAUSE SOMETHING IMPACTS

23  DISABLED PEOPLE DIFFERENTLY, THAT DOESN'T MEAN THERE IS A

24  CLAIM.  YOU CAN'T SAY 20 PERCENT OF THESE FOLKS ARE

25  AFFECTED AND 4 PERCENT OF THOSE FOLKS ARE.  IT'S

1   DIFFERENT; THEREFORE, THERE IS A CLAIM.

2          WE BELIEVE, YOUR HONOR, AND WE HAVE ARGUED AND

3   ALLEGED THAT WHEN YOU ARE TALKING ABOUT THINGS LIKE

4   TAKING DISABLED PEOPLE'S ORTHOPAEDIC DEVICES AWAY FROM

5   THEM, THEY COME TO THE FACILITY BECAUSE THEY ARE THE

6   WRONG COLOR OR BECAUSE THEY DON'T LIKE THEM AND NOT

7   REPLACING THEM, THAT IS PRETTY GOOD EVIDENCE OF SOMETHING

8   THAT IS INTENTIONALLY DIRECTED AT THE DISABLED PEOPLE.

9          NOW, WE CAN GO BACK AND FORTH ON WHETHER SOME

10  OF THE OTHER THINGS LIKE PHYSICAL THERAPY, I THINK THAT

11  IS A CLOSER CALL, BECAUSE THERE MAY BE PEOPLE WHO ARE NOT

12  ABSOLUTELY -- THERE MAY BE PEOPLE WHO FALL SHORT OF THE

13  DEFINITION OF A PERSON WITH A DISABILITY WHO NONE THE

14  LESS REQUIRE PHYSICAL THERAPY, SO THERE I WILL

15  ACKNOWLEDGE THAT THERE MAY BE SITUATIONS WHERE IT TOUCHES

16  BOTH CATEGORIES, DISABLED AND NON-DISABLED.

17         BUT CERTAINLY EVEN IN THAT CASE, THE VAST VAST

18  MAJORITY OF THOSE FOLKS ARE DISABLED.  AND IN OUR CASE,

19  WE HAVE ALLEGED THEY ALL ARE, SO YOU DON'T REALLY NEED TO

20  REACH THE ISSUE OF PARSING BETWEEN WHAT IS AND WHAT IS

21  NOT A VIABLE REHAB ACT CLAIM ON THAT GROUND.

22         LET ME FIRST BEGIN WITH GEO.  THIS IS A GEO

23  FACILITY.  THE REHAB ACT APPLIES TO PRISONS.

24         THE COURT:  WELL, I KNOW YOU CITED JESKI.

25  THAT IS A STATE PRISON.

1              MR. RIDINGS:  CORRECT.

2              THE COURT:  YOU CITED A SIXTH CIRCUIT CASE

3    THAT TALKS GENERALLY ABOUT PRISON, BUT THAT WAS A STATE

4    PRISON; RIGHT?

5              MR. RIDINGS:  CORRECT.

6              THE COURT:  AND, OF COURSE, THAT DOESN'T GET

7    YOU ACROSS THE LINE.  I MEAN, THOSE CASES, I KNOW YOU

8    CITED THEM AND I HAVE READ THEM AND I AM VERY FAMILY WITH

9    THEM, BUT GO TO THE TEXT AND PONDER AND REFLECT ON THE

10   HISTORY AND STRUCTURE OF THE REHAB ACT IN 1973, THE 1978

11   AMENDMENTS, THE AMENDMENTS IN 1988, AND TELL ME WHY THE

12   LINE FOR PRIVATE ACTOR LIABILITY, THE TOUCHSTONE FOR THAT

13   IS -- IS OR IS NOT THE RECEIPT OF FEDERAL FINANCIAL

14   ASSISTANCE, AND TO SAY, AT LEAST SO FAR YOU HAVEN'T

15   PLEADED THAT THEY ARE, RECEIVING FEDERAL FINANCIAL

16   ASSISTANCE, DOESN'T THAT MEAN YOUR CLAIM AGAINST GEO

17   FAILS?

18             MR. RIDINGS:  NO, BECAUSE AS WE HAVE BRIEFED,

19   YOU KNOW, THERE ARE TWO BRANCHES, AS THE COURT IS AWARE,

20   THE FEDERAL FINANCIAL ASSISTANCE BRANCH AND THE PROGRAM

21   ACTIVITY OF AN EXECUTIVE AGENCY BRANCH, AND WE HAVE, AS

22   YOU SAID, SQUARELY HUNG OUR HAT ON THE SECOND OF THOSE.

23             WE HAVE LOOKED AT THE CASES ON THE OTHERS AND

24   THEY DEAL WITH SUBSIDY, AND THIS IS A PROCUREMENT

25   CONTRACT.

1          THE PROVISION OF MEDICAL CARE TO FEDERAL

2   PRISONERS IN FEDERAL CUSTODY WHO MAY HAPPEN TO BE HOUSED

3   AT A BOP PRISON, MAY HAPPEN TO BE HOUSED AT A PRIVATE

4   PRISON, WE BELIEVE, IS IMMATERIAL, AT LEAST FOR PURPOSES

5   OF THE THRESHOLD DETERMINATION OF WHETHER THAT PROGRAM OR

6   ACTIVITY IS CONDUCTED BY A FEDERAL AGENCY OR EXECUTIVE

7   BRANCH AGENCY.

8          THE COURT:  BY AN EXECUTIVE AGENCY.

9   IT DOESN'T REACH THE LEGISLATURE.

10         MR. RIDINGS:  YES, EXECUTIVE AGENCY.  SO WE

11  BELIEVE THE TEST FOCUSES REALLY ON WHAT IS THE PROGRAM OR

12  ACTIVITY OR SERVICE.  IT'S THE PROVISION OF MEDICAL CARE

13  OR THE PROVISION OF ACCESSIBLE SERVICES OF FEDERAL

14  PRISONERS IN FEDERAL CUSTODY.  THAT IS WHAT THE PROGRAM

15  OR ACTIVITY IS, AND THAT --

16         THE COURT:  BUT DOESN'T THAT -- BUT DOESN'T

17  THAT SWEEP IN EVERY CONTRACT, EVERY FEDERAL PROCUREMENT

18  CONTRACT FOR SERVICES?

19         I UNDERSTAND THE ARGUMENT, BUT I AM TRYING TO

20  UNDERSTAND HOW WE ARE -- WELL, THE ORIGINAL ACT WAS

21  ENACTED IN 1973.  THE AMENDMENT THAT YOU ARE RELYING ON

22  IS IN 1978.  IN THE 30 YEARS SINCE, I AM LOOKING FOR SOME

23  CASES THAT ACCEPT THIS NOTION OF APPLYING THAT TO A

24  PRIVATE CONTRACTOR, BECAUSE AGAIN, IT'S DIFFERENT.

25         YOU ARE TALKING ABOUT GEO NOW, AND I

1    UNDERSTAND THAT THE BOP, IN THEIR ARGUMENT, AND IT IS

2    NOVEL, AT LEAST WHEN ONE SEARCHES FOR CASES, TO EXTEND

3    LIABILITY TO A PRIVATE CONTRACTOR AND WHAT IS THE

4    LIMITING PRINCIPLE, OR IS IT THAT EVERYONE HAS BEEN

5    MISSING IT FOR 30 YEARS, THAT EVERYONE IN THE NATION HAS

6    BEEN MISSING THIS INTERPRETATION AND THAT, IN FACT, EVERY

7    GOVERNMENT CONTRACTOR WHO PROVIDES A SERVICE IS ACTUALLY

8    PROVIDING SOMETHING THAT SUBJECTS TO IT LIABILITY UNDER

9    THE REHAB ACT?

10            MR. RIDINGS:  WE DO NOT BELIEVE THAT THIS

11   SPEAKS IN EVERY FEDERAL --

12            THE COURT:  WHY NOT?  WHAT IS THE LIMITING

13   PRINCIPLE?

14            MR. RIDINGS:  THE LIMITING PRINCIPLE IS THAT

15   IT IS THE NATURE OF THE PEOPLE WHO ARE SERVED AND IT'S

16   THE VIRTUALLY UNIQUE NATURE OF THE CUSTODIAL RELATIONSHIP

17   BETWEEN THE FEDERAL GOVERNMENT AND FEDERAL PRISONERS.

18   BECAUSE THE FEDERAL GOVERNMENT --

19            THE COURT:  HOW DO YOU TEASE THAT OUT OF THE

20   TEXT?  AGAIN, LOOKING -- I UNDERSTAND, AND IF YOU WERE A

21   LEGISLATOR, AGAIN, I UNDERSTAND IF SOMEONE WERE -- BUT I

22   AM DEALING WITH THE ACT THAT CONGRESS PASSED, AND I AM

23   TRYING TO UNDERSTAND FROM THE TEXT OF IT WHERE DO YOU GET

24   THAT LIMITING PRINCIPLE.

25            I MEAN, I UNDERSTAND THE -- YOUR ACTUAL

1    ARGUMENT, BUT I AM TRYING TO UNDERSTAND FROM THE TEXT AND

2    THE STRUCTURE AND THEN EVEN THE IMPLEMENTING REGS, WHERE

3    DO YOU GET THAT LIMITING PRINCIPLE?

4         MR. RIDINGS:  THE COMMENTS THAT YOUR HONOR

5    MADE ABOUT THERE NOT BEING A LOT OF GUIDING CASE LAW I

6    THINK IS EXACTLY CORRECT.  PARTICULARLY IN THIS AREA

7    WHERE THE RISE OF PRIVATE PRISONS, ALTHOUGH APPARENTLY

8    ONE EXISTED AT SOME POINT IN ANCIENT ENGLAND, IS A

9    RELATIVELY NEW PHENOMENON, AND SO CERTAINLY AT LEAST

10   UNTIL RECENT YEARS IN PRISON CONTEXT THIS ISSUE WOULD NOT

11   HAVE ARISEN.

12        TO RESPOND TO YOUR HONOR'S QUESTION, IT IS A

13   HARD QUESTION, BUT ALL I HAVE IS THE LANGUAGE.  HERE IS

14   WHAT I HAVE.  I HAVE THE LANGUAGE OF THE LAW THAT TALKS

15   ABOUT PROGRAMS OR ACTIVITIES CONDUCTED BY AN EXECUTIVE

16   AGENCY ON THE ONE HAND.  I HAVE THE RIGHTS THAT PRISONERS

17   IN FEDERAL PRISONS HAVE TO BE FREE FROM DISCRIMINATION ON

18   THE BASIS OF A DISABILITY.

19        WE HAVE THE GEO CONTRACT IN WHICH GEO, BY

20   CONTRACT, HAS AN ILLEGAL INSTRUMENT, UNDERTAKES TO COMPLY

21   WITH CERTAIN OBLIGATIONS INCLUDING THE REHABILITATION

22   ACT, AND WE HAVE THE UNIQUE -- I SUBMIT IT IS UNIQUE -- I

23   DON'T THINK THAT IT'S AN OVERSTATEMENT TO SAY THAT THE

24   CUSTODIAL RELATIONSHIP BETWEEN THE FEDERAL GOVERNMENT

25   WHICH STRIPS PEOPLE OF THEIR LIBERTY INTERESTS AND TAKES

1    RESPONSIBILITY FOR KEEPING THEM ALIVE, THAT THE RIGHTS

2    THAT THOSE PEOPLE HAVE BY FEDERAL LAW DO NOT DISAPPEAR

3    IF -- BECAUSE SOME BUREAUCRAT IN WASHINGTON SIGNS A FORM,

4    THEY HAPPEN TO BE TRANSFERRED FROM A FEDERAL CORRECTIONAL

5    FACILITY TO A CONTRACT FACILITY.

6         NOW, IF YOUR HONOR GOES WITH US ON STATE

7    ACTION, MAYBE THIS BECOMES A WHOLE LOT EASIER BECAUSE GEO

8    ACTUALLY IS A FEDERAL ACTOR, BUT WE DON'T NEED THAT.  AND

9    I THINK THAT IS THE BEST EXPLANATION THAT I CAN GIVE YOU.

10        THE COURT:  WHAT DO YOU HAVE TO SAY ABOUT THE

11   BOP?

12        MR. RIDINGS:  BOP.  WELL, BEGINNING WITH THEM,

13   THE CUSTODIAL RESPONSIBILITY BEGINS WITH THEM AND IT ENDS

14   WITH THEM.  THESE ARE FEDERAL PRISONERS IN FEDERAL

15   CUSTODY.  THEY HAPPEN TO BE LOCATED FOR A TIME AT THE GEO

16   FACILITY.

17        THE COURT:  WHAT ABOUT JUDGE BREYER'S OPINION

18   IN CONNECTION WITH THE APA AND THIS WHOLE IMPLYING OF A

19   PRIVATE RIGHT OF ACTION AGAINST THE GOVERNMENT.  I MEAN,

20   I THOUGHT HIS OPINION WAS VERY THOUGHTFUL, AND IN SAYING,

21   YOU KNOW, LET'S KIND OF THINK ABOUT PRIVATE RIGHTS OF

22   ACTION IN GENERAL AND THEN LET'S THINK ABOUT HOW THAT

23   CONCEPT EVEN RELATES TO THE GOVERNMENT, AND THEN LET'S

24   THINK ABOUT THE APA.

25        MR. RIDINGS:  IT'S ANOTHER HARD QUESTION AND

1    THE GROUND HAS SHIFTED FROM THE TIME OF <u>CANNON</u> TO THE

2    TIME OF <u>SANDOVAL</u> TO TODAY.  I ACKNOWLEDGE THAT.

3              I THINK THE BOP'S ARGUMENT GETS A WHOLE LOT

4    STRONGER IF, AS THE BOP ALLEGES, THERE IS A REHAB ACT

5    CLAIM AGAINST GEO.

6              AND, IN FACT, IF THERE IS -- I THINK IT'S A

7    VERY HARD QUESTION TO ANSWER IF WE DO, IN FACT, HAVE A

8    REHAB ACT CLAIM AGAINST GEO -- WHICH I BELIEVE WE DO --

9    I COULD MAKE THE ARGUMENT THAT -- THAT THIS IS A BENEFIT,

10   THAT WHILE THERE IS NOT AN EXPRESSED REMEDY OR AN

11   EXPRESSED RIGHT OF ACTION, THAT THE RIGHT OF THE BENEFIT

12   OF THE UTTERLY MEANINGLESS IF THERE WAS NOT AN ABILITY TO

13   ENFORCE IT THROUGH A PRIVATE RIGHT OF ACTION.

14             BUT IF THERE IS AN ALTERNATIVE REMEDY AGAINST

15   GEO, I THINK THAT IS A VERY DIFFICULT ARGUMENT FOR US TO

16   MAKE.

17             I WOULD LIKE TO STATE A CLAIM AGAINST BOTH OF

18   THEM, BUT HONESTLY, AT THE END OF THE DAY, THEY ARE

19   POINTING FINGERS AT EACH OTHER ON THIS ONE, AND I AM NOT

20   ABSOLUTELY CONVINCED WHICH ONE IS RIGHT, BUT I AM PRETTY

21   SURE ONE OF THEM IS RIGHT.

22             THE COURT:  WHAT IF I DON'T THINK EITHER OF

23   THEM IS RIGHT?  THAT IS WHAT I WANT TO HEAR.  I WANT TO

24   HEAR YOUR BEST ARGUMENT AS TO IF I DON'T THINK EITHER OF

25   THEM IS RIGHT, WHAT IS YOUR BEST ARGUMENT FOR ONE, WHY

1   THE COURT AS TO THE BOP, SHOULD IMPLY A PRIVATE RIGHT OF

2   ACTION AS OPPOSED TO SAYING, ONE, THE TOUCHSTONE UNDER

3   THE REHAB ACT FOR PRIVATE ACTOR LIABILITY IS THIS CONCEPT

4   OF RECEIPT OF FEDERAL FINANCIAL ASSISTANCE.

5           I MEAN, IT'S FROM THE ACT.  YOU READ THE

6   LEGISLATIVE HISTORY.  YOU READ THE IMPLEMENTING REGS, SO

7   THAT IF GEO IS NOT -- AND I AM STILL THINKING ABOUT THIS

8   CASE -- AND I APPRECIATE HOW MUCH TIME EACH SIDE HAS PUT

9   IN, AND YOU ALL HAVE BRIEFED THIS VERY WELL -- AND, BUT

10  IF GEO IS NOT LIABLE, AND WHAT IS YOUR BEST RESPONSE TO

11  THE ARGUMENT -- WELL, I MEAN, REALLY, I GUESS THERE ARE

12  TWO ARGUMENTS THAT THE GOVERNMENT CITES, THE JERSEY

13  HEIGHTS CASE, I THINK THE FOURTH CIRCUIT CASE, THE TITLE

14  VI CASE, AND THEN THEY CITE SANDOVAL AND ALSO THE JUDGE

15  BREYER'S FIRST CIRCUIT OPINION.

16          I MEAN, WHAT DO YOU HAVE TO SAY ABOUT THOSE

17  CASES AS TO THE BOP, ASSUMING THAT THERE IS NOT AN ACTION

18  UNDER THE REHABILITATION ACT AGAINST GEO, FOR PURPOSES OF

19  JUST DISCUSSION.  I KNOW THAT IT'S NOT YOUR POSITION, BUT

20  FOR DISCUSSION, WHAT IS YOUR BEST ARGUMENT FOR HOLDING

21  THAT THE -- FOR STATING A CLAIM AGAINST THE BOP UNDER THE

22  REHAB ACT?

23          MR. RIDINGS:  WELL, I THINK THEN, YOUR HONOR,

24  IF THAT IS THE WAY THE ISSUE WERE FRAMED, THEN WE WOULD

25  HAVE TO ESSENTIALLY ENTERTAIN A SANDOVAL ANALYSIS AND ASK

1    THE QUESTION WHETHER CONGRESS INTENDED TO BENEFIT THESE

2    PARTICULAR INDIVIDUALS.  AND THE REHAB ACT, THERE IS A

3    WHOLE LOT OF HISTORY, BOTH LEGISLATIVE AND JUDICIAL,

4    AROUND THE REHAB ACT.

5         TO THE EXTENT THAT YOUR HONOR WERE INCLINED TO

6    THINK THAT THAT WAS A DISPOSITIVE ISSUE, LET ME JUST

7    PREFACE THIS BY SAYING I WOULD LIKE TO SUBMIT -- WITH THE

8    COURT'S LEAVE, I WOULD LIKE TO SUBMIT SUPPLEMENTAL

9    BRIEFING ON THAT.

10        BUT I BELIEVE THAT OUR ARGUMENT THAT WE WOULD

11   MAKE WOULD BE THAT THERE IS A CLEARLY DEMONSTRATED INTENT

12   TO BENEFIT FOLKS WHO FALL WITHIN THAT CLASS.  AND BOY, IF

13   THAT INTENT IS EVER STRONG, IT IS NEVER AS STRONG AS IT

14   IS WHEN PEOPLE ARE IN FEDERAL CUSTODY AND THEY DON'T HAVE

15   AN OPTION ABOUT GOING ANYWHERE ELSE.

16        SO TO THE EXTENT THAT THERE IS A FEDERAL

17   INTEREST AND FEDERAL RIGHTS CONFERRING LANGUAGE IN THE

18   STATUTE AND INTENTION TO CONFER A RIGHT, IT IS AT ITS

19   STRONGEST WHEN PEOPLE ARE ABSOLUTELY AT THE MERCY OF

20   THEIR CAPTORS TO --

21        THE COURT:  BUT AGAIN, SORT OF GETTING BACK TO

22   THE APA, I AM SURE THAT YOU WOULD DISAGREE.  I KNOW IT'S

23   NOT THE CLAIM YOU STATED, BUT I ALSO KNOW THAT YOU SAID

24   IF ANY CLAIMS ARE DISMISSED, YOU WANT AN OPPORTUNITY TO

25   REPLEAD.

1          I MEAN, DO YOU THINK -- I GATHER THAT YOU

2     DISAGREE WITH THE DEPARTMENT OF JUSTICE THAT YOU WOULDN'T

3     HAVE A VIABLE -- YOUR CLIENT WOULDN'T HAVE A VIABLE APA

4     CLAIM?

5          MR. RIDINGS:  WELL, IF THAT IS THE CHANNEL WE

6     WERE STEERED DOWN, WE WOULD GO DOWN THAT CHANNEL.  I

7     HAVEN'T GAMED IT OUT, BUT I CERTAINLY THINK WE WOULD.  WE

8     WOULD IDENTIFY THE FINAL AGENCY ACTION.  I CAN THINK OF A

9     COUPLE RIGHT NOW.  I DON'T WANT TO BEGIN TO SPECULATE ON

10     THAT.

11          THE COURT:  I UNDERSTAND.

12          MR. RIDINGS:  I THINK SOME OF THE FINAL AGENCY

13     ACT PROBABLY OCCURRED WHEN THE RIVERS CONTRACT WAS

14     SIGNED, FRANKLY, SO I DON'T THINK WE HAVE AN ISSUE ABOUT

15     WHETHER WE HAVE A FINAL AGENCY ACTION.  THAT WOULD BE A

16     DIFFERENT ANALYSIS.

17          BUT AGAIN, I MEAN, THEY HAVE MANY MANY

18     DEFENSES DEALING WITH THE APA THAT HINGE, AS YOUR HONOR

19     POINTED OUT, ON THE FACT THAT THERE IS A RELIEF AVAILABLE

20     TO GEO, SO I THINK THEIR POSITION GETS A LOT TOUGHER IF,

21     IN FACT, THE COURT HOLDS THERE IS NO REHAB ACT CLAIM THAT

22     CAN BE STATED DIRECTLY AGAINST GEO.

23          BUT, AGAIN, I THINK IF THE COURT WERE INCLINED

24     TO REQUEST SUPPLEMENTAL BRIEFING ON THAT, WE WOULD ASK

25     FOR AN OPPORTUNITY TO DO THAT.

1           THE COURT:  WHAT ABOUT THE -- YOU WERE GOING

2     TO TALK ABOUT ONE MORE CLAIM.

3           MR. RIDINGS:  NEGLIGENCE, YOUR HONOR.  9J IS

4     THE ONLY ARGUMENT HERE.  I READ THE RULE.  I READ THE

5     STATUTE.  IT SAYS IT'S A CIVIL ACTION FOR DAMAGES.  WE

6     ARE NOT SEEKING DAMAGES.  IT'S NOT A 9J CASE.

7           IF YOUR HONOR NEEDS TO GO BEYOND THAT, WE

8     BELIEVE THERE IS AN ISSUE IN THIS CASE AS TO WHETHER

9     FEDERAL COMMON LAW OR THE COMMON LAW OF NORTH CAROLINA

10    WOULD APPLY.  I DON'T INTEND TO ADDRESS THAT.  I WOULD

11    SIMPLY POINT OUT THAT--

12          THE COURT:  DO YOU THINK THAT IS AN ISSUE IN

13    IN CONNECTION WITH THE TORT?

14          MR. RIDINGS:  NO, I THINK THE STANDARDS ARE

15    LARGELY THE SAME.

16          THE COURT:  BUT YOU AGREE THAT THE NEGLIGENCE

17    CLAIM IS GOVERNED SUBSTANTIVELY BY NORTH CAROLINA LAW;

18    RIGHT?

19          I MEAN, THE INJURY OCCURRED HERE UNDER

20    SUBSTANTIVE NORTH CAROLINA LAW FROM THE NORTH CAROLINA

21    SUPREME COURT.  THE -- THIS STATE'S LAW GOVERNS THAT

22    CLAIM; YOU WOULD AGREE?

23          MR. RIDINGS:  LIMITING IT TO THE NEGLIGENCE

24    CLAIM, I AGREE.

25          THE COURT:  RIGHT.  THAT IS WHAT I MEAN, THE

1    NEGLIGENCE CLAIM; NOT THE CONTRACT.

2            MR. RIDINGS:  I AGREE, YOUR HONOR.   I JUST

3    WANTED TO MAKE SURE THAT DISTINCTION IS CLEAR.

4            SO IF WE ARE, IN THE WORLD OF NORTH CAROLINA

5    LAW, NORTH CAROLINA LAW, AS WE KNOW, DISTINGUISHES

6    BETWEEN MEDICAL MALPRACTICE TYPE CLAIMS ON THE ONE HAND

7    AND THERE IS A COMPLETELY SEPARATE LINE OF BODY OF LAW

8    DEALING WITH CORPORATE NEGLIGENCE IN THE SITUATION OF

9    MEDICAL INJURIES, ESSENTIALLY.

10           AND THIS ISSUE AROSE -- I THINK IT DIDN'T

11   REALLY CRYSTALLIZE UNTIL THE REPLY BRIEFS, BUT CERTAINLY

12   CASES LIKE THE ESTATE OF WATERS, 144 NORTH CAROLINA APP.

13   98, A 2001 DECISION, MAKES THIS DISTINCTION, AND CASES

14   THAT LOOK AT THE CORPORATE LANGUAGES LINE OF CASES DO NOT

15   REQUIRE 9J CERTIFICATION.

16           SO THEN THE QUESTION BECAUSE BECOMES IS THIS A

17   MEDICAL MALPRACTICE CLAIM FOR DAMAGES OR SOMETHING MORE

18   AKIN TO A CORPORATE.

19           THE COURT:  WHAT DO YOU SAY TO GEO'S ARGUMENT

20   THAT WHEN YOU LOOK AT THE TEXT OF 9J AND THEN THE CROSS

21   REFERENCE TO THE TWO STATUTES, THE REFERENCE TO MEDICAL

22   MALPRACTICE ACTION AND HEALTH CARE PROVIDER, THAT THAT,

23   IN FACT, THERE IS NOT -- THAT IT WAS NOT THE LEGISLATURE,

24   THE GENERAL ASSEMBLY, THE NORTH CAROLINA GENERAL

25   ASSEMBLY, WHEN IT ENACTED 9J IN 1995 AS PART OF SOME

1   STATE TORT REFORM, THAT IN FACT IT DIDN'T SWEEP IN THAT

2   DEFINITION.  WHAT DO YOU SAY TO THAT?  I MEAN, THAT IS

3   THEIR ARGUMENT.  WHAT DO YOU SAY TO IT?

4          MR. RIDINGS:  WHAT I SAY IS THE 9J

5   CERTIFICATION SERVES THE PURPOSE OF MAKING A THRESHOLD

6   DETERMINATION ABOUT WHETHER SOMEONE'S INJURIES ARE

7   SUFFICIENT TO SATISFY THE GOVERNING TEST FOR MEDICAL

8   MALPRACTICE IN NORTH CAROLINA.

9          THE COURT:  YOU DON'T THINK IT HAS TO DO WITH

10  THE STANDARD OF CARE.  IT INCLUDES NOT ONLY INJURIES.

11  YOU ACTUALLY THINK IT'S JUST ABOUT INJURIES AND NOT ABOUT

12  STANDARD OF CARE AND NOT ABOUT LIMITING THE NUMBER OF

13  MEDICAL MALPRACTICE ACTIONS AND DOCTORS BEING DRAGGED IN

14  TO COURT?

15         MR. RIDINGS:  LET ME ANSWER IT THIS WAY.

16  I THINK IT DOES GO TO THE STANDARD OF CARE AS WELL WITH

17  RESPECT TO SPECIFIC MEDICAL DECISIONS.  I THINK THAT IS A

18  FAIR CHARACTERIZATION.  BUT THAT IS NOT OUR CASE.

19         OUR CASE IS NOT DR. X SHOULD HAVE CUT RIGHT

20  WHEN HE CUT LEFT, OR HE TOOK THE RIGHT FOOT INSTEAD OF

21  THE LEFT FOOT.  THAT IS NOT THIS CASE.  WE HAVE TO GO

22  BACK TO THE ALLEGATIONS IN THE COMPLAINT AND WE HAVE

23  ALLEGED FOUR SPECIFIC BREAKDOWNS, ONE OF WHICH -- ONE OF

24  THE CAUSES OF WHICH WE CLAIM IS NEGLIGENCE, AND I TOUCHED

25  ON THAT AT THE VERY BEGINNING.  MAYBE THAT IS A GOOD

1   PLACE FOR ME TO END BEFORE I SIT DOWN.

2           AND THOSE FOUR AREAS ARE ACCESS TO MEDICAL

3   TREATMENT.  NOT WHETHER THE TREATMENT IS GOOD OR BAD.

4   WHETHER YOU CAN GET TREATMENT.  IF YOU ARE SICK AND HAVE

5   CANCER AND YOU ARE ON THE VERGE OF DYING, AND YOU ARE

6   TOLD YOU CAN'T GO TO A DOCTOR, WELL, WE THINK THAT THERE

7   WAS A BREACH OF DUTY THAT WAS OWED TO THOSE PRISONERS.

8           A SECOND:  STAFFING, TRAINING AND SUPERVISION.

9   NOW, A CONSEQUENCE OF POOR STAFFING, NEGLIGENT STAFFING

10  AND TRAINING AND SUPERVISION MAY BE PERSONAL INJURY.  AND

11  IN FACT IT MAY BE EVIDENCE OF THE BREACH THAT WE HAVE

12  IDENTIFIED.  BUT THE BREACH WE HAVE IDENTIFIED IS NOT HE

13  CUT RIGHT AND SHOULD HAVE CUT LEFT.

14          AND THE OTHER IS ACCESS TO MEDICATION AND

15  FAILURE TO TREAT INFECTIOUS DISEASES.

16          LET ME TAKE THE FOURTH, BECAUSE THAT PROBABLY

17  COMES CLOSEST TO MALPRACTICE.  BUT WE HAVE NOT SAID THEY

18  SHOULD HAVE GIVEN PENICILLIN, AND INSTEAD THEY GAVE

19  BACATRIN.  WE HAVE SAID THEY DIDN'T GET MEDICAL CARE.

20  THE FACT THAT THEY JUST DID NOTHING, AND THEY LET THIS

21  MRSA DISEASE, TERRIBLE, TERRIBLE INFECTIONS RUN RAMPANT,

22  AND THAT WAS A NEGLIGENT ACT THAT WAS THE BREACH.

23          AND SO TO THE EXTENT YOUR HONOR THINKS WE NEED

24  TO GO WITH A VERY VERY STRAIGHTFORWARD ARGUMENT ROOTED IN

25  THE STATUTE -- AND I READ THE STATUTE -- THAT I JUST

1    THINK THIS IS NOT A MALPRACTICE CASE BECAUSE THAT IS NOT

2    THE NEGLIGENCE THAT WE HAVE ALLEGED.

3            THE COURT:  THANK YOU VERY MUCH.

4            MR. RIDINGS:  MY COLLEAGUE, LAURA

5    SCHATTSCHNEIDER WILL TAKE THE OTHER ISSUE.

6            MS. SCHATTSCHNEIDER:  GOOD MORNING, YOUR

7    HONOR.

8            THE COURT:  GOOD MORNING.

9            MS SCHATTSCHNEIDER:  I WILL COME AROUND TO THE

10   PODIUM AS WELL.  AS YOUR HONOR HAS NOTED, PLAINTIFFS HAVE

11   ARGUED THAT THE THIRD PARTY BENEFICIARY CLAIM SHOULD BE

12   GOVERNED BY THE TESTS SET FORTH BY THE FOURTH CIRCUIT IN

13   THE TRIMBLE CASE.

14           THE COURT:  JUST ON THE JURISDICTIONAL ISSUE,

15   IS IT YOUR POSITION THE COURT HAS JURISDICTION UNDER 28

16   U.S.C. SECTION 1367?

17           MS. SCHATTSCHNEIDER:  YOUR HONOR, WE KNOW THAT

18   THE CASES HAVE DISCUSSED THE CHOICE OF LAW, THE QUESTION

19   OF WHAT LAW THIS CONTRACT SHOULD BE READ UNDER.  THOSE

20   CASES HAVE ADDRESSED THAT ISSUE IN THE CONTEXT OF THE

21   JURISDICTIONAL ARGUMENT, SO IF YOU LOOK AT THE OWENS

22   VERSUS HAAS CASE OUT OF THE SECOND CIRCUIT, THE COURT

23   THERE ACKNOWLEDGES THAT THE DETERMINATION OF WHETHER THE

24   CONTRACT SHOULD BE CONSTRUED UNDER FEDERAL COMMON LAW

25   MIGHT WELL BE A JURISDICTIONAL ISSUE.

```
 1              THE COURT:  AND THE SIXTH CIRCUIT TALKED ABOUT

 2    OWENS AND DIDN'T AGREE WITH OWENS AND THEN THERE IS A

 3    CASE FROM THE DISTRICT OF COLUMBIA THAT RECOGNIZED THE

 4    CIRCUIT SPLIT AND SAID I DON'T HAVE THE CONTRACT IN FRONT

 5    OF ME, SO I DON'T HAVE TO ADDRESS THIS.

 6              HOW ABOUT THIS HYPOTHETICAL?  IF THIS WERE THE

 7    ONLY CLAIM, IF THIS WERE THE ONLY CLAIM WHERE SOMEONE

 8    SAID A PURPORTED THIRD PARTY BENEFICIARY COMES IN HERE

 9    AND THEY HAVE ONE COUNT AND THEY BRING IT INTO THIS

10    COURT -- AND THERE WILL ARE A LOT OF CONTRACTORS IN THIS

11    DISTRICT -- WOULD THIS COURT HAVE JURISDICTION OVER A

12    CLAIM BY A CONTRACTOR WHO IS UNHAPPY OR BY SOMEONE WHO IS

13    UNHAPPY, A PERSON WHO IS UNHAPPY WITH THEIR HOUSE?

14              THERE IS A HOUSING CONTRACTOR AT FORT BRAGG

15    THAT WAS TO BUILD A HOUSE AND THE ROOF IS LEAKING AND

16    THEY FILE A COMPLAINT IN THIS COURT, AND THEY SAY I AM A

17    THIRD PARTY BENEFICIARY TO THIS CONTRACT BETWEEN THE

18    GOVERNMENT AND THIS CONTRACTOR.  THEY WERE SUPPOSED TO

19    BUILD A HOUSE FOR ME.  I AM A SOLDIER.

20              AND WOULD THIS COURT HAVE JURISDICTION OVER

21    THAT CLAIM, DO YOU THINK?

22              MS. SCHATTSCHNEIDER:  YOUR HONOR, I THINK THAT

23    WOULD BE SOMETHING WE WOULD VERY MUCH WELCOME THE

24    OPPORTUNITY TO BRIEF IN SUPPLEMENTAL BRIEFING.

25              THE COURT:  LET'S TALK JUST ABOUT -- DO YOU
```

1    THINK THAT THAT CLAIM -- WELL, LET'S JUST TALK ABOUT IT.

2    DO YOU THINK THAT THAT CLAIM IS A CLAIM ARISING UNDER

3    EITHER THE CONSTITUTION OR AN ACT OF CONGRESS?  IT

4    DOESN'T SOUND LIKE IT.

5            MS. SCHATTSCHNEIDER:  NO, BUT IF IT DID ARISE,

6    UNDER FEDERAL LAW, THERE IS AN ARGUMENT THAT 1331 WOULD

7    APPLY.

8            THE COURT:  THAT WOULD RESULT IN A LOT OF

9    LAWSUITS.  BUT ALL RIGHT.

10           BUT YOUR ARGUMENT HERE IS THAT 1367 -- DON'T

11   BE CONCERNED WITH JURISDICTION ON COUNT 4 ON THE BREACH

12   OF CONTRACT CLAIM BECAUSE THERE IS CLEARLY JURISDICTION

13   UNDER 1331 ON COUNTS 1 AND 2, AND THIS ARISES OUT OF THE

14   SAME COMMON NUCLEUS OF OPERATIVE FACTS AND THE COURT HAS

15   SUPPLEMENTAL JURISDICTION OVER IT; RIGHT?

16           MS. SCHATTSCHNEIDER:  CORRECT.

17           THE COURT:  NOW, LET'S GO TO THE ARGUMENT THAT

18   GEO MAKES THAT PLAINTIFF IS NOT AN INTENDED DIRECT

19   BENEFICIARY.  I MEAN, I UNDERSTAND YOUR ARGUMENT ABOUT

20   THE THIRD CIRCUIT CASES AND WHATNOT AND WE'LL GET TO THAT

21   ARGUMENT IN A MOMENT, BUT HOW DO YOU RESPOND TO GEO'S

22   ARGUMENT?

23           I MEAN, I THINK EVERYONE AGREES IN LOOKING AT

24   TRIMBLE -- AND TRIMBLE CITES A WHOLE HOST OF FEDERAL

25   CIRCUIT PRECEDENTS --

1            MS. SCHATTSCHNEIDER:  THAT'S CORRECT, SIR.

2            THE COURT:  AND WHEN YOU ACTUALLY LOOK AT

3    THESE CASES, FOR EXAMPLE, IF YOU LOOK AT THE FEDERAL

4    CIRCUIT HAS REJECTED THE NOTION IN DIFFERENT FACT

5    PATTERNS, HAS REJECTED THE NOTION FAIRLY UNIFORMLY THAT

6    EMPLOYEES OF A CONTRACTOR WHO HAS A CONTRACT, THERE MIGHT

7    BE A DISCUSSION.

8            THERE IS A DISCUSSION IN HERE ABOUT

9    CORRECTIONAL PERSONNEL, THAT THEY ARE NOT THIRD PARTY

10   BENEFICIARIES OF THE CONTRACT AND THEY CAN'T COME INTO

11   FEDERAL COURT AND SUE.

12           THERE ARE CASES FROM THE FEDERAL CIRCUIT THAT

13   SAY THE SHAREHOLDERS OF A CORPORATION THAT HAS A FEDERAL

14   CONTRACT ARE NOT THIRD PARTY BENEFICIARIES WHO CAN COME

15   IN AND SAY I AM A SHAREHOLDER AND SOME ACTION THE

16   GOVERNMENT HAS TAKEN IN CONNECTION WITH MY CONTRACT HAS

17   IMPACTED ME ECONOMICALLY.  AND THE FEDERAL CIRCUIT HAS

18   SAID, NO, YOU ARE NOT A DIRECT BENEFICIARY UNDER OUR

19   TEST.  AND IT'S A STRINGENT TEST IS WHAT THEY TALK ABOUT,

20   BUT THIS FEDERAL CIRCUIT TALKS ABOUT AND CITES THE COURT

21   CASES AND CITES ITS OWN PRECEDENT.  HOW IS THIS DIFFERENT

22   THAN THOSE CASES?

23           MS. SCHATTSCHNEIDER:  YOUR HONOR, THIS CASE

24   INVOLVES A CONTRACT THAT SPECIFICALLY IS ABOUT THE PEOPLE

25   WHO ARE SEEKING TO ENFORCE IT.

1          THE COURT:  ALL RIGHT.  BUT HOW IS IT

2    DIFFERENT THAN SAY THE PEOPLE MENTIONED IN THE CONTRACT

3    INCLUDE PERSONNEL?  THERE IS A CLAUSE IN THERE THAT TALKS

4    ABOUT I THINK SOMETHING TO THE EFFECT ABOUT UNIFORMS.

5          LET'S SAY SOME CORRECTIONAL OFFICER AT RIVERS

6    SAYS, YOU KNOW, GEO, THERE IS A CONTRACTUAL PROVISION

7    THAT THEY ARE SUPPOSED TO PROVIDE ME A UNIFORM OF

8    A CERTAIN QUALITY AND COLOR, AND THEY HAVEN'T.  I AM

9    GOING TO FILE A LAWSUIT IN FEDERAL COURT.  JUDGE, HERE I

10   AM, AND I WANT TO ENFORCE THIS AS A THIRD PARTY

11   BENEFICIARY.  HOW IS THAT CLAIM DIFFERENT THAN YOUR

12   CLIENT'S CLAIM?

13          MS. SCHATTSCHNEIDER:  YOUR HONOR, OUR

14   CLIENT'S CLAIM GOES TO ONE OF THE KEY MISSIONS OF THE

15   CONTRACT.  IN THE --

16          THE COURT:  I KNOW.  BUT I AM TALKING ABOUT

17   CORRECTIONAL OFFICERS; RIGHT.  THE KEY MISSION,

18   PRESUMABLY, THE KEY MISSION OF THIS CONTRACT, IS TO HOUSE

19   THE FEDERAL FELONS WHO HAVE BEEN CONVICTED OF FELONIES;

20   RIGHT?  THAT IS THE KEY MISSION.  THERE ARE A LOT OF

21   OTHER MISSIONS, BUT THE KEY MISSION IS TO HOUSE THE

22   FEDERAL FELONY OFFENDERS WHO HAVE BEEN FOUND GUILTY OR

23   HAVE PLEADED GUILTY AND ARE NOW SUBJECT TO FEDERAL

24   INCARCERATIONS.

25          BUT I AM TRYING TO, AGAIN, UNDERSTAND LIMITING

1    PRINCIPLES ASSOCIATED WITH THIS ARGUMENT, AND LOOKING AT

2    THE TEXT OF THE CONTRACT AND I AM TRYING TO THINK HOW, IF

3    THE PRISONERS HAVE THIS CLAIM ABOUT THE HEALTH CARE --

4    AND I UNDERSTAND AND I HAVE READ THE CONTRACT AND I HAVE

5    READ THE PROVISIONS -- WOULD IT BE YOUR POSITION THAT THE

6    GUARDS, THAT THE CORRECTIONAL OFFICERS WHO WORK FOR GEO

7    ALSO HAVE A THIRD PARTY CLAIM IF GEO FAILED TO ABIDE BY

8    TERMS IN THE CONTRACT ASSOCIATED WITH EMPLOYMENT?

9              "YES" OR "NO".  WOULD THEY?

10              MS. SCHATTSCHNEIDER:  I WOULD HAVE TO SAY

11    "YES" AS TO CERTAIN PROVISIONS OF THE CONTRACT AT LEAST.

12    IN THE SENSE THAT --

13              THE COURT:  WOULD THAT BE A THIRD PARTY CLAIM

14    THAT THOSE CORRECTIONAL OFFICIALS WOULD BE ABLE TO BRING

15    AGAINST EITHER THE UNITED STATES OR GEO?

16              MS. SCHATTSCHNEIDER:  NO.  BECAUSE IT IS GEO

17    THAT PROMISED TO CARRY OUT THE ACTIVITIES THAT ARE LISTED

18    IN THE CONTRACT.  AND BECAUSE THE FEDERAL GOVERNMENT IN

19    THE CONTRACT SPECIFICALLY DISCLAIMED THIRD PARTY

20    LIABILITY AT LEAST FOR CERTAIN THIRD PARTY CLAIMS.  SO

21    THE PARTIES THEMSELVES HAVE ALLOCATED LIABILITY FOR

22    CERTAIN THIRD PARTY CLAIMS ARISING UNDER THE CONTRACT,

23    SPECIFICALLY CLAIMS ARISING DUE -- FROM LOSSES DUE TO

24    DEATH, BODILY INJURY AND PROPERTY DAMAGE.

25              THE PARTIES HAVE CONTRACTED A SCHEME OF

1    LIABILITY THAT WOULD ABSOLVE THE BOP OF BEING RESPONSIBLE

2    FOR ANY --

3          THE COURT:  BUT WHAT IF WE AGREE THAT, FOR

4    EXAMPLE, THAT THE NOTION OF SOME GUARD'S UNIFORM AND GEO

5    MAKES SOME PROMISE ABOUT IT.  ARE YOU SAYING THAT THAT --

6    YOU ARE SAYING THAT WOULD BE ACTIONABLE?

7          MS. SCHATTSCHNEIDER:  I AM SAYING THAT -- OR

8    WE ARE SAYING THAT THERE ARE CERTAIN PROMISES MADE ON THE

9    CONTRACT THAT GO TO THE HEART OF WHAT THE CONTRACT IS

10   ABOUT.  YOUR HONOR HAS SAID THAT THE CONTRACT IS ABOUT

11   IMPRISONING FEDERAL PRISONERS.

12         BUT IT'S ALSO ABOUT --

13         THE COURT:  I BELIEVE I MADE AN OBSERVATION

14   ABOUT WHAT THE PRIMARY MISSION IS.  I MEAN, THERE COULD

15   BE OTHER MISSIONS, BUT AGAIN, I AM TRYING TO GET SOME

16   SENSE ON THE THIRD PARTY BENEFICIARY CLAIM AS TO WHAT THE

17   LIMITING PRINCIPLE IS.  AND YOU ARE SAYING ACTUALLY THAT

18   THAT -- IT SEEMS YOU ARE SAYING THAT THE, YOU KNOW, TO

19   THE EXTENT THE CORRECTIONAL OFFICERS ARE MENTIONED AND

20   THERE ARE CERTAIN REPRESENTATIONS THAT GEO MAKES ABOUT

21   THOSE OFFICERS, THAT THE OFFICERS ACTUALLY WOULD HAVE A

22   THIRD PARTY CLAIM THAT THEY COULD COME INTO FEDERAL COURT

23   AND FILE A THIRD PARTY BREACH OF CONTRACT ACTION AS A

24   THIRD PARTY BENEFICIARY AGAINST GEO; RIGHT?  THAT IS WHAT

25   YOU ARE SAYING?

1          MS. SCHATTSCHNEIDER:  WELL, I THINK IT WOULD

2   DEPEND ON THE NATURE OF THE PROMISES MADE IN THE

3   CONTRACT.  SO, YOU KNOW, WHEREAS THE CONTRACT IS ABOUT

4   THE CUSTODY OF THE FEDERAL PRISONERS THERE, IT'S ABOUT

5   HOUSING THEM, BUT IT'S ALSO ABOUT HOUSING THEM IN A SAFE,

6   SECURE AND HUMANE MANNER.  THAT IS LANGUAGE FROM THE VERY

7   OPENING PAGES OF THE CONTRACT.

8          I DON'T KNOW QUITE WHAT GUARDS' UNIFORMS WOULD

9   HAVE TO DO ABOUT WITH THAT PARTICULAR MISSION AND I ALSO

10  HAVEN'T SCRUTINIZED THE SECTIONS OF THE CONTRACT HAVING

11  TO DO WITH GUARDS' UNIFORMS, BUT I CAN TELL YOU THAT THE

12  PROVISIONS OF THE CONTRACT HAVING TO DO WITH PRISONER

13  HEALTH CARE ARE -- EXPRESS A SPECIFIC INTENT TO BENEFIT

14  THE MEN AT RIVERS.

15         THE PARTIES AGREE THAT THE PROVISION OF

16  MEDICAL SERVICES COMMENSURATE TO THE LEVEL OF CARE IN THE

17  COMMUNITY IS AN ESSENTIAL COMPONENT OF PERFORMANCE UNDER

18  THE CONTRACT.  NOW, I DON'T KNOW IF YOU CAN MAKE THE

19  ARGUMENT THAT PROVISION OF GUARDS' UNIFORMS WOULD BE AN

20  ESSENTIAL COMPONENT OR UNIFORMS OF A PARTICULAR MAKE OR

21  PARTICULAR COLOR, ET CETERA.  IT'S IN QUITE THE SAME WAY.

22  KEEPING IN MIND THAT I HAVEN'T PAID AS MUCH ATTENTION TO

23  THE PROVISIONS ABOUT UNIFORMS.

24         THE COURT:  HOW ABOUT THIS PROVISION IN THE

25  CONTRACT?  THERE IS A PROVISION IN THE CONTRACT THAT

1    STATES -- AND IT'S AT -- WELL, IT'S DOCUMENT -- DEPENDING

2    HOW YOU REFERENCE THE PAGES, IT'S DOCUMENT 50-3 ON OUR

3    CM/ECF SYSTEM, AND IT'S PAGE 20 OF 87.

4         THERE IS A PROVISION THAT TALKS ABOUT THE ROLE

5    OF CONTRACTING OFFICERS AND CONTRACTING OFFICERS

6    REPRESENTATIVES, AND CONTRACTING OFFICERS, TECHNICAL

7    REPRESENTATIVES, NOTING THAT -- AND IN THE GOVERNMENT

8    CONTRACT JARGON, I WILL JUST TELL YOU, AND IT'S IN THIS

9    CONTRACT AND I HAVE CERTAINLY SEEN IT IN OTHER CONTRACTS

10   AND OTHER PLACES -- THAT THE CONTRACTING OFFICERS OR

11   REPRESENTATIVES ARE CALLED COR'S AND THE CONTRACTING

12   OFFICER TECHNICAL REPRESENTATIVES ARE CALLED COTR'S, MAY

13   CHECK THE CONTRACTORS PERFORMANCE, AND DOCUMENTS ANY

14   NON-COMPLIANCE, BUT ONLY THE CO -- AND THE CO IS THE

15   CONTRACTING OFFICER -- MAY TAKE FORMAL ACTIONS AGAINST

16   THE CONTRACT FOR UNSATISFACTORY PERFORMANCE.  ONLY THE CO

17   MAY TAKE FORMAL ACTION AGAINST THE CONTRACTOR FOR

18   UNSATISFACTORY PERFORMANCE.

19        ULTIMATELY, AT THE END OF THE DAY, THE

20   PLAINTIFF'S CLAIM IN THIS CASE IS I AM UNSATISFIED WITH

21   THE HEALTH CARE I HAVE GOTTEN AT RIVERS.  I AM

22   UNSATISFIED WITH WHAT GEO IS DOING.  I THINK THEY ARE

23   VIOLATING THE CONSTITUTION.  I THINK THEY ARE VIOLATING

24   THE REHAB ACT.  I THINK THEY ARE VIOLATING NORTH CAROLINA

25   TORT LAW.  AND I THINK THAT THEY ARE BREACHING THEIR

1     CONTRACT, AND I BELIEVE I HAVE A RIGHT UNDER THIS

2     CONTRACT.

3          HOW ABOUT THAT CONTRACTUAL LANGUAGE IN

4     CONSIDERING TRIMBLE, IN CONSIDERING THE FEDERAL CIRCUIT

5     CASES.  DOESN'T THAT CONTRACT LANGUAGE DOOM THIS CLAIM?

6     I MEAN, DOESN'T THAT SHOW AN INTENT THAT THERE IS ONE

7     PERSON WHO CAN, ACCORDING TO THE CONTRACT LANGUAGE, MAY

8     TAKE FORMAL ACTION AGAINST THE CONTRACTOR?  THAT IS THE

9     LANGUAGE.  MAY TAKE FORMAL ACTION.  THIS CLAIM IS FORMAL

10    ACTION.

11         DOESN'T THIS CONTRACTUAL LANGUAGE, AT LEAST IN

12    APPLYING TRIMBLE, PRESENT A PROBLEM FOR THE PLAINTIFF AS

13    TO THIS COUNT?

14         MS. SCHATTSCHNEIDER:  NO, YOUR HONOR, IT DOES

15    NOT.

16         THE COURT:  WHY?

17         MS. SCHATTSCHNEIDER:  BECAUSE THAT LANGUAGE

18    SPEAKS ONLY TO THE BOP'S RIGHT TO ENFORCE THE CONTRACT.

19    IT NEITHER PERMITS NOR FORECLOSES A THIRD PARTY'S ABILITY

20    TO ENFORCE THE CONTRACT UNDER THE TESTS SET FORTH IN

21    TRIMBLE.  THE TEST THAT IS SET FORTH IN TRIMBLE SAYS

22    THIRD PARTIES MAY SUE TO ENFORCE GOVERNMENT CONTRACTS IF

23    THE CONTRACT EVIDENCES AN EXPRESSED OR IMPLIED INTENT TO

24    BENEFIT THEM.

25         THE COURT:  DIRECTLY.

1           MS. SCHATTSCHNEIDER:  DIRECTLY.  AND IT'S OUR

2    ARGUMENT HERE THAT THE LANGUAGE REGARDING THE PROVISION

3    OF HEALTH CARE SERVICES AND REGARDING GEO'S COMPLIANCE

4    WITH THE REHABILITATION ACT EVIDENCES AN INTENT TO

5    BENEFIT THE PRISONERS.

6           SO THE FACT THAT THE BOP, THE BOP CAN ONLY

7    ENFORCE THE CONTRACT THROUGH THE ACTIONS OF THE

8    CONTRACTING OFFICER IS NEITHER HERE NOR THERE.  THAT HAS

9    NOTHING TO DO WITH THE THIRD PARTY'S RIGHT TO ENFORCE THE

10   CONTRACT.

11          THE COURT:  BUT YOU WOULD AGREE THAT THE

12   CONTRACT LANGUAGE UNDER TRIMBLE IS TO HELP INFORM THE

13   COURT AS TO WHETHER, IN FACT, THERE IS A CLAIM; RIGHT?

14          MS. SCHATTSCHNEIDER:  I WOULD AGREE TO THAT.

15   BUT THE PROVISIONS OF THE CONTRACT HAVING TO DO WITH WHEN

16   AND HOW AND IN WHAT MANNER THE BOP MAY ENFORCE WHAT IT

17   PERCEIVES TO BE A BREACH OF THE CONTRACT DON'T INFORM THE

18   QUESTION OF WHETHER AND WHEN AND HOW A THIRD PARTY CAN --

19          THE COURT:  SO YOU DO'T THINK THE WORD "ONLY"

20   MEANS TOO MUCH?

21          MS. SCHATTSCHNEIDER:  IT MEANS THAT THAT IS

22   THE ONLY AVENUE THROUGH WHICH THE BOP MAY ENFORCE THE

23   CONTRACT OR THAT IS THE ONLY AVENUE FOR WHICH THE BOP MAY

24   EXPRESS ITS DISSATISFACTION.

25          THE COURT:  WELL, ACTUALLY, THE LANGUAGE IS

1    "ONLY THE CONTRACTING OFFICER MAY TAKE FORMAL ACTION

2    AGAINST THE CONTRACTOR FOR UNSATISFACTORY PERFORMANCE".

3    IT DOESN'T SAY ONLY THE CONTRACTOR OR MAYBE THIRD

4    PARTIES.  AGAIN, IT SAYS WHAT IT SAYS.  I UNDERSTAND YOUR

5    ARGUMENT.

6              ANYTHING ELSE ON THAT CLAIM?

7              MS. SCHATTSCHNEIDER:  YOUR HONOR, I THINK IT'S

8    IMPORTANT TO MAKE A DISTINCTION BETWEEN THE RIVERS

9    PRISONERS AND THE GENERAL TAXPAYERS, THE GENERAL MEMBERS

10   OF THE PUBLIC.  THE CLASSIC CASES ON GOVERNMENT CONTRACTS

11   INTENDED TO BENEFIT THE PUBLIC ARE VERY DIFFERENT FROM

12   THIS ONE.

13             THE COURT:  WELL, HOW DO YOU DISTINGUISH THEM

14   FROM THE SHAREHOLDERS OF A CORPORATION THAT HAS A

15   CONTRACT OR THE EMPLOYEES OF A CONTRACT WHO HAS A

16   CONTRACT?

17             I MEAN, THAT IT'S BASICALLY, HEY, I THOUGHT I

18   WAS GOING TO GET SOME MONEY.  I HAVE GOT A JOB AND NOW

19   ALL OF A SUDDEN THE GOVERNMENT HAS MESSED UP THIS

20   CONTRACT AND I DON'T HAVE A JOB ANYMORE.  I WANT TO COME

21   IN AND SUE AS A THIRD PARTY BENEFICIARY.  AND THE FEDERAL

22   CIRCUIT IS CRYSTAL CLEAR THAT THAT IS NOT -- THAT THOSE

23   FOLKS ARE NOT THIRD PARTY BENEFICIARIES.

24             HOW ARE THESE PRISONERS DIFFERENT?

25             MS. SCHATTSCHNEIDER:  IF YOU LOOK AT THE

1    SHERMAN AND MONTANA DECISIONS THAT ARE CITED, THOSE

2    DECISIONS MAKE CLEAR THAT THE TRIMBLE TEST SHOULD APPLY,

3    AND IF THE TRIMBLE TEST APPLIES, THE LANGUAGE OF THE

4    CONTRACT CONFERS OF A BENEFIT UPON THESE PARTICULAR

5    INDIVIDUALS.  IT DOES NOT CONFER A BENEFIT ON THE

6    TAXPAYERS AT LARGE.  THIS ISN'T A CASE WHERE A CONTRACTOR

7    AGREED TO LAY A LINE OF WATER OR A WATER LINE OUT TO A

8    DEVELOPMENT AND THE HOUSES BURNED DOWN.

9            AND TO THE EXTENT THAT THIS CONTRACT IS

10   ABOUT -- CONFERS BENEFITS ON ANYONE AT ALL, IT CONFERS

11   BENEFITS ON THESE INDIVIDUALS, ON THESE PRISONERS.

12           THE COURT:  OKAY.  ANYTHING ELSE?  THANK YOU

13   FOR YOUR ARGUMENT.  AT THIS TIME, THE COURT WILL HEAR

14   FROM MS. WYER.

15           MS. WYER:  YOUR HONOR, I WOULD FIRST LIKE TO

16   ADDRESS THE EIGHTH AMENDMENT ARGUMENT OF THE PLAINTIFF.

17           THE COURT:  RIGHT.

18           MS. WYER:  SPECIFICALLY, THE PLAINTIFF'S

19   ARGUMENT THAT THE BOP AND MR. LAPPIN CAN BE DIRECTLY

20   LIABLE IN ACCORD WITH THE SUPREME COURT'S DECISION IN

21   FARMER'S VERSUS BRENNAN, IT'S VERY IMPORTANT TO

22   UNDERSTAND THAT THE FARMER'S VERSUS BRENNAN DECISION WAS

23   SETTING FORTH A STANDARD FOR DELIBERATE INDIFFERENCE FOR

24   AN INDIVIDUAL PEOPLE.  THAT IS WHY IT DECIDED THAT THERE

25   MUST BE A SUBJECTIVE STANDARD FOR INDIVIDUALS.  THAT

1    SIMPLY CANNOT BE APPLIED TO --

2              THE COURT:  BUT IF THE PLAINTIFF'S RESPONSE IS

3    THEY ARE SEEKING INJUNCTIVE RELIEF AND THAT THE ENTITY

4    THAT THEY WANT ENJOINED IS THE BOP AND MR. LAPPIN, IN HIS

5    OFFICIAL CAPACITY.  AND IF MR. LAPPIN RETIRES, WHOEVER

6    HIS SUCCESSOR, THEY WANT THE INJUNCTION TO RUN AGAINST

7    THEM.  SO, I MEAN, THERE THEY ARE ARGUING, AS I

8    UNDERSTAND MR. RIDINGS' ARGUMENT, AND AS I UNDERSTAND HIS

9    PAPERS, IS YOU CAN'T DIVORCE FARMER FROM THE RELIEF

10   PLAINTIFF IS SEEKING.

11             SO WHAT DO YOU SAY TO THAT?

12             I MEAN, THAT IS TO SAY -- ARE YOU SAYING YOU

13   CAN'T APPLY THE FARMER DELIBERATE INDIFFERENCE TEST TO AN

14   INANIMATE ENTITY BECAUSE THERE IS SOME ISSUE WITH THE

15   SUBJECTIVE COMPONENT?

16             MS. WYER:  YES.  THAT IS WHAT THE SUPREME

17   COURT WAS SAYING IN FARMER.  AT THE TIME THAT THE SUPREME

18   COURT DECIDED FARMER, THERE WAS ALREADY A STANDARD FOR

19   ENTITY LIABILITY IN THE CITY OF CANTON VERSUS HARRIS THAT

20   TALKED ABOUT MUNICIPAL LIABILITY IN THE CASE OF -- THAT

21   WAS THE FAILURE TO TRAIN POLICE OFFICERS CASE.

22             AND SO THE CITY OF CANTON VERSUS HARRIS SET

23   FORTH THE STANDARD FOR MUNICIPAL LIABILITY WHICH

24   REQUIRES -- IT'S A TWO-STEP PROCESS FOR THAT.  THERE IS

25   THE FIRST STEP OF THAT PROCESS IS THAT THERE HAS TO BE A

1    PREDICATE VIOLATION UNDERLYING THE MUNICIPAL LIABILITY.

2           FARMER CAME IN AND ADDRESSED WHAT THE STANDARD

3    WAS FOR THAT PREDICATE VIOLATION FOR THE INDIVIDUAL WHO

4    ACTUALLY COMMITTED THAT PREDICATE VIOLATION.  IT WASN'T

5    TALKING ABOUT WHETHER THAT REQUIRED SOMETHING, A STANDARD

6    OF DELIBERATE INDIFFERENCE THAT TOOK INTO ACCOUNT ACTUAL

7    KNOWLEDGE ON THE PART OF THAT INDIVIDUAL.

8           THE COURT:  SO IS IT YOUR POSITION THAT IF --

9    THAT SOMEHOW THE EIGHTH AMENDMENT DELIBERATE INDIFFERENCE

10   STANDARD CAN'T BE APPLIED TO THE BOP AS AN INSTITUTION BY

11   SOMEONE -- BY A PRISONER SEEKING INJUNCTIVE RELIEF?

12          MS. WYER:  THE STANDARD -- IT'S A DIFFERENT

13   STANDARD.

14          THE COURT:  WELL, WHATEVER THE STANDARD,

15   THOUGH.  I MEAN, AGAIN, AS I UNDERSTAND MR. RIDINGS'

16   ARGUMENT IS, YOU KNOW, HE ACKNOWLEDGES, HE CITES FARMER,

17   BUT LET'S SAY FARMER ISN'T THE STANDARD.

18          LET'S SAY SOME PRISONER COMES IN AND SAYS, "I

19   AM BEING HELD IN A BOP FACILITY AND THE BOP OFFICIALS ARE

20   LINING PEOPLE UP AND SHOOTING THEM, AND MY NAME IS UP

21   TOMORROW, AND I REALLY WOULD LIKE AN INJUNCTION BECAUSE I

22   THINK THEY VIOLATED THE EIGHTH AMENDMENT AND I DON'T WANT

23   THEM TO KEEP DOING IT AND I CERTAINLY DON'T WANT TO GET

24   SHOT TOMORROW.  JUDGE, PLEASE SIGN THIS INJUNCTION."

25          ARE YOU SAYING THAT A FEDERAL COURT WOULD HAVE

1    TO SAY WELL, YOU KNOW, THERE IS A SUBJECTIVE COMPONENT IN

2    FARMER, AND I JUST DON'T SEE IT.  INJUNCTION DENIED.  OF

3    COURSE THAT COULDN'T BE THE LAW.

4              MS. WYER:  YOU WOULD STILL HAVE TO GO THROUGH

5    WITH THE TWO-STEP PROCESS IF THE PLAINTIFF WERE BRINGING

6    THE SUIT AGAINST THE BOP AND NOT THE INDIVIDUAL WHO IS

7    DOING THE SHOOTING.

8              THE COURT:  IN MY HYPOTHETICAL, HE IS.  HE IS

9    COMING IN AND HE IS SAYING I AM NOT REALLY SURE WHAT

10   GUARD IS SCHEDULED TOMORROW, BUT I WANT YOU TO ENJOIN THE

11   BOP.  ALL RIGHT.  I WANT YOU TO ENJOIN THE BOP.

12             MS. WYER:  EXACTLY.  EXACTLY.  SO WHAT YOU

13   WOULD DO IS YOU WOULD GO THROUGH THIS TWO-STEP PROCESS AS

14   OUTLINED IN THE D.C. CIRCUIT OPINION IN BAKER.  FIRST,

15   YOU WOULD LOOK AT IS THERE AN UNDERLYING PREDICATE

16   CONSTITUTIONAL VIOLATION.  IS THAT GUARD -- DID THAT

17   GUARD VIOLATE THE PERSON'S RIGHTS BY SHOOTING HIM.

18             THE COURT:  OKAY.

19             MS. WYER:  THEN, IF YOU DECIDE YES, THAT WAS A

20   CONSTITUTIONAL VIOLATION, THEN THE NEXT STEP IS TO GO TO

21   WHETHER THE BOP HAS A POLICY OR CUSTOM OF -- IS THERE

22   SOME POLICY OR CUSTOM THAT WAS THE MOVING FORCE BEHIND

23   THAT GUARD DOING THAT.

24             IF IT WAS ONLY ONE GUARD ACTING RANDOMLY, THEN

25   HAVING THE BOP -- IT'S NOT THE BOP THAT WOULD NEED TO BE

1    ENJOINED.  IT WOULD BE THAT INDIVIDUAL GUARD.

2           THE COURT:  ALL RIGHT.  WELL, LET'S ASSUME

3    THOUGH IN MY HYPOTHETICAL THAT IT IS THE BOP.  IT IS THE

4    BOP, AND THE PERSON WHO IS COMING IN TO SEEK THE

5    INJUNCTION IN MY HYPOTHETICAL, YOU KNOW, YOU DON'T HAVE

6    TO ENJOIN THE GUARDS.  YOU CAN ENJOIN THEM IF YOU WANT,

7    BUT REALLY I WANT YOU TO ENJOIN THE BOP.  AND THE FIRST

8    TEST WOULD BE MET.  THE FIRST STANDARD WOULD BE MET.

9           SO I AM TRYING TO UNDERSTAND -- SO IS YOUR

10    ARGUMENT TO -- YOUR ARGUMENT IN RESPONSE TO MR. RIDINGS

11    THAT THERE IS NOT DIRECT LIABILITY OF THE -- THAT THE

12    ALLEGATIONS ARE INSUFFICIENT AS TO THE BOP TO ESTABLISH

13    DIRECT LIABILITY UNDER THE CASES YOU HAVE REFERENCED?  IS

14    THAT THE CRUX OF IT?

15           MS. WYER:  IT'S JUST THAT THE TWO-STEP PROCESS

16    CANNOT BE FULFILLED IN THIS CASE BECAUSE THE FIRST STEP,

17    THE PREDICATE VIOLATION, IS NOT GOVERNMENT ACTION.  THAT

18    IS CONTROLLED BY HOLLY.

19           SO IN THE CASE THAT WE WERE TALKING ABOUT WITH

20    THE HYPOTHETICAL WITH THE GUARD, WHEN -- BECAUSE THE

21    GUARD IS A BOP EMPLOYEE IN YOUR SCENARIO --

22           THE COURT:  SO, ALL RIGHT.  OKAY.  I GET IT

23    NOW.  I GET YOUR ARGUMENT.  I UNDERSTAND IT.  SO YOUR

24    ARGUMENT IS THAT ON THAT FIRST STEP THAT HOLLY CONTROLS,

25    THE FIRST STEP OF THE ARGUMENT.

1          MS. WYER:  RIGHT.  AND YOU CANNOT GO TO THE

2    SECOND STEP UNLESS THAT FIRST STEP -- UNLESS THERE IS

3    GOVERNMENT ACTION AT THE FIRST STEP.  THAT IS WHAT BAKER

4    WAS SAYING.

5          THE COURT:  OKAY.  HOW ABOUT THE REHAB ACT?

6    DO YOU WANT TO ADD ANYTHING ON THAT?

7          MS. WYER:  YES.  WELL, FIRST OF ALL, IN REGARD

8    TO WHAT CLAIMS ARE VIABLE AS A REHAB ACT CLAIM, THE CASE

9    LAW I THINK IS CLEAR THAT MEDICAL TREATMENT IS NOT --

10   DOES NOT QUALIFY AS A CLAIM UNDER THE REHABILITATION ACT

11   BECAUSE THE ACT ONLY REQUIRES EVENHANDED TREATMENT AND

12   THERE IS NOT A DISPARATE IMPACT FOR MEDICAL CARE UNDER

13   THE REHAB ACT.

14          I THINK THAT THERE IS SOME CONFUSION ABOUT THE

15   NATURE OF THE AVAILABLE REMEDY THAT WOULD HAVE TO EXIST

16   IF THE CLAIM WAS -- IF YOUR HONOR DISMISSED THE CLAIM AS

17   IT EXISTS DIRECTLY UNDER SECTION 504 AGAINST FEDERAL

18   DEFENDANTS AND THEN WAS CONSIDERING WHETHER THERE WAS A

19   VIABLE -- WHETHER IT WOULD MAKE SENSE TO ALLOW THE

20   PLAINTIFF TO AMEND TO ASSERT AN APA CLAIM.

21          THE QUESTION OF WHETHER THERE IS A PRIVATE

22   RIGHT OF ACTION AGAINST A PRIVATE ENTITY IS REALLY

23   ALREADY WELL ESTABLISHED UNDER --

24          THE COURT:  WELL, RIGHT.  YOU HAVE 794A2, BUT

25   THAT WHOLE THING IN CONNECTION WITH GEO BEING ON THE

1     HOOK, I HAVE READ A LOT AND I UNDERSTAND THE ARGUMENTS,

2     AND I AM GOING TO KEEP STUDYING, BUT I CAN TELL YOU IT

3     CERTAINLY SEEMS TO ME NOW, SITTING HERE TODAY, THAT THE

4     TOUCHSTONE FOR PRIVATE SECTOR LIABILITY UNDER THE REHAB

5     ACT IS THE RECEIPT OF FEDERAL FINANCIAL ASSISTANCE, AND

6     THAT IS NOT WHERE PLAINTIFF IS HANGING HIS HAT.

7              MS. WYER:  RIGHT.

8              THE COURT:  BUT THAT, AGAIN, DOESN'T, YOU

9     KNOW.  I WANT TO HEAR WHATEVER FINAL THOUGHTS YOU HAVE ON

10    THE REHAB ACT CLAIM AGAINST YOUR CLIENT, AND I HEARD YOU

11    EARLIER.  IT WAS MY UNDERSTANDING THAT EVEN IF THE COURT

12    CONCLUDED THAT, YOU STILL TAKE THE POSITION THAT THERE IS

13    NO REHAB ACT CLAIM AGAINST -- THERE IS NO REHAB ACT CLAIM

14    IMPLIED AGAINST THE BOP.

15             YOU BELIEVE, THEORETICALLY, THERE MIGHT BE AN

16    APA CLAIM, ALTHOUGH YOU THINK THAT WOULD BE FUTILE.  THAT

17    IS AN ISSUE FOR ANOTHER DAY, PERHAPS, BUT THAT

18    REGARDLESS, YOU TAKE THE POSITION, AS I UNDERSTOOD IT --

19    CORRECT ME IF I AM WRONG -- THAT EVEN IF GEO, EVEN IF

20    THERE IS NO REHAB ACT CLAIM AGAINST GEO UNDER THE

21    LANGUAGE PLAINTIFF IS RELYING ON, PROGRAM OR ACTIVITY

22    CONDUCTED BY AN EXECUTIVE AGENCY, THAT THERE IS STILL NO

23    IMPLIED PRIVATE RIGHT OF ACTION AGAINST DOJ; CORRECT?

24             MS. WYER:  ABSOLUTELY, YOUR HONOR, BECAUSE

25    THERE IS NOTHING -- WHETHER THERE IS A RIGHT OF ACTION

1    AGAINST GEO OR NOT IS REALLY IRRELEVANT TO WHETHER THERE

2    IS AN IMPLIED PRIVATE RIGHT OF ACTION AGAINST THE FEDERAL

3    -- AGAINST THE BOP.  THAT -- THIS WHOLE DISCUSSION ABOUT

4    WHETHER THERE IS OR IS NOT AN ALTERNATIVE REMEDY AGAINST

5    GEO IS REALLY ONLY RELEVANT TO THE APA, THE POSSIBILITY

6    OF AN APA CLAIM.

7           BUT THE IMPORTANT POINT WITH RESPECT TO AN

8    IMPLIED RIGHT OF ACTION AGAINST THE BOP IS THAT COURTS

9    JUST DISFAVOR FINDING A CONGRESSIONAL INTENT TO SET FORTH

10   A PRIVATE RIGHT OF ACTION IN AN IMPLIED MANNER DIRECTLY

11   UNDER A STATUTE WHERE THE APA ALREADY PROVIDES A

12   FRAMEWORK, AND THE FOURTH CIRCUIT'S DECISION IN MANN SET

13   FORTH THAT PRINCIPLE.

14          AN EXPRESS CAUSE OF ACTION AGAINST THE

15   GOVERNMENT IS -- REPRESENTS THE CONGRESS'S INTENT NOT TO

16   PROVIDE A CAUSE OF ACTION UNDER THE STATUTE.

17          AND SO THAT WHOLE ISSUE IS REALLY I THINK NOT

18   A VERY DIFFICULT ONE.

19          THE COURT:  THANK YOU.

20          MR. NUMBERS.

21          MR. NUMBERS:  DEALING WITH THE EIGHTH

22   AMENDMENT CLAIM, I THINK -- I AM 95 PERCENT SURE MR.

23   HOLLY WAS STILL IN JAIL AT THE TIME THE FOURTH CIRCUIT

24   DECISION CAME DOWN BECAUSE AS YOU MAY RECALL THERE WAS A

25   HOLLY 2 CASE THAT CAME THROUGH, AND I BELIEVE YOU WERE

1   THE JUDGE IN THAT CASE.

2            THE COURT:  I WAS.

3            MR. NUMBERS:  THAT ALLEGED VARIOUS THINGS

4   OCCURRING AT THE FACILITY AFTER HE INITIATED AND PURSUED

5   HOLLY, SO I BELIEVE HE WAS STILL IN THE FACILITY.

6            WE TALKED A LOT ABOUT THE APPLICABILITY OF

7   HOLLY TO GEO AS THE ENTITY.  THE ISSUE IN HOLLY WAS

8   WHETHER PROVIDING HEALTH CARE TO INMATES WAS A PUBLIC

9   FUNCTION.  THE COURT SAID HOLLY ARGUES, HOWEVER, THAT

10  LIABILITY EXISTS HERE BY VIRTUE OF THE FACT THAT GEO'S

11  PARTICULAR BUSINESS FUNCTION INVOLVES PRISONS AND THUS IS

12  A PUBLIC FUNCTION.

13           THEY WENT ON TO REJECT THE CLAIM SAYING THAT

14  INADEQUATE MEDICAL CARE ALLEGED IN THIS CASE

15  UNQUESTIONABLY ARISES OUT OF THE DEFENDANT'S OPERATION OF

16  A PRISON, NOT THE FACT OF HOLLY'S INCARCERATION.  AND IT

17  GOES ON TO DENY ANY SORT OF RELIEF FOR EIGHTH AMENDMENT,

18  SO HOLLY COMPLETELY FORECLOSES AN EIGHTH AMENDMENT CLAIM

19  AGAINST GEO, INJUNCTIVE OR OTHERWISE.

20           WE TOUCHED ON COLLINS BRIEFLY.  I KNOW WE ARE

21  NOT HERE TO DEBATE COLLINS.  IT WOULD BE OUR POSITION

22  THAT THAT IS NOT INCONSISTENT BECAUSE THE FEDERAL OFFICER

23  REMOVAL STATUTE APPLIES TO BOTH GOVERNMENTAL ACTORS AND

24  PRIVATE ACTORS THAT ARE CLEARLY NOT FEDERAL ACTORS.

25           SO WE HAVE BRIEFED THAT AND THE BRIEFS ARE

1    CONSPICUOUSLY MISSING FROM THE SUBMISSION MY PLAINTIFF'S

2    COUNSEL, BUT WE'LL LEAVE THAT FOR ANOTHER DAY.

3              UNDER THE REHABILITATION ACT, THERE IS THE

4    ISSUE OF GEO'S CONTRACTUAL RESPONSIBILITY TO ADHERE TO

5    THE REHABILITATION ACT, AND OBVIOUSLY YOUR HONOR HAS SAID

6    YOU HAVE READ THE CONTRACT.  THAT IS AN ISSUE BETWEEN THE

7    BOP AND GEO.  IF GEO IS NOT DOING THAT, THE BOP HAS A

8    VARIETY OF REMEDIES TO ADDRESS THOSE ISSUES.  SO WE WOULD

9    SAY THAT IS A NON-STARTER FOR PLAINTIFFS IN IMPOSING

10   REHABILITATION LIABILITY ACT ON GEO.

11             FOR THE NEGLIGENCE CLAIM, IN PLAINTIFF'S BRIEF

12   ON PAGE 42, THEY SAY RULE 9J APPLIES ONLY TO CLAIMS FOR

13   (QUOTE) "MEDICAL MALPRACTICE" (CLOSED QUOTE).  THEN THEY

14   SAY (QUOTE) "MEDICAL MALPRACTICE" (CLOSED QUOTE) IN TURN

15   IS DEFINED AS A CIVIL ACTION FOR DAMAGES.  THAT IS NOT

16   EXACTLY CORRECT.

17             THE TERM MEDICAL MALPRACTICE IS NOT

18   STATUTORILY DEFINED.  THE TERM MEDICAL MALPRACTICE ACTION

19   IS.  MEDICAL MALPRACTICE ACTION DOES NOT APPEAR IN 9J.

20   IT'S NOT THERE.

21             AND I WOULD ALSO POINT OUT ON THIS ISSUE, YOUR

22   HONOR HAS HAD SEVERAL CASES THAT ARE ESSENTIALLY COPYCATS

23   OF THIS CASE IN WHICH THERE HAVE BEEN REQUESTS FOR RELIEF

24   FOR MONETARY DAMAGES, INJUNCTIVE DAMAGES, AND DECLARATORY

25   RELIEF, AND IN THOSE CASES, YOUR HONOR HAS FOUND THAT 9J

1    APPLIES.

2              AND FROM A POLICY STANDPOINT, THE INJUNCTIVE

3    RELIEF COULD ACTUALLY BE MORE COSTLY TO THE MEDICAL

4    PROVIDER THAN A DAMAGES AWARD, WHICH ARE TYPICALLY

5    HANDLED BY INSURANCE CARRIERS AND THINGS LIKE THAT.  IF

6    YOUR HONOR WERE FOR SOME REASON TO ENJOIN WAKE MED OR UNC

7    HOSPITAL AND PURSUE THE OVERSIGHTS IN THIS CASE, THE COST

8    WOULD BE ASTRONOMICAL AND WOULD MOST LIKELY COME DIRECTLY

9    OUT OF THE POCKET OF THE HEALTH CARE PROVIDER, OR TAKING

10   IT TO A SMALLER LEVEL --

11             THE COURT:  SO YOUR ALTERNATIVE ARGUMENT IS

12   YOU CITE THE SUPREME COURT OF NORTH CAROLINA CASE

13   THAT YOU CITED IN YOUR PAPERS, AND YOU CITE THE LANGUAGE

14   OUT OF THE STATE VERSUS WATERS, AND YOU SAY EVEN IF --

15   YOUR FIRST ARGUMENT IS MEDICAL MALPRACTICE ACTION IS NOT

16   IN 9J,  THEREFORE YOU OUGHT TO REJECT PLAINTIFF'S

17   ARGUMENT.  LOOK AT THEIR ALLEGATIONS.  THESE ARE CLAIMS

18   THAT ARE -- DEAL WITH MEDICAL MALPRACTICE ISSUES.

19   ALTERNATIVELY, EVEN IF ONE WERE TO LOOK AT THE LANGUAGE

20   IN THE DEFINITION OF MEDICAL MALPRACTICE ACTION AND ITS

21   REFERENCE TO DAMAGES, WHEN YOU GO BACK AND REFLECT ON THE

22   GENERAL ASSEMBLY'S INTENT IN 1995, THE LANGUAGE WAS

23   INSERTED THERE BECAUSE 99.9 PERCENT OF ALL MEDICAL

24   MALPRACTICE ACTIONS ARE FOR DAMAGES, AND THAT THE INTENT

25   OF THIS WAS TO HAVE A MEDICAL PROFESSIONAL REVIEW THE

1   STANDARD OF CARE BEFORE A DOCTOR OR HOSPITAL GOT DRAGGED

2   INTO COURT ON A MEDICAL MALPRACTICE.

3          MR. NUMBERS:  CORRECT.  IT APPLIES TO SMALLER

4   PROVIDERS AS WELL BECAUSE IT PROTECTS THOSE FOLKS.

5          THE COURT:  I GOT YOUR ARGUMENT.

6          MR. NUMBERS:  ON OTHER THING ABOUT THE 9J

7   ITSELF IN TERMS OF STATUTORY CONSTRUCTION, WE WOULD ARGUE

8   IT'S IMPROPER TO LOOK TO 90-21.11 IN ORDER TO DEFINE

9   COMPLAINTS OF ALLEGED MEDICAL MALPRACTICE BECAUSE THE

10  PHRASE AS DEFINED IN 90-21.11, ACCORDING TO THE RULE OF

11  THE LAST ANTECEDENT, APPLIES ONLY TO THE TERM "HEALTH

12  CARE PROVIDER".

13         JUSTICE SCALIA DISCUSSED THIS IN 2003 IN

14  BARNHART VERSUS THOMAS.  THE CASE HAS BEEN CITED BY THE

15  FOURTH CIRCUIT RECENTLY.  THE CITE FOR BARNHART IS 540

16  U.S. 20, 2003.

17         JUSTICE SCALIA DISCUSSED THE RULE OF THE LAST

18  ANTECEDENT AND SAID A LIMITING CLAUSE OR PHRASE SHOULD

19  ORDINARILY BE READ AS MODIFYING THE NOUN OR PHRASE THAT

20  IMMEDIATELY FOLLOWS, AND GAVE THE FOLLOWING, I THINK,

21  AMUSING EXAMPLE, WHERE HE SAID CONSIDER, FOR EXAMPLE, THE

22  CASE OF PARENTS WHO BEFORE LEAVING THEIR TEENAGE SON

23  ALONE IN THE HOUSE FOR THE WEEKEND, WARN HIM, (QUOTE)

24  "YOU WILL BE PUNISHED IF A THROW A PARTY OR ENGAGE IN ANY

25  OTHER ACTIVITY THAT DAMAGES THE HOUSE."

1          THE SON, NEVERTHELESS, THREW A PARTY AND IS

2     CAUGHT.  HE SHOULD HARDLY BE ABLE TO AVOID PUNISHMENT BY

3     ARGUING THAT THE HOUSE WAS NOT DAMAGED.

4          AND THE SAME SORT OF THING APPLIES HERE.  IT

5     SAYS COMPLAINT ALLEGING MEDICAL MALPRACTICE AGAINST A

6     HEALTH CARE PROVIDER AS DEFINED AND AS DEFINED APPLIES

7     ONLY TO HEALTH CARE PROVIDER.

8          MOVING ON TO THE BREACH OF CONTRACT ARGUMENT,

9     INTERESTING NOTE IN TRIMBLE -- AND THERE WERE A COUPLE OF

10    TRIMBLE DECISIONS, BUT I BELIEVE THE ONE THAT WE ARE

11    FOCUSING ON HERE ACKNOWLEDGES THAT --

12          THE COURT:  THE FIRST TRIMBLE DECISION WAS

13    JUDGE LEE DISMISSED THE CLAIM AND SAID THIS IS ALL UNDER

14    THE CONTRACT DISPUTES ACT, AND THE FOURTH CIRCUIT

15    DISAGREED AND THEN IT CAME BACK.

16          MR. NUMBERS:  WHEN IT CAME BACK DOWN, THE

17    COURT RECOGNIZED THAT THERE WAS A DISPUTE OVER THE

18    STANDARD THAT APPLIED.  AND WHAT THE COURT SAID IN

19    TRIMBLE, WELL, WE DON'T REALLY NEED TO GET TO THAT

20    BECAUSE THIS FAILS ON THE FIRST PART.  AND SO THERE WAS

21    NO NEED TO REALLY DETERMINE THE ISSUE BECAUSE STEP ONE

22    WAS WHETHER THERE WAS AN INTENT IN THE CONTRACT TO

23    BENEFIT THE THIRD PARTIES, THAT ISSUE APPLIES NO MATTER

24    WHETHER YOU GO ON TO THE SECOND STEP OR NOT.  AND THE

25    COURT SAID, YOU FAIL ON THAT CLAIM.  SO WE DON'T NEED TO

1    ADDRESS THE STICKIER ISSUE OF WHETHER STEP TWO APPLIES.

2              THE FEDERAL CIRCUIT CASES, MONTANA VERSUS

3    UNITED STATES, AND THE OTHER CASE THAT ESCAPES ME AT THIS

4    MOMENT IN TIME, IF YOU LOOK IN FOOTNOTE 6 OF MONTANA, IT

5    SAYS, "THE LIMITING RULE WE ARE APPLYING HERE DOES NOT

6    APPLY IN CASES WHERE IT'S A THIRD PARTY MEMBER OF THE

7    PUBLIC ATTEMPTING TO ENFORCE THIRD PARTY BENEFICIARY

8    RIGHTS AGAINST A GOVERNMENT CONTRACTOR."

9              SO IT ACKNOWLEDGES THAT THERE IS A DIFFERENT

10   STANDARD THAT IS APPLIED TO CASES LIKE WHAT WE ARE SEEING

11   HERE.

12             THE COURT:  SO YOU EQUATE THE INMATES TO

13   MEMBERS OF THE PUBLIC?

14             MR. NUMBERS:  WELL, THEY ARE MEMBERS OF THE

15   PUBLIC.

16             THE COURT:  I UNDERSTAND THAT, BUT IN TERMS

17   OF -- YOU DON'T HAVE TO WIN ON THAT ARGUMENT TO WIN ON

18   THIS DISMISSING THAT CLAIM; DO YOU?  OR DO YOU?  DO YOU

19   BELIEVE THAT JUST UNDER THE FIRST DIRECT BENEFICIARY TEST

20   THAT THEY WOULD BE SIMILARLY SITUATED?  YOU KNOW, YOU

21   LOOK AT THE CONTRACTUAL LANGUAGE AND THEY ARE NOT

22   INTENDED DIRECT BENEFICIARIES UNDER THE LANGUAGE OF THE

23   CONTRACT.

24             MR. NUMBERS:  I THINK THAT THAT IS ABSOLUTELY

25   CORRECT, THAT THEY ARE NOT DIRECTLY INTENDED

1    BENEFICIARIES UNDER THE LANGUAGE OF THE CONTRACT, AND I

2    THINK WHEN YOU LOOK AT CASES LIKE THE CASE FROM D.C. THAT

3    ALSO DEALT WITH D.C. PRISONERS IN A PRIVATE FACILITY, THE

4    LANGUAGE OF THAT CONTRACT IS VERY SIMILAR, AND I BELIEVE

5    IT WAS A D.C. CIRCUIT.  IT MIGHT HAVE BEEN --

6              THE COURT:  IT WAS THE DISTRICT OF COLUMBIA,

7    THE COURT OF APPEALS, I THINK.

8              MR. NUMBERS:  -- SAID THERE IS NO THIRD PARTY

9    BREACHING OF CONTRACT ISSUE.

10              WE HAVE TALKED ABOUT WHAT THE PURPOSE OF THE

11    CONTRACT IS.  I MEAN, IT DOESN'T JUST DEAL WITH HEALTH

12    CARE.  IT DEALS WITH OTHER THINGS THAT ARE IMPORTANT TO

13    INMATES IN TERMS OF THEIR INCARCERATION, MANAGEMENT OF

14    THEIR RECORDS, WHEN THEY GET OUT OF JAIL, THE SECURITY OF

15    THE FACILITY IN GENERAL, WORK AND CORRECTIONAL

16    OPPORTUNITIES, EDUCATIONAL OPPORTUNITIES, RECREATION

17    OPPORTUNITIES.

18              THESE ARE ALL THINGS THAT ARE PART AND PARCEL

19    OF LIFE AT THE FACILITY, AND IT WOULD OPEN THE FLOODGATES

20    TO ALL SORTS OF BREACH OF CONTRACT CLAIMS FOR ALL OF

21    THESE VARIOUS PROVISIONS IF THIS CLAIM WERE ALLOWED TO GO

22    FORWARD BECAUSE THIS CONTRACT DOES NOT SAY, GEO, OPEN A

23    PRISON AND RUN IT, AND WE'LL CHECK BACK WITH YOU IN FIVE

24    YEARS.  THAT IS NOT THE WAY THE FEDERAL GOVERNMENT DOES

25    BUSINESS.  THEY ARE GOING TO EXPLAIN WHAT IS EXPECTED OF

1     THE CONTRACTORS.

2              YOU SIMPLY CANNOT -- IT WOULD OVERWHELM THE

3     COURTS TO ALLOW BREACH OF CONTRACT ON ALL OF THESE TYPES

4     OF CLAIMS.

5              SO AS WE SAID BEFORE, WE BELIEVE OUR MOTION TO

6     DISMISS SHOULD BE GRANTED.

7              THE COURT:  THANK YOU VERY MUCH.  COUNSEL, I

8     AM GOING TO TAKE THIS CASE UNDER ADVISEMENT.  I DO VERY

9     MUCH APPRECIATE EACH SIDES PREPARATION AND PRESENTATIONS

10    TODAY AND YOUR PAPERS.

11             IT IS ALWAYS ENJOYABLE TO PARTICIPATE IN

12    ARGUMENTS WITH VERY WELL PREPARED COUNSEL WHO HAVE DONE

13    AN EXCELLENT JOB IN BOTH BRIEFING AND IN ARGUMENT.

14             WITH THAT, WE'LL BE IN RECESS.  I WILL COME

15    DOWN AND GREET COUNSEL.

16             (WHEREUPON, THE PROCEEDINGS WERE ADJOURNED.)

17

18

19

20

21

22

23

24

25

1

2

3

4                        <u>CERTIFICATE</u>

5

6          THIS IS TO CERTIFY THAT THE FOREGOING

7   TRANSCRIPT OF PROCEEDINGS TAKEN IN THE UNITED STATES

8   DISTRICT COURT IS A TRUE AND ACCURATE TRANSCRIPTION OF

9   THE SHORTHAND NOTES, CONSISTING OF THE WHOLE THEREOF, OF

10  THE PROCEEDINGS TAKEN BY ME IN MACHINE SHORTHAND AND

11  TRANSCRIBED BY COMPUTER UNDER MY SUPERVISION.

12          DATED THIS 31ST DAY OF JANUARY, 2010.

13

14

15

16

17                              <u>/S/ SHARON K. KROEGER</u>
                                COURT REPORTER
18

19

20

21

22

23

24

25