# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### NORTHERN DIVISION
#### No. 2:08-CT-00021-D

|  |  |
|---|---|
| LOUIS CALLAND,<br><br>         Plaintiff,<br><br>v.<br><br>GEO GROUP, INC., et al.,<br><br>         Defendants. | **PLAINTIFF'S CONSOLIDATED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS FEDERAL BUREAU OF PRISONS' AND HARLEY LAPPIN'S MOTION TO DISMISS, AND DEFENDANT GEO GROUP, INC.'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** |

Philip J. Fornaci (DC Bar # 434824)
Deborah M. Golden (DC Bar # 470578)
WASHINGTON LAWYERS' COMMITTEE FOR
  CIVIL RIGHTS AND URBAN AFFAIRS
11 Dupont Circle N.W.
Suite 400
Washington, D.C. 20036
202.319.1000 (ph)
202.319.1010 (fax)

Neil A. Riemann (NC Bar #19258)
PENRY RIEMANN PLLC
510 Glenwood Avenue, Suite 319
Raleigh, NC 27603
919.833.9449 (ph)
919.833.9448 (fax)

Anthony Herman (DC Bar # 424643)
Donald J. Ridings (DC Bar 466808)
Danielle M. Estrada (DC Bar # 494517)
Laura E. Schattschneider (DC Bar # 976423)
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue N.W.
Washington, D.C. 20004
202.662.6000 (ph)
202.662.6291 (fax)

Counsel for Plaintiff

March 9, 2010

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

STATEMENT OF FACTS .................................................................................................. 4

PROCEDURAL BACKGROUND...................................................................................... 6

STATEMENT OF INCORPORATION OF ARGUMENTS IN OPPOSITION TO
     DEFENDANTS' MOTIONS TO DISMISS THE FIRST AMENDED
     COMPLAINT .......................................................................................................... 7

STANDARD OF REVIEW ................................................................................................ 8

ARGUMENT ...................................................................................................................... 9

I.     PLAINTIFF HAS ALLEGED FACTS SUFFICIENT TO STATE AN EIGHTH
     AMENDMENT CLAIM AGAINST THE BOP.................................................... 9

     A.     Plaintiff Has Adequately Alleged That He Faces a Substantial Risk of
         Serious Future Harm and That His Serious Medical Needs Were Not Met. ........ 11

     B.     Plaintiff Has Adequately Alleged that the Federal Defendants Knew
         About, Yet Disregarded, a Substantial Risk of Serious Harm at Rivers............... 13

     C.     The Federal Defendants' Arguments Mischaracterize Plaintiff's
         Allegations and Misstate the Elements of an Eighth Amendment Claim............. 16

II.     THE FEDERAL GOVERNMENT'S SOVEREIGN IMMUNITY HAS BEEN
     WAIVED IN CONSTITUTIONAL ACTIONS FOR EQUITABLE RELIEF. ............... 22

III.     MR. CALLAND HAS STANDING TO PURSUE HIS EIGHTH AMENDMENT
     CLAIM................................................................................................................... 26

CONCLUSION.................................................................................................................. 30

# TABLE OF AUTHORITIES

**Page(s)**

<span style="font-variant: small-caps;">CASES</span>

Adams v. Bain,
    697 F.2d 1213 (4th Cir. 1982) ..................................................................9

America's Cmty. Bankers v. Fed. Deposit Ins. Corp.,
    200 F.3d 822 (D.C. Cir. 2000) ...........................................................28, 29

Animal Legal Def. Fund, Inc. v. Glickman,
    154 F.3d 426 (D.C. Cir. 1998) (en banc) ...........................................28, 29

Ashann-Ra v. United States,
    Nos. 5:96-CR-39-BR, 5:08-CV-302-BR, 2009 WL 3448431 (E.D.N.C. Oct. 26, 2009)
    (slip op.) ........................................................................................8

Ashcroft v. Iqbal,
    129 S. Ct. 1937 (2009) ......................................................................8

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007) ..........................................................................8

Board v. Farnham,
    394 F.3d 469, 479 (7th Cir. 2005) ...............................................10, 13

Chamber of Commerce v. Reich,
    74 F.3d 1322 (D.C. Cir. 1996) ...........................................................23

Community for Creative Non-Violence v. Pierce, ,
    814 F.2d 663 (D.C. Cir. 1987) ...........................................................29

Comsat Corp. v. Nat'l Sci. Found.,
    190 F.3d 269 (4th Cir. 1999) .............................................................25

Edwards v. City of Goldsboro,
    178 F.3d 231 (4th Cir. 1999) ...............................................................8

Elec. of N.C., Inc. v. Se. Power Admin.,
    774 F.2d 1262 (4th Cir. 1985) ...........................................................25

Erickson v. Pardus,
    551 U.S. 89 (2007) ..........................................................................18

Estelle v. Gamble,
    429 U.S. 97 (1976) ..........................................................................16

Evans v. B.F. Perkins Co.,
   166 F.3d 642 (4th Cir. 1999) .......................................................................9

Farmer v. Brennan,
   511 U.S. 825 (1994)............................................................................ passim

Flue-Cured Tobacco Coop. Stabilization Corp. v. EPA,
   313 F.3d 852 (4th Cir. 2002) ..................................................................25

Food Town Stores, Inc. v. EEOC,
   708 F.2d 920 (4th Cir. 1983) ..................................................................25

Frank Krasner Enterprises v. Montgomery County,
   401 F.3d 230 (4th Cir. 2005) ..................................................................29

Gibson v. County of Washoe,
   290 F.3d 1175 (9th Cir. 2002) ...........................................................19, 29

Hadix v. Caruso,
   461 F. Supp. 2d 574 (W.D. Mich. 2006) ................................................13

Hall v. Virginia,
   385 F.3d 421 (4th Cir. 2004) ....................................................................5

Hatfill v. New York Times Co.,
   532 F.3d 312 (4th Cir. 2008) ..................................................................20

Heckler v. Chaney,
   470 U.S. 821 (1985)................................................................................26

Helling v. McKinney,
   509 U.S. 25 (1993)..............................................................10, 12, 18, 27

Hostetter v. United States,
   739 F.2d 983 (4th Cir. 1984) ..................................................................23

Hutto v. Finney,
   437 U.S. 678 (1978)..........................................................................10, 12

Iko v. Shreve,
   535 F.3d 225 (4th Cir. 2008) ............................................................10, 11

In re Atlantic Financial Management, Inc.,
   784 F.2d 29 (1st Cir. 1986)......................................................................21

Jersey Heights Neighborhood Ass'n v. Glendening,
   174 F.3d 180 (4th Cir. 1999) ..................................................................26

iii

Johnson v. Snyder,
    444 F.3d 579 (7th Cir. 2006) .................................................................17

Johnsrud v. Carter,
    620 F.2d 29 (3d Cir. 1980).............................................................23, 24

Kentucky v. Graham,
    473 U.S. 159 (1985)..........................................................................18

Kerns v. United States,
    585 F.3d 187 (4th Cir. 2009) ...............................................................9

Lujan v. Defenders of Wildlife,
    504 U.S. 555 (1992).....................................................................27, 28

Makor Issues & Rights, Ltd. v. Tellabs Inc.,
    513 F.3d 702 (7th Cir. 2008) .............................................................20

Mann v. Haigh,
    891 F. Supp. 256 (E.D.N.C. 1995) ....................................................22

Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.,
    576 F.3d 172 (4th Cir. 2009) .................................................20, 28, 29

Matthews v. Town of Greeneville,
    No. 90-5772, 1991 WL 71414 (6th Cir. May 2, 1991).........................26

National Wrestling Coaches Ass'n v. Dep't of Educ.,
    366 F.3d 930 (D.C. Cir. 2004) ..........................................................29

Nelson v. Corr. Med. Servs.,
    583 F.3d 522 (8th Cir. 2009) .............................................................17

Papasan v. Allain,
    478 U.S. 265 (1986)............................................................................5

Plata v. Schwarzenegger,
    No. C01-1351, 2005 WL 2932253 (N.D. Cal. Oct. 3, 2005)...............13

Raymond Proffitt Found. v. U.S. Army Corps of Eng'rs,
    343 F.3d 199, 205 (3d Cir. 2003)......................................................26

Regional Mgmt. Corp. v. Legal Servs. Corp.,
    186 F.3d 457 (4th Cir. 1999) ........................................................22, 25

Reuber v. Food Chem. News, Inc.,
    925 F.2d 703 (4th Cir. 1991) ........................................................20, 25

iv

Rish v. Johnson,
  131 F.3d 1092 (4th Cir. 1997) ...................................................................9, 10

Salmon Spawning & Recovery Alliance v. U.S. Customs & Border Prot.,
  550 F.3d 1121 (Fed. Cir. 2008) ........................................................................26

Sea-Land Serv., Inc. v. Alaska Railroad,
  659 F.2d 243 (D.C. Cir. 1981) ..........................................................................23

Simmat v. U.S. Bureau of Prisons,
  413 F.3d 1225 (10th Cir. 2005) ..............................................................22, 24, 25

Smith v. Smith,
  589 F.3d 736 (4th Cir. 2009) ........................................................................8, 16

Strickler v. Waters,
  989 F.2d 1375 (4th Cir. 1993) ..........................................................................10

Teachers' Ret. Sys. of La. v. Hunter,
  477 F.3d 162 (4th Cir. 2007) ............................................................................20

Thompson v. U.S. Dep't of Housing & Urban Development,
  No. Civ.A.MJG-95-309, 2006 WL 581260 (D. Md. Jan. 10, 2006).......................23

Trudeau v. Fed. Trade Comm'n,
  456 F.3d 178 (D.C. Cir. 2006) ..............................................................22, 23, 24

Webster v. Doe,
  486 U.S. 592 (1988).........................................................................................25

Williams v. Griffin,
  952 F.2d 820 (4th Cir. 1991) ...............................................................11, 15, 16

Wilson v. Seiter,
  501 U.S. 294 (1991)..........................................................................................16

Young v. City of Mount Ranier,
  238 F.3d 567 (4th Cir. 2001) ..............................................................................7

## STATUTES AND CONSTITUTIONAL PROVISIONS

U.S. Const. amend. VIII................................................................................ passim

5 U.S.C. § 702 .............................................................................................. passim

5 U.S.C. § 704 ...............................................................................22, 24, 25

15 U.S.C. § 78j(b)................................................................................20, 21

18 U.S.C. § 3621(b) ..........................................................................................................5

29 U.S.C. § 794 ...............................................................................................................6

## OTHER AUTHORITIES

17 C.F.R. § 240.10b-5 ....................................................................................................20

Fed. R. Civ. P. 8 ..............................................................................................................8

Fed. R. Civ. P. 10 ............................................................................................................5

Fed. R. Civ. P. 12 .......................................................................................................5, 8, 9

S. Rep. No. 94-996 (1976) ...........................................................................................24

Plaintiff respectfully submits this consolidated memorandum in opposition to the separate motions to dismiss his Second Amended Complaint (DE #98) filed by Defendants the federal Bureau of Prisons ("BOP") and Harley Lappin (collectively, the "Federal Defendants") (DE #107), and by Defendant GEO Group, Inc. ("GEO") (DE #104).

## INTRODUCTION

This action seeks declaratory and injunctive relief to put an end to the unlawful medical conditions at the Rivers Correctional Institution ("Rivers"), a private prison operated by Defendant GEO pursuant to a contract with Defendant BOP (the "Rivers Contract"). Plaintiff Louis Calland's Second Amended Complaint renews the First Amended Complaint's extensive allegations concerning the broken health care system at Rivers.

The Second Amended Complaint also cures the deficiencies that the Court decided were present in Plaintiff's direct Eighth Amendment claim against the Federal Defendants by alleging how and why the Federal Defendants "knew of" the failed health care system at Rivers and "disregarded" the "substantial risk of serious harm to Calland's health or safety" that the broken system created. See Order at 10 (Nov. 9, 2009) (DE #96); see also id. at 40. Specifically, Plaintiff Calland alleges that the Federal Defendants learned that health care was inadequate at Rivers (1) through the ongoing supervisory and monitoring activities of their official contract monitors stationed on site at Rivers; (2) through the repeated periodic participation of those representatives in an informal forum for prisoner grievances known as the "main line"; and (3) through grievances about the provision of health care at Rivers that prisoners, including Plaintiff Calland, submitted directly to the BOP. The Second Amended Complaint further alleges that the Federal Defendants did nothing to prevent the Eighth Amendment violations at Rivers, despite their knowledge of these violations, and despite the fact that the Federal Defendants had the power and responsibility to prevent or halt them.

Several of the Federal Defendants' arguments in favor of dismissal distort what in fact is a straightforward Eighth Amendment claim against them. And the overreaching analytical framework they propose—much of it surfacing for the first time in this second round of dismissal motions—if adopted, would effectively insulate the federal government from liability in prisoner suits no matter how meritorious, and regardless of whether the prisoner was housed in a private or a BOP prison. For at least four reasons, their arguments should be rejected.

First, the Federal Defendants mischaracterize Plaintiff's allegations and the elements of an Eighth Amendment claim when they seek dismissal on the ground that the Plaintiff failed to challenge a specific government "action." Supreme Court case law instructs that an Eighth Amendment violation can result from a defendant's failure to act, not simply from a defendant's affirmative conduct. Nor is there any merit to the Federal Defendants' suggestion that the BOP is immune to an Eighth Amendment claim because, as an entity, it cannot exhibit "deliberate indifference." Numerous courts, including the Fourth Circuit, have recognized that entities can be liable for claims that have as one of their elements a particular state of mind. Plaintiff's allegation that the Federal Defendants failed to take any measures to remedy the obvious breakdowns in the Rivers health care delivery system, despite their knowledge and appreciation of the dangers that the system posed to prisoners in federal custody, is therefore sufficient to state a claim.

Second, the Federal Defendants' assertion that Plaintiff has failed to plead a sufficient number or type of physical injuries fares no better, because it is at odds with settled case law. Supreme Court canon holds that plaintiffs can base an Eighth Amendment claim upon a substantial risk of future harm, a claim amply supported by the allegations in the complaint— and conspicuously unaddressed in the Federal Defendants' memorandum.

*Third*, the Federal Defendants contend, for the first time in this lawsuit, and without basis, that the federal government is immune to all Constitutional claims seeking injunctive relief unless the plaintiff also alleges that he is the victim of a "final agency action" for which there is no other adequate remedy. This argument ignores that Section 702 of the Administrative Procedure Act ("APA") contains an express statutory waiver of immunity for any action "seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority." 5 U.S.C. § 702. That is precisely what the Plaintiff here has asserted. Even if Plaintiff's Eighth Amendment claim did not fall squarely within the APA's statutory waiver of sovereign immunity, it would still be reviewable because the Federal Defendants have identified no Congressional command insulating Eighth Amendment claims from judicial review that could override the strong presumption that Constitutional claims are reviewable in the federal courts.

*Fourth*, the Court should reject the Federal Defendants' argument that the Plaintiff lacks standing because independent acts of GEO "broke the chain" of causation linking the Federal Defendants to Plaintiff Calland's injuries. The Plaintiff has asserted a direct claim against the Federal Defendants based on their deliberate and manifest disregard, exhibited by the BOP's on-site employees and other BOP personnel, to the serious risk of harm resulting from the broken medical system. That claim is amply supported by allegations from which a fact finder could reasonably infer that the Federal Defendants knew about those risks and chose to do nothing about them.

Because the Plaintiff has alleged facts that are sufficient to state an Eighth Amendment claim against the Federal Defendants, the Federal Defendants' motion to dismiss should be denied.

3

## STATEMENT OF FACTS

Rivers is a prison located in Winton, North Carolina, operated by Defendant GEO under contract with the BOP.  See Second Am. Compl. ¶¶ 2, 30-31.  The facility currently houses approximately 1300 men, including Plaintiff Louis Calland, who is in federal custody.  See id. ¶¶ 10-11, 31.

As the Second Amended Complaint recounts, the system for providing health care services at Rivers is broken, and its failures are well known to the Federal Defendants.  Rivers prisoners receive grossly inadequate medical, dental, and mental health care, and their serious medical needs are ignored.  See Second Am. Compl. ¶¶ 10-11, 15-24, 38(a)-(d).

As the Second Amended Complaint also alleges, the Federal Defendants have actual knowledge of the broken medical system at Rivers.  The Rivers Contract provides for on-site BOP monitors at the Rivers facility, charges those monitors with "the technical direction of the performance of all work" performed pursuant to the Rivers Contract, and requires the construction of a 2500-square-foot office and ten parking spaces for the BOP monitors' exclusive use.  See id. ¶ 35.  The BOP monitors participate in the prison "main line," at which prison staff make themselves available for discussions with prisoners and to receive and address their complaints.  See id.  Through these on-site BOP monitors and their staff, the Federal Defendants have received actual notice of the broken medical system at Rivers.  See id. ¶ 39.  Staff in the BOP's Privatization Management Branch, who also oversee and monitor GEO's activities at Rivers, have also received notice of the broken medical system at Rivers.  See id. ¶ 34.[1]  Plaintiff Calland and other prisoners at the Rivers facility have sent written grievances to

---

[1] The BOP's Privatization Management Branch is charged with broad oversight of the operations of Rivers, and is responsible for ensuring that the facility follows the BOP's established (continued…)

the BOP documenting gross medical deficiencies at Rivers, the lack of available treatment, and accessibility problems for the disabled.  See id.  A BOP official must have read these grievances, because they were rejected.  See id.

The Federal Defendants have the authority and the ability to prevent harm to prisoners at Rivers.  The BOP, not GEO, has the sole authority to decide whether and when to assign prisoners to Rivers or transfer prisoners to other BOP facilities.  See Second Am. Compl. ¶ 28; see also 18 U.S.C. § 3621(b).  The Rivers Contract, incorporated by reference into the Second Amended Complaint, see id. ¶ 30, confirms that the BOP has the power to take action to correct unlawful conduct by GEO.  See Second Am. Compl., Ex. A, §§ E.1(e); E.1(f); E.2(3); J.

The experiences of 11 different men, including the Plaintiff, are recounted in the Second Amended Complaint.  Their experiences well illustrate the obvious failures in health care delivery at the facility, the injuries that have resulted from this broken system, and the risk faced by every man at Rivers of suffering similar injuries.  See Second Am. Compl. ¶¶ 10-11, 15-24. **Michael Collins** developed a callus on his foot.  He later developed a methicillin-resistant staphylococcus aureus ("MRSA") infection on the same foot, which spread.  Because Mr. Collins was persistently denied adequate medical care, the front half of his foot had to be amputated.  See id. ¶ 15.  **Keith Mathis** sought dental treatment for a cavity soon after arriving at Rivers.  The dentist refused Mr. Mathis's request to pull the decayed tooth, and instead

---

standards and guidelines.  See U.S. Dep't of Justice, Federal Prison System, FY 2008 Performance Budget at 61, available at http://www.usdoj.gov/jmd/2008justification/ pdf/38_bop_se.pdf (stating that the subagency's purpose is to "oversee[] the operation of secure contract facilities[, and] ensure that contractors adhere to established performance standards"). In reviewing the dismissal of a complaint under Rule 12(b)(6), the court may properly take judicial notice of matters of public record.  Hall v. Virginia, 385 F.3d 421, 424 & n.3 (4th Cir. 2004) (citing Papasan v. Allain, 478 U.S. 265, 268 n.1 (1986)).  The court may also consider documents attached to the complaint, see Fed. R. Civ. P. 10(c).

covered it with a solid material.  Mr. Mathis quickly developed a serious infection and was later

transferred to a nearby hospital for emergency surgery.  Mr. Mathis lost feeling on the affected

side of his face, can no longer fully open his mouth, cannot bite or chew properly, drools

uncontrollably, and is permanently scarred.  See id. ¶ 17.  The Plaintiff, **Louis Calland,** who is

seventy years old and in fragile health, depends on the same broken medical system that failed

Messrs. Collins and Mathis.  He has been diagnosed with arthritis, degenerative bone disease,

and diabetes, and uses a wheelchair.  Rivers has refused to provide him with adequate treatment,

and as a result, his condition has deteriorated since his arrival and he now suffers extreme pain.

Despite his disability and frail health, Mr. Calland is required to wait outside in the "pill line"

every day to receive his medications, regardless of weather conditions.  See id. ¶ 10-11.

## PROCEDURAL BACKGROUND

Plaintiff's First Amended Complaint spelled out in detail Defendants' failure to

provide adequate health care services at Rivers and the resulting injuries and risk of future harm

to Plaintiff and all men at Rivers.  It named as defendants GEO, the BOP, and the BOP's

director, Harley Lappin, in his official capacity.  Mr. Calland brought claims against both GEO

and the Federal Defendants under the Eighth Amendment to the United States Constitution and

the federal Rehabilitation Act, 29 U.S.C. § 794.  He also sued GEO under the common-law

doctrine of negligence, and for breach of the specific health care-related obligations in favor of

Rivers prisoners included in the Rivers Contract.[2]

GEO and the Federal Defendants moved to dismiss the claims in the First

Amended Complaint.  (DE ##64, 65).  On November 9, 2009, the Court dismissed all of Mr.

---

[2]  Two other prisoners who joined in the First Amended Complaint have since been released
from Rivers, and the Court dismissed their claims as moot on September 30, 2009.  See Order
(DE #88).

Calland's claims. Order (DE #96). The Court held, among other things, that the First Amended Complaint "fail[ed] to allege facts sufficient to support Calland's direct liability Eighth Amendment claim against the BOP and Lappin" because it did "not allege that the BOP or Lappin knew of and disregarded a substantial risk of serious harm to Calland's health or safety." Id. at 9-10. The Court granted Plaintiff's request for leave to amend the claims found to be deficient. Id. at 40.

Plaintiff Calland filed a Second Amended Complaint on December 9, 2009. (DE #98). The Second Amended Complaint added specific allegations about the BOP's actual, direct knowledge of conditions at Rivers. Second Am. Compl. ¶¶ 28, 33-35, 39, 63, 70. Plaintiff Calland did not amend allegations relating to the other claims dismissed by the Court, but retained them in the Second Amended Complaint in order to preserve them for appeal.[3]

## STATEMENT OF INCORPORATION OF ARGUMENTS IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT

In lieu of filing substantive arguments in support of its motion to dismiss the Second Amended Complaint, defendant GEO adopted the arguments that it made in support of its motion to dismiss the First Amended Complaint. Mem. in Supp. of GEO's Mot. to Dismiss Pl.'s Second Am. Compl. 1 (Jan. 22, 2010) (DE # 105).[4] The Federal Defendants similarly incorporated by reference their arguments in support of dismissing Plaintiff's Rehabilitation Act claim, and submitted substantive arguments only as to Plaintiff's Eighth Amendment claim.

---

[3] See Young v. City of Mount Ranier, 238 F.3d 567, 572-73 & n.4 (4th Cir. 2001) (reserving judgment on "whether claims dismissed with leave to amend must be re-alleged in an amended complaint in order to preserve the right to appeal the dismissal" (emphasis in original)). The Second Amended Complaint also moves the paragraphs about former Plaintiffs Collins and Roe to the section recounting the experiences of "Other Affected Persons."

[4] Plaintiff has reasserted all of its claims in the Second Amended Complaint for purposes of appeal.

Federal Defendants' Mem. in Supp. of Their Mot. to Dismiss 3 n.2 (Feb. 2, 2010) (DE #108) [hereinafter "Fed. Defs.' Mem."].

Accordingly, and in the interest of efficiency, this memorandum addresses only the arguments that Federal Defendants advanced in support of their motion to dismiss the Second Amended Complaint, all of which pertain to Plaintiff's Eighth Amendment claim. Plaintiff hereby incorporates by reference all of the arguments made in the consolidated opposition to the Defendants' motions to dismiss the First Amended Complaint (DE #72).

## STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "should be granted only if . . . it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." Ashann-Ra v. United States, Nos. 5:96-CR-39-BR, 5:08-CV-302-BR, 2009 WL 3448431, at *3 (E.D.N.C. Oct. 26, 2009) (slip op.) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999)). The Federal Rules require only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), but "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashann-Ra, 2009 WL 3448431 at *3 (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007))). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S. Ct. at 1949 (citation omitted).

When considering a 12(b)(6) motion to dismiss, courts must "construe the factual allegations [contained in the complaint] in the light most favorable to the plaintiff." Smith v. Smith, 589 F.3d 736, 738 (4th Cir. 2009) (citations and quotation marks omitted). "[A] court

may take judicial notice of public records without converting a motion to dismiss to a motion for summary judgment." Order, at 6 (Nov. 9, 2009) (DE #96) (citations omitted).

While the plaintiff bears the burden of establishing subject-matter jurisdiction, <u>see</u> <u>Adams</u> v. <u>Bain</u>, 697 F.2d 1213, 1219 (4th Cir. 1982), "[t]he district court should grant [a] Rule 12(b)(1) motion to dismiss only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." <u>Evans</u> v. <u>B.F. Perkins Co.</u>, 166 F.3d 642, 647 (4th Cir. 1999) (citation and quotation marks omitted). "[W]hen a defendant asserts that the complaint fails to allege sufficient facts to support subject matter jurisdiction, the trial court must apply a standard patterned on Rule 12(b)(6) and assume the truthfulness of the facts alleged. On the other hand, when the defendant challenges the veracity of the facts underpinning subject matter jurisdiction, the trial court may go beyond the complaint, conduct evidentiary proceedings, and resolve the disputed jurisdictional facts." <u>Kerns</u> v. <u>United States</u>, 585 F.3d 187, 193 (4th Cir. 2009).

## <u>ARGUMENT</u>

Plaintiff's Second Amended Complaint alleges that the Federal Defendants knew about and deliberately failed to remedy the harms suffered by Plaintiff, including a substantial risk of serious future harm, caused by the broken medical system at Rivers. That is sufficient to state a claim that the Federal Defendants are directly liable under the Eighth Amendment, and the Federal Defendants' motion to dismiss should be denied.

## I.  PLAINTIFF HAS ALLEGED FACTS SUFFICIENT TO STATE AN EIGHTH AMENDMENT CLAIM AGAINST THE BOP.

To state an Eighth Amendment claim, Plaintiff must allege facts that could lead a reasonable fact finder to conclude that he was subjected to cruel and unusual punishment because he was deprived of a basic human need. <u>See</u> <u>Rish</u> v. <u>Johnson</u>, 131 F.3d 1092, 1096 (4th Cir.

1997).  This showing has both an objective and a subjective component.  See id.; see also Farmer v. Brennan, 511 U.S. 825, 834, 837 (1994).

To satisfy the objective component, Plaintiff must either "'produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions' . . . or demonstrate a substantial risk of serious harm resulting from the prisoner's unwilling exposure to the challenged conditions." Rish, 131 F.3d at 1096 (quoting Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir. 1993) and citing Helling v. McKinney, 509 U.S. 25, 33-35 (1993)) (emphasis added).  Importantly, the Supreme Court has made clear that "a remedy for unsafe conditions need not await a tragic event." Helling, 509 U.S. at 33; see also Farmer, 511 U.S. at 845 (quoting Helling).  Thus, a prisoner may base an Eighth Amendment claim on a risk of future harm, so long as "the risk of which he complains is not one that today's society chooses to tolerate." Helling, 509 U.S. at 36.  A risk of future harm can support an Eighth Amendment claim "even though it was not alleged that the likely harm would occur immediately," or that it would "affect all those exposed." Id. at 33 (citing Hutto v. Finney, 437 U.S. 678, 682 (1978)); see also Board v. Farnham, 394 F.3d 469, 479, 481-84 (7th Cir. 2005) (finding that defendants were not entitled to qualified immunity for an Eighth Amendment violation predicated on the risk of future harm).  Alternatively, a prisoner who bases a claim on a serious injury resulting from deprivation of medical attention, rather than on an unaddressed substantial risk of serious harm, must allege "serious medical needs" that either have been "diagnosed by a physician as mandating treatment," or are "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." See Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (citation omitted).

To satisfy the subjective component of the Eighth Amendment showing, Plaintiff must allege that the Defendants were deliberately indifferent to his serious medical needs or to the substantial risk of serious harm. A prison official is deliberately indifferent when he "knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837; see also Iko, 535 F.3d at 241; Williams v. Griffin, 952 F.2d 820, 826 (4th Cir. 1991) ("once prison officials become aware of a problem with prison conditions, they cannot simply ignore the problem, but should take corrective action when warranted"). A plaintiff may satisfy this burden by alleging facts from which one reasonably may conclude that "the official [was] both . . . aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . also [drew] that inference." Farmer, 511 U.S. at 837. "An Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Id. at 842. Knowledge of the substantial risk "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id.

### A. Plaintiff Has Adequately Alleged That He Faces a Substantial Risk of Serious Future Harm and That His Serious Medical Needs Were Not Met.

The Second Amended Complaint more than adequately alleges that Plaintiff Calland faces a substantial risk of serious future harm due to the dangerously dysfunctional medical system at the facility. Specifically, the Complaint alleges that Defendants:

- repeatedly refuse to provide medical treatment to prisoners who are obviously sick, injured, and in medical distress, see Second Am. Compl. ¶¶ 3, 10-11, 15-24, 38(a);

- condone a chronic and dangerous shortage of medical staff at the facility, see id. ¶¶ 3, 10-11, 15-24, 38(b);

- require sick and disabled prisoners to wait outdoors for hours in all weather to receive medication, forcing some prisoners to choose between food and medication, see id. ¶¶ 3, 10, 22, 23, 38(c); and

- confiscate disabled prisoners' orthopedic devices, ignore medical instructions to provide physical therapy, arbitrarily switch prisoners' medications, and fail to provide medically necessary psychiatric and related services, see id. ¶¶ 3, 10-11, 15-24, 38.

As the detailed accounts in the Second Amended Complaint vividly illustrate, a reasonable fact finder could easily infer that this systemic breakdown in health services at Rivers will continue to lead to serious injury if it is not corrected. See Second Am. Compl. ¶¶ 15-24. The Second Amended Complaint describes risks facing the men at Rivers—amputations, disfigurement, emergency surgery, deteriorating mobility, and other avoidable medical crises—"that today's society" would not "choose[] to tolerate." Helling, 509 U.S. at 36.

While the foregoing allegations alone are sufficient to state an Eighth Amendment claim, Plaintiff Calland has also alleged that his own obvious, serious medical needs have been deliberately disregarded. Specifically, Plaintiff Calland has alleged that because he suffers from arthritis, degenerative bone disease, and diabetes, he must resort to a wheelchair to get around the facility, a serious medical condition that plainly demands medical care. Second Am. Compl. ¶ 10. Plaintiff Calland has further alleged that the failure to provide necessary treatment for his condition has caused him actual, serious injury as his pain has significantly worsened and his mobility has decreased. Id.

Because "a remedy for unsafe conditions need not await a tragic event," Mr. Calland is not required to prove that he will inevitably suffer amputation or disfigurement, nor is he required to prove that he will suffer such an injury "immediately." Helling, 509 U.S. at 33 (citing Hutto v. Finney, 437 U.S. 678, 682 (1978)); see also Farmer, 511 U.S. at 845 (quoting

<u>Helling</u>).  At this preliminary pleading stage he must simply allege facts from which a reasonable fact finder could infer that he faces a substantial risk of serious future harm.

Courts have concluded that allegations similar to those in the Second Amended Complaint are sufficient to state an Eighth Amendment claim.  <u>See</u>, <u>e.g.</u>, <u>Board</u>, 394 F.3d 469 (failure to provide inhaler for asthma during asthma attacks, refusal to repair dangerous ventilation system); <u>Hadix</u> v. <u>Caruso</u>, 461 F. Supp. 2d 574 (W.D. Mich. 2006) (staff shortages and breakdown in mental health care system for dispensing medication); <u>Plata</u> v. <u>Schwarzenegger</u>, No. C01-1351, 2005 WL 2932253 (N.D. Cal. Oct. 3, 2005) (staff shortages and inadequate medical management and supervision leading to system-wide breakdown in the provision of medical care).

Because Plaintiff Calland has alleged that he faces an ongoing substantial risk of serious harm due to the conditions at Rivers, and has also alleged that his serious medical needs were not met, he has alleged facts sufficient to make out the objective component of an Eighth Amendment claim.

**B.  Plaintiff Has Adequately Alleged that the Federal Defendants Knew About, Yet Disregarded, a Substantial Risk of Serious Harm at Rivers.**

Plaintiff Calland also has sufficiently alleged that the Federal Defendants have been deliberately indifferent both to the substantial risk that he will suffer serious harm in the future and to the harms that he has already suffered.

As discussed above, a defendant that "knows of and disregards an excessive risk to inmate health or safety" exhibits the state of mind required for Eighth Amendment liability. <u>Farmer</u>, 511 U.S. at 837.  Plaintiff has alleged that the Federal Defendants have actual knowledge that the system of medical care at Rivers is dangerously inadequate, have the authority to remedy conditions at Rivers, and have failed to remedy them.  Specifically, Plaintiff

has alleged that the Constitutional violations at the Rivers facility are pervasive, open, and obvious, and include:

- grossly inadequate staffing that results in only one physician, who has not been on-site full time, treating a population of approximately 1300 men;

- the lack of reasonable and necessary access to physicians other than the one on-site doctor, which results in inadequate treatment for mental health needs, chronic diseases, dental needs, eye care needs, and other medical conditions;

- disfiguring skin infections that spread unchecked through the prison population because preventative measures are not taken and adequate treatments are not provided;

- the "pill line" in which men wait for hours in all weather to receive their medication in a prison yard; and

- the facility grounds that lack necessary accommodations for mobility-impaired men, including inadequate ramps at walkways, heavy doors that are difficult for disabled persons to use, and a lack of accessible bathrooms in common areas.

Second Am. Compl. ¶¶ 10-11, 15-24, 38. Plaintiff has also alleged numerous facts from which a reasonable fact finder could infer that the BOP was aware of, yet disregarded, the great risk to the Rivers inmates' health and safety:

- BOP personnel are stationed on site at Rivers to monitor prisoner care at the facility, id. ¶ 35;

- the BOP personnel walk the halls of the Rivers facility and get visual confirmation of the inadequate conditions, id.;

- the BOP contract monitor at Rivers regularly participates in an informal forum for prisoner concerns known as the "main line," at which prisoners present complaints about the facility to prison officials, id.;

- the BOP's Privatization Management Branch staff, which monitors Rivers, received written complaints about medical treatment at Rivers from Plaintiff Calland and other Rivers prisoners, id. ¶ 34;

- the BOP exercises control over GEO's personnel decisions, policies, and procedures, id. ¶ 33; and

- the BOP has disregarded the need to take immediate actions to protect Plaintiff and all the men at Rivers from ongoing and future harm, id. ¶ 39.

The Rivers Contract, incorporated by reference into the Second Amended Complaint and appended thereto as Exhibit A, see id. ¶ 30, provides further evidence to support the inference that the Federal Defendants knew of and disregarded the substantial risk of serious harm alleged in the Second Amended Complaint. The contract specifically provides that:

- the BOP monitors all of the essential functions GEO performs at Rivers, including the provision of health care services to inmates, see Second Am. Compl. Ex. A, § J, Evaluation of Techniques for Quality Assurance of Contractor Performance, at 1; id., Statement of Work ("SOW"), at 5–7, 14;

- the lead BOP representative on-site at Rivers acts as "contract monitor" and is "responsible for the technical direction of the performance of all work under [the Rivers] contract," Second Am. Compl., Ex. A, § G.1(a)-(b);

- BOP personnel "check the contractor's performance and document any noncompliance," id., Ex. A, § E.2(2);

- GEO is required to accommodate "BOP staff . . . [working] on-site to monitor contract performance," id., Ex. A, SOW at 25:18-19 (emphasis added), by "designat[ing] approximately 2,500 square footage of administrative office space for BOP staff operations" and "provid[ing] no less than 10 parking spaces reserved for Government use," id., Ex. A, SOW at 25:21-23, 25:28-29;[5]

- In addition to its daily on-site monitoring, the BOP also inspects GEO's performance at Rivers for quality assurance, see id., Ex. A, §§ E.1(c), E.2(1), J, Performance Requirements Summary Table, at 2; and

- The BOP has the power to take action to correct unlawful conduct by GEO, See, e.g., id., Ex. A, §§ E.1(e); E.1(f); E.2(3); J.

The Fourth Circuit has recognized that a plaintiff's "allegation that he and other inmates made numerous complaints and that no action was taken could go to the issue of deliberate indifference." Williams, 952 F.2d at 826 (4th Cir. 1991). Williams also makes clear

---

[5] GEO has acknowledged that BOP contract monitors are physically on-site at Rivers. See Reply Mem. of P. & A. in Supp. of Def. GEO's Mot. to Dismiss and Mot. to Transfer at 10 and Ex. 2 (DE # 4).

that "once prison officials become aware of a problem with prison conditions, they cannot simply ignore the problem, but should take corrective action when warranted."[6] Id.

At this preliminary stage of proceedings, the Plaintiff has sufficiently alleged facts to support the subjective component of an Eighth Amendment claim.

### C. The Federal Defendants' Arguments Mischaracterize Plaintiff's Allegations and Misstate the Elements of an Eighth Amendment Claim.

The Federal Defendants distort Mr. Calland's allegations and fault him for not alleging facts that he is not required to allege. They also contend that the BOP cannot exhibit "deliberate indifference" because it is an entity and not a person, a contention that is not required by Farmer and that is at odds with Fourth Circuit precedent recognizing that entities may be found liable for claims requiring specific states of mind. The Court should reject these arguments.

The Federal Defendants fault Mr. Calland for failing to "identify[] any direct action that the BOP took or failed to take with respect to plaintiff's medical needs or treatment." Fed. Defs.' Mem. at 23 (emphasis in original).[7] Controlling case law makes clear, however, that

---

[6] While Williams was decided prior to Farmer, the Fourth Circuit relied on Wilson v. Seiter, 501 U.S. 294 (1991), a case cited favorably by the Farmer Court and describing a state-of-mind test very similar to Farmer's subjective deliberate indifference standard. See Williams, 952 F.2d at 826 (citing Wilson); Farmer, 511 U.S. at 838-39 (majority opinion), 851-52 (Blackmun, J., concurring).

[7] In advancing this argument, Federal Defendants place great weight on a Fourth Circuit opinion that included a nonexhaustive list of ways defendants may act with deliberate indifference to prisoners' serious medical needs. See Fed. Defs.' Mem. at 21; see also Smith v. Smith, 589 F.3d 736, 738-39 (4th Cir. 2009) (noting that the Supreme Court had found, in Estelle v. Gamble, 429 U.S. 97, 104-05 (1976), that "deliberate indifference can be manifested in at least the following three manners . . . ." (emphasis added)). Additionally, both cases cited by Federal Defendants for the proposition that "a plaintiff asserting an Eighth Amendment claim against an individual must show that the individual was personally involved in the constitutional violation," Fed. Defs.' Mem. at 21-22, were brought against defendants in their individual capacities for money (continued…)

16

unlawful "action" is <u>not</u> required in order to state an Eighth Amendment claim. The standard is "deliberate indifference." To state an Eighth Amendment claim, a plaintiff need only allege that a government official "<u>failed to act</u> despite his knowledge of a substantial risk of serious harm." <u>Farmer</u>, 511 U.S. at 842 (emphasis added).

Illuminated by the proper legal standard, it is clear that Plaintiff states a claim. Plaintiff has alleged page after page of facts from which a reasonable fact finder could infer that the Federal Defendants knew about, understood, appreciated, and had the power to mitigate the substantial risk of serious harm created by the failure to provide adequate medical care at Rivers, and yet failed to do anything about it. No additional facts need be alleged at this preliminary stage because Plaintiff has satisfied the requirements set forth in controlling precedent.[8]

The Federal Defendants also fault Mr. Calland for failing to identify specific harms that he has suffered, stating, e.g., that "the Second Amended Complaint is devoid of any factual support for the notion that plaintiff has any dental or mental health needs or that he is at risk of serious harm due to any failure to meet such needs." Fed. Defs.' Mem. at 21 n.9. Federal Defendants similarly assert that Mr. Calland may not base an Eighth Amendment claim on his

---

damages, and thus the personal involvement of the named officials was central to the court's analysis. <u>See</u> <u>Nelson</u> v. <u>Corr. Med. Servs.</u>, 583 F.3d 522, 527, 535 (8th Cir. 2009); <u>Johnson</u> v. <u>Snyder</u>, 444 F.3d 579, 582, 585 (7th Cir. 2006). Both cases were also decided on motions for summary judgment, only after the extent of the personal involvement of the named officials could be examined through discovery. <u>See</u> <u>Nelson</u>, 583 F.3d at 527, 535; <u>Johnson</u>, 444 F.3d at 582, 585.

[8] Federal Defendants' argument to the contrary proves too much. It strains credulity to assert, for example, that BOP officials stationed on site at Rivers could stand by and witness the extrajudicial execution of a Rivers prisoner by GEO employees, confident in the knowledge that they would be exonerated from any liability because they themselves took no "action." <u>See</u> Tr. of Oral Arg. 76:18-77:3 (Feb. 11, 2010) (DE #110) (excerpt attached as Ex. A). Liability would attach precisely because they knew of the significant risk of serious harm and <u>failed to act</u>, whether by directing that the execution cease, or prevailing on the GEO employees to stand down, or calling the police, or otherwise exercising their authority and power to prevent the obvious and unlawful harm from being inflicted on a prisoner in federal custody.

allegations about the general state of health care delivery at Rivers, suggesting (somewhat hesitantly) that the "connection between many of the alleged problems . . . and plaintiff's own condition . . . is far from clear." Id. at 27 & n.11.

Federal Defendants' argument cannot be squared with controlling case law. The Supreme Court has recognized that "a remedy for unsafe conditions need not await a tragic event"; and by recounting the failures of the health care system at Rivers and the consequences of those failures for other inmates and for himself, Plaintiff Calland has adequately alleged that the breakdown of the Rivers health care delivery system has placed him at substantial, ongoing risk of serious harm. As Farmer and Helling teach, Plaintiff need not allege that he will inevitably suffer a specific harm. See Farmer, 511 U.S. at 842; Helling, 509 U.S. at 33. Rather, he need only allege facts evidencing a substantial risk of serious harm resulting from his unwilling exposure to the dangerous conditions. The Second Amended Complaint easily clears that hurdle. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (reversing dismissal of a prisoner's complaint alleging that he would suffer future harm).

Reprising an argument that they featured at the November hearing, the Federal Defendants argue in the alternative that Plaintiff Calland cannot apply the Farmer subjective deliberate indifference standard to an entity like the BOP. See Fed. Defs.' Mem. at 22-23. This argument is flawed, and the Federal Defendants cite no case directly on point in support of it. As the Federal Defendants have themselves acknowledged, "there is no meaningful distinction between plaintiff's Eighth Amendment claims against the BOP Director in his official capacity and plaintiff's identical claims against the BOP itself." Fed. Defs.' Mem. at 1 n.1 (citing Kentucky v. Graham, 473 U.S. 159, 166 (1985)). In Farmer, the Supreme Court perceived no apparent problem with a suit that, like this one, sought injunctive relief against the BOP Director

in his official capacity seeking to halt the BOP's unconstitutional conduct. See Farmer, 511 U.S. at 830. If there is no problem with a suit against the BOP Director, then there should be no problem with a suit against the BOP. As the Court observed at oral argument, "of course [it] couldn't be the law" that a federal court must deny a prisoner's suit for injunctive relief against the BOP in a case where prison officials are lining up prisoners and shooting them, on the ground that the BOP, as an entity, cannot exhibit "deliberate indifference." See Tr. of Oral Arg. 76:18-78:25 (Feb. 11, 2010) (DE #110) (excerpt attached as Ex. A).

Moreover, while the Farmer Court observed that it will probably always be more difficult to identify the subjective state of mind of a government entity than that of a single official, Farmer, 511 U.S. at 841, the Court plainly "[did] not . . . preclude the possibility that a [government entity] can possess the subjective state of mind required[.]" Gibson v. County of Washoe, 290 F.3d 1175, 1188 n.10 (9th Cir. 2002) (emphasis in original) (suggesting that courts can look to individual officials' state of mind to determine whether an entity exhibited deliberate indifference, because "numerous cases have held that municipalities act through their policy-makers, who are, of course, natural persons, whose state of mind can be determined").

Here, Plaintiff Calland has alleged that the Federal Defendants knew about conditions at Rivers, through their on-site representatives at the facility, and through the BOP employees reviewing the prisoner grievances sent to the Privatization Management Branch. Plaintiff's claim is faithful to the Gibson court's required Eighth Amendment framework for entity direct liability. See Gibson, 290 F.3d at 1188 n.10.[9]

_____

[9] Should the Court decide to entertain the government's assertion that there can be no entity liability under the Farmer standard, then Plaintiff respectfully requests leave to conduct limited discovery in order to identify, and name as defendants in this lawsuit, the current Rivers contract (continued…)

Though the Constitutional analysis does not turn on it, it is noteworthy that corporate entities can be held directly liable for claims that include similar scienter requirements. The Farmer Court specifically noted that states of mind akin to subjective deliberate indifference are required in other civil contexts, including defamation actions brought by public figures, which require plaintiffs to show that defendants have exhibited "reckless disregard" for the truth. See Farmer, 511 U.S. at 839-40. The Fourth Circuit has had no difficulty with the idea of corporate liability in defamation cases. See, e.g., Hatfill v. New York Times Co., 532 F.3d 312, 324-25 (4th Cir. 2008), cert. denied, 129 S.Ct. 765 (2008); Reuber v. Food Chem. News, Inc., 925 F.2d 703, 714-18 (4th Cir. 1991) (both cases recognizing that a publication editor's or columnist's state of mind may be imputed to the publication itself). The Fourth Circuit has similarly recognized that corporate entities themselves may be found to have acted "recklessly" in private actions alleging securities fraud under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5. Plaintiffs bringing such actions must allege that the defendant made a false statement or omission "intentionally or with severe recklessness regarding the danger of deceiving the plaintiff." Teachers' Ret. Sys. of La. v. Hunter, 477 F.3d 162, 184 (4th Cir. 2007) (citation and quotation marks omitted); see also Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc., 576 F.3d 172, 181 (4th Cir. 2009). Such an action will lie directly against a corporation so long as the plaintiff "allege[s] facts that support a strong inference of scienter with respect to at least one authorized agent of the corporation." Teachers', 477 F.3d at 184; Matrix, 576 F.3d at 189-90; accord Makor Issues &

_____

monitor, all previous monitors, and all BOP officials and employees who have been stationed on site or have otherwise been involved in monitoring the conditions at the Rivers facility.

Rights, Ltd. v. Tellabs Inc., 513 F.3d 702 (7th Cir. 2008).[10] Here, Plaintiff alleges that the authorized agents of the BOP (its contract monitors and those at the Privatization Management Branch who received and rejected Rivers prisoners' grievances) became aware of a substantial risk of serious harm, and made a considered decision to do nothing about it. The case law makes clear that no more is required to state a claim against the BOP.

Finally, the Federal Defendants suggest that because the Rivers Contract provides for quality assurance and other procedures designed to alert them to problems at the facility, it was reasonable for them to ignore direct prisoner complaints about conditions at Rivers. See Fed. Defs.' Mem. at 26-27. Farmer teaches that any assertion that the Federal Defendants knew about but failed to investigate a known substantial risk of serious harm posed to federal prisoners is no defense to a claim of deliberate indifference under the Eighth Amendment. 511 U.S. at 843 n.8. Nor may the Court credit any assertion that the Federal Defendants responded reasonably to a known risk, as this would require this Court to resolve a disputed question of fact against the Plaintiff at a point in the proceeding when all inferences must be drawn in Plaintiff's favor. See id. at 844 (discussing the various factual defenses that might rebut a claim that officials were subjectively deliberately indifferent).

Discovery will reveal more about precisely what the Federal Defendants knew about the conditions alleged in the Second Amended Complaint, and why they failed to do

---

[10] Entity liability in these analogous contexts does not necessarily depend on vicarious liability. In In re Atlantic Financial Management, Inc., the First Circuit considered the extent to which common-law theories of vicarious liability were applicable in Section 10(b) securities actions. While acknowledging that "a corporation . . . rarely, if ever, actually authorizes torts," Judge Breyer noted that "the common law typically holds principals liable when an agent's tortious [action] is actually authorized" and that in such a case, "the corporation might be 'directly' rather than 'vicariously' liable." 784 F.2d 29, 31 (1st Cir. 1986) (emphasis in original).

anything to remedy these conditions. But at this stage in the case, Plaintiff Calland has adequately alleged a direct Eighth Amendment claim against the Federal Defendants.

## II. THE FEDERAL GOVERNMENT'S SOVEREIGN IMMUNITY HAS BEEN WAIVED IN CONSTITUTIONAL ACTIONS FOR EQUITABLE RELIEF.

The Federal Defendants acknowledge that the APA's waiver of sovereign immunity at Section 702 extends beyond cases brought under the APA to all cases seeking equitable relief against a federal agency. See Fed. Defs.' Mem. at 15 (citing Mann v. Haigh, 891 F. Supp. 256, 262 (E.D.N.C. 1995)). They argue, however—for the first time in this case—that Plaintiff's Eighth Amendment claim is nonetheless barred by sovereign immunity because it does not meet the "final agency action" and "no other adequate remedy" requirements of 5 U.S.C. § 704. See id. at 15-20. The Federal Defendants' argument conflates the APA's waiver of sovereign immunity in Section 702, which squarely applies in this case, with the Section 704 requirements that a plaintiff must satisfy to bring a substantive claim under the APA, an issue that is not presented here—because this is a case brought not under the APA but under the Constitution. See id. at 16-20. That interpretation of the APA's waiver of sovereign immunity is at odds with the text of Section 702 and federal case law interpreting it. See, e.g., Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 186 (D.C. Cir. 2006); Simmat v. U.S. Bureau of Prisons, 413 F.3d 1225, 1233 & n.9 (10th Cir. 2005).

Congress amended the APA in 1976 to set forth a broad waiver of sovereign immunity for equitable claims brought against a government official:

> An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

22

Pub. L. No. 94-574, 90 Stat 2721, 2721 (1976) (codified at 5 U.S.C. § 702) (emphasis added).[11]

As the D.C. Circuit has held, "there is nothing" in that sentence of Section 702 "that restricts its

waiver [of sovereign immunity] to suits brought under the APA." Trudeau, 456 F.3d at 186.

"The sentence waives sovereign immunity for '[a]n action in a court of the United States seeking

relief other than money damages,' not for an action brought under the APA." Id. Thus, "the

majority of courts . . . have concluded" that the waiver "applies to all actions for non-monetary

relief" brought against the federal government. Thompson v. U.S. Dep't of Housing & Urban

Development, No. Civ.A.MJG-95-309, 2006 WL 581260, at *8 (D. Md. Jan. 10, 2006)

(collecting cases); see also, e.g., Trudeau, 456 F.3d at 186-87; Chamber of Commerce v. Reich,

74 F.3d 1322, 1328 (D.C. Cir. 1996); Hostetter v. United States, 739 F.2d 983, 985 (4th Cir.

1984), abrogated on other grounds by United States v. Fausto, 484 U.S. 439 (1988); Sea-Land

Serv., Inc. v. Alaska Railroad, 659 F.2d 243, 244 (D.C. Cir. 1981); Johnsrud v. Carter, 620 F.2d

29, 31 (3d Cir. 1980).

      The legislative history of Section 702 further undermines the Federal Defendants'

attempt to limit Section 702's waiver of sovereign immunity. See Sea-Land Serv., Inc., 659 F.2d

at 244 ("The legislative history plainly reveals a congressional intent to strengthen Government

accountability and dispel the confusion, uncertainty, and unfairness sovereign immunity defenses

generated."). The Senate Report declared that "the time [had] . . . come to eliminate the

---

[11] Section 702 goes on to provide that "The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: Provided, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title) and their successors in office, personally responsible for compliance. Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." Id. (emphasis added).

sovereign immunity defense in <u>all</u> equitable actions for specific relief against a Federal agency or officer acting in an official capacity." S. Rep. No. 94-996 (1976), at 8 (emphasis added) (attached as Ex. B).

Because the waiver of sovereign immunity in Section 702 applies to all cases seeking equitable relief against a federal agency, courts have rejected the argument—advanced by the Federal Defendants here—that the waiver applies only to claims that satisfy the prerequisites for an APA cause of action. <u>See</u>, <u>e.g.</u>, <u>Trudeau</u>, 456 F.3d at 186-87; <u>Simmat</u>, 413 F.3d at 1232-33; <u>Johnsrud</u>, 620 F.2d at 31-32. <u>Trudeau</u>, for example, involved a Constitutional claim as well as an APA claim, and the defendant federal agency argued that the Constitutional claim was barred, contending that "since review under APA § 704 is limited to 'final agency action,' the waiver of sovereign immunity is similarly restricted to conduct that falls within that compass." <u>Trudeau</u>, 456 F.3d at 186. The D.C. Circuit summarily rejected that argument, explaining that "our holding that the waiver is <u>not</u> limited to APA cases—and hence, that it applies regardless of whether the elements of an APA cause of action are satisfied—removes the linchpin" of the government's argument. <u>Id.</u> at 187 (emphasis added). The <u>Trudeau</u> court further noted that "the language of the waiver sentence . . . provides no support" for the government's contention, because "it does not use either the term 'final agency action,' or the term 'agency action.'" <u>Id.</u> Thus, the court held that the APA waiver of sovereign immunity applies to all the plaintiff's causes of action "regardless of whether" the challenged agency action "constitutes 'final agency action.'" <u>Id.</u> Similarly, in <u>Simmat</u>, the Tenth Circuit held that Section 702 waived sovereign immunity with respect to a federal prisoner's Eighth Amendment claim against the BOP. The waiver applied even though the Plaintiff "expressly state[d] that he [did]

not seek judicial review under the APA" and apparently "concede[d] that his claim [did] not satisfy the APA's requirement of 'final agency action.'" 413 F.3d at 1233 n.9.[12]

Indeed, it is doubtful that the prerequisites of an APA action would ever apply to bar a Constitutional claim against the federal government, because an agency's <u>unconstitutional</u> action is presumptively reviewable by the courts, even where the action would ordinarily be within the agency's discretion or otherwise unreviewable. <u>See</u>, <u>e.g.</u>, <u>Webster</u> v. <u>Doe</u>, 486 U.S. 592, 603 (1988) (noting that "where Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear"). The Fourth Circuit, like other Courts of Appeals, has reaffirmed this longstanding rule, recognizing that "[t]he Supreme Court has suggested that there may be some exceptional cases where judicial review of agency action would always be available, even if Congress did not specifically authorize it (through the APA or otherwise) or actually precluded it explicitly, or at least that there are certain areas where the presumption in favor of judicial review is particularly strong" and that "constitutional claims" are one of the "two chief areas of this sort." <u>Regional Mgmt. Corp.</u> v. <u>Legal Servs. Corp.</u>, 186 F.3d 457, 461 n.3 (4th Cir. 1999); <u>see also</u> <u>Elec. of N.C., Inc.</u> v. <u>Se. Power Admin.</u>, 774 F.2d 1262, 1267 (4th Cir. 1985) ("even where action is committed to absolute agency discretion by

_____

[12] While not having had occasion to address the issue squarely, the Fourth Circuit has not limited Section 702's waiver of sovereign immunity by the "final agency action" or "adequate remedy" requirements for a <u>Constitutional</u> claim. None of the Fourth Circuit cases cited by the Federal Defendants addressed this issue in the context of a Constitutional claim. In <u>Flue-Cured Tobacco Coop. Stabilization Corp</u>. v. <u>EPA</u>, the Fourth Circuit explained that judicial review for a claim "under the APA" was limited by the "final agency action" requirement. 313 F.3d 852, 857 (4th Cir. 2002). In <u>Food Town Stores, Inc.</u> v. <u>EEOC</u>, the Fourth Circuit recognized that "agency action 'must be 'final agency action for which there is no other adequate remedy in a court.'" 708 F.2d 920, 922 (4th Cir. 1983) (citing 5 U.S.C. § 704). The Fourth Circuit has also explained that "[t]he APA waives the government's sovereign immunity from suit <u>and</u> permits federal court review of final agency actions," without suggesting that the same requirements apply for both of these APA functions. <u>Comsat Corp.</u> v. <u>Nat'l Sci. Found.</u>, 190 F.3d 269, 274 (4th Cir. 1999) (emphasis added).

law, courts have assumed the power to review allegations that an agency . . . acted

unconstitutionally") (citation and quotation marks omitted); <u>Raymond Proffitt Found.</u> v. <u>U.S.</u>

<u>Army Corps of Eng'rs</u>, 343 F.3d 199, 205 (3d Cir. 2003) (before determining that an agency

action is unreviewable, the court must ascertain that the action "does not involve charges that the

agency . . . decision violates a constitutional . . . command").[13]

> The Plaintiff in this case has brought a Constitutional claim directly under the

Eighth Amendment.  He has not brought a claim under the APA.  Because the Plaintiff seeks

only declaratory and injunctive relief, Section 702 waives the federal government's sovereign

immunity with respect to his claim.

## III.   MR. CALLAND HAS STANDING TO PURSUE HIS EIGHTH AMENDMENT CLAIM.

> The Federal Defendants also argue that Mr. Calland lacks standing to bring his

Eighth Amendment claim because "GEO's alleged breach" of its obligations under the Rivers

contract "constitutes independent action by a third party that necessarily breaks the causal link

---

[13] The Federal Defendants' argument that Plaintiff's claims are barred by sovereign immunity because they are based on a theory that the Federal Defendants have "failed to enforce" the terms of the Rivers contract is inapposite for the same reasons discussed above.  <u>See</u> Fed Defs.' Mem. at 18 n.8.  In support of this proposition, the Federal Defendants rely on the Supreme Court's decision in <u>Heckler</u> v. <u>Chaney</u>, 470 U.S. 821 (1985), which prohibited judicial review under the APA of an agency's decision not to undertake enforcement actions, but, notably, did <u>not</u> address whether courts may review an agency's failure to act where that failure amounts to a <u>Constitutional</u> violation, as Plaintiff Calland has alleged.  <u>See</u> <u>Chaney</u>, 470 U.S. at 838 ("No colorable claim is made in this case that the agency's refusal to institute proceedings violated any constitutional rights of respondents, and we do not address the issue that would be raised in such a case.").  None of the cases cited by the Federal Defendants in support of this argument holds that it is within a federal agency's discretion to fail to discharge a <u>Constitutional</u> duty, much less addresses the reviewability of such a failure.  Instead, all of the cited cases involve a federal agency's decision not to enforce a <u>statutory</u> or <u>regulatory</u> scheme. <u>See</u> <u>Salmon Spawning & Recovery Alliance</u> v. <u>U.S. Customs & Border Prot.</u>, 550 F.3d 1121 (Fed. Cir. 2008) (enforcement of a statute); <u>Matthews</u> v. <u>Town of Greeneville</u>, No. 90-5772, 1991 WL 71414 (6th Cir. May 2, 1991) (enforcement of a regulatory accounting system incorporated by reference into a contract); <u>Jersey Heights Neighborhood Ass'n</u> v. <u>Glendening</u>, 174 F.3d 180 (4th Cir. 1999) (enforcement of a statute).

between the BOP and plaintiff." Fed Defs.' Mem. at 1. The Court should reject this argument, which misstates Mr. Calland's Eighth Amendment claim against the Federal Defendants. Mr. Calland has sufficiently alleged that the Federal Defendants' deliberate indifference caused his injuries and subjected him to a substantial risk of serious harm.

In order to demonstrate Article III standing, a plaintiff must establish the following:

> [(1)] the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) actual or imminent, not conjectural or hypothetical, . . . . [(2)] there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court . . . . [and (3)] it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (citations and quotation marks omitted). These elements must be supported "with the manner and degree of evidence required at the successive stages of the litigation"; thus, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." Id. Plaintiff Calland has sufficiently alleged facts showing that he meets the Lujan test.

First, as the foregoing discussion of Plaintiff's Eighth Amendment claim demonstrates, there can be no question that Plaintiff Calland has suffered an "invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent." He has alleged that the conditions at Rivers create a substantial risk that he will suffer serious harm, and has also alleged that he has already suffered harm as a result of these conditions. According to Farmer and Helling, this is sufficient to establish standing to pursue an Eighth Amendment claim.

Second, Mr. Calland's injury is "fairly traceable" to the Federal Defendants' deliberate refusal to take any action to mitigate the substantial, known risk of serious harm at Rivers, or to prevent the harm Plaintiff Calland has already suffered. As discussed above, Plaintiff has alleged that the Federal Defendants have long been aware of the serious risk of substantial harm, via both their on-site presence at Rivers and their review of prisoner grievances detailing the dangerous conditions at the facility. Despite their actual knowledge of the dangerous medical conditions at the facility, the Federal Defendants did nothing about those dangers. The violence to Plaintiff Calland's legally protected interest in being free from life-threatening medical conditions is directly traceable to the Federal Defendants' failure to act, not simply to GEO's unlawful conduct.

Third, Plaintiff Calland's alleged injuries, including the substantial risk of serious harm, plainly would be redressed if the Federal Defendants were directed to take measures that would eliminate the substantial risk of serious harm and give effect to the Constitutional protections embodied in the Eighth Amendment.

In Lujan, the Supreme Court also recognized that standing "is not precluded" where the plaintiff "is not himself the object of the government action or inaction he challenges," if the plaintiff "adduce[s] facts showing that" independent third parties have made or will make choices resulting from the government conduct "in such manner as to produce causation and permit redressability of injury." 504 U.S. at 561-62; see also Animal Legal Def. Fund, Inc. v. Glickman, 154 F.3d 426, 440 (D.C. Cir. 1998) (en banc); America's Cmty. Bankers v. Fed. Deposit Ins. Corp., 200 F.3d 822, 827 (D.C. Cir. 2000) (noting that "[i]n [Animal Legal Defense Fund] we held that even agency action which implicitly permits a third party to behave in an injurious manner offers enough of a causal link to support a lawsuit against the agency"). There

28

is no need to undertake an alternative "indirect action" standing analysis in this case, however,

because the Plaintiff has alleged facts sufficient to establish a direct link between the Federal

Defendants' knowledge and failure to act and the Plaintiff's alleged harm. All of the "indirect

action" cases that the Federal Defendants cite in support of their standing argument can be

distinguished, because in those cases the regulated third party was solely responsible for the

plaintiffs' alleged injuries, and there was only a tenuous, speculative link between the

government's actions and the third party's conduct.[14]

        Finally, there is no merit to the Federal Defendants' argument that permitting the

Plaintiff to pursue an Eighth Amendment claim against the Federal Defendants would amount to

an end run around the Court's dismissal of Plaintiff's third-party beneficiary claim under the

Rivers Contract and would lead to a flood of litigation on government contracts. See Fed. Defs.'

Mem. at 13-15. First, the third-party beneficiary claim was directed solely at GEO's conduct,

---

[14] In National Wrestling Coaches Ass'n v. Dep't of Educ., the plaintiffs lacked standing to challenge federal implementation of Title IX's requirement that "recipients of federal funding provide equal athletic opportunity for members of both sexes." 366 F.3d 930, 934 (D.C. Cir. 2004) (citation and quotation marks omitted). They argued that schools were choosing to comply with Title IX by "eliminat[ing] or reduc[ing] the size of men's wrestling programs," instead of increasing opportunities for women. Id. at 935, 937-38. The court found that these "independent decisions of educational institutions" did not necessarily flow from the government's action, id. at 936-37, and distinguished Animal Legal Defense Fund and similar cases where "the intervening choices of third parties are not truly independent of government policy." Id. at 940-41. Similarly, in Frank Krasner Enterprises v. Montgomery County, a gun show promoter lacked standing to enjoin a county regulation barring county funding to any facility that allowed the display and sale of guns because there was no guarantee facilities would stop hosting gun shows as a result of the regulation. 401 F.3d 230, 234-36 (4th Cir. 2005). And in Community for Creative Non-Violence v. Pierce, plaintiffs lacked standing to challenge a federal government report that, in their view, significantly undercounted the number of homeless people in the United States, because it was uncertain that the report would cause benefactors to diminish aid to the homeless. 814 F.2d 663, 667-71 (D.C. Cir. 1987). Here, in contrast, the Federal Defendants maintain constant authority over both GEO and Calland. They have the authority to designate Mr. Calland's place of incarceration, and provide direct, daily oversight over the unlawful conduct at Rivers.

not the Federal Defendants'. Second, in order to prevail on an Eighth Amendment claim, a Plaintiff must prove that the defendant was deliberately indifferent. There is no corresponding state-of-mind requirement for third party beneficiary claims, which defeats the Federal Defendants' erroneous assertion that Plaintiff's direct liability claim is a derivative liability claim in disguise. See Fed. Defs.' Mem. at 14-15.

## CONCLUSION

For the foregoing reasons, the Federal Defendants' Motion to Dismiss the Second Amended Complaint should be denied.

Dated: March 9, 2010

Philip J. Fornaci (DC Bar # 434824)
Deborah M. Golden (DC Bar # 470578)
WASHINGTON LAWYERS' COMMITTEE FOR
  CIVIL RIGHTS AND URBAN AFFAIRS
11 Dupont Circle N.W.
Suite 400
Washington, D.C. 20036
202.319.1000 (ph)
202.319.1010 (fax)

Respectfully Submitted,

 /s/ Neil A. Riemann
Neil A. Riemann (NC Bar #19258)
PENRY RIEMANN PLLC
510 Glenwood Avenue, Suite 319
Raleigh, NC 27603
919.833.9449 (ph)
919.833.9448 (fax)

 /s/ Anthony Herman
Anthony Herman (DC Bar # 424643)
Donald J. Ridings (DC Bar 466808)
Danielle M. Estrada (DC Bar # 494517)
Laura E. Schattschneider (DC Bar 976423)
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue N.W.
Washington, D.C. 20004
202.662.6000 (ph)
202.662.6291 (fax)

Counsel for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that I have this 9th day of March, 2010, filed the foregoing using CM/ECF, which will serve all required parties by sending a Notice of Electronic Filing to all counsel of record.

 /s/ Neil A. Riemann
Neil A. Riemann

31