IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:08-CT-00021-D

| | | |
|---|---|---|
| KEITH MATHIS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GEO GROUP, INC.; UNITED STATES OF | ) | FEDERAL DEFENDANTS' |
| AMERICA, through its department, the FEDERAL | ) | REPLY IN SUPPORT OF THEIR |
| BUREAU OF PRISONS; and HARLEY LAPPIN, | ) | MOTION TO DISMISS |
| in his official capacity as Director of the | ) | |
| FEDERAL BUREAU OF PRISONS, | ) | |
| | ) | |
| Defendants. | ) | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................................iii

INTRODUCTION ...............................................................................................................1

ARGUMENT ......................................................................................................................1

    I.      THE APA DOES NOT WAIVE SOVEREIGN IMMUNITY WHERE PLAINTIFF FAILS TO IDENTIFY A FINAL AGENCY ACTION BY THE BOP AND DOES NOT CONTEST THE ADEQUACY OF HIS ALTERNATIVE REMEDIES ................................................................................1

    II.     PLAINTIFF HAS FAILED TO ESTABLISH STANDING ....................................5

    III.    PLAINTIFF FAILS TO STATE AN EIGHTH AMENDMENT CLAIM ..............7

CONCLUSION ..................................................................................................................10

# TABLE OF AUTHORITIES

**CASES**

Animal Legal Def. Fun, Inc. v. Glickman ("ALDF"), 154 F.3d 425 (D.C. Cir. 1998) (en banc) ....6

Arvai v. First Fed. Sav. & Loan Ass'n, 698 F.2d 683 (4th Cir. 1983) ............................................4

Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009) ......................................................................................10

Beamon v. Brown, 125 F.3d 965 (6th Cir. 1997) ............................................................................2

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) .........................................................................10

Cheyenne-Arapaho Gaming Comm'n v. Nat'l Indian Gaming Comm'n,
        214 F. Supp. 2d 1155 (N.D. Okla. 2002) ...........................................................................2

City of Canton v. Harris, 489 U.S. 378 (1989) ...............................................................................7

Comsat Corp. v. NSF, 190 F.3d 269 (4th Cir. 1999) .......................................................................4

Consol. Edison Co. of New York, Inc. v. U.S. Dep't of Energy, 247 F.3d 1378 (Fed. Cir. 2001) ..2

Elec. of N.C., Inc. v. Se. Power Admin., 774 F.2d 1262 (4th Cir. 1985) ........................................5

Farmer v. Brennan, 511 U.S. 825 (1994) ........................................................................................9

Farmer v. Brennan, 81 F.3d 1444 (7th Cir. 1996) ...........................................................................9

FDIC v. Meyer, 510 U.S. 471 (1994) ..............................................................................................4

Flue-Cured Tobacco Coop. Stabilization Corp. v. EPA, 313 F.3d 852 (4th Cir. 2002) ..................4

Frank Krasner Enters., Ltd. v. Montgomery County, 401 F.3d 230 (4th Cir. 2005) ...................5, 6

Holly v. Scott, 434 F.3d 287 (4th Cir. 2008) ...................................................................................8

Nat'l Wrestling Coaches Ass'n ("NWCA") v. Dep't of Educ.,
        366 F.3d 930 (D.C. Cir. 2004) ....................................................................................2, 3, 5

Raymond Proffitt Found. v. U.S. Army Corps of Eng'rs, 343 F.3d 199 (3d Cir. 2003) .................5

Regional Mgmt. Corp. v. Legal Servs. Corp., 186 F.3d 457 (4th Cir. 1999) ..................................5

Shaw v. Stroud, 13 F.3d 791 (4th Cir. 1994) ...................................................................................8

Simmat v. BOP, 413 F.3d 1225 (10th Cir. 2005) ...............................................................................3

Springs v. Stone, 362 F. Supp. 2d 686 (E.D. Va. 2005) ....................................................................2

Transohio Sav. Bank v. Dir., OTS, 967 F.2d 598 (D.C. Cir. 1992) ..............................................2, 3

Trudeau v. FTC, 456 F.3d 178 (D.C. Cir. 2006) ...............................................................................3

Veterans for Common Sense v. Peake, 563 F. Supp. 2d 1049 (N.D. Cal. 2008) ..............................2

Wright v. Foreign Serv. Grievance Bd., 503 F. Supp. 2d 163 (D.D.C. 2007) ...................................3

## **STATUTES**

 5 U.S.C. § 701 ...................................................................................................................................5

5 U.S.C. § 702 ..........................................................................................................................2, 3, 4

5 U.S.C. § 704 ..........................................................................................................................2, 3, 4

5 U.S.C. § 706 ................................................................................................................................1, 3

42 U.S.C. § 1983 ................................................................................................................................9

## **LEGISLATIVE HISTORY**

H.R. Rep. 94-1656, 27 (Sept. 22, 1976), 1976 U.S.C.C.A.N. 6121, 6146 ......................................2

# INTRODUCTION

Plaintiff fails to overcome the jurisdictional barriers that defendants the Federal Bureau of Prisons ("BOP") and BOP Director Lappin (collectively, the "BOP") have identified, nor does he establish the viability of his Eighth Amendment claim. Under settled sovereign immunity principles, any plaintiff suing a federal agency under a nonstatutory or Administrative Procedure Act ("APA"), 5 U.S.C. § 706, cause of action must identify a final agency action, and suit is barred against the agency where, as here, the plaintiff has an adequate remedy against a third party, codefendant GEO Group, Inc. ("GEO"), which operates the private prison where plaintiff resides. Indeed, because GEO's medical care, or lack thereof, cannot produce an injury "caused by" the BOP, plaintiff lacks standing to sue the BOP. Finally, plaintiff's Eighth Amendment claim cannot survive based on speculative assertions that unidentified BOP employees might have heard or read unsubstantiated inmate complaints about GEO's provision of health care.

# ARGUMENT

## I. THE APA DOES NOT WAIVE SOVEREIGN IMMUNITY WHERE PLAINTIFF FAILS TO IDENTIFY A FINAL AGENCY ACTION BY THE BOP AND DOES NOT CONTEST THE ADEQUACY OF HIS ALTERNATIVE REMEDIES

As explained in the BOP's opening brief, plaintiff's failure to identify any "final agency action" that the BOP either took or failed to take removes his claims from the APA's waiver of sovereign immunity, as does the existence of an adequate remedy directly against GEO. Federal Defendants' Memorandum in Support of their Motion to Dismiss ("Op. Br.," dkt. #108) at 15-20. Significantly, plaintiff does not argue that there is, in fact, any BOP "final agency action" at issue, nor does he suggest that a direct claim against GEO is in any way inadequate. Rather, plaintiff relies solely on the notion that neither of these elements are required for the APA's

-1-

waiver to apply. Pl. Opp. at 22-26. However, plaintiff's flawed interpretation of the APA's sovereign immunity waiver cannot be reconciled with the plain language of 5 U.S.C. §§ 702 and 704, and is in conflict with Fourth Circuit authority as well as the vast majority of other courts.

Plaintiff erroneously contends that the only relevant APA provision, for purposes of sovereign immunity, is 5 U.S.C. § 702, and cites cases construing that provision as waiving immunity for "all" claims seeking nonmonetary relief, whether or not the claim is brought pursuant to the APA cause of action set forth in 5 U.S.C. § 706. However, it is well established that the waiver in § 702 must be read in conjunction with other APA provisions, including 5 U.S.C. § 704.[1] Indeed, the House Report on the 1976 APA amendments expressly recognized that "the waiver of immunity, since it is made via Sec. 702, . . . will be subject to the other limitations of the A[PA]." H.R. Rep. 94-1656, 27 (Sept. 22, 1976), 1976 U.S.C.C.A.N. 6121, 6146. Section 704, in turn, limits the sovereign immunity waiver to claims that identify either an

---

[1] Nat'l Wrestling Coaches Ass'n ("NWCA") v. Dep't of Educ., 366 F.3d 930, 947 (D.C. Cir. 2004) ("[T]he waiver of sovereign immunity under § 702 is limited by the 'adequate remedy' bar of § 704." (citing Transohio Sav. Bank v. Dir., OTS, 967 F.2d 598 (D.C. Cir. 1992))); Consol. Edison Co. of New York, Inc. v. U.S. Dep't of Energy, 247 F.3d 1378, 1382 (Fed. Cir. 2001) ("Although [plaintiff] may satisfy § 702 by not seeking 'money damages,' jurisdiction still lies in the Court of Federal Claims because that court can provide an 'adequate remedy' in this case within the meaning of § 704."); Beamon v. Brown, 125 F.3d 965, 967 (6th Cir. 1997) ("Although the APA provides a broad waiver of sovereign immunity, codified at 5 U.S.C. § 702, the waiver is limited by . . . § 704" (footnote omitted)); Veterans for Common Sense v. Peake, 563 F. Supp. 2d 1049, 1058 (N.D. Cal. 2008) (holding that the "waiver of sovereign immunity under § 702 is constrained by the provisions contained in § 704," and that where an agency action is not "made reviewable by any statute," the plaintiffs "must show that the agency action they challenge is not only 'final agency action' but also that there is no adequate alternative remedy"); Springs v. Stone, 362 F. Supp. 2d 686, 702 (E.D. Va. 2005) (review otherwise allowed under § 702 "is only available when the agency action complained of is 'made reviewable by statute' or constitutes 'final agency action for which there is no other adequate remedy in a court'" as required by § 704); Cheyenne-Arapaho Gaming Comm'n v. Nat'l Indian Gaming Comm'n, 214 F. Supp. 2d 1155, 1169 (N.D. Okla. 2002) ("Because the APA must be read as a whole, it is clear that § 704 and § 702 are interrelated and must be read together." (citation omitted)).

"[a]gency action made reviewable by statute" or a "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704.

For his contrary view, plaintiff cites the holding in Trudeau v. FTC, 456 F.3d 178 (D.C. Cir. 2006), that the "final agency action" requirement of § 704 did not limit the sovereign immunity waiver in § 702, but instead restricted the APA cause of action set forth in § 706. Id. at 187. While the court ultimately rejected the plaintiff's claims on other grounds, the potential import of its holding was that the plaintiff could not bring an APA claim in the absence of a "final agency action," but could bring either a "nonstatutory" claim or a claim directly under the First Amendment. See id. at 190. Trudeau was simply wrong on this point, as suggested by the fact that it conflicts with the weight of authority cited above, including other D.C. Circuit opinions that Trudeau did not address, much less distinguish,[2] and no other case shares its view.[3]

Moreover, the Trudeau court's reasoning conflicts with the plain statutory language stating that judicial review is available only for two categories of cases – (1) those that challenge

---

[2]See Transohio 967 F.2d at 607 ("The APA excludes from its waiver of sovereign immunity . . . claims for which an adequate remedy is available elsewhere . . . ."). Transohio's holding on this point is well established, and remains the law in the D.C. Circuit. E.g., NWCA, 366 F.3d at 947; Wright v. Foreign Serv. Grievance Bd., 503 F. Supp. 2d 163, 180 (D.D.C. 2007) (both relying on Transohio). The Trudeau court made no attempt to explain how its holding regarding the "final agency action" requirement of § 704 could be reconciled with Transohio's decision regarding the "no other adequate remedy" requirement, which appears in the very same clause of § 704. Indeed, the Trudeau court's statement that the D.C. Circuit had never addressed the connection between § 704 and § 702, 456 F.3d at 187, suggests it was unaware of Transohio and NWCA, perhaps due to the fact that the agency defendant in Trudeau declined to address the sovereign immunity issue on appeal. See Trudeau, 456 F.3d at 185.

[3]In Simmat v. BOP, 413 F.3d 1225 (10th Cir. 2005), also cited by plaintiff, the court simply recognized that the waiver in § 702 applied whether the plaintiff's claim were brought pursuant to the APA cause of action in 5 U.S.C. § 706 or directly under the Constitution. Simmat, 413 F.3d at 1233 & n.9, 1238-39. While suggesting in passing that the plaintiff may not have satisfied § 704's "final agency action" requirement, the court did not squarely address the relationship between § 702 and § 704, rejecting the plaintiff's claims on other grounds. See id.

-3-

an "[a]gency action made reviewable by statute," and (2) those that challenge "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Clearly, a claim that is deemed "nonstatutory," or that asserts a direct constitutional cause of action, does not challenge agency action "made reviewable by statute." Such a claim must, then, meet the two requirements of the second category of reviewable actions – that there be a "final agency action" and "no other adequate remedy."[4] Finally, the Fourth Circuit authority cited in the BOP's opening brief is consistent with the weight of authority cited above in viewing § 704 as a limitation on § 702. E.g., Flue-Cured Tobacco Coop. Stabilization Corp. v. EPA, 313 F.3d 852, 857 (4th Cir. 2002) ("Other than agency action made specifically reviewable by statute, § 704 limits the APA's non-statutory right of judicial review to final agency action."). While plaintiff emphasizes Congress' intent to subject agency action to review, particularly where a constitutional violation is alleged, recognizing § 704 as a limitation on § 702 is not contrary to that intent. Rather, it simply suggests that Congress did not intend to subject an agency to suit in circumstances where it had already indicated judicial review was inappropriate, such as where – as here – a plaintiff cannot identify any "final agency action" at issue, and already has an

---

[4]This is so *regardless* of whether a nonstatutory or constitutional claim purports to utilize the APA (sometimes called "nonstatutory") cause of action set forth in § 706. Thus, the Court need not address whether a plaintiff seeking only injunctive relief may assert a claim against a federal agency directly under the Constitution, or is further constrained by the requirements of § 706. Cf. FDIC v. Meyer, 510 U.S. 471, 484 (1994) (rejecting "Bivens-type cause of action [for damages] directly against a federal agency"). While plaintiff appears to confuse the two, the "cause of action" question is entirely distinct from the sovereign immunity question. Indeed, the existence of a "cause of action" is not a jurisdictional issue. Arvai v. First Fed. Sav. & Loan Ass'n, 698 F.2d 683, 684 (4th Cir. 1983) (affirming dismissal under 12(b)(6) for lack of private right of action). Thus the Fourth Circuit's recognition, in Comsat Corp. v. NSF, 190 F.3d 269 (4th Cir. 1999), that the "final agency action" requirement *is* jurisdictional shows that, contrary to plaintiff's assertion, that case is perfectly in line with the view that the sovereign immunity waiver in § 702 is limited by § 704. Id. at 275 (citing § 704).

adequate remedy elsewhere.[5]

## II. PLAINTIFF HAS FAILED TO ESTABLISH STANDING

Plaintiff fails to overcome the fact that, under any conceivable theory, it is GEO, not the BOP, that has caused any injury arising out of GEO's provision of medical care at Rivers. Indeed, plaintiff admits that the essence of his claim is that the BOP allegedly was "aware" of a risk of harm but "did nothing." Pl. Opp. at 28. Clearly, such an assertion, by itself, is insufficient to establish that plaintiff's alleged injury is "fairly traceable" to the BOP when an independent third party is the immediate source of harm. Frank Krasner Enters., Ltd. v. Montgomery County, 401 F.3d 230, 234-35 (4th Cir. 2005); NWCA, 366 F.3d at 941. In Frank Krasner, the plaintiff challenged a county ordinance that prohibited the county from giving money to organizations that allow the display of guns in their facilities. 401 F.3d at 232. After the ordinance was passed, an organization refused to lease its facility to the plaintiff for purposes of a gun show, citing the financial implications of the ordinance as the reason. Id. The court held that the plaintiff lacked standing to sue the county because its injury was caused by an "independent third party," the facility owner, and thus was not fairly traceable to the county. Id. at 236. For the same reason, plaintiff's alleged injury is not fairly traceable to the BOP.

Attempting to reconcile his claim with the applicable case law, plaintiff advances the

---

[5]Plaintiff cites Regional Mgmt. Corp. v. Legal Servs. Corp., 186 F.3d 457, 461 n.3 (4th Cir. 1999); Elec. of N.C., Inc. v. Se. Power Admin., 774 F.2d 1262, 1267 (4th Cir. 1985); and Raymond Proffitt Found. v. U.S. Army Corps of Eng'rs, 343 F.3d 199, 205 (3d Cir. 2003), as suggesting that assertions of constitutional violation are always allowed. However, those decisions primarily addressed whether an agency action could be "committed to agency discretion by law," pursuant to 5 U.S.C. § 701(a)(2), when a plaintiff asserted that the action violated a "constitutional command"; they have no bearing on the situation here, where plaintiff asserts a constitutional claim against the BOP, but the BOP has not actually taken any action that plaintiff complains of, and the gist of plaintiff's complaint is that the BOP has failed to enforce a contract against a third party, against which plaintiff has an independent and adequate remedy.

-5-

notion that the BOP "maintain[s] constant authority over both GEO and [plaintiff]," Pl. Opp. at 29 n.14. However, it is undisputed that the terms of the BOP-GEO contract delegate to GEO – a private corporation – the responsibility of providing medical care to Rivers inmates, and that the contract requires GEO to provide adequate care. As a practical matter, it is inconceivable that, despite the BOP's statutory obligation to arrange to house inmates at a private facility, and its entry into a procurement contract with GEO to satisfy this obligation, the BOP is actually the one responsible for day-to-day decisionmaking regarding the medical care provided to each individual inmate at Rivers, and nothing in the contract itself supports such a notion. To the contrary, as described in the BOP's opening brief, the BOP relies on entirely different mechanisms, including outside accreditation, GEO's internal quality assurance system, and periodic BOP quality reviews, to monitor GEO's compliance with its contractual obligations. Def. Op. Br. at 6-7. Plaintiff's assertions are thus unsupported and at odds with both the contract and common sense. His bare allegations fail to satisfy the "substantially more difficult" burden to establish causation when the immediate cause of any asserted injury is necessarily GEO. See Frank Krasner Enters., Ltd., 401 F.3d at 234-35 (internal quotation omitted).[6]

---

[6]Plaintiff erroneously relies on Animal Legal Def. Fun, Inc. v. Glickman ("ALDF"), 154 F.3d 425, 440 (D.C. Cir. 1998) (en banc), which held that a plaintiff may demonstrate standing to sue a federal agency by identifying a discrete agency action that allegedly *authorized* a third party to engage in otherwise illegal conduct. See id. at 440-42. Specifically, in ALDF, the plaintiffs alleged that the Department of Agriculture ("USDA") was statutorily required to set minimally-acceptable living condition standards for primates, and that its failure to do so authorized a third party – the Long Island Game Farm Park and Zoo – to provide inadequate housing for its primate residents. Id. at 441. There is no equivalent here to the USDA standards at issue in ALDF. To the contrary, as noted, the standards that GEO is required to follow, pursuant to its contract, are indisputably sufficient to ensure adequate care. The analysis in ALDF simply highlights the untenable nature of plaintiff's theory of causation in this case, where plaintiff does not identify any agency action at all that the BOP either took or did not take, much less any such action that "authorized" GEO to provide allegedly inadequate medical care.

-6-

### III. PLAINTIFF FAILS TO STATE AN EIGHTH AMENDMENT CLAIM

Plaintiff's attempt to construct an Eighth Amendment claim against the BOP without identifying any discrete action that the BOP allegedly took or failed to take, and relying solely on the allegation that the BOP "knows" about inadequate medical care at Rivers because unidentified BOP employees either heard or read the unsubstantiated complaints of Rivers inmates, is far removed from any accepted framework for assessing constitutional liability and must be rejected. The two flaws that the BOP identified in its opening brief, Def. Op. Br. at 22-23, are fatal to plaintiff's claims, and plaintiff has offered nothing to overcome them.

First, in regard to the fundamental premise that a constitutional violation requires government action, plaintiff merely asserts that the BOP was aware of GEO's alleged failure to provide adequate medical care but has "failed to do anything about it." Pl. Opp. at 17. Plaintiff's Second Amended Complaint similarly refers to the BOP's failure "to provide lawfully adequate oversight or supervision of GEO's conduct." Comp. ¶ 39. These assertions are far too general and vague to state an Eighth Amendment claim. Indeed, the nebulous nature of plaintiff's allegations suggests again that he is essentially asserting a claim of vicarious, rather than direct, liability. In City of Canton v. Harris, 489 U.S. 378 (1989), the Supreme Court recognized, in the context of § 1983 actions, that a plaintiff will almost always "be able to point to something the city 'could have done' to prevent" an injury directly caused by a city employee, and allowing claims to proceed under such a theory would impose "de facto respondeat superior liability." Id. at 392. This Court has already rejected such a theory here because it would premise the BOP's liability on the *nongovernmental* action of GEO. Order of Nov. 9, 2009, at 9. Plaintiff offers no support for the proposition that a constitutional claim can arise against a federal agency such as the BOP based solely on its alleged failure to "supervise" a private

company with which it enters into a procurement contract.

Indeed, in prior briefing, the BOP addressed the significant problems with attempting to apply a theory of "supervisory liability" – which ordinarily involves a claim against an actual person responsible for supervising a subordinate employee – to the BOP.[7] Such a claim properly lies only against an individual, whom the plaintiff must pinpoint as "the *person[] in the decisionmaking chain* whose deliberate indifference permitted the [alleged] constitutional abuses to continue unchecked." Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (emphasis added) (internal quotation omitted). Here, plaintiff fails to identify *any* individual BOP official, nor any "decisionmaking chain" involving a BOP official, nor does he draw any connection between anything specific that the BOP allegedly "knows," and anything that the BOP failed to do, with respect to himself or anyone else. Rather, plaintiff evidently seeks to embark on a fishing expedition in the hope of identifying some BOP employee who might have known something about some Rivers inmate or some allegation of a general health care problem, and might have done "something about it," notwithstanding the fact that all medical personnel at Rivers are private employees or contractors hired by GEO, who themselves are not engaged in government action. Holly v. Scott, 434 F.3d 287, 294 (4th Cir. 2008). To allow plaintiff to proceed on this basis would have potentially drastic implications for federal agency responsibility for the conduct of private companies with whom they contract.[8]

---

[7]The BOP also observed that the concept of "supervision and control," which plaintiff invokes in the complaint, appears to be applicable solely in the context of claims under the Federal Tort Claims Act. See Federal Defendants' Memorandum in Support of Their Motion to Dismiss, at 9-15 (Docket Entry No. 64, filed Jan. 5, 2009). The BOP incorporated the arguments set forth in this prior briefing in its current Motion to Dismiss. See Fed. Def. Op. Br. at 3 n.2.

[8]Plaintiff's suggestion that he be allowed to conduct "limited discovery" for this purpose should be rejected; the terms of the BOP-GEO contract, which is already before the Court, make

-8-

The second, related flaw that the BOP previously identified is plaintiff's misapplication of the subjective "deliberative indifference" standard in Farmer v. Brennan, 511 U.S. 825 (1994), to the BOP. Plaintiff now asserts that his claims against the BOP are equivalent to the claims asserted in Farmer against the BOP Director, two prison wardens, and other BOP officials. Pl. Opp. at 18-29. However, Farmer involved Bivens claims against these individuals. 511 U.S. at 830. The Supreme Court's analysis of the subjective component of deliberate indifference was clearly aimed at claims asserted against individual prison officials. Id. at 837. Indeed, the claims against the BOP Director in that case were subsequently dismissed because he "had no personal knowledge of the [facts underlying the alleged violation] and . . . thus cannot be liable under the standard set forth in the Supreme Court's opinion." Farmer v. Brennan, 81 F.3d 1444, 1452 (7th Cir. 1996).[9]

Other than this misreading of Farmer, plaintiff relies on cases that have addressed claims of municipal liability under 42 U.S.C. § 1983[10], or corporate liability under defamation or securities law. Pl. Opp. at 19-20. These cases suggest, at most, that the subjective knowledge of identified key individuals (a county policymaker, the journalist who wrote the allegedly

---

clear that plaintiff's claims about the involvement of BOP employees in operations at Rivers are speculative and implausible. At the very least, it is plaintiff's burden at the pleading stage not merely to assert that the BOP has failed to "do anything about it," but to allege sufficient facts to identify what, exactly, the BOP failed to do.

[9]Here, of course, there is no suggestion that the BOP Director was identified as a defendant for any purpose other than as a proxy for the BOP itself. If it were otherwise, the claims against the Director would be subject to dismissal on the same basis.

[10]As explained in the BOP's opening brief, the concept of municipal liability, based on a municipal policy or custom, derives from the statutory language of § 1983 and thus does not apply to federal agencies. Fed. Def. Op. Br. at 24-25. In the federal context, as discussed above, the scope of claims against a federal agency, other than those authorized by a specific statute, is limited by the APA's "final agency action" requirement.

-9-

defamatory story, the corporate officer who made the relevant transaction) might be imputed to an entity. In none of these cases were plaintiffs allowed to rely on purely speculative allegations about what unidentified individuals might know. Cf. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007). Yet that is all that plaintiff offers here. Plaintiff cannot state an Eighth Amendment claim based on such speculation alone, particularly where the government action is equally undefined, and the underlying provision of health care, which is alleged to be the problem, is not government action at all.[11]

## CONCLUSION

For the reasons set forth above and in the BOP' opening brief, the claims against the BOP should be dismissed in their entirety.

Respectfully submitted, this 9nd day of April, 2010.

TONY WEST
Assistant Attorney General
GEORGE E.B. HOLDING
United States Attorney
VINCENT M. GARVEY
Deputy Branch Director

/s/ Kathryn L. Wyer
KATHRYN L. WYER
U.S. Department of Justice, Civil Division
20 Massachusetts Ave. NW
Washington, D.C. 20530
Telephone: (202) 616-8475 / Fax: (202) 616-8470
kathryn.wyer@usdoj.gov
*Attorneys for Federal Defendant*s

---

[11]Plaintiff's opposition brief lists a "lack [of] necessary accommodations for mobility-impaired men" among the "Constitutional violations at the Rivers facility." Pl. Opp. at 14. However, plaintiff's Second Amended Complaint does not assert an Eighth Amendment violation on this basis; rather, the Eighth Amendment claim is limited to alleged "health care delivery failures at Rivers," with respect to plaintiff's "serious medical, dental, and mental health needs." Comp. ¶¶ 63-64.

-10-

## CERTIFICATE OF SERVICE

I do hereby certify that I have this 9th day of April, 2010, served a copy of the foregoing upon the parties in this case electronically through the Court's ECF system.

/s/ Kathryn L. Wyer
Kathryn L. Wyer