IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:08-CT-21-D

| | | |
|---|---|---|
| KEITH MATHIS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | **ORDER** |
| | ) | |
| GEO GROUP, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

Louis Calland ("Calland" or "plaintiff") is an inmate at Rivers Correctional Institution ("Rivers") and is the sole remaining plaintiff in this case. Calland contends that defendants GEO Group, Inc. ("GEO"), the Federal Bureau of Prisons ("BOP"), and Harley Lappin ("Lappin"), Director of the BOP, have violated and are violating federal and state law in connection with Calland's medical care. Calland also complains that the BOP and GEO have denied and are denying him access to programs and facilities at Rivers solely because of his disability. GEO is a private corporation that owns and operates Rivers, and the BOP has a procurement contract with GEO under which it pays GEO to house federal inmates at Rivers. Calland seeks declaratory and injunctive relief and wishes to serve as the class representative for all current and future inmates at Rivers.

On November 9, 2009, the court granted defendants' motions to dismiss Calland's amended complaint, but also granted Calland leave to amend. On December 9, 2009, Calland filed a second amended complaint. GEO, the BOP, and Lappin now move to dismiss Calland's second amended complaint for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted. Calland has filed a motion for leave to file a third amended complaint. As explained below, GEO's motion to dismiss [D.E. 104] is granted, the BOP defendants' motion to dismiss [D.E.

107] is granted in part and denied in part, and Calland's motion for leave to file a third amended complaint [D.E. 114] is granted.

I.

In its November 9, 2009 order, the court described the background of this case in detail and thus restricts its discussion in this order to the pending motions. On December 9, 2009, plaintiff filed a second amended complaint, seeking declaratory and injunctive relief. See Sec. Am. Compl. 41–42. The original complaint named multiple plaintiffs, but Calland is the only named plaintiff still incarcerated at Rivers, and thus is the only plaintiff named in the second amended complaint. See id. ¶¶ 10, 15–24; see also Mathis v. GEO Group, Inc., No. 2:08-CT-21-D, slip op. at 2–3 (E.D.N.C. Nov. 9, 2009).[1]

Plaintiff's second amended complaint contains four claims, seeks declaratory and injunctive relief, and proposes to proceed as a class action on behalf of current and future inmates at Rivers. GEO, a private corporation that owns and operates Rivers, has a federal-government procurement contract with the BOP. The BOP pays GEO to house federal inmates at Rivers. Sec. Am. Compl. ¶¶ 29–31. Calland claims that, while he has been incarcerated at Rivers, GEO, the BOP, and Lappin have provided him inadequate medical care.[2] Specifically, Calland alleges that he received inadequate medical treatment for his arthritis, degenerative bone disease, and diabetes, resulting in poor health and severe pain. Id. ¶ 10. He also claims that he is unable to access the facilities,

---

[1] In his motion for leave to file a third amended complaint, plaintiff seeks to add Gregory Terrell, another current prisoner at Rivers, as a named plaintiff "assert[ing] the same Constitutional, contract, and common law claims for the same relief as that sought by Plaintiff Calland." Pl.'s Mem. Supp. 2.

[2] The court "focuses on Calland's claims because Calland is the sole remaining plaintiff. If Calland's claims fail, then the issues described in the [second] amended complaint concerning . . . the 'other affected persons,' or the putative class members cannot revive the [second] amended complaint." See Mathis, No. 2:08-CT-21-D, slip op. at 4 n.1 (E.D.N.C. Nov. 9, 2009).

2

programs, services, and activities at Rivers because of his disability. See id.

In his second amended complaint, Calland makes several allegations regarding the BOP's involvement in the day-to-day operations of Rivers. The contract between GEO and BOP "vests the BOP with the power to exercise control over GEO's personnel decisions, policies, and procedures. The BOP, in turn, is charged with monitoring and overseeing GEO's compliance with . . . contract obligations." Id. ¶ 33. The contract also "provides for on-site BOP monitors at the Rivers facility, charges [the BOP monitors] with 'the technical direction of the performance of all work' performed pursuant to the Rivers Contract, and requires the construction of a 2,500-square-foot office and ten parking spaces for [BOP] exclusive use." Id. ¶ 35.

The BOP "has specific responsibility for oversight and monitoring of GEO's activities at Rivers" through the Privatization Management Branch of its Correctional Programs Division. Id. ¶ 34. "[T]he BOP's Privatization Management Branch has received administrative complaints from prisoners, including Plaintiff, concerning the medical conditions at Rivers." Id. Calland and other prisoners have submitted "Regional Administrative Remedy Appeals to BOP's Privatization Management [B]ranch" and the BOP has rejected Calland's appeals. Id. In addition, "an on-site BOP monitor participates in the prison officer 'main line,'[3] which occurs daily." Id. ¶ 35. Accordingly, Calland alleges that, through its on-site involvement and supervision at Rivers via the Privatization Management Branch and participation by BOP monitors in the "main line," "the BOP is aware of and continues to disregard the risks and severe harm to prisoner health and safety detailed by Plaintiff in the Complaint[,]" "the BOP has received actual notice of the harms caused to prisoners in its custody by the grossly inadequate medical care and lack of accessible facilities at

---

[3]"During the daily 'main line,' prison staff stand together outside of the dining hall at mealtime to make themselves available for informal discussions with prisoners and to receive and address their complaints." Sec. Am. Compl. ¶ 35.

3

Case 2:08-ct-00021-D   Document 122   Filed 09/29/10   Page 3 of 14

Rivers[,]" and the BOP "ha[s] actual notice of prison complaints about the medical conditions and can get visual confirmation of the lack of accessibility for disabled prisoners in the facility." Id. ¶¶ 34–35.

Based upon the foregoing allegations, Calland, in his second amended complaint, makes four claims. First, Calland claims that the allegedly inadequate medical care violates the Eighth Amendment of the United States Constitution and seeks relief from all defendants. Id. ¶¶ 62–70. Second, Calland claims that the BOP and GEO violated section 504 of the Rehabilitation Act. Id. ¶¶ 71–79. Specifically, Calland alleges that he uses a wheelchair and claims that he has been denied equal access to the facilities, programs, services, and activities at Rivers, solely because of his physical disability. Id. ¶¶ 10, 76–77.

Third, Calland seeks relief under North Carolina law and claims that GEO negligently failed to provide reasonable medical care and treatment to him. Sec. Am. Compl. ¶¶ 80–83. The alleged breaches include:

> (a) the failure to provide access to health care services; (b) the failure to hire, train, supervise and maintain an adequate level of qualified health care staff at Rivers; (c) the failure to establish an adequate and reasonable method for distributing medication; and (d) the failure to contain or treat infectious diseases.

Id. ¶ 82. According to Calland, GEO's negligence proximately caused him to suffer "immediate and irreparable injury" and a "heightened risk of premature death." Id. ¶ 83.

Fourth, Calland claims that the contract between the BOP and GEO was intended to confer the direct benefit of adequate medical, dental, and mental health care on him. Id. ¶ 85. According to Calland, GEO breached and continues to breach its express and implied contractual obligations to Calland by failing to provide adequate health care. Id. ¶ 86. Calland claims that GEO's alleged breach has caused him physical pain and injury, and asks the court to order GEO to "perform its

obligations to provide adequate health care under the Rivers Contract." Id. ¶¶ 87, 89.

Calland seeks to have this action certified as a class action under Rule 23 of the Federal Rules of Civil Procedure. Sec. Am. Compl. 41 (prayer for relief); see id. ¶¶ 40–61. The proposed class would include "current and future prisoners of Rivers who, during their incarceration at Rivers, are dependent upon the organizations, systems, policies, practices, and institutional conditions of Defendants for their receipt of medical, dental, and mental health care." Id. ¶ 40. Calland also seeks certification of a sub-class of "all prisoners who have been denied access to the programs, services, facilities, and activities at Rivers because of Defendants' failures to diagnose, monitor, treat and/or accommodate their serious medical conditions, in violation of Section 504 of the Rehabilitation Act." Id. ¶ 51. Calland requests declaratory and injunctive relief for himself and those similarly situated. Id. at 41–42 (prayer for relief).

On January 22, 2010, GEO filed a motion to dismiss [D.E. 104]. On February 2, 2010, the BOP and Lappin (who is sued in his official capacity) (collectively, "the BOP defendants")[4] also filed a motion to dismiss [D.E. 107]. Calland responded in opposition [D.E. 113], and the BOP defendants replied [D.E. 118]. Calland also filed a notice of supplemental authority [D.E. 121] pursuant to Local Civil Rule 7.1(g), E.D.N.C.

II.

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure tests subject-matter jurisdiction, which is the court's "statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (emphasis omitted). A federal court "must determine that it has subject-matter jurisdiction over [a claim] before it can pass on the

---

[4]The parties agree that plaintiff's claims against Lappin are effectively claims against the BOP itself. BOP Defs.' Mem. Supp. 1 n.1; Pl.'s Mem. Opp'n 18. Thus, the court refers to the BOP and Lappin collectively as "the BOP defendants."

5

merits of that [claim]." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 479–80 (4th Cir. 2005). Calland, as the party asserting that this court has subject-matter jurisdiction, must prove that subject-matter jurisdiction exists. See, e.g., Steel Co., 523 U.S. at 104; Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999); Richmond, Fredericksburg & Potomac R.R. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). In considering a motion to dismiss for lack of subject-matter jurisdiction, the court may consider evidence outside the pleadings without converting the motion into one for summary judgment. Evans, 166 F.3d at 647.

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted," tests whether the complaint is legally and factually sufficient. See FED. R. CIV. P. 12(b)(6); Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 562–63, 570 (2007); Giarratano v. Johnson, 521 F.3d 298, 301–02 (4th Cir. 2008); Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). In considering a motion to dismiss, a court need not accept a complaint's legal conclusions drawn from the facts. See, e.g., Ashcroft, 129 S. Ct. at 1949–50. Similarly, a court need not accept as true "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Ashcroft, 129 S. Ct. at 1949–50. Moreover, a court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. See, e.g., FED. R. EVID. 201; Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt County Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

### III.

### A.

First, the court addresses Calland's claims against GEO. Calland and GEO rely upon their

6

briefs filed in connection with GEO's motion to dismiss Calland's first amended complaint. GEO's Mem. Supp. 1; Pl.'s Mem. Opp'n 7–8. Furthermore, Calland states that he "has reasserted all of [his] claims in the Second Amended Complaint for purposes of appeal." Pl.'s Mem. Opp'n 7 n.4.

Calland has not changed any pleading against GEO that would avoid dismissal for the reasons the court dismissed Calland's first amended complaint against GEO. As for his first claim for relief against GEO, Calland filed as supplemental authority a recent Ninth Circuit opinion, Pollard v. GEO Group, Inc., 607 F.3d 583 (9th Cir. 2010), which explicitly disagrees with the Fourth Circuit's opinion in Holly v. Scott, 434 F.3d 287 (4th Cir. 2006), regarding whether employees of a privately run prison may be held liable under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). However, Holly is binding on this court. See, e.g., Doe v. Chao, 511 F.3d 461, 465 (4th Cir. 2007). Accordingly, for the reasons stated in the court's November 9, 2009 order, the court dismisses the second amended complaint against GEO for failure to state a claim upon which relief can be granted.

B.

Next, the court addresses plaintiff's Eighth Amendment claim against the BOP defendants. The Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to provide medical care to inmates. See, e.g., Estelle v. Gamble, 429 U.S. 97, 103 (1976). However, prisoners do not have "unqualified access to health care." Hudson v. McMillian, 503 U.S. 1, 9 (1992). In order to establish an Eighth Amendment claim for denial of medical care, a prisoner must establish "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106. A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008)

7

(quotation omitted).

Deliberate indifference requires that defendants knew of and purposefully ignored "an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. It is "obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." Whitley v. Albers, 475 U.S. 312, 319 (1986). Deliberate indifference "sets a particularly high bar to recovery." Iko, 535 F.3d at 241. "In order to establish a claim of deliberate indifference to a medical need, the need must be both apparent and serious, and the denial must be both deliberate and without legitimate penological objective." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999).

Calland's claim in his first amended complaint against the BOP defendants was based upon a theory of derivative liability deriving from GEO's conduct, and that claim failed as a matter of law. Mathis, No. 2:08-CT-21-D, slip op. at 8–9 (E.D.N.C. Nov. 9, 2009). The court also noted:

> [t]o state an Eighth Amendment claim under . . . a theory [of direct liability], plaintiff must allege that defendant "knows of and disregards an excessive risk to inmate health or safety" and "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

Id. at 9 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). The court held that plaintiff had "fail[ed] to allege facts sufficient to support . . . [a] direct liability Eighth Amendment claim against the BOP" defendants and therefore dismissed the claim. Id. at 9–10.

In seeking dismissal of the Eighth Amendment claim against them in the second amended complaint, the BOP defendants contend that plaintiff "once again fails to state a viable Eighth Amendment claim" against them. See BOP Defs.' Mem. Supp. 1. Specifically, the BOP defendants

8

contend that plaintiff lacks standing to assert an Eighth Amendment claim, "fails to identify an applicable waiver of sovereign immunity[,]" and fails to allege that they "<u>acted</u> with deliberative indifference." Id. 1–2 (emphasis in original).

To satisfy Article III standing requirements, a plaintiff must show that: (1) "the plaintiff . . . . suffered an injury in fact — an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical;" (2) there is "a causal connection between the injury and the conduct complained of;" and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992) (footnote, citations, and quotations omitted). The asserted injury must be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." Id. at 560 (alterations and quotation omitted).

The BOP defendants contend that Calland cannot establish the causation prong because "GEO's alleged breach of its contract with the BOP stands incontrovertibly as an independent action by a third party that breaks the causal chain between the BOP and plaintiff." BOP Defs.' Mem. Supp. 15. However, in Calland's second amended complaint, he alleges that the BOP engaged in conduct independent of GEO which caused his injury. Calland submitted administrative-remedy appeals "to BOP's Privatization Management [B]ranch on the Rivers facility's treatment of his arthritis . . . . The Privatization Management Branch's Administrative Remedy Coordinator responded to Plaintiff's Appeals in the form of a rejection notice." Sec. Am. Compl. ¶ 34; see id. ¶¶ 10, 15–24, 33, 35, 38(d), 39. The court concludes therefore that — for purposes of standing — plaintiff has sufficiently demonstrated a "challenged agency action authoriz[ing] the conduct that

9

allegedly caused" his injuries. See Animal Legal Def. Fund, Inc. v. Glickman, 154 F.3d 426, 440–42 (D.C. Cir. 1998) (en banc).

The parties agree that any waiver of sovereign immunity on plaintiff's Eighth Amendment claim against the BOP defendants may be found in the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706. See Pl.'s Mem. Opp'n 22; BOP Defs.' Mem. Supp. 15. Section 702 of the APA states:

> An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

5 U.S.C. § 702. The BOP defendants contend that Section 704 of the APA limits this waiver, in that, because there is no statute which provides for review of BOP actions, Calland must be seeking review of a "'final agency action for which there is no other adequate remedy in a court.'" BOP Defs.' Mem. Supp. 15–16 (quoting 5 U.S.C. § 704).

The United States Court of Appeals for the Tenth Circuit and the United States District Court for the District of South Carolina have concluded that 5 U.S.C. § 702 does waive sovereign immunity for a prisoner's Eighth Amendment claim seeking injunctive relief concerning the BOP's failure to provide medical treatment. See Simmat v. U.S. Bureau of Prisons, 413 F.3d 1225, 1230–33, 1238–40 (10th Cir. 2005); Sabina v. Fed. Bureau of Prisons, C/A No. 0:08-3903-TLW-PJG, 2010 WL 972579, at *3–4 (D.S.C. Feb. 12, 2010)(unpublished), report and recommendations adopted, No. 0:08-cv-3903-TLW-PJG, 2010 WL 960412 (D.S.C. Mar. 11, 2010) (unpublished). This court also concludes that, due to 5 U.S.C. § 702, sovereign immunity does not bar plaintiff's Eighth Amendment claim for injunctive relief against the BOP defendants. Moreover, 5 U.S.C. §

704 does not alter this conclusion.[5]

Finally, the BOP defendants contend that "plaintiff's Second Amended Complaint again fails to identify the government action that allegedly violated his Eighth Amendment rights" and "fails to allege a viable 'direct' constitutional violation by the BOP." BOP Defs.' Mem. Supp. 20. The BOP defendants argue that, as an agency, the BOP cannot be held liable for any acts or subjective knowledge of BOP employees stationed at Rivers because "the 'deliberate indifference' standard in Farmer cannot apply to an entity such as the BOP." Id. 20–25.

The BOP has not cited any caselaw to support its position. Moreover, nothing in Farmer precludes BOP liability simply because it is an agency which may only possess subjective knowledge through its employees. Compare Nichols v. Fed. Bureau of Prisons, No. 09-CV-558-CMA-CBS, 2010 WL 3219998, at *6 (D. Colo. Aug. 12, 2010) (unpublished) (dismissing Eighth Amendment claim against the BOP for failure to satisfy the subjective or objective prong of the Eighth Amendment inquiry), with Nino v. Bureau of Prisons, No. 1:07-CV-56, 2008 WL 2004227, at *5 (N.D. W. Va. May 8, 2008) (unpublished) (declining to dismiss Eighth Amendment claim against the BOP because allegations satisfied subjective and objective prong of the Eighth Amendment inquiry). Although "the Supreme Court has commented that it is difficult to determine the subjective state of mind of a government entity[,] . . . . [t]his . . . does not . . . preclude the possibility

---

[5] 5 U.S.C. § 704 states:

Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

11

that a [government entity] can possess the subjective state of mind required by Farmer." Gibson v. County of Washoe, 290 F.3d 1175, 1189 n.10 (9th Cir. 2002) (emphasis in original). Accordingly, the court declines to adopt the BOP's proposed brightline rule.

Next, the BOP defendants argue that Calland has failed to "identify[] any direct action that the BOP took or failed to take with respect to plaintiff's medical needs or treatment[,]" or that plaintiff has failed to allege any conduct which rises to the level of deliberate indifference. See BOP Defs.' Mem. Supp. 23–25 (emphasis in original). Calland, however, has sufficiently alleged the elements of an Eighth Amendment claim against the BOP defendants. Calland has alleged that he suffers from arthritis and degenerative bone disease which cause him extreme difficulty and pain and prevent him from walking, but he does not receive physical therapy and is required to wait outside for several hours each day in the "pill line" to receive his medication, regardless of weather conditions. Sec. Am. Compl. ¶¶ 10, 38(d).[6] According to Calland, the BOP "is charged with monitoring and overseeing GEO's compliance with [its] . . . contract obligations[,]" including the obligation to provide medical care to plaintiff, and Calland has complained directly to the BOP about "the grossly inadequate medical care" provided to him through formal administrative complaints filed with the BOP staff stationed at Rivers. Id. ¶¶ 33–34. Moreover, according to Calland, the BOP has rejected or ignored Calland's complaints in disregard of an excessive risk to his health. Id. ¶¶ 33–35. Calland also has alleged that systemic failures and deficiencies in health care delivery at Rivers are open and notorious, that the BOP is actually aware of the grossly inadequate medical care at Rivers through numerous formal and informal complaints directly to BOP staff by the prisoners, that the BOP has done nothing to provide Calland with needed medical care, and that the BOP's

---

[6]The BOP defendants appear to concede that Calland has sufficiently alleged a serious medical need. See BOP Defs.' Mem. Supp. 12–13.

action caused Calland's injury. See id. ¶¶ 10–11, 15–24, 34–35, 38–39. These allegations state a claim that the BOP defendants have "actual knowledge of the risk of harm" to Calland, and that the BOP defendants realize their "actions were insufficient" in response to his complaints. See Iko, 535 F.3d at 241 (emphases and quotation omitted); see also Farmer, 511 U.S. at 837. Thus, these allegations are sufficient to withstand the BOP defendants' motion to dismiss.

C.

Next, the court addresses Calland's claim against the BOP under the Rehabilitation Act. Calland and the BOP rely upon their briefs filed in connection with the BOP's motion to dismiss Calland's first amended complaint. For the reasons stated in its November 9, 2009 order, the court again concludes that "plaintiff's Rehabilitation Act claim against the BOP fails to state a claim upon which relief can be granted." Mathis, No. 2:08-CT-21-D, slip op. at 10–16 (E.D.N.C. Nov. 9, 2009).

IV.

Calland seeks to amend his complaint to add an additional plaintiff [D.E. 114]. In opposition, the BOP defendants argue that "plaintiff's proposed amendment is futile because it is subject to dismissal for the same reasons asserted in the BOP's currently-pending Motion to Dismiss." BOP Defs.' Mem. Opp'n 1. Because the court finds that Calland has stated an Eighth Amendment claim against the BOP defendants, the motion to amend will be allowed.

V.

For the reasons stated above, the BOP defendants' motion to dismiss [D.E. 107] is GRANTED in part and DENIED in part, and GEO's motion to dismiss [D.E. 104] is GRANTED. Counts Two through Four of the second amended complaint are DISMISSED. Calland's motion for leave to file a third amended complaint [D.E. 114] is GRANTED. Plaintiff shall file his third amended complaint not later than October 25, 2010.

13

SO ORDERED. This 29 day of September 2010.

/s/ James C. Dever
JAMES C. DEVER III
United States District Judge