IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:08-CT-21-D

| | | |
|---|---|---|
| KEITH MATHIS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | **ORDER** |
| | ) | |
| GEO GROUP, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

Louis Calland ("Calland") and Gregory Terrell ("Terrell") (collectively, "plaintiffs") are inmates at Rivers Correctional Institution ("Rivers"). Plaintiffs contend that defendants GEO Group, Inc. ("GEO"), the Federal Bureau of Prisons ("BOP"), and Harley Lappin ("Lappin"), Director of the BOP (collectively, "the BOP defendants"),[1] have violated and are violating federal and state law in connection with their medical care. Calland also complains that the BOP and GEO have denied and are denying him access to programs and facilities at Rivers solely because of his disability. GEO is a private corporation that owns and operates Rivers, and the BOP has a procurement contract with GEO under which it pays GEO to house federal inmates at Rivers. Plaintiffs seek declaratory and injunctive relief and wish to serve as the class representatives for all current and future inmates at Rivers.

On November 9, 2009, the court granted defendants' motions to dismiss the amended complaint, but granted Calland's request to file a second amended complaint to amend the deficient claims [D.E. 96]. On December 9, 2009, Calland filed a second amended complaint [D.E. 98]. On

---

[1] Lappin is sued in his official capacity; therefore, plaintiffs' claims against Lappin are effectively claims against the BOP itself. See Kentucky v. Graham, 473 U.S. 159, 165 (1985). Thus, the court refers to the BOP and Lappin collectively as "the BOP defendants."

September 29, 2010, the court granted in part defendants' motions to dismiss, dismissed GEO from the action, and granted Calland's motion for leave to file a third amended complaint [D.E. 122]. On October 25, 2010, Calland and Terrell filed a third amended complaint [D.E. 125]. On November 29, 2010, GEO filed a motion to dismiss [D.E. 130]. On December 3, 2010, the BOP defendants filed a motion to dismiss or for summary judgment and a motion to seal [D.E. 132, 133]. On February 2, 2011, plaintiffs filed a motion for discovery and a motion to deny the BOP defendants' motion to dismiss or for summary judgment pursuant to Fed. R. Civ. P. 56(d) [D.E. 137, 139]. On March 15, 2011, the BOP defendants filed a motion to strike the jury demand in plaintiffs' third amended complaint [D.E. 146]. Plaintiffs do not oppose the motion to strike the jury demand concerning the Eighth Amendment claim for declaratory and injunctive relief against the BOP Defendants. See Pls.' Resp. BOP Defs.' Mot. Strike 1. Because that claim is the only remaining claim, the court grants the motion to strike [D.E. 146]. As explained below, GEO's motion to dismiss is granted, the BOP defendants' motion to dismiss or for summary judgment is granted in part and denied in part without prejudice, and plaintiffs' motion for discovery is granted.

I.

In its November 9, 2009 order, the court described the background of this case in detail and thus restricts its discussion in this order to the pending motions.

Plaintiffs' third amended complaint contains four claims,[2] seeks declaratory and injunctive relief, and proposes to proceed as a class action on behalf of current and future inmates at Rivers.

---

[2] Plaintiffs acknowledge that the court previously dismissed their second, third, and fourth claims, and "plead those same claims below solely for purposes of preserving them for appeal." Compl. 37 n.1; see BOP Defs.' Mem. Supp. Mot. Dismiss 1 ("The sole remaining claim in this case is a 'direct' Eighth Amendment claim against the [BOP] based on allegations of inadequate medical care"). Thus, the court focuses solely on plaintiffs' first claim for relief, which asserts that the BOP defendants' deliberate indifference to serious medical needs violates the Eighth Amendment.

2

GEO, a private corporation that owns and operates Rivers, has a federal-government procurement contract with the BOP. The BOP pays GEO to house federal inmates at Rivers. Third Am. Compl. ¶¶ 29–32. Plaintiffs claim that, while incarcerated at Rivers, GEO, the BOP, and Lappin have provided them inadequate medical care. Specifically, Calland alleges that he received inadequate medical treatment for his arthritis, degenerative bone disease, and diabetes, resulting in poor health and severe pain. Id. ¶ 10. He also claims that he is unable to access the facilities, programs, services, and activities at Rivers because of his disability. See id. Terrell alleges that he suffers from "end-stage osteoarthritis of the knee," for which an orthopedic surgeon has stated requires "total knee replacement surgery," but "Rivers medical staff refused to provide that corrective surgery." Id. ¶ 11.

Plaintiffs make several allegations regarding the BOP's involvement in the day-to-day operations of Rivers. They allege that the contract between GEO and the BOP "vests the BOP with the power to exercise control over GEO's personnel decisions, policies, and procedures. The BOP, in turn, is charged with monitoring and overseeing GEO's compliance with ... contract obligations." Id. ¶ 34. The contract also allegedly "provides for on-site BOP monitors at the Rivers facility, charges [the BOP monitors] with 'the technical direction of the performance of all work' performed pursuant to the Rivers Contract, and requires the construction of a 2,500-square-foot office and ten parking spaces for [the BOP's] exclusive use." Id. ¶ 36.

According to plaintiffs, the BOP "has specific responsibility for oversight and monitoring of GEO's activities at Rivers" through the Privatization Management Branch of its Correctional Programs Division. Id. ¶ 35. "[T]he BOP's Privatization Management Branch has received administrative complaints from prisoners, including Plaintiffs Calland and Terrell, concerning the medical conditions at Rivers." Id. Plaintiffs and other prisoners have submitted "Regional Administrative Remedy Appeals to BOP's Privatization Management [B]ranch" and the BOP has

3

rejected such appeals. Id. In addition, "an on-site BOP monitor participates in the prison officer 'main line,'[3] which occurs daily." Id. ¶ 36. Accordingly, plaintiffs allege that, through its on-site involvement and supervision at Rivers via the Privatization Management Branch and participation by BOP monitors in the "main line," "the BOP is aware of and continues to disregard the risks and severe harm to prisoner health and safety detailed by Plaintiffs in the Complaint," "the BOP has received actual notice of the harms caused to prisoners in its custody by the grossly inadequate medical care and lack of accessible facilities at Rivers," and the BOP "ha[s] actual notice of prison complaints about the medical conditions and can get visual confirmation of the lack of accessibility for disabled prisoners in the facility." Id. ¶¶ 35–36.

Terrell and Calland make four claims in their third amended complaint. First, plaintiffs claim that the allegedly inadequate medical care violates the Eighth Amendment of the United States Constitution and seek relief from all defendants. Id. ¶¶ 63–71. Second, Calland claims that the BOP and GEO violated section 504 of the Rehabilitation Act. Id. ¶¶ 72–80. Specifically, Calland alleges that he uses a wheelchair and claims that he has been denied equal access to the facilities, programs, services, and activities at Rivers, solely because of his physical disability. Id. ¶¶ 10, 77–78.

Third, plaintiffs seek relief under North Carolina law and claim that GEO negligently failed to provide reasonable medical care and treatment to them. Id. ¶¶ 81–84. GEO's alleged breaches include:

> (a) the failure to provide access to health care services; (b) the failure to hire, train, supervise and maintain an adequate level of qualified health care staff at Rivers; (c) the failure to establish an adequate and reasonable method for distributing medication; and (d) the failure to contain or treat infectious diseases.

---

[3] "During the daily 'main line,' prison staff stand together outside of the dining hall at mealtime to make themselves available for informal discussions with prisoners and to receive and address their complaints." Third Am. Compl. ¶ 36.

4

Id. ¶ 83. According to plaintiffs, GEO's negligence proximately caused them to suffer "immediate and irreparable injury" and a "heightened risk of premature death." Id. ¶ 84.

Fourth, plaintiffs claim to be third-party beneficiaries to the contract between the BOP and GEO and allege that the contract was intended to confer the direct benefit of adequate medical, dental, and mental health care on them. Id. ¶ 86. According to plaintiffs, GEO breached and continues to breach its express and implied contractual obligations to them by failing to provide adequate health care. Id. ¶ 87. Plaintiffs claim that GEO's alleged breach has caused them physical pain and injury, and they ask the court to order GEO to "perform its obligations to provide adequate health care under the Rivers Contract." Id. ¶¶ 88, 90.

Plaintiffs seek to have this action certified as a class action under Rule 23 of the Federal Rules of Civil Procedure. Id. at 43 (prayer for relief); see id. ¶¶ 41–62. The proposed class would include "current and future prisoners of Rivers who, during their incarceration at Rivers, are dependent upon the organizations, systems, policies, practices, and institutional conditions of Defendants for their receipt of medical, dental, and mental health care." Id. ¶ 41. Calland also seeks certification of a sub-class on behalf of "all prisoners who have been denied access to the programs, services, facilities, and activities at Rivers because of Defendants' failures to diagnose, monitor, treat and/or accommodate their serious medical conditions, in violation of Section 504 of the Rehabilitation Act." Id. ¶ 52. Plaintiffs request declaratory and injunctive relief for themselves and those similarly situated, along with costs and attorneys' fees, and seek a jury trial. Id. at 43–44.

II.

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure tests subject-matter jurisdiction, which is the court's "statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (emphasis omitted). A federal

court "must determine that it has subject-matter jurisdiction over [a claim] before it can pass on the merits of that [claim]." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 479–80 (4th Cir. 2005). Plaintiffs, as the party asserting that this court has subject-matter jurisdiction, must prove that subject-matter jurisdiction exists. See, e.g., Steel Co., 523 U.S. at 104; Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999); Richmond, Fredericksburg & Potomac R.R. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). In considering a motion to dismiss for lack of subject-matter jurisdiction, the court may consider evidence outside the pleadings without converting the motion into one for summary judgment. Evans, 166 F.3d at 647.

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted," tests whether the complaint is legally and factually sufficient. See Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 562–63, 570 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), cert. granted, 2011 WL 500227 (U.S. June 27, 2011) (No. 10-1016); Giarratano v. Johnson, 521 F.3d 298, 301–02 (4th Cir. 2008); Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). In considering a motion to dismiss, a court need not accept a complaint's legal conclusions drawn from the facts. See, e.g., Iqbal, 129 S. Ct. at 1949–50. Similarly, a court need not accept as true "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 129 S. Ct. at 1949–50. Moreover, a court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

6

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis removed) (quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

### III.

First, the court addresses plaintiffs' claims against GEO. GEO seeks dismissal for the reasons stated in the court's November 9, 2009 order. GEO Mot. Dismiss 2. Plaintiffs do not oppose the motion, subject to their "right to seek an appeal of the Court's Order upon entry of a final judgment." Id. at 3; see Pls.' Opp'n BOP Defs.' Mot. Dismiss 8 (plaintiffs "retained claims against GEO for purposes of appeal but consented to the dismissal of those claims pending appeal"). Accordingly, the court dismisses the third amended complaint against GEO for failure to state a claim upon which relief can be granted.

Next, the court addresses the BOP defendants' contention (raised for the first time in this round of motions) that the complaint is subject to dismissal for plaintiffs' failure to exhaust their

7

administrative remedies before the filing of the original complaint on June 28, 2007. See BOP Defs.' Mem. Supp. Mot. Dismiss 9–12; BOP Defs.' Reply Supp. Mot. Dismiss 2–5. The Prison Litigation Reform Act of 1995 ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. §] 1983 . . . or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); see Woodford v. Ngo, 548 U.S. 81, 84–85 (2006). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002); see Jones v. Bock, 549 U.S. 199, 211 (2007). Moreover, a prisoner must exhaust administrative remedies regardless of the relief offered through administrative procedures. See Booth v. Churner, 532 U.S. 731, 741 (2001). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Jones, 549 U.S. at 211.

Section 1997e(a) requires an inmate to exhaust his administrative remedies before filing suit. See 42 U.S.C. § 1997e(a); Ford v. Johnson, 362 F.3d 395, 398 (7th Cir. 2004); Johnson v. Jones, 340 F.3d 624, 627–28 (8th Cir. 2003). When an inmate files suit early, courts typically dismiss the action without prejudice. See, e.g., Ford, 362 F.3d at 401; Johnson v. Cannon, C.A. No. 4:08-776-PMD, 2010 WL 936706, at *8 (D.S.C. Mar. 15, 2010) (unpublished); Shouse v. Madsen, No. 7:09-cv-00461, 2010 WL 276543, at *1 (W.D. Va. Jan. 19, 2010) (unpublished). A dismissal without prejudice allows the prisoner an opportunity to exhaust the administrative process and then file a new suit, if the prisoner so chooses.

Failure to exhaust is an affirmative defense that a defendant must plead and prove. See, e.g., Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 681 (4th Cir. 2005). The BOP defendants have submitted evidence indicating that Calland exhausted his administrative remedies on April 11,

8

2008, and Terrell exhausted his administrative remedies on October 23, 2008. See Hubler Decl., Exs. D–F (plaintiffs' administrative remedies). Calland joined the action as a plaintiff with the filing of the first amended complaint on October 24, 2008, and Terrell joined the action as a plaintiff with the filing of the third amended complaint on October 25, 2010.

Each plaintiff exhausted certain administrative remedies before joining the action, but after other inmates originally filed the action. Courts facing similar procedural postures have allowed the "new" inmate's claims to proceed so long as the original inmates had exhausted their claims before filing the action and the newly added inmates exhausted their "new" claims before being added.[4] See, e.g., Rhodes v. Robinson, 621 F.3d 1002, 1005–06 (9th Cir. 2010); Barnes v. Briley, 420 F.3d 673, 678 (7th Cir. 2005); Riggs v. Valdez, 1:09-CV-010-BLW, 2010 WL 4117085, at *3–6 (D. Idaho Oct. 18, 2010) (unpublished); Shariff v. Coombe, 655 F. Supp. 2d 274, 283–84 (S.D.N.Y. 2009).

Here, the BOP defendants have not submitted any evidence concerning whether the inmates who originally filed this action exhausted administrative remedies. Thus, because the BOP defendants never raised the affirmative defense of exhaustion, this court does not know whether the original plaintiffs exhausted their claims before filing the action. Therefore, the BOP defendants' citation to Jackson v. District of Columbia, 254 F.3d 262 (D.C. Cir. 2001), is unavailing. In Jackson,

---

[4] In cases where the court has certified a prisoner class pursuant to Fed. R. Civ. P. 23, courts have permitted later plaintiffs to participate in the action through a theory of "'vicarious exhaustion,' i.e., when 'one or more class members ha[s] exhausted his administrative remedies with respect to each claim raised by the class.'" Chandler v. Crosby, 379 F.3d 1278, 1287 (11th Cir. 2004) (quoting Jones 'El v. Berge, 172 F. Supp. 2d 1128, 1133 (W.D. Wis. 2001)); see Gates v. Cook, 376 F.3d 323, 329–30 (5th Cir. 2004); Jackson v. District of Columbia, 254 F.3d 262, 268–69 (D.C. Cir. 2001); Lewis v. Washington, 265 F. Supp. 2d 939, 941–43 (N.D. Ill. 2003); Hattie v. Hallock, 8 F. Supp. 2d 685, 689 (N.D. Ohio 1998). Here, on September 30, 2009, the court denied without prejudice Calland's motion for class certification "[d]epending on the outcome of the [then-]pending motions to dismiss for failure to state a claim" [D.E. 88] at 2. Thus, plaintiffs may not use this theory.

9

unlike here, the record demonstrated that none of the original plaintiffs in a prisoner class action suit had exhausted administrative remedies until after filing the original complaint. Id. at 268–70. One plaintiff then exhausted administrative remedies before the plaintiffs filed an amended complaint. Id. at 269. The D.C. Circuit affirmed dismissal of the action for failure to exhaust because the subsequent exhaustion could not cure the defect inherent in the initial action. Id. at 269–70. In sum, on the current record, the BOP defendants have failed to prove their failure to exhaust defense.

Next, the court addresses the BOP defendants' argument (also raised for the first time in this round of motions) that each plaintiff's exhaustion "with respect to one specific health care-related issue" does not "cover[] the alleged issues for which they bring suit here." BOP Defs.' Mem. Supp. Mot. Dismiss 10. Requiring exhaustion gives prison officials "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court" and leads to the preparation of a useful administrative record. Jones, 549 U.S. at 204. Grievances must be sufficient in detail to "alert[] the prison to the nature of the wrong for which redress is sought." Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002);[5] see, e.g., Moore v. Bennette, 517 F.3d 717, 721–23, 728–29 (4th Cir. 2008). However,

> [a] grievance need not include legal terminology or legal theories unless they are in some way needed to provide notice of the harm being grieved. A grievance also need not contain every fact necessary to prove each element of an eventual legal claim. The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation.

Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009).

Plaintiffs' remaining claim asserting the BOP defendants' deliberate indifference to serious medical needs in violation of the Eighth Amendment alleges in pertinent part as follows:

---

[5] The Second, Fifth, Sixth, Ninth, and Tenth Circuits have adopted the Strong standard. See Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009) (collecting cases).

> 64. [The BOP defendants] know of and have disregarded the substantial risk of serious harm to Plaintiffs' health and safety that is created by the open and notorious health care delivery failures at Rivers.
>
> 65. Defendants' deliberate indifference to Plaintiffs' serious medical, dental, and mental health needs has caused and continues to cause avoidable pain, mental suffering, and deterioration of Plaintiffs' health. In some instances, Defendants' conduct has resulted in serious physical injury, and, upon information and belief, premature death.
>
> 66. Defendants' organizations, systems, policies, procedures, practices, acts, and omissions all evidence and constitute cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.
>
> 67. Defendants' organizations, systems, policies, procedures, practices, acts, and omissions place Plaintiffs and Class members at unreasonable, continuing, and foreseeable risk of developing or exacerbating serious medical, dental, and mental health problems, and of suffering needless pain, injury, and premature death.

Third Am. Compl. ¶¶ 64–67.

Calland's grievances state that he has "not receiv[ed] . . . proper medications for arthritis or [his] bone condition," that "as a result [he is] in a lot of pain and discomfort," that he "ha[s] been asking for the right medication for a long time but ha[s] been denied many times," and that he receives an inappropriate diet for a diabetic, with "too much starch" and "not . . . enough protein." Calland Decl., Ex. A at 3, 5. Terrell's grievances state that he has been diagnosed with "a torn meniscus and a torn ACL ligament" in his right knee, which causes "excruciating pain." Terrell Decl., Ex. B at 3. He was seen by an orthopedic surgeon, who determined that he requires surgery, but "BOP refused to honor [his] surgery" and medical staff would not allow him to receive medication prescribed for him by the surgeon. Id. at 2, 7. Thus, Calland and Terrell have exhausted grievances which are sufficient in detail to alert the BOP defendants to a failure to provide them with medical care. The grievances also provide fair notice of the alleged systemic problems at Rivers described in paragraphs 39(a), 39(b), and 39(c) of plaintiffs' third amended complaint. These

11

components of the Eighth Amendment claim may proceed. However, plaintiffs' grievances do not provide fair notice of the alleged systemic problem concerning the "[f]ailure to contain or treat infectious diseases." See Third Am. Compl. ¶ 39(d). Thus, the court dismisses that component of plaintiffs' remaining Eighth Amendment claim. See, e.g., Moore, 517 F.3d at 728–29; Curry v. Scott, 249 F.3d 493, 504–05 (6th Cir. 2001).

Next, the court addresses the BOP defendants' contention that Section 704 of the Administrative Procedure Act ("APA") "preclude[s] judicial review of agency action when a plaintiff has '[an]other adequate remedy in a court' for his claim." BOP Defs.' Mem. Supp. Mot. Dismiss 12. The court previously rejected this contention:

> The BOP defendants contend that Section 704 of the APA limits this waiver, in that, because there is no statute which provides for review of BOP actions, Calland must be seeking review of a "'final agency action for which there is no other adequate remedy in a court.'" BOP Defs.' Mem. Supp. 15–16 (quoting 5 U.S.C. § 704).
>
> The United States Court of Appeals for the Tenth Circuit and the United States District Court for the District of South Carolina have concluded that 5 U.S.C. § 702 does waive sovereign immunity for a prisoner's Eighth Amendment claim seeking injunctive relief concerning the BOP's failure to provide medical treatment. See Simmat v. U.S. Bureau of Prisons, 413 F.3d 1225, 1230–33, 1238–40 (10th Cir. 2005); Sabina v. Fed. Bureau of Prisons, C/A No. 0:08-3903-TLW-PJG, 2010 WL 972579, at *3–4 (D.S.C. Feb. 12, 2010) (unpublished), report and recommendations adopted, No. 0:08-cv-3903-TLW-PJG, 2010 WL 960412 (D.S.C. Mar. 11, 2010) (unpublished). This court also concludes that, due to 5 U.S.C. § 702, sovereign immunity does not bar plaintiff's Eighth Amendment claim for injunctive relief against the BOP defendants. **Moreover, 5 U.S.C. § 704 does not alter this conclusion.**

Mathis, No. 2:08-CT-21-D, slip op. at 10–11 (E.D.N.C. Sept. 29, 2010) (emphasis added). Furthermore, Holly v. Scott, 434 F.3d 287, 295–96 (4th Cir. 2006), and other similar cases do not alter this conclusion. In those cases, the plaintiffs sought monetary damages from private actors, as opposed to injunctive relief against the BOP, and the "multiple potential claims" to which the Fourth Circuit referred were state-law tort claims which "include the possibility of recovering punitive

12

damages." Id.; see Alba v. Montford, 517 F.3d 1249, 1254 (11th Cir. 2008) (same); Peoples v. CCA Detention Ctrs., 422 F.3d 1090, 1108 (10th Cir. 2005) (same).

Alternatively, the BOP defendants seek summary judgment on the merits of plaintiffs' deliberate indifference claims against them. See BOP Defs.' Mem. Supp. Mot. Dismiss 13. In response, plaintiffs move, pursuant to Federal Rule of Civil Procedure 56(d),[6] to deny the BOP defendants' motion for summary judgment so that the parties can engage in discovery. Pls.' Rule 56(d) Mot.; see Pls.' Opp'n BOP Defs.' Mot. Dismiss 16.

"As a general rule, summary judgment is appropriate only after adequate time for discovery." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996) (quotation omitted). Rule 56(d) provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d). Thus, Rule 56(d) permits a court to delay ruling on a motion for summary judgment if the nonmoving party requires discovery to identify "facts essential to justify the party's opposition." Crawford-El v. Britton, 523 U.S. 574, 599 n.20 (1998) (quotation omitted); Nader v. Blair, 549 F.3d 953, 961–62 (4th Cir. 2008); White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 n.2 (4th Cir. 2004).

---

[6] Effective December 1, 2010, the Supreme Court amended Rule 56, and what is now Rule 56(d) was previously codified as Rule 56(f). See Fed. R. Civ. P. 56, advisory committee's note ("The standard for granting summary judgment remains unchanged. . . . Subdivision (d) carries forward without substantial change the provisions of former subdivision (f)."); see also Order Amending Fed. R. Civ. P. (U.S. Apr. 28, 2010) ("[T]he foregoing amendments to the Federal Rules of Civil Procedure shall take effect on December 1, 2010, and shall govern in all proceedings thereafter commenced and, insofar as just and practicable, all proceedings then pending."); Merchant v. Prince George's County, No. 10-1268, 2011 WL 2451528, at *1 n.1 (4th Cir. June 21, 2011) (per curiam) (unpublished).

13

A party requesting relief pursuant to Rule 56(d) must specifically demonstrate that the party has not had sufficient time to develop information it needs to oppose the summary judgment motion. Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002). In making its determination, a court may consider the diligence that the non-moving party has demonstrated in pursuing discovery. See White, 375 F.3d at 295 n.2; Harrods Ltd., 302 F.3d at 245; Strag v. Bd. of Trs., 55 F.3d 943, 953–54 (4th Cir. 1995). A court also may consider whether the case "involves complex factual questions about intent and motive." Harrods, 302 F.2d at 247; cf. Nader, 549 F.3d at 962 ("the Defendants' motives and intent were not at issue in the motion for summary judgment").

Plaintiffs have filed several exhibits indicating their attempts to obtain discovery, and a declaration by their attorney[7] asserting the need for discovery and stating that no discovery has taken place in this case. See Pls.' Rule 56(d) Mot., Exs. A–H & Estrada Decl. The Fourth Circuit places "great weight on the [Rule 56(d)] affidavit." Evans, 80 F.3d at 961. Plaintiffs' counsel's Rule 56(d) affidavit states that plaintiffs have attempted to engage in discovery on several occasions, but the BOP defendants have declined to participate. Estrada Decl. ¶¶ 4–11. Additionally, the BOP defendants' motion "relies upon affidavits by three [BOP employees] who have not been deposed (and were first identified in the summary judgment motion) and excerpted or self-selected documents that have not been produced in full to Plaintiffs but appear to contain information relevant to the claims and defenses in this case," and that the BOP "Defendants' knowledge of Plaintiffs' medical conditions also is a key factor considered in Plaintiffs' proof for an Eighth Amendment claim," which requires discovery "to reveal the extent of [BOP] Defendants' knowledge of [plaintiffs'] care

---

[7] Although the better practice is for a party (rather than an attorney) to file a Rule 56(d) affidavit, the court has discretion to accept an attorney's Rule 56(d) affidavit. See, e.g., Resolution Trust Corp. v. N. Bridge Assocs., Inc., 22 F.3d 1198, 1204 (1st Cir. 1994) (noting that a party's attorney may submit an appropriate affidavit under Rule 56(f)).

14

and condition." Id. ¶¶ 15–16. The BOP defendants contend that "[t]he applicable legal framework" for an Eighth Amendment claim does not require the type of discovery plaintiffs seek, and the BOP defendants object to many of plaintiffs' proposed interrogatories and requests for production. BOP Defs.' Opp'n Pls.' Rule 56(d) Mot. 8–19.

Plaintiffs' Rule 56(d) affidavit articulates particular information that plaintiffs seek to discover concerning their Eighth Amendment claim and the BOP defendants' argument that plaintiffs cannot impute knowledge to them. Cf. Farmer v. Brennan, 511 U.S. 825, 849 (1994). Plaintiffs have demonstrated a good-faith need to develop a factual record in order to oppose any summary judgment motion. Because the parties have not engaged in any discovery in this action and plaintiffs' counsel has filed an appropriate Rule 56(d) affidavit, the court grants plaintiffs' Rule 56(d) motion and denies without prejudice the BOP defendants' motion for summary judgment.

## IV.

The BOP defendants have moved to seal an unredacted memorandum, declaration, and two exhibits [D.E. 131–32] which support their motion to dismiss or for summary judgment because these documents contain excerpts of and references to plaintiffs' medical records.[8] BOP Defs.' Mot. Seal 1–3. Plaintiffs do not object to the motion "to the extent that it asks the Court to file Plaintiffs' medical records under seal." Pls.' Resp. BOP Defs.' Mot. Seal 1.

The court has analyzed the motion to seal under the governing standard. See, e.g., Va. Dep't of State Police v. Washington Post, 386 F.3d 567, 575 (4th Cir. 2004); Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 178, 180 (4th Cir. 1988); Rushford v. New Yorker Magazine, Inc., 846 F.2d

---

[8] The BOP defendants filed these documents ex parte, and state that "counsel for plaintiffs must provide counsel for federal defendants with plaintiffs' authorization in order for counsel for federal defendants to serve counsel for plaintiffs with the Proposed Sealed Material." BOP Defs.' Mot. Seal 1 n.1. Plaintiffs' response to the motion to seal does not indicate whether there is any issue with receiving the proposed sealed material from the BOP defendants.

15

249, 253 (4th Cir. 1988); In re Knight Publ'g Co., 743 F.2d 231, 235 (4th Cir. 1984). As for Exhibits D and E to the declaration of Dr. Daniel De Jesus, which are portions of plaintiffs' medical records, the court concludes it is appropriate to seal these exhibits. However, with regard to paragraphs 8 through 10 of Dr. De Jesus's declaration, which briefly describe plaintiffs' medical histories, and page 20 of the BOP defendants' memorandum, which contains an even briefer description of plaintiffs' medical histories, the court concludes that sealing is inappropriate. Plaintiffs have readily acknowledged their medical histories and courses of treatment in unsealed filings. Thus, the court concludes that, with respect to their memorandum and Dr. De Jesus's declaration, the BOP defendants have not met their burden on the motion to seal. Accordingly, the court grants the motion to seal in part, only as to Exhibits D and E to the declaration of Dr. Daniel De Jesus. Additionally, the court directs that the exhibits be filed under seal rather than ex parte. Because medical records will be an important part of this action, the court suggests that the parties discuss the possibility of a protective order to avoid future motions to seal.

Finally, as for plaintiffs' motion for entry of a scheduling order or a scheduling conference, the BOP defendants object only to the extent of the discovery proposed by plaintiffs. The BOP defendants may raise specific objections to discovery requests pursuant to Local Civil Rule 26.1, EDNC. The court directs the parties to confer and file a proposed scheduling order (or separate proposed orders, if the parties cannot agree) no later than July 29, 2011.

V.

For the reasons stated above, GEO's motion to dismiss [D.E. 130] is GRANTED and the BOP defendants' motion to dismiss or for summary judgment [D.E. 133] is GRANTED in part and DENIED in part without prejudice. Specifically, the motion to dismiss that component of the claim grounded in paragraph 39(d) of the third amended complaint for failure to exhaust administrative

16

remedies is GRANTED. The BOP defendants' motion to seal [D.E. 132] is GRANTED IN PART, and the court directs the clerk to maintain under seal (rather than ex parte) only Exhibits D and E to the declaration of Dr. Daniel De Jesus [D.E. 131–2, 131–3]. Plaintiffs' discovery and Rule 56(d) motions [D.E. 137, 139] are GRANTED. The BOP defendants' motion to strike the jury demand in plaintiffs' third amended complaint [D.E. 146] is GRANTED. Counts Two through Four of the third amended complaint are DISMISSED.

SO ORDERED. This 18 day of July 2011.

JAMES C. DEVER III
United States District Judge