IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:08-CT-21-D

| | | |
|---|---|---|
| KEITH MATHIS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | **ORDER** |
| | ) | |
| GEO GROUP, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

Gregory Terrell ("Terrell") is an inmate at Rivers Correctional Institution ("Rivers"). Terrell contends that defendants GEO Group, Inc. ("GEO"), the Federal Bureau of Prisons ("BOP"), and Charles E. Samuels, Jr. ("Samuels"), Director of the BOP (collectively, "BOP defendants"),[1] have violated and are violating federal and state law in connection with the medical care provided to inmates. GEO is a private corporation that owns and operates Rivers, and the BOP has a procurement contract with GEO under which it pays GEO to house federal inmates at Rivers. Terrell seeks declaratory and injunctive relief and wishes to serve as the class representative for all current and future inmates at Rivers.

On November 9, 2009, the court granted defendants' motions to dismiss the amended complaint, but granted a former plaintiff's ("Calland")[2] request to file a second amended complaint

---

[1] Samuels is substituted for Harley Lappin. See Fed. Civ. P. 25(d). Samuels is sued in his official capacity; therefore, the plaintiffs' claims against Samuels are effectively claims against the BOP itself. See Kentucky v. Graham, 473 U.S. 159, 165 (1985). Thus, the court refers to the BOP and Samuels collectively as the BOP defendants.

[2] On September 26, 2011, Calland and the BOP defendants filed a stipulation of dismissal without prejudice as to Calland [D.E. 170]. Calland sought certification of a sub-class on behalf of "all prisoners who have been denied access to the programs, services, facilities, and activities at Rivers because of Defendants' failures to diagnose, monitor, treat and/or accommodate their serious medical conditions, in violation of Section 504 of the Rehabilitation Act . . . ." Third Am. Compl.

to amend the deficient claims [D.E. 96]. On December 9, 2009, Calland filed a second amended complaint [D.E. 98]. On September 29, 2010, the court granted in part the BOP defendants' motions to dismiss, dismissed GEO from the action, and granted Calland's motion for leave to file a third amended complaint [D.E. 122]. On October 25, 2010, Calland and Terrell filed a third amended complaint [D.E. 125]. On July 18, 2011, the court granted GEO's motion to dismiss and granted in part and denied in part the BOP defendants' motion to dismiss or for summary judgment [D.E. 155].

On August 11, 2011, the BOP defendants moved for partial reconsideration [D.E. 159]. On August 23, 2011, Terrell filed a second motion for class certification [D.E. 161]. On September 16, 2011, the BOP defendants moved to stay the briefing deadlines on Terrell's second motion for class certification [D.E. 165]. On January 9, 2012, the court denied the BOP defendants' motion for reconsideration, granted their motion to stay, and allowed the parties further time to respond and reply to the second motion for class certification [D.E. 177]. On January 30, 2012, the BOP defendants responded in opposition to Terrell's second motion for class certification. Resp. Opp'n 2d Mot. Class Cert. [D.E. 178]. On February 6, 2012, Terrell replied. Reply Supp. 2d Mot. Class Cert. [D.E. 179]. As explained below, Terrell has failed to satisfy his burden of showing that the class meets the requirements of Federal Rule of Civil Procedure 23(a)(2) or (3). Thus, the court denies his renewed motion for class certification.

I.

In its November 9, 2009 order, the court extensively described the background of this case. Accordingly, the court restricts its discussion in this order to the pending motion. Additionally, the

---

[D.E. 125] ¶ 52. The court has repeatedly dismissed plaintiffs' Rehabilitation Act claim against the BOP defendants, see [D.E. 96] 10–16 (Nov. 9, 2009 order), [D.E. 122] 13 (Sept. 29, 2010 order), [D.E. 155] 2 n.2 (July 18, 2011 order), and thus does not address any proposed disability sub-class. Moreover, Terrell does not address any such sub-class in seeking class certification.

2

court limits its discussion of the allegations in the third amended complaint to those claims that remain after the court's July 18, 2011 order.

Terrell suffers from "end-stage osteoarthritis of the knee," and an orthopedic surgeon has stated that Terrell needs "total knee replacement surgery." Third Am. Compl. ¶ 11. Nonetheless, "Rivers medical staff refused to provide that corrective surgery." Id. The third amended complaint details other former inmates' allegations of inadequate medical care, which include complications and emergency surgeries resulting from the failure to treat initially minor health problems, id. ¶¶ 16, 18; refusal to provide mental health treatment or prescribed medication for diagnosed mental illness and denial of prescribed surgery, id. ¶ 17; deterioration of mobility as a result of being denied physical therapy and other devices, id. ¶¶ 10, 19–20, 22–23; failure to treat infectious diseases, id. ¶¶ 16, 21;[3] failure to treat significant pain, id. ¶¶ 16–19, 21–22; confiscation of prescribed medications and substitution with medications that caused significant side effects or with no medications at all, id. ¶¶ 19, 23–25; and requiring inmates to choose between eating and receiving medications through a "pill line. Id. ¶¶ 23–24.

The third amended complaint alleges that the BOP defendants have provided inadequate medical care to inmates incarcerated at Rivers in violation of the Eighth Amendment, and makes several allegations regarding the BOP's involvement in the day-to-day operations of Rivers. Terrell alleges that the contract between GEO and the BOP "vests the BOP with the power to exercise control over GEO's personnel decisions, policies, and procedures. The BOP, in turn, is charged with monitoring and overseeing GEO's compliance with . . . contract obligations." Id. ¶ 34. The contract also allegedly "provides for on-site BOP monitors at the Rivers facility, charges [the BOP monitors]

---

[3] The court previously dismissed any claim concerning the "[f]ailure to [c]ontain or [t]reat [i]nfectious [d]iseases," Third Am. Compl. ¶ 39(d), as unexhausted. [D.E. 155] 10–12.

with 'the technical direction of the performance of all work' performed pursuant to the Rivers Contract, and requires the construction of a 2,500-square-foot office and ten parking spaces for [the BOP's] exclusive use." Id. ¶ 36.

According to Terrell, the BOP "has specific responsibility for oversight and monitoring of GEO's activities at Rivers" through the Privatization Management Branch of its Correctional Programs Division. Id. ¶ 35. "[T]he BOP's Privatization Management Branch has received administrative complaints from prisoners, including . . . Terrell, concerning the medical conditions at Rivers." Id. Terrell and other prisoners have submitted "Regional Administrative Remedy Appeals to BOP's Privatization Management [B]ranch" and the BOP has rejected such appeals. Id. In addition, "an on-site BOP monitor participates in the prison officer 'main line,'[4] which occurs daily . . . ." Id. ¶ 36. Accordingly, Terrell alleges that, through the BOP's on-site involvement and supervision at Rivers via the Privatization Management Branch and the BOP's participation in the main line, "the BOP is aware of and continues to disregard the risks and severe harm to prisoner health and safety detailed by [p]laintiffs in the [c]omplaint." Id. According to Terrell, the BOP "has received actual notice of the harms caused to prisoners in its custody by the grossly inadequate medical care and lack of accessible facilities at Rivers . . . , ha[s] actual notice of prison complaints about the medical conditions[,] and can get visual confirmation of the lack of accessibility for disabled prisoners in the facility." Id. ¶¶ 35–36. Terrell specifically asserts that

> 64. [The BOP defendants] know of and have disregarded the substantial risk of serious harm to Plaintiffs' health and safety that is created by the open and notorious health care delivery failures at Rivers.

---

[4] "During the daily 'main line,' prison staff stand together outside of the dining hall at mealtime to make themselves available for informal discussions with prisoners and to receive and address their complaints." Third Am. Compl. ¶ 36.

> 65. Defendants' deliberate indifference to Plaintiffs' serious medical, dental, and mental health needs has caused and continues to cause avoidable pain, mental suffering, and deterioration of Plaintiffs' health. In some instances, Defendants' conduct has resulted in serious physical injury, and, upon information and belief, premature death.
>
> 66. Defendants' organizations, systems, policies, procedures, practices, acts, and omissions all evidence and constitute cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.
>
> 67. Defendants' organizations, systems, policies, procedures, practices, acts, and omissions place Plaintiffs and Class members at unreasonable, continuing, and foreseeable risk of developing or exacerbating serious medical, dental, and mental health problems, and of suffering needless pain, injury, and premature death.

Id. ¶¶ 64–67. Terrell claims that the allegedly inadequate medical care provided at Rivers violates the Eighth Amendment of the United States Constitution, seeks injunctive relief, and proposes that this case proceed as a class action on behalf of current and future inmates at Rivers. Id. ¶¶ 63–71.

II.

Pursuant to by Federal Rule of Civil Procedure 23, Terrell seeks to represent a "class of all current and future prisoners who, during their incarceration at Rivers, are dependent upon the organizations, systems, policies, practices, and institutional conditions for their receipt of medical, dental, and mental health care . . . ." Mem. Supp. 2d Mot. Class Cert. [D.E. 162] 4 (emphasis removed). Rule 23(a) provides that a plaintiff may bring a class action as a representative party if

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These basic prerequisites are commonly referred to as numerosity, commonality, typicality, and adequacy, respectively. "A plaintiff bears the burden of proving these requirements." Monroe v. City of Charlottesville, Va., 579 F.3d 380, 384 (4th Cir. 2009), cert.

5

denied, 130 S. Ct. 1740 (2010); see Thorn v. Jefferson-Pilot Life Ins. Co., 445 F.3d 311, 317 (4th Cir. 2006). Moreover,

> the final three requirements of Rule 23(a) "tend to merge," with commonality and typicality "serving as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." . . . Broussard v. Meineke Discount Muffler Shops, 155 F.3d 331, 337 (4th Cir. 1998) (quoting [Gen. Tel. Co. of the Sw. v. ]Falcon, 457 U.S. [147,] 157 n.13 [(1982)]) (alteration in original). Indeed, "[c]ertification is only concerned with the commonality (not the apparent merit) of the claims and the existence of a sufficiently numerous group of persons who may assert those claims." Lilly v. Harris-Teeter Supermarket, 720 F.2d 326, 332–33 (4th Cir. 1983).

Brown v. Nucor Corp., 576 F.3d 149, 152 (4th Cir. 2009), cert. denied, 130 S. Ct. 1720 (2010) (parallel citation omitted).

To bring a class action, the proposed class representative must first demonstrate all four prerequisites of Rule 23(a) and then "must satisfy at least one of the three requirements listed in Rule 23(b)."[5] Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2548 (2011). As the Supreme Court explained in Wal-Mart:

> Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc. We recognized in Falcon that "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question," 457 U.S., at 160, and that certification is proper only if "the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied," id., at 161; see id., at 160 ("[A]ctual, not presumed, conformance with Rule 23(a) remains . . . indispensable"). Frequently that "rigorous analysis" will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped. "'[T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" Falcon, supra, at 160 (quoting Coopers & Lybrand v. Livesay, 437 U.S. 463, 469 (1978); some internal quotation marks omitted). Nor is there anything unusual about that consequence: The necessity of touching aspects of the merits in

---

[5] Terrell seeks to bring a class action under Rule 23(b)(1) or (b)(2). See Mem. Supp. 2d Mot. Class Cert. 17–20.

6

order to resolve preliminary matters, e.g., jurisdiction and venue, is a familiar feature of litigation. See Szabo v. Bridgeport Machines, Inc., 249 F.3d 672, 676–677 (7th Cir. 2001) (Easterbrook, J.).

Id. at 2551–52 (footnote and parallel citations omitted) (emphasis removed).

A.

The BOP defendants first assert that Terrell "lacks standing to raise claims regarding dental or mental health care at Rivers because he has not established, or even alleged, either that he is mentally ill or that he has any serious dental needs." Resp. Opp'n 2d Mot. Class Cert. 1; see id. 10–13. Terrell responds that the BOP defendants "mistake[] Plaintiff's allegations illustrating the systemic failures at Rivers for his Eighth Amendment claim." Reply Supp. 2d Mot. Class Cert. 2 (emphases in original).

To establish Article III standing, a plaintiff must show that: (1) "the plaintiff . . . suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) there is "a causal connection between the injury and the conduct complained of"; and, (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992) (footnote, citations, and quotations omitted). The asserted injury must be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." Id. at 560 (alterations and quotation omitted).

> "[S]tanding is not dispensed in gross." Lewis v. Casey, 518 U.S. 343, 358, n.6 (1996). Rather, "a plaintiff must demonstrate standing for each claim he seeks to press" and "'for each form of relief'" that is sought. DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 352 (2006) . . . . While the proof required to establish standing increases as the suit proceeds, see Lujan, supra, at 561, the standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed. As noted above, the injury required for standing

7

need not be actualized. A party facing prospective injury has standing to sue where the threatened injury is real, immediate, and direct.

Davis v. Fed. Election Comm'n, 554 U.S. 724, 734 (2008) (some citations omitted). "Of course, a class action cannot be sustained without a named plaintiff who has standing. . . . The standing requirement winnows out disputes that would be inappropriate for judicial resolution . . . ." Amador v. Andrews, 655 F.3d 89, 99 (2d Cir. 2011). Moreover, this court's role is limited to "provid[ing] relief to claimants, in individual or class actions, who have suffered, or will imminently suffer, actual harm." Lewis, 518 U.S. at 349.

Terrell has alleged an injury in fact: he is a prisoner incarcerated at Rivers who alleges that he is not receiving constitutionally adequate treatment for a serious medical need. Terrell has also alleged a causal connection between the injury and the conduct complained of: he asserts that the BOP defendants are responsible for providing him with medical treatment, are aware that the company with which the BOP has contracted to house him is not providing him that treatment, and have chosen to ignore his failure to receive treatment for his serious medical need. Finally, Terrell's alleged injury is one that could likely be redressed by a favorable decision. Thus, Terrell has standing to assert his Eighth Amendment claim against the BOP defendants in the third amended complaint.

B.

The court next addresses whether Terrell has established "questions of law or fact common to the class" as required by Rule 23(a)(2) and whether "the claims or defenses of the representative parties are typical of the claims or defenses of the class" as required by Rule 23(a)(3). The BOP defendants assert that "because plaintiff . . . fails to identify any general policy of federal defendants as the uniform cause of the Eighth Amendment violations that he alleges, the Court here would . .

8

. be faced with individualized factual inquiries to determine whether federal defendants have exhibited deliberate indifference with respect to any particular inmate's serious medical needs." Resp. Opp'n 2d Mot. Class Cert. 18. The court agrees.

In Wal-Mart, the Supreme Court recently examined the commonality requirement in detail:

> The crux of this case is commonality—the rule requiring a plaintiff to show that "there are questions of law or fact common to the class." Rule 23(a)(2). That language is easy to misread, since "[a]ny competently crafted class complaint literally raises common 'questions.'" Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U.L. Rev. 97, 131–132 (2009). For example: Do all of us plaintiffs indeed work for Wal-Mart? Do our managers have discretion over pay? Is that an unlawful employment practice? What remedies should we get? Reciting these questions is not sufficient to obtain class certification. Commonality requires the plaintiff to demonstrate that the class members "have suffered the same injury," Falcon, supra, at 157. This does not mean merely that they have all suffered a violation of the same provision of law. Title VII, for example, can be violated in many ways—by intentional discrimination, or by hiring and promotion criteria that result in disparate impact, and by the use of these practices on the part of many different superiors in a single company. Quite obviously, the mere claim by employees of the same company that they have suffered a Title VII injury, or even a disparate-impact Title VII injury, gives no cause to believe that all their claims can productively be litigated at once. Their claims must depend upon a common contention—for example, the assertion of discriminatory bias on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke. . . . "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." Nagareda, supra, at 132.

Wal-Mart Stores, 131 S. Ct. at 2550–51 (footnote omitted) (emphasis removed).

Before and after Wal-Mart, courts have certified classes of incarcerated persons challenging specific, written, acknowledged, official policies. See, e.g., Logory v. Cnty. of Susquehanna, 277 F.R.D. 135, 142 (M.D. Pa. 2011) ("[C]ommonality is high as each was subjected to the very same delousing procedure."); Bumgarner v. N.C. Dep't of Corr., 276 F.R.D. 452, 456–57 (E.D.N.C. 2011)

9

(finding commonality among class members challenging sentence-reduction credit programs that by operation exclude disabled inmates unable to work); Tyler v. Suffolk Cnty., 253 F.R.D. 8, 10 (D. Mass. 2008) (finding commonality among class members asserting that "the system of bathroom access under which Building 4 operated is per se a violation of their Eighth Amendment rights" and noting that "all members of the putative class in the instant case were subject to the same allegedly unlawful policies and, as such, their claims share common questions of law and fact"); Hilton v. Wright, 235 F.R.D. 40, 52 (N.D.N.Y. 2006) (finding commonality among a class challenging a prison-wide agency policy requiring that inmates with Hepatitis C complete a substance abuse program to become eligible for medical treatment); see also Gray v. Hearst Commc'ns, Inc., 444 F. App'x 698, 701–02 (4th Cir. 2011) (unpublished) (affirming certification of class when "there [was] no dispute that a uniform policy (or obligation) exist[ed] or that such a uniform policy applie[d] to all plaintiffs").

In contrast to the above-referenced cases, Terrell does not challenge a concrete policy. Rather, Terrell challenges a constellation of unspecified "organizations, systems, policies, procedures, practices, acts, and omissions" that allegedly have led to unconstitutional individual deprivations of medical attention. See Third Am. Compl. ¶¶ 66–67. Terrell simply has not met his burden of showing "'[s]ignificant proof that [the BOP defendants] operated under a general policy of'" being deliberately indifferent to the serious medical needs of Rivers's inmates. Wal-Mart, 131 S. Ct. at 2553 (quoting Falcon, 457 U.S. at 159 n.15) (first alteration in original); see Love v. Johanns, 439 F.3d 723, 729 (D.C. Cir. 2006) (holding that "anecdotal evidence" offered by 622 subclass members to show that they were personally denied loan applications "may give the declarants standing to bring individual suits" but "[do] not require the District Court to infer the existence of a 'common policy of discrimination' that affected the non-declarants, as well. The bald

allegation that the declarants and non-declarants alike are unified by a 'common policy' of gender discrimination is insufficient . . . under . . . Falcon" (emphasis removed)); Reeb v. Ohio Dep't of Rehab. & Corr., 435 F.3d 639, 644–45 (6th Cir. 2006); Schilling v. Kenton Cnty., Ky., Civil Action No. 10-143-DLB, 2011 WL 293759, at *7 (E.D. Ky. Jan. 27, 2011); Kress v. CCA of Tenn., LLC, 272 F.R.D. 222, 229 (S.D. Ind. 2010); Guerra v. Pub. Safety Concepts, No. 4:05-CV-2322, 2007 WL 628430, at *2 (E.D. Mo. Feb. 27, 2007) (unpublished).

III.

Terrell's renewed motion for class certification [D.E. 161] is DENIED. The court requests that Magistrate Judge Gates hold a status conference and set a schedule to move Terrell's claim towards prompt resolution.

SO ORDERED. This 23 day of February 2012.

JAMES C. DEVER III
Chief United States District Judge